IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Chris Martin**,<br>c/o First Amendment Clinic<br>CASE WESTERN RESERVE UNIVERSITY<br>SCHOOL OF LAW<br>11075 East Blvd.<br>Cleveland, Ohio 44106<br><br>    *Plaintiff*,<br><br>v.<br><br>**Cleveland City Council**<br>and **Cleveland City Council President Blaine Griffin** (in his official and individual capacities),<br>601 Lakeside Ave., Room 220<br>Cleveland, Ohio 44114.<br><br>    *Defendants*. | **COMPLAINT FOR DAMAGES, DECLARATORY & INJUNCTIVE RELIEF**<br><br>**(WITH JURY DEMAND)** |

## Preliminary Statement

1.      This case is about Cleveland City Council ("City Council") and Cleveland City Council President Blaine Griffin ("Council President Griffin" or "Defendant Griffin") using City Council's unconstitutional public comment policies to silence the free speech of members of the public seeking to petition their government officials—rights guaranteed by the United States and Ohio Constitutions. On September 25, 2023, Defendant Griffin used Council's written policies and his discretion as City Council President to unlawfully censor Plaintiff Chris Martin while Mr. Martin recited some of the donations Councilmembers accepted from a Political Action Committee known as

the Council Leadership Fund during the public comment period. Defendants' policies invidiously discriminate against particular viewpoints and chill protected speech—particularly speech that criticizes public officials. Moreover, the policies are unmoored from any reasonable governmental interest. This lawsuit seeks damages for Defendants' violations of Mr. Martin's First Amendment rights, to end ongoing constitutional violations, and for other relief as described below.

## Nature of the Claims

2.  This Complaint is brought under 42 U.S.C. § 1983 and the First and Fourteenth Amendments of the U.S. Constitution. Mr. Martin seeks damages, injunctive relief, declaratory relief, and attorneys' fees and costs related to Defendants' violation of Mr. Martin's speech rights.

## Parties

3.  Plaintiff Chris Martin is a concerned, civically engaged citizen residing within Cleveland city limits.

4.  Cleveland City Council is, and at all relevant times was, the elected legislative body of Cleveland with its principal place of operation in Cleveland, Ohio. The Council is elected pursuant to Chapter 5 of the Charter of the City of Cleveland, as authorized by Article XVIII § 3 of the Ohio Constitution.

5.  Defendant Council President Blaine Griffin is the current City Council president, elected by Council pursuant to Chapter 5, Section 30 of the Charter of the City of Cleveland.

6. Defendant City Council has enacted "Rules of Order Governing the Council of the City of Cleveland 2022-2025," which govern City Council Meetings (the "Rules of Council"). These Rules provide that "any person may be heard during that portion of a regular meeting set aside for public comment." A true and accurate copy of the Rules of Council is attached as <u>Exhibit 1</u>.

7. Defendant City Council has enacted "Procedures for Public Comment at Cleveland City Council Meetings" which govern speech during the public comment portion of Council Meetings (the "Public Comment Policies" or "Policies"). A true and accurate copy of the Public Comment Policies is attached as <u>Exhibit 2</u>.

## Jurisdiction and Venue

8. This Court has subject-matter jurisdiction over Mr. Martin's claims that arise under the United States Constitution under 28 U.S.C. § 1331. Further, 28 U.S.C. § 1343(a)(3) provides this Court with jurisdiction over deprivations of civil rights.

9. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events which give rise to the claims occurred within the Northern District of Ohio.

## Factual Allegations

### *The Public Comment Policies*

10. Although at one time Cleveland's City Charter mandated public comment, before 2021 Cleveland City Council had not allowed public comment for decades.[1]

11. Pursuant to its Rule that "any person may be heard during that portion of a regular meeting set aside for public comment" (*see* Exhibit 1), Cleveland City Council enacted the Public Comment Policies on September 20, 2021. Exhibit 2.

12. The Public Comment Policies, among other things:

> a) prohibit "conduct that is disruptive or distracting";
> b) require speakers to "only address the topic they registered to speak as stated on their registration form";
> c) prohibit "indecent or discriminatory language";
> d) prohibit addressing "individual council member[s] or other person[s]";
> e) prohibit "electioneering for any candidate or specific ballot issue";
> f) prohibit "endors[ing] or promot[ing] any product or service";
> g) prohibit speakers from "wear[ing] anything that promotes any candidate, campaign, issue, product or service" including but not limited to "visible logos, slogans, messages, words";
> h) prohibit "signs, posters, banners, placards and similar items" in the Council Chamber; and
> i) require speakers to state whether they are "being paid to speak and/or representing any organization."

13. Since Cleveland City Council amended its rules to allow public comment, Mr. Martin has appeared before Council to make public comment on multiple occasions.

---

[1] *See generally* Doug Breehl-Pitorak, *A guide to public comment at Cleveland City Council*, Signal Cleveland (Oct. 7, 2022) https://signalcleveland.org/a-guide-to-public-comment-at-cleveland-city-council/

4

14.     Mr. Martin intends to continue making use of City Council's public comment period to address Council about matters that affect him as a Cleveland resident.

15.     Before the September 25, 2023 Council meeting, Mr. Martin submitted a form to Cleveland City Council, requesting the opportunity to make public comment at the next meeting. On this form, Mr. Martin indicated he intended to make a public comment on "matters of public concern."

*Defendants Unlawfully Censor Mr. Martin
at the September 25th City Council Meeting*

16.     On Monday, September 25, 2023, Mr. Martin attended the weekly Cleveland City Council meeting having pre-registered to make a public comment. Cleveland City Council's video recording of the September 25, 2023 Cleveland City Council Meeting is available at https://www.youtube.com/watch?v=p0i-KEHxLNc (hereinafter the "September 25th Meeting").

17.     While introducing the public comment period on September 25, Council President Griffin asked all the public commenters to not "impugn" the character of anybody in the audience. He stated that Council would be "cutting mics for anyone that insults or impugns the character of any official in this body, whether it be the administration or Council." *Id*. at 8:52 *et seq*.

18.     Council President Griffin's purported rule for insulting or impugning the character of "any official" does not appear in Defendant City Council's Public Comment Policies. *See* Exhibit 2.

19. Mr. Martin's comment at the September 25 meeting sought to ask Councilmembers why they were not opposing Ohio Senate Bill 158, which would have, as a matter of State law, limited the ways in which Defendant City Council could appropriate and distribute funds—specifically, S.B. 158 targeted "participatory budgeting" legislation similar to Cleveland Issue 38, which was hotly debated in Council at the time. Mr. Martin's comment juxtaposed the Councilmembers' lack of opposition to Senate Bill 158 and the Councilmembers' receipt of contributions from a Political Action Committee known as the "Council Leadership Fund,"[2] reportedly controlled by Defendant Griffin.[3]

20. When Mr. Martin approached the podium to give public comment on September 25, he began by asking the councilmembers if "any of [them] submitted written testimony against Senate Bill 158" and "if any of [them] would be in Columbus tomorrow to speak against it [at the Senate Bill 158 debate]." *See* September 25th Meeting at 19:57 *et seq*.

21. Mr. Martin then said, "In 2022, Councilor Joe Jones accepted $2,500 from the Council Leadership Fund. Councilor Kevin Bishop accepted $3,000 from the Council Leadership Fund. Councilor Kerry McCormack accepted $1,500 from the Council Leadership Fund. Councilor Deborah Gray accepted $3,000 from the Council Leadership Fund. Councilor Richard Starr accepted—" *Id*.

---

[2] Nick Castele, *What is the Council Leadership Fund, the political action committee opposing Issue 38?*, SIGNAL CLEVELAND, (Oct. 18, 2023), https://signalcleveland.org/what-is-the-council-leadership-fund-the-political-action-committee-opposing-issue-38/
[3] *See id.*

22. At that moment, Council President Griffin interrupted Mr. Martin's public comment, saying, "Sir, the rules are that you are not supposed to address individual leaders" while Mr. Martin tried to continue his comment. *Id.*

23. Mr. Martin replied, "I am not impugning the character of any councilor. I am simply stating the facts of who has accepted money from the Council Leadership Fund." During Mr. Martin's statement, Council President Griffin spoke over Mr. Martin saying, "The rules say that you are not supposed to invoke any councilor." *Id.*

24. Council President Griffin then told Mr. Martin he would be "remove[d] from the mic if [Mr. Martin] mention[ed] one more councilmembers' name." *Id.*

25. Council President Griffin then asked Mr. Martin to "Please proceed, sir, without mentioning any councilpersons' name. Thank you." *Id.*

26. Mr. Martin responded, "I will proceed without impugning the character of any councilor. Councilor Stephanie Howse accepted $3,000 from the Council Leadership Fund. Councilor Michael Polensek accepted $1,000 …" *Id.*

27. Defendant Griffin then banged his gavel while Mr. Martin was still speaking and said, "Please remove [Mr. Martin] from the mic. He is violating any rules. Sir. Please cut his mic. He is violating the rules of order and if you're going to speak you have to follow the rules. Thank you, sir." *Id.*

28. Defendant City Council, acting at Council President Griffin's instructions, turned off Mr. Martin's microphone, making his comment inaudible and preventing Mr.

Martin from giving his full public comment in violation of Mr. Martin's First Amendment rights. *Id.*

29. As Mr. Martin tried to finish his public comment with his mic turned off, Defendant Griffin repeatedly said, "Thank you, sir" over Mr. Martin so his public comment could not be heard. *Id.*

30. Following Council's censorship of Mr. Martin and another commenter, Council President Griffin said, "We are not going to allow this platform to be utilized for people to insult or impugn the character of individuals in this body, nor are we going to allow you to impugn race and gender and sexual orientation or anything else … So those things will swiftly be eliminated."[4]

31. The next day, City Council, through a spokesperson, released a statement saying, "Cleveland City Council supports public comment. However, we will not support any comments that demean or single out any group on the basis of race, gender, sexual identity, religion, or any other reason."[5]

32. In comments to the media, Council President Griffin said, "People have to use a sense of decorum … Just because you have a microphone don't mean you can be abusive and make wild accusations about people."[6]

---

[4] *Id.*, *see also* Abbey Marshall, *Cleveland City Council's public comment policy under fire after cutting resident microphones*, IDEASTREAM PUBLIC MEDIA, (Sept. 29, 2023), https://www.ideastream.org/government-politics/2023-09-29/cleveland-city-councils-public-comment-policy-under-fire-after-cutting-resident-microphones
[5] Sam Allard, *Public commenters silenced at Cleveland City Council meeting on questionable grounds*, AXIOS, (Sept. 27, 2023), https://www.axios.com/local/cleveland/2023/09/27/public-commenters-silenced-cleveland-city-council-meeting
[6] *See* Marshall, supra note 4.

8

33.     Defendant City Council's Public Comment Policies are facially invalid under the First Amendment to the U.S. Constitution because they are impermissibly vague, they are not supported by valid governmental interests, and they unlawfully discriminate based on the speaker's viewpoint.

34.     Two days after Defendants censored Mr. Martin, the Ohio Senate passed Senate Bill 158. Accordingly, Defendants' censorship ensured that Mr. Martin was not able to publicly address City Council about their positions on S.B. 158 prior to its passage.[7]

35.     Although the relevant time has passed for Mr. Martin's September 25 comment to have any impact on Council's actions, Mr. Martin intends to continue addressing Cleveland City Council regarding matters that affect him as a Cleveland resident.

*Counsel for Mr. Martin Attempts to*
*Address the Unconstitutional Policies*

36.     On October 6, 2023, Mr. Martin, through counsel and in writing, raised concerns to the City Law Department about the unconstitutionality of the Policies. In response, City Law Department attorneys represented that Defendants would not be enforcing the Public Comment Policies "to the letter."

37.     Defendants have not consistently enforced their purported policies since the September 25 meeting at which Defendants censored Mr. Martin.

---

[7] *See* Press Release from Ohio State Senator Jerry C. Cirino, *Cirino Bill To Secure Local Budgetary Security Passes Ohio Senate* (Sept. 27, 2023), https://ohiosenate.gov/members/jerry-c-cirino/news/cirino-bill-to-secure-local-budgetary-security-passes-ohio-senate

38. The unconstitutional Public Comment Policies have not been repealed, and Defendants continue to display the Policies on the website where public commenters sign up to speak, thus chilling constitutionally protected speech.

39. Council President Griffin began the October 30 City Council Meeting stating that commenters could not "impugn" the character of any individuals with their comments, a standard that City Law Department attorneys said Defendants would not enforce.

40. Defendants City Council and City Council President Griffin have not only unconstitutionally censored Mr. Martin, but they continue to threaten to enforce unconstitutional policies, and have proposed revisions to those policies that are seemingly motivated by impermissible viewpoint discrimination.[8]

## COUNT 1:
## Unlawful Deprivation of Free Speech
## Under the First and Fourteenth Amendments to the U.S. Constitution
## (facial challenge)
### *Against Defendant Cleveland City Council*

41. Mr. Martin realleges all of the above paragraphs as if fully rewritten herein.

42. Defendants' Public Comment Policies are not connected to any valid government interests.

43. Defendants' Public Comment Policies are overbroad and unconstitutionally vague.

---

[8] Since Defendants have not enacted any of their proposed revisions to the Policies, none of those Policies are currently at issue in this action.

10

44. Defendants' Public Comment Policies impose facially unconstitutional restrictions on the speech of Mr. Martin and others.

45. The facially unconstitutional restrictions contained in the Public Comment Policies include the Policies': a) prohibition on "indecent or discriminatory language"; b) prohibition on addressing "individual council member[s] or other person[s]"; c) prohibition on "endors[ing] or promot[ing] any product or service"; d) prohibition on "electioneering for any candidate or specific ballot issue"; and e) prohibition barring speakers from "wear[ing] anything that promotes any candidate, campaign, issue, product or service" including but not limited to "visible logos, slogans, messages, words." Exhibit 1.

46. Even if it appeared in the Public Comment Policies, Council President Griffin's purported rule against "insult[ing] or impugn[ing] the character" of City officials violates the First Amendment.

47. The unconstitutionality of Defendants' Public Comments Policies affects not only Mr. Martin's rights as a speaker, but also his rights to receive information from other public commenters free from unconstitutional government censorship.

## COUNT 2:
### Unlawful Deprivation of Free Speech
### Under the First and Fourteenth Amendments to the U.S. Constitution
### (as-applied challenge)
*Against All Defendants*

48. When Defendants censored Mr. Martin on September 25, 2023, he was engaged in political speech clearly protected by the First Amendment.

49. Defendants' cutting off Mr. Martin's microphone during the September 25th Meeting, purportedly for mentioning the names of individual Councilmembers and/or "impugn[ing] the[ir] character," targeted Mr. Martin's speech solely for its viewpoint.

50. Defendants' cutting off Mr. Martin's microphone violated the First Amendment rights of Mr. Martin and the public at large by imposing viewpoint-based restrictions on Mr. Martin's speech.

### Injunctive Relief

51. Mr. Martin realleges all of the above paragraphs as if fully rewritten herein.

52. As a direct and proximate result of Defendants' violation of Mr. Martin's First Amendment rights as described herein, Mr. Martin has been irreparably injured with no adequate remedy at law.

53. Injunctive relief is particularly appropriate in this action because (a) Mr. Martin is likely to prevail on his claim; (b) Mr. Martin continues to suffer irreparable harm without immediate injunctive relief; (c) an injunction would cause no harm to anyone; and (d) the public would benefit from an injunction.

54. Indeed, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347 (1976).

### Jury Demand

Mr. Martin hereby demands a trial by jury on all claims raised within this Complaint.

### Prayer for Relief

Mr. Martin requests that this Court:

(1) Declare Defendants' censorship of Mr. Martin's public comment at the September 25, 2023 City Council Meeting unconstitutional;

(2) Declare Defendants' public comment policy facially unconstitutional;

(3) Preliminarily and permanently enjoin Defendants from enforcing their unconstitutional Public Comment Policies and using the Council President's discretion to censor particular viewpoints;

(4) Award Mr. Martin damages against Defendants together with attorneys' fees, costs, expenses, and any other relief to which Mr. Martin may be entitled or that the Court finds is appropriate or equitable.

Dated:  December 4, 2023

*/s/ Andrew Geronimo*
ANDREW GERONIMO (OH# 86630)
andrew.geronimo@case.edu
*/s/ Sara Coulter*
SARA COULTER (OH# 96793)
sara.coulter@case.edu
*/s/ Siobhan Gerber*
SIOBHAN GERBER (OH# 101563)
siobhan.gerber@case.edu
**First Amendment Clinic**∗
MILTON & CHARLOTTE KRAMER LAW CLINIC
CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW
11075 East Boulevard
Cleveland, Ohio 44106
Telephone: (216) 368-2766

*Attorneys for Plaintiff Chris Martin*

---

∗ Fall 2023 First Amendment Clinic Certified Legal Interns Jacob Cohen, Patrick Elliott, Nneka Onyekwuluje, Hannah Scifres, and Brooke White played a substantial role in representing Mr. Martin in this matter, including as the primary drafters of this Complaint. Counsel thanks these dedicated students for their efforts.