## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Chris Martin,** | Case No. 1:23-cv-02312 |
| Plaintiff, | Judge Charles Esque Fleming |
| v. | |
| **Cleveland City Council** and **Cleveland City Council President Blaine Griffin** (in his official and individual capacities)**,** | **VERIFIED MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |
| Defendants. | (Hearing Requested Before Monday, January 8, 2024) |

Plaintiff Chris Martin hereby moves under Fed. R. Civ. P. 65 for a temporary restraining order, preliminary injunction, and other equitable relief prohibiting Defendants' ongoing violations of federal law. Defendants are engaged in ongoing violations of the First Amendment to the United States Constitution and the free speech guarantees in the Ohio Constitution. Without this Court's intervention, when Defendant Cleveland City Council resumes its public comment period as scheduled at its next meeting on Monday, January 8, 2024, it will do so with unconstitutional policies.

Plaintiff therefore seeks a TRO:

    a.  Temporarily restraining and enjoining Defendant from censoring Plaintiff's speech during public comment period;

    b.  Temporarily restraining and enjoining Defendants from enforcing their unconstitutional viewpoint-based public comment policies as more fully described in the attached Memorandum;

    c.  Requiring Defendants to show cause why this Court should not issue a preliminary injunction extending such temporary relief pending an adjudication on the merits.

      d.  Providing for other equitable relief.

This action involves only the designated public forum at Cleveland City Council Meetings, and Cleveland City Council will meet next on Monday, January 8, 2024, at 7:00 p.m. Plaintiff is available at the Court's direction to argue for any relief available under Federal Civil Rule 65, and respectfully requests the Court schedule a hearing on this Motion during the week of January 2, 2024, so that if the Court enters relief under Fed. R. Civ. P. 65(b), that relief effectively covers Defendants' January 8, 2024 Meeting. As required by Fed. R. Civ. P. 65(b), Plaintiff has provided actual notice to Defendant as of the time of making this application and has provided copies of all pleadings and papers filed in this action to date. A certificate of counsel accompanies this motion. Undersigned counsel emailed Defendants' counsel regarding scheduling a TRO/PI hearing during the week of January 2, 2024, but Defendants' counsel has not provided their availability as of the time of this filing.

A memorandum in support of this application, along with Mr. Martin's Declaration and a Proposed Order will be filed concurrently with this motion. Plaintiff respectfully requests that this Court grant this motion by entering the proposed order.

/s/ Andrew Geronimo
ANDREW GERONIMO (OH# 86630)
andrew.geronimo@case.edu
/s/ Sara Coulter
SARA COULTER (OH# 96793)
sara.coulter@case.edu
/s/ Siobhan Gerber
SIOBHAN GERBER (OH# 101563)
siobhan.gerber@case.edu

**First Amendment Clinic**
MILTON & CHARLOTTE KRAMER LAW CLINIC
CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
11075 East Boulevard
Cleveland, Ohio 44106
Telephone: (216) 368-2766
*Attorneys for Plaintiff Chris Martin*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................... 1

FACTUAL BACKGROUND ...................................................................................... 1

    a.  Cleveland City Council's Public Comment Policies ............................. 1

    b.  Defendants censor Chris Martin, an active and engaged Cleveland resident, at the September 25, 2023 City Council Meeting. ........................ 2

    c.  Council's subsequent actions show that the Public Comment Policies are viewpoint-based and inconsistently applied. ............................................ 4

LAW & ARGUMENT ............................................................................................. 5

    (1) Mr. Martin has a strong likelihood of success on the merits of his First Amendment claims. ............................................................................... 5

        A. The First Amendment forbids Defendants from discriminating against speech at City Council meetings based on viewpoint. .......................... 6

        B. The Public Comment Policies, on their face, violate the First Amendment's prohibition of viewpoint discrimination. .......................... 8

        C. Barring speakers from addressing individual Council members is a facially content-based restriction that Defendants apply to target particular viewpoints. ............................................................................................ 9

        D. The Policies are vague and overbroad; without an injunction Defendants will use their discretion to enforce the policies in a viewpoint-discriminatory manner. ...................................................................................................... 11

        E. Plaintiff continues to suffer irreparable harm. ............................... 13

    (2) An injunction is in the public interest and would not cause substantial harm to Defendants. ..................................................................................... 14

    The Court Has Discretion Under Rule 65 to Issue an Injunction Without Security .................................................................................................................. 14

CONCLUSION ...................................................................................................... 15

## MEMORANDUM IN SUPPORT

### INTRODUCTION

Defendant Cleveland City Council's policies governing public comment at its meetings impose unconstitutional restrictions on speech. The First Amendment guarantees the right to speak freely on matters of public concern, to petition government for a redress of grievances, to criticize government officials, and to receive information free from government censorship. These unconstitutional restrictions affect not only the rights of public commenters like Plaintiff Chris Martin, but also the rights of the public to receive information free from unconstitutional government censorship. Applying these policies, Defendants City Council and City Council President Blaine Griffin censored Martin during his public comment because Martin named individual councilors and stated the contributions the Councilors received from a political action committee. In a designated public forum like the Cleveland City Council public comment period, government officials cannot censor speech simply because it criticizes them or offends their sensibilities.

### FACTUAL BACKGROUND

**a.     Cleveland City Council's Public Comment Policies**

The Rules of Order governing City Council meetings provide that "any person may be heard during that portion of a regular meeting set aside for public comment." (Complaint Ex. 1, ECF. No. 1-1). To govern the speech made during the portion of City Council meetings set aside for public comment, City Council has enacted certain policies. (the "Public Comment Policies," or "Policies," Complaint Ex. 2, ECF. No. 1-2).

1

As a general matter, the Policies designate a portion of City Council meetings for public expression; the only topical limitation within the policies is that speakers "shall only address the topic they registered to speak as stated on their registration form."

The policies impose a number of specific restrictions on public commenters' speech: speakers "shall not use indecent or discriminatory language," "shall address the Council as a body and may not address any individual council member or other person," "shall not engage in electioneering for any candidate or specific ballot issue," "shall not endorse or promote any product or service," and "shall not wear anything that promotes any candidate, campaign, issue, product or service."

> **b.    Defendants censor Chris Martin, an active and engaged Cleveland resident, at the September 25, 2023 City Council Meeting.**

Plaintiff Chris Martin is an active and engaged Cleveland resident who lives in Cleveland's Ward 3. (Declaration of Chris Martin, attached as Exhibit 1). Martin frequently attends Cleveland City Council meetings and meetings of other local government bodies. *Id*. On September 25, 2023, Martin pre-registered to make a public comment according to the process set forth in the Policies. *Id*. at ¶ 5.

While introducing the public comment period on September 25, Council President Griffin, as the presiding officer, warned that Council would be "cutting mics for anyone that insults or impugns the character of any official in this body, whether it be the administration or Council." *Id*. No rule about "impugning" or "insulting" the character of government officials appears in City Council's Public Comment Policies. *See* Complaint, Ex. 2.

Martin's comment on September 25 addressed City Council's lack of opposition to Ohio Senate Bill 158, which would have limited the ways in which Council could appropriate and distribute funds. Specifically, S.B. 158 targeted "participatory budgeting" legislation at the municipal level, such as Cleveland's proposed Issue 38, a ballot issue in the then-upcoming election. Martin's comment compared the Councilors' lack of opposition to S.B. 158 and the Councilors' receipt of contributions from a political action committee known as the "Council Leadership Fund," reportedly controlled by Defendant Griffin, an Issue 38 opponent. Martin Decl. at ¶¶ 7-14.

Martin's September 25 comment asked Council whether any Councilors "submitted written testimony against Senate Bill 158" or "would be in Columbus tomorrow to speak against it [at the S.B. 158 debate]." Martin then read contributions from the Council Leadership Fund to particular Councilors:

> in 2022, Councilor Joe Jones accepted $2,500 from the Council Leadership Fund. Councilor Kevin Bishop accepted $3,000 from the Council Leadership Fund. Councilor Kerry McCormack accepted $1,500 from the Council Leadership Fund. Councilor Deborah Gray accepted $3,000 from the Council Leadership Fund. Councilor Richard Starr accepted…

Defendant Griffin interrupted Martin, saying, "Sir, the rules are that you are not supposed to address individual leaders." Griffin then told Martin he would be "remove[d] from the mic if [Martin] mention[ed] one more councilmembers' name," and asked Martin to "please proceed, sir, without mentioning any councilpersons' name." Martin responded "I will proceed without impugning the character of any councilor," and proceeded to read additional donations. *Id*. at ¶¶ 14-19

3

Defendant Griffin banged his gavel to interrupt Martin and said "Please remove [Martin] from the mic. He is violating any rules. [sic] Sir. Please cut his mic. He is violating the rules of order and if you're going to speak you have to follow the rules. Thank you, sir." Defendant City Council, acting at Defendant Griffin's explicit instructions, turned off the microphone Martin was using, preventing Martin from addressing the chamber during the time allotted to him by the Policies. *Id*. at ¶¶ 20-21.

### c. Council's subsequent actions show that the Public Comment Policies are viewpoint-based and inconsistently applied.

Defendants have not consistently enforced their purported policies since the September 25 meeting at which Defendants censored Martin. *Id*. at ¶¶ 22-23, 29-30. On November 13, 2023, Cleveland City Council members held a caucus meeting to discuss potential revisions to the Policies.[1] Though not livestreamed like other council meetings, this meeting was open to the public and attended by Martin and his counsel. Defendant Griffin, in discussing the proposed changes, stated "I know this is a country full of free speech, but I am cautious and cognizant that we do not want to allow people to be totally disrespected and totally being hated on." *Id*. at ¶¶ 31-36. Nevertheless, City Council Meetings are scheduled to resume on January 8, 2024, and the unconstitutional Policies remain in place. Without an injunction, Defendants will continue violating the First Amendment free speech rights of Martin and the public.

---

[1] The November 13 revisions, while not presently at issue in this case, themselves contain unconstitutional viewpoint restrictions and Council's remarks at the Caucus meeting suggest that even Defendants' proposed changes are motivated by the unlawfully viewpoint-based desires to avoid criticism, "disrespect," and "hate."

<u>L<small>AW</small> & A<small>RGUMENT</small></u>

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In First Amendment cases, "the crucial inquiry is usually whether the plaintiff has demonstrated a likelihood of success on the merits. This is so because … the issues of the public interest and harm to the respective parties largely depend on the constitutionality of the [state action]." *Bays v. City of Fairborn*, 668 F.3d 814, 819 (6th Cir. 2012) (quoting *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 649 (6th Cir. 2007)) (alteration in original); *see also Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 485 (6th Cir. 2002) ("[W]hen First Amendment rights are implicated, the factors for granting a preliminary injunction essentially collapse into a determination of whether restrictions on First Amendment rights are justified to protect competing constitutional rights."). First Amendment plaintiffs like Martin are entitled to preliminary injunctive relief where their claims are likely to succeed on the merits, as violations of First Amendment rights inflict irreparable harm, and the equities and public interest favor the protection of fundamental rights.

**(1) Mr. Martin has a strong likelihood of success on the merits of his First Amendment claims.**

Plaintiff Martin has a strong likelihood of success on each of his claims related to City Council's public comment policy. City Council's Public Comment Policies are

vague, overbroad, and impermissibly discriminate based on viewpoint. The Policies are so subjective and incapable of reasoned application as to invite discriminatory enforcement in the future.

**A.     The First Amendment forbids Defendants from discriminating against speech at City Council meetings based on viewpoint.**

In analyzing the constitutionality of a government restriction on speech on publicly owned property, the type of forum at issue determines what constitutional standard applies. *Miller v. City of Cincinnati*, 622 F.3d 524, 533 (6th Cir. 2010). The Supreme Court has recognized three types of public fora: the traditional public forum, the designated public forum, and the nonpublic forum. *See Minn. Voters All. v. Mansky*, 585 U.S. ––, 138 S. Ct. 1876, 1885 (2018).

Cleveland City Council's public comment period is a designated public forum. Designated public forums are "spaces that have 'not traditionally been regarded as a public forum' but which the government has 'intentionally opened up for that purpose.'" *Am. Freedom Def. Initiative v. Suburban Mobility Auth. for Reg'l Transp.*, 978 F.3d 481, 491 (6th Cir. 2020) (quoting *Mansky*, 138 S. Ct. at 1885). Under the Council Rules, "any person may be heard during that portion of a regular meeting set aside for public comment." (Rules of Council, Complaint Ex. 1, ECF No. 1-1). Though the Policies state that speakers may "only address the topic they registered to speak as stated on their registration form," the topics speakers can address are virtually unlimited. The Public Comment Policies have "intentionally opened up" the public comment period as a public forum. *See Am. Freedom Def. Initiative*, 978 F.3d at 491. The government may

generally impose only reasonable "time, place, and manner restrictions" on speech in a designated public forum. *Mansky*, 138 S. Ct. at 1885.

In a designated public forum like Cleveland City Council's public comment period, the government may not regulate the content of speech unless it can satisfy strict scrutiny. *Mansky*, 138 S. Ct. at 1885. A generally invalid content-based regulation "applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of Gilbert*, 576 U.S. 155, 163–64 (2015). Strict scrutiny requires a restriction to "be narrowly tailored to serve a compelling government interest." *Pleasant Grove City, Utah v. Summum*, 555 U.S. 460, 469 (2009). Though the government may impose a content-based restriction on speech in a designated public forum if the restriction satisfies strict scrutiny, the government may not impose a viewpoint-based restriction. Viewpoint discrimination is an "egregious form of content discrimination" and is presumptively unconstitutional. *Am. Freedom Def. Initiative*, 978 F.3d at 498 (quoting *Rosenberger v. Rector & Visitors of Univ. of Virginia*, 515 U.S. 819, 829 (1995)). It goes beyond neutrally treating an entire subject as off limits, and rather "permits some private speech on the subject and only disfavors certain points of view." *Id.* This type of government suppression of ideas "cuts to the core of the First Amendment." *Id.* at 499. "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger*, 515 U.S. at 828–29 (citing *Perry Ed. Assn. v. Perry Local Educators' Assn.*, 460 U.S. 37, 46 (1983)).

The First Amendment protects more than a right to support a particular side of a debate, "[i]t protects the right to create and present arguments for particular positions in particular ways, as the speaker chooses." *Matal v. Tam*, 582 U.S. 218, 249 (2017) (Kennedy, J., concurring). It is a bedrock principle that the government may not censor speech merely because it is "offensive to some."  *Ison v. Madison Local School District Board of Education*, 3 F.4th 887, 894 (6th Cir. 2021) (citing *Matal*, 582 U.S. at 244); *see also Texas v. Johnson*, 491 U.S. 397, 414 (1989) ("If there is a bedrock principle underlying the First Amendment, it is that the government may not prohibit the expression of an idea simply because society finds the idea itself offensive or disagreeable.")

These principles are especially apt here, where Martin was engaged in pure political speech regarding the functioning of his government representatives. The First Amendment represents "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

B.      **The Public Comment Policies, on their face, violate the First Amendment's prohibition of viewpoint discrimination.**

Many of the provisions in the Public Comment Policies are explicitly viewpoint based, and therefore presumptively unconstitutional. In prohibiting "electioneering for any candidate or any specific ballot issue" and "endors[ing] or promot[ing] any product or service," the Policies permit speech on only one side of a particular issue: speakers may not electioneer *for* candidates or ballot issues but may advocate *against* them;

speakers may not advocate *for* any products or services but may advocate *against* them.

The Policies prohibit "indecent or discriminatory language," but that too discriminates based on the speaker's viewpoint. *Matal v. Tam*, 582 U.S. 218, 243 (2017) ("Giving offense is a viewpoint"); see also *Iancu v. Brunetti*, 139 S. Ct. 2294 (2019). As the *Iancu* Court explained when invalidating a restriction on "immoral or scandalous" trademarks, the First Amendment forbids speech restrictions that "distinguish[] between two opposed sets of ideas: those aligned with conventional moral standards and those hostile to them; those inducing societal nods of approval and those provoking offense and condemnation." *Iancu*, 139 S. Ct. at 2300. The Policies do just that.

Clearly established and binding precedent prohibit exactly the kinds of viewpoint discrimination at issue in this case—government criticism during public comment periods. *See, e.g.*, *Youkhanna v. City of Sterling Heights*, 934 F.3d 508, 518-20 (6th Cir. 2019) (reasoning that a rule against "attacks on people or institutions" during the public comment period of a city council meeting "could be construed as viewpoint discrimination"); *Ison*, 3 F.4th at 893-95 (invalidating a prohibition on "abusive," "personally directed," and "antagonistic" speech during the public comment period of school board meetings).

### C. Barring speakers from addressing individual Council members is a facially content-based restriction that Defendants apply to target particular viewpoints.

The Public Comment Policies prohibit "address[ing] any individual council member or other person." (Complaint Ex. 2, ECF No. 1-2). Council President Griffin silenced Mr. Martin because Mr. Martin supposedly violated this provision by stating

the names of Council members. This prohibition significantly restricts speech, as it is difficult to express opinions about City Council's policies without uttering the names of the City Council members responsible for formulating and executing district policies. Moreover, it restricts speakers from raising matters related to the conduct and fitness of individual City Council members, an important matter of public concern.

The prohibition against addressing individual Council members is a content-based restriction on speech that can survive only if it is "narrowly drawn to effectuate a compelling state interest." *Perry Educ. Ass'n*, 460 U.S. at 46. The Policies do not state the intended purpose or government interest behind this provision, but in practice and as applied by City Council, the prohibition on addressing individual Council members has the effect of an impermissible viewpoint-based restriction. The Sixth Circuit has cautioned that even facially valid restrictions cannot be applied in unconstitutionally viewpoint-based ways. *Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 435 (6th Cir. 2009) ("Although the school board may exclude some types of "harassing" speech … the board may not exclude speech merely because it criticizes school officials.").

Council President Griffin silenced Martin because of this prohibition even though Martin was addressing the Council body about receipt of funds from the Council Leadership Fund. Meanwhile, on several instances, City Council has tolerated speakers directly addressing individual Council members and other City officials—especially when their comments have been positive or laudatory of the individual. Martin Decl. at ¶¶ 29-30. Council members have commented on numerous occasions about their unwillingness to listen to critical speech directed at them. *Id*. at ¶¶ 33-36.

Thus, as applied, the prohibition against addressing individual Council members functions as viewpoint discrimination based and is unconstitutional.

**D.    The Policies are vague and overbroad; without an injunction Defendants will use their discretion to enforce the policies in a viewpoint-discriminatory manner.**

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). A speech restriction is impermissibly vague if "it fails to provide people or ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," or if "it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Where a vague enactment infringes on "sensitive areas of basic First Amendment freedoms," it operates to "inhibit the exercise" of those freedoms. *Grayned*, 408 U.S. at 109 (internal citations omitted). Similarly, speech restrictions are unconstitutionally overbroad when they prohibit a substantial amount of First Amendment activity. *Grayned*, 408 U.S. at 114–15.

City Council's vague prohibition on "indecent or discriminatory language" creates opportunities for abuse by the presiding officer. Definitions of "indecent" and "discriminatory" inevitably vary from person-to-person, often on viewpoint-based grounds. To avoid the presiding officer's own beliefs shaping his "views on what counts" as a violation of the Policies, "discretion must be guided by objective, workable standards." *Mansky*, 138 S. Ct. at 1891. But the Policies contain nothing whatsoever to guide the presiding officer's exercise of discretion; such unguided discretion openly invites viewpoint discrimination. Defendants have shown that whatever the Public

11

Comment Policies state, Council believes it has the power to censor speech it disfavors.

The Policies' prohibitions against "electioneering for any candidate or any specific ballot issue" and against "endors[ing] or promot[ing] any product or service" are also overbroad. Both prohibitions restrict core political speech that may be highly relevant to Cleveland residents and to the business of City Council. For instance, the prohibition against "electioneering for . . . any specific ballot issue" facially precludes speakers from addressing local political issues of great concern to Cleveland residents (such as Cleveland Issue 38 about the participatory budgeting process). Similarly, the prohibition against "promoting any product or service" facially precludes speakers from addressing City services, or products and services that are essential to City services, which are matters directly related to City Council business.

The Policies prohibiting "Signs, posters, banners, placards and similar items" in the Council Chamber and those prohibiting speakers from "wear[ing] anything that promotes any candidate, campaign, issue, product or service," including but not limited to "visible logos, slogans, messages, words" are also vague and overbroad. These restrictions encompass a vast number of items that people routinely wear or bring to meetings—logos of clothing brands, schools, employers, sports teams, or catchphrases ranging from whimsical to overtly political. Words qualify as pure speech and are protected under the First Amendment, and no governmental interest would justify such an absolute prohibition on expression. *See Cohen v. California*, 403 U.S. 15, 18 (1971); *Board of Airport Comm'rs of the City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987) ("Under such a sweeping ban, virtually every individual who enters LAX may be

12

found to violate the resolution by engaging in some 'First Amendment activit[y].' We think it obvious that such a ban cannot be justified even if LAX were a nonpublic forum because no conceivable governmental interest would justify such an absolute prohibition of speech.").

**E. Plaintiff continues to suffer irreparable harm.**

"When constitutional rights are threatened or impaired, irreparable injury is presumed." *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). When First Amendment freedoms are at risk, the irreparable harm factor "merges" with the likelihood of success, such that if the plaintiff shows a likelihood of success on the merits, irreparable harm is presumed. *See McNeilly v. Land*, 684 F.3d 611, 620–21 (6th Cir. 2012).Plaintiff's First Amendment rights continue to be irreparably harmed by Defendants' unconstitutional Policies. Although the moment for Mr. Martin's comments on S.B. 158 has passed, these unconstitutional Policies threaten to censor speech that Defendants find offensive or politically inconvenient. Every City Council meeting that passes while these unconstitutional policies are in effect is a violation of his rights, and of the rights of potential audience members. The Supreme Court has recognized that in certain circumstances, "each passing day may constitute a separate and cognizable infringement of the First Amendment" because "[t]he suppressed information grows older. Other events crowd upon it. To this extent, any First Amendment infringement that occurs with each passing day is irreparable." *Nebraska Press Ass'n v. Stuart*, 423 U.S.

1327, 1329, (1975) (granting a stay invalidating a prior restraint against news reporting where delays have infringed First Amendment rights "beyond tolerable limits.")

### (2) An injunction is in the public interest and would not cause substantial harm to Defendants.

 "[I]f the plaintiff shows a substantial likelihood that the challenged law is unconstitutional, no substantial harm to others can be said to inhere in its enjoinment." *Deja Vu of Nashville, Inc.*, 274 F.3d at 400. "It is always in the public interest to prevent violation of a party's constitutional rights." *Deja Vu of Nashville, Inc.*, 274 F.3d at 400. An injunction would vindicate Mr. Martin's constitutional rights as described herein, and it would also support the public interest by ending unconstitutional government censorship. "[T]he Constitution protects the right to receive information and ideas." *Board of Ed., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853, 867 (1982) (quoting *Stanley v. Georgia*, 394 U.S. 557, 564 (1969)). Defendants have no valid interest in enforcing viewpoint-based policies, and the chilling effect that the Policies create on Martin's (and the public's) speech would be resolved with an injunction.

The Court Has Discretion Under Rule 65 to Issue an Injunction Without Security

The Court should not require Plaintiff to post a bond because First Amendment rights are at issue, and these governmental defendants will not incur any costs or monetary damages from the injunction. *See Conteers LLC v. City of Akron*, No. 5:20-CV-00542, 2020 WL 5529656, at *16 (N.D. Ohio Sept. 15, 2020); *see also, e.g.*, *Palmer v. Michigan*, No. 1:22-CV-90, 2022 WL 908966, at *6 (W.D. Mich. Mar. 29, 2022) (declining to require a security in a civil rights action). "While a district court must consider

14

whether security is appropriate, the court need not actually require security—instead, the decision is left to the sound discretion of the court." *Midwest Guar. Bank v. Guar. Bank*, 270 F. Supp. 2d 900, 925 (E.D. Mich. 2003); *see also Moltan Co. v. Eagle–Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (district courts have "discretion over whether to require the posting of security.").

CONCLUSION

Plaintiff Chris Martin respectfully requests that the Court enter a Temporary Restraining Order and/or Preliminary Injunction under Civil Rule 65, enjoining Defendants from enforcing the Public Comment Policy or any other policy (written or unwritten) that discriminates against the viewpoint of the speaker, or is so vague that it fails to provide a subjectively workable standard for the public to evaluate whether or not particular speech is permitted on a viewpoint-neutral basis.

<u>Dated</u>: December 20, 2023

*/s/ Andrew Geronimo*
ANDREW GERONIMO (OH# 86630)
andrew.geronimo@case.edu
*/s/ Sara Coulter*
SARA COULTER (OH# 96793)
sara.coulter@case.edu
*/s/ Siobhan Gerber*
SIOBHAN GERBER (OH# 101563)
siobhan.gerber@case.edu

**First Amendment Clinic**[*]
MILTON & CHARLOTTE KRAMER LAW CLINIC
CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW
11075 East Boulevard
Cleveland, Ohio 44106
Telephone: (216) 368-2766

*Attorneys for Plaintiff Chris Martin*

---

[*] Fall 2023 First Amendment Clinic Certified Legal Interns Jacob Cohen, Patrick Elliott, Nneka Onyekwuluje, Hannah Scifres, and Brooke White played a substantial role in representing Mr. Martin in this matter, including as the primary drafters of this Memorandum. Counsel thanks these dedicated students for their efforts.

15

## <u>DECLARATION OF COUNSEL</u>

I, Andrew Geronimo, attorney for Chris Martin, declare as follows:

1.  I represent the Plaintiff, Chris Martin, in this case.

2.  I am a citizen of the United States of America and a resident of the State of Ohio.

3.  I have personal knowledge of the matters stated herein.

4.  Prior to initiating this action, my office wrote a letter to Cleveland City Council and the Cleveland Law Department dated October 6, 2023.

5.  On October 13, 2023, I received an email from Cleveland Law Director Mark Griffin requesting a meeting to further discuss the matter.

6.  On October 13, 2023, I (along with attorneys and Certified Legal Interns in my office) met with City Attorneys Mark Griffin, Stephanie Melnyk, Rachel Scalish, and Patricia Aston.

7.  On November 3, 2023, our team sent a follow-up letter to Defendants requesting certain changes to the Policies as a potential resolution of this matter, and reserving all of Mr. Martin's rights regarding his constitutional rights.

8.  Law Director Griffin acknowledged receipt of our November 3, 2023 letter, but we did not receive a substantive response from Defendants.

9.  On or around November 12, 2023, we learned that City Council intended to discuss potential changes to the Public Comment Policies at a Caucus meeting on November 13, 2023.

10. I attended the November 13, 2023 City Council Caucus meeting along with Mr. Martin and other members of our Clinic team.

11. I, along with portions of our team, also attended City Council's November 27, 2023 Caucus Meeting.

12. After attending the November 27 Caucus Meeting, one Member of Council walked our team back into the public areas of City Hall, and attempted to ask me questions about the application of the First Amendment during public comment periods. I told the Councilor I could not speak with him about the issue without his attorneys' presence or permission.

13. On November 28, 2023, I wrote to Attorneys Scalish, Griffin, Melnyk, and Aston to inform them that I told this Councilor that I could not talk to them because I represent Martin and I believed they were represented by Attorney Scalish. I further informed them that because Council failed to take action to rescind its unconstitutional policies, that Martin was prepared to file a lawsuit related to the unconstitutional policies and Defendants' actions on September 25, 2023.

14. Law Director Griffin responded on November 30, 2023, to say that "the City is only enforcing the pre-registration requirement, the limit of ten (10) public commenters, and the 3-minute time limitation," and that "City Council is working to amend and update its Public Comment Rules and Procedures."

15. Nonetheless, City Council did not amend (and still has not amended) its Public Comment Policies despite ample time to do so.

16. On December 4, 2023, I filed this action and provided a courtesy copy to Defendants via the above-referenced Counsel.

17. On December 18, 2023, in responding to the Court's inquiry regarding Defendant

City Council's Motion for Extension, I wrote to the Court and Defendants'
Counsel that Martin did not oppose the Motion for Extension, but would likely
seek preliminary injunctive relief before the January 8, 2024 Meeting.

18. On December 19, 2023, I wrote to Attorneys William Menzalora, James Russell
Jr., and Matthew Aumann, notifying them of Martin's intent to file this motion,
and asking them for their availability prior to January 8 for a hearing.

19. On December 20, 2023 Counsel for Defendants responded to my December 19,
2023 email regarding other issues, but did not provide their availability as
requested. I followed up with another email on December 20, 2023, but as of the
time of this filing did not receive a response.

20. City Council Meetings are scheduled to resume on January 8, 2024 at 7:00 p.m.

21. I have provided copies of all pleadings and papers filed in this action to date by
email to Attorneys Menzalora, Russell, and Aumann.

22. Defendants, through their counsel, have actual notice of this controversy and this
filing, and Plaintiff respectfully requests this Court enter an order effective to
enjoin Defendants' unconstitutional Policies and acts prior to the January 8, 2024
Council Meeting in order to avoid ongoing constitutional violations.

23. I verify under penalty of perjury under the laws of the United States of America
that the foregoing is true and correct. 28 U.S.C. § 1746.

Executed on December 20, 2023.

Andrew C. Geronimo

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that this *Verified Motion for Temporary Restraining Order and Preliminary Injunction and Memorandum in Support* were filed electronically on December 20, 2023 and will be served upon all parties of record by the Court's electronic case filing system.

<u>*/s/ Andrew C. Geronimo*</u>
Andrew C. Geronimo (OH #0086630)
*Attorney for Plaintiff*