IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHRIS MARTIN,<br>　　*Plaintiff*,<br>v.<br><br>CLEVELAND CITY COUNCIL, *et al.*,<br>　　*Defendant*. | Case No. 1:23-CV-2312<br>Judge Charles Esque Fleming<br><br>**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

INTRODUCTION

Plaintiff Chris Martin demonstrated in his opening brief that Defendant Cleveland City Council's public comment policies impose unconstitutional restrictions on speech and should be enjoined. Defendants' Opposition argues that the stipulated TRO moots this case because it shows that "[t]he questioned policy is no longer at issue," (Memo. in Opp., Doc. 12, PageID #103) but if that were the case the City would have no need to defend its public comment policies on the merits. Defendants' Opposition simultaneously suggests that it "will not be enforcing" the challenged policies (*id.*, PageID #115) while also attempting to defend the merits of the policies it claims it won't enforce—which raises questions about whether Defendants might enforce the policies (or similar policies) in the future. In other words, if City Council were serious about not enforcing its unconstitutional policies, it would have no reason to oppose converting the TRO to a preliminary (or even permanent) injunction.

ARGUMENT

The standard applicable to Plaintiff's motion is well-settled. A district court may grant a preliminary injunction upon a proper showing that Plaintiff "is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Here, Plaintiff easily meets the applicable standard: he is likely to succeed on the merits of his constitutional claim, and the public interest in protecting constitutional rights far outweighs any potential harm caused by a preliminary injunction.

I. **Plaintiff is likely to succeed on the merits.**

   a. **A ban on addressing individual council members is impermissible viewpoint discrimination.**

Defendants claim that courts have upheld policies which limit the direction of comments, however, Defendants fail to cite binding case law in the Sixth Circuit. (Memo. in Opp., Doc. 12, PageID #112). Our district court must follow *Ison v. Madison Local School Dist. Bd. of Education*, 3 F.4th 887 (6th Cir. 2021), in which the court found that "personally directed" speech prohibitions were facially unconstitutional. *Id.* at 895. Moreover, Defendants allege that the limitation against addressing individual Councilors, or another person, concerns only addressing members of Council and not speaking about them. (Memo. in Opp., Doc. 12, PageID #115). Yet, in the meeting in which Plaintiff was silenced, such action was taken for the mere mention of Councilors' names and not because he directed comments to them. (*See* Compl., Doc. 1, PageID #5-

7.) This demonstrates how the vagueness of this policy can operate as the Presiding Officer's shield against criticism of Councilors, whether the comments are directed to them or just about them. Cleveland City Council's policy differs greatly from a requirement to address the chair before speaking as in *Moms for Liberty Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Sch.*, 582 F. Supp. 3d 1214, 1217 (M.D. Fla. 2022), cited by Defendants.

Despite Defendants' argument, the Sixth Circuit has recognized that a limitation on whom a speaker may address may constitute viewpoint discrimination. (*See* Memo. in Opp., Doc. 12, PageID #114.) "In *Youkhanna*, we surmised, albeit in dicta, that, in light of *Matal*, a rule against 'attacks on people or institutions' during the public comment portion of a city council meeting 'could be construed as viewpoint discrimination.'" *Ison*, 3 F.4th at 894 (citing *Youkhanna v. City of Sterling Hts.*, 934 F.3d 508, 518-20 (6th Cir. 2019)).

Defendants argue that "this limitation encourages speech because it turns down the temperature of an exchange." (Memo. in Opp., Doc. 12, PageID #114.) While it may be more comfortable for Councilors to avoid hearing direct comments from their impassioned and angry constituents, the First Amendment requires otherwise. The Supreme Court has recognized "a profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964);*see also Terminiello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("[A] function of free

3

speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger.").

Thus, also unavailing is Defendants' argument that it "makes sense" that comments must be addressed to the entire body as only the body can act. (Memo. in Opp., Doc. 12, PageID #114.) Even if Council speaks through its body, it is comprised of individual elected officials who should hear directly from the public. Further, nowhere in the policy does Council limit the topics that can be spoken about. (*See* Compl., Doc. 1, Exhibit 2.) A speaker is free to critique and question an individual Councilor about his or her handling of a myriad of city issues. The issuance of a preliminary injunction would recognize the protection of such speech.

### b. A generalized ban on signs and slogans is overbroad and unsupported by any compelling government interest.

Cleveland City Council should also be permanently enjoined from enforcing Council's policy prohibiting signs and slogans. While Defendants' only cited case for its arguments that bans on signs are constitutional, *Tyler v. City of Kingston*, 74 F.4th 57, 61 (2nd Cir. 2023), is not binding on this Court, it is also inapplicable here. *See* (Memo. in Opp., Doc. 12, PageID #115.) In *Tyler*, there was "no dispute that the Common Council meetings at issue are limited public fora." *Tyler*, 74 F.4th at 61. Here, a dispute exists: Plaintiff asserts that the forum is a designated public forum. (*See, e.g.*, Pl's Verified Motion for Temporary Restraining Order and Preliminary Injunction, Doc. 8, PageID #1.) In a designated public forum, the government may not regulate the content of

4

speech unless it can satisfy strict scrutiny. *Minn. Voters All. v. Mansky*, 585 U.S. ––, 138 S. Ct. 1876, 1885 (2018). Here, Defendants have not demonstrated a compelling government interest, nor that the sign restriction is narrowly tailored to meet that interest. Cleveland City Council does not tailor its stated interests—those of not blocking proceedings or sight lines—by imposing a size limitation on signs; rather, the outright ban demonstrates a lack of narrow tailoring. (*See* Memo. in Opp., Doc. 12, PageID #116). Indeed, attendees at recent Cleveland City Council meetings have brought signs, and Defendants have not submitted any declaration or any other evidence to factually support this interest. And maintaining the civility of the discourse, as discussed *supra*, is not a compelling government interest as the First Amendment protects even uncivil discourse. Thus, the injunction should be granted.

### c. City Council's bans on "electioneering" and "product promotion" speech are unconstitutionally viewpoint-based.

Defendants' prohibitions against electioneering and product promotion are explicitly viewpoint-based. (*See* Pl. Br., Doc. 8, Page ID#63-64.) Defendants do not address this point, beyond labeling Plaintiff's argument a "red herring." (Memo. in Opp., Doc. 12, PageID #117.) Regarding the prohibition on electioneering, Defendants state that they interpret it to be a "prohibition on all election-related speech rather than allowing positive but not negative comments." (*Id.*) But comments *against* candidates are not always just comments *for* another candidate—notably, that would not be the case in an election involving more than two candidates. Though Defendants may prefer to defend a prohibition on all election-related speech, that is not the policy at issue in

5

this case. This Court should enjoin the explicitly viewpoint-based prohibitions on electioneering and product promotion.

### d. A ban on indecent and discriminatory speech is unconstitutionally viewpoint-based.

As to the prohibition on "indecent or discriminatory" remarks, "speech may not be banned on the ground that it expresses ideas that offend." *Matal v. Tam*, 582 U.S. 218, 223 (2017). Defendants seek to ban "indecent or discriminatory" remarks on the ground that such language violates "reasonable decorum." (*See* Memo. in Opp., Doc. 12, PageID #118.) While the Sixth Circuit has used the term "reasonable decorum" regarding a government's public comment policy, *Ison* does not endorse the notion of reasonable decorum as a justification for impermissible viewpoint discrimination. *Ison*, 3 F.4th at 894-97. Nor does *Ison* establish that a government may stymie personal attacks through viewpoint discrimination such as Defendant's "indecent or discriminatory" public comment rule. *Id.* Instead, *Ison* states unequivocally that restrictions on personal attacks, such as those that are "personally directed," "abusive," or "antagonistic" are terms that "plainly fit in 'broad' scope of impermissible viewpoint discrimination." *Id* (stating that the school district prohibits "this speech purely because it disparages or offends" like in *Matal, Iancu,* and *American Freedom Defense Initiative*.).

In *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377 (4th Cir. 2008), the case on which Defendants rely, the Fourth Circuit held that content-neutral restrictions implemented to promote reasonable decorum may be permissible when it "serves purposes unrelated to the content of expression[.]" *Id.* at 387. However, Defendants

6

justify the ban on "indecent or discriminatory" language by reference to disfavor towards specific viewpoints related to "race, age, sex, nationality[,] religion, or handicap." (Memo. in Opp., Doc. 12, PageID #118.) Thus, the restrictions on indecent or discriminatory speech are not content-neutral as they "cannot be made without reference to the content of the speech." *Ison*, 3 F.4th at 895 (citing *Clark v. Cmty. For Creative Non-Violence*, 468 U.S. 288, 293 (1984)). Moreover, Defendants' argument that the prohibition prevents speakers from addressing personal characteristics such as race or sex highlights the viewpoint discriminatory nature of the prohibition. *See Matal v. Tam*, 582 U.S. 218, 246 (2017) ("Speech that demeans on the basis of race, ethnicity, gender, religion, age, disability, or any other similar ground is hateful; but the proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we hate.'").

Defendants may not enforce a viewpoint discriminatory policy that silences speakers who merely share or assert views or facts that Defendants find objectionable. *Matal*, 582 U.S. at 244 (citing *Street v. New York*, 394 U.S. 576, 592 (1969)) ("We have said time and time again that 'the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers.'"). Even the expression of ideas that "society finds [to be] offensive or disagreeable" may not be prohibited by the government. *Id.* Namely, the "Constitution does not permit the government to decide which types of otherwise protected speech are sufficiently offensive to require protection for the unwilling listener or viewer." *Snyder v. Phelps*, 562 U.S. 443, 459 (2011).

7

Defendants' ban on "indecent or discriminatory" comments fits the "broad" scope of impermissible viewpoint discrimination expressly rejected by the Sixth Circuit in *American Freedom Defense Initiative v. Suburban Mobility Authority*, 978 F.3d 481 (6th Cir. 2020). In that case, the Sixth Circuit held that a restriction on speech "likely to hold up to scorn or ridicule any person or group of persons" was unconstitutional as it "necessarily discriminates between viewpoints." *Id.* at 500 (holding that even though the restriction applied to a nonpublic forum, a restriction that "distinguishes between two opposed sets of ideas: those that promote the group and those that disparage it" constitutes unconstitutional viewpoint discrimination).

Further, Defendants misconstrue the law by arguing that all these remarks constitute "personal attacks," and that it is therefore permissible for Defendants to impose a blanket ban on them. (*See* Memo. in Opp., Doc. 12, PageID #117.) For this proposition, Defendants cite to a footnote in *Ison* stating: "Suffice it to say that speaking out in opposition to an idea may be offensive but is easily distinguishable from a personal attack." *Ison*, 3 F.4th at 894 n.1. In turn, for this proposition, the *Ison* Court cited *Bible Believers v. Wayne County*, 805 F.3d 228, 246–47 (6th Cir. 2015), a case which illuminates the context and correct interpretation of the sentence. *Bible Believers* is a case involving the doctrine of "fighting words," which is a category of unprotected speech that encompasses words that when spoken aloud instantly "inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire*, 315 U.S. 568, 572 (1942). The *Bible Believers* Court concluded that the suppressed speech was protected because the speech was directed to a crowd generally, whereas to constitute "fighting

8

words," an "insult or offense must be directed specifically at an individual." *Bible Believers*, 805 F.3d at 246. Understood in the context of *Bible Believers*, the Sixth Circuit's note differentiating offensive speech from "a personal attack" refers to the difference between protected First Amendment speech (offensive speech) and the unprotected speech of personal attacks, or "fighting words."

Despite conflating "indecent or discriminatory" speech with "personal attacks," Defendants do not attempt to argue that all indecent or discriminatory remarks fall within the unprotected speech category of fighting words. Under controlling case law, indecent and discriminatory speech does not fall into the category of "fighting words," which is a "very limited" exception to First Amendment speech protection. *See Wood v. Eubanks,* 25 F.4th 414, 422-23 (6th Cir. 2022); *see also Sandul v. Larion,* 119 F.3d 1250, 1255 (6th Cir.1997) ("The fighting words exception is very limited because it is inconsistent with the general principle of free speech recognized in our First Amendment jurisprudence."); *Greene v. Barber*, 310 F.3d 889, 896 (6th Cir. 2002) ("Standards of decorum have changed dramatically since 1942, moreover, and indelicacy no longer places speech beyond the protection of the First Amendment."). Rather, as Plaintiff's opening brief sets forth, the First Amendment protects speech even if some hearers find it distasteful or offensive. (*See* Pl. Br., Doc. 8, PageID #63-64.)

## II. Defendants' wide-ranging arguments on standing, immunity, and jurisdiction are misplaced.

Having yet to answer Plaintiff's complaint or file any other Rule 12 motion, Defendants have instead argued several new issues in their opposition that were not

9

raised by Plaintiff's motion for a preliminary injunction. These side issues do not change the analysis applicable to this motion—whether the four *Winter* factors weigh in Plaintiff's favor.

In any event, none of Defendants' arguments is availing. Though Defendants raise pleading concerns relating to the naming of Defendant Cleveland City Council, Plaintiff has named City Council President Blaine Griffin, in his official capacity, as a Defendant to challenge City Council's unconstitutional public comment policies. A local government may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers of by those whose edits or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). An official-capacity suit against Council President Griffin represents only another way of pleading an action against the City of Cleveland, the entity of which Council President Griffin is an agent. *See id.* at 690, n.55; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *see also, e.g.*, *Lane v. City of LaFollette, Tenn.*, 490 F.3d 410, 423 (6th Cir. 2007) (holding that claims against City Councilmen in their official capacity were, "in effect, claims against the City"). Therefore, under *Monell*, Council President Griffin in his official capacity is a proper party that this Court may enjoin from enforcing Cleveland City Council's unconstitutional public comment policies. This is so notwithstanding Defendants' assertion of Council President Griffin's absolute immunity. *See Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1245 (6th Cir. 1989)

(holding that in suits naming a public official in his official capacity, the governmental entity of which he is an agent "is not entitled to assert the immunity defenses available to individual actors sued in their individual capacities"). The questions of Council President Griffin's immunity as to damages, or of his immunity from suit were he to have been named in his individual capacity, are not before this Court.

As to Defendants' assertion that Plaintiff lacks standing, an alleged absence of jurisdiction may be raised at any time. Fed. R. Civ. P. 12(h)(3); *see also Sault Ste. Marie Tribe of Chippewa Indians v. United States*, 288 F.3d 910, 915 (6th Cir. 2002). However, Defendants raise this challenge on a fundamentally flawed factual basis. Through the declaration of Joan Mazzolini, Defendants attempt to prove that the public comment policies to which this motion pertains are no longer in effect. Ms. Mazzolini's declaration shows only that City Council has removed the public comment policies from its website and no longer distributes it to speakers before meetings. (*See* Mazzolini Decl., Doc. 12-1, ¶ 15.) However, as Defendants note in their opposition, "a city council speaks through its body, not its members." (*See* Memo. in Opp., Doc. 12, PageID #114-15 (citing *Northern Boiler Co. v.* David, 157 Ohio St. 564, 570, 106 N.E.2d 620 (1952))). Nor does a city council speak through its information-technology staff. Rather, City Council speaks through its official actions, as it did when it passed the public comment policies in 2021. (*See* The City Record, Sep. 24, 2021, https://www.clevelandcitycouncil.org/pdf/web/viewer.html?file=/sites/default/files/2021-11/City-Record-09-24-2021.pdf ("On the motion of Council Member Bishop, Procedures for Public Comment at Cleveland City Council Meetings (File No. 828-2021)

11

are approved.")). Despite the considerable length of time which Council has had to rectify its public comment policies since their unconstitutionality was brought to its attention, City Council has not acted to repeal the policies.

Even if City Council formally repeals the policies (or enacts new ones), "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982). Defendants here, as the parties asserting mootness, have the "heavy burden of persua[ding] the court that the challenged conduct cannot reasonably be expected to start up again," and they must do so by making it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (citing *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968)). Defendants' evidentiary support in their Opposition fails to meet that heavy burden—indeed, Defendants' contentions that the challenged policies are constitutional suggest a substantial danger that if this lawsuit were dismissed, Defendants might resume enforcing the challenged policies. This is exactly the type of situation that requires the well-established exception to the mootness doctrine: when a challenged action is "capable of repetition yet evading review." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 546–47 (1976). Defendants should not be able to insulate their exercise of government power from judicial review through gamesmanship of the mootness doctrine by declining to enforce the policies when sued.

12

Moreover, as a factual matter, Mr. Martin has attempted to register to make a public comment twice since he was silenced at the September 25 City Council meeting. On both occasions, Mr. Martin has been unable to register because City Council has closed the online portal for preregistration. (Second Martin Decl., Ex. 1, ¶ 3.) As Ms. Mazzolini averred, "[f]or the last few months or so, registration has filled very quickly, often within minutes of opening." (Mazzolini Decl., Doc. 12-1, ¶ 7.) Mr. Martin's recent inability to secure one of these highly sought-after speaking slots—which City Council limits to ten per meeting—cannot defeat Mr. Martin's standing to challenge City Council's unconstitutional public comment policies. Similarly, contrary to Defendants' assertion, Plaintiff need not plead how he intends violate the policy to establish standing. (*See* Memo. in Opp., Doc. 12, PageID #111.) Rather, the harm with which Plaintiff, and all public commenters, are threatened is that they will be subject to the enforcement of facially unconstitutional speech policies.

### III.    The equities strongly favor the injunction.

As Plaintiff set forth in his motion for a preliminary injunction, Plaintiff continues to suffer irreparable harm while City Council's unconstitutional policies remain in effect, and it is in the public interest to prevent the violation of constitutional rights. (Pl. Br., Doc. 8, PageID #68-69.)

Defendants protest that injunctive relief is "completely unnecessary" because Defendants voluntarily ceased enforcing the public comment policies before agreeing to the Stipulated Temporary Restraining Order. (Memo. in Opp., Doc. 12, PageID #120.) However, as discussed above, City Council has only suggested it will not be enforcing

13

its public comment policies. Nor are Defendants willing to agree to a preliminary injunction against enforcing the policies, despite promising that Defendants have no intention of enforcing them. As Defendants continue to defend the constitutionality of the public comment policies, and retain the power to enforce the policies at any time, Plaintiff maintains that this controversy is far from moot and the policies continue to threaten his First Amendment rights.

Respectfully submitted,[1]

| | |
|---|---|
| /s/ Andrew Geronimo | **First Amendment Clinic** |
| ANDREW GERONIMO (#86630) | MILTON & CHARLOTTE KRAMER LAW CLINIC |
| andrew.geronimo@case.edu | CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW |
| /s/ Sara Coulter | 11075 East Boulevard |
| SARA COULTER (#96793) | Cleveland, Ohio 44106 |
| sara.coulter@case.edu | Telephone: (216) 368-2766 |
| /s/ Siobhan Gerber | |
| SIOBHAN GERBER (#101563) | *Attorneys for Plaintiff Chris Martin* |
| siobhan.gerber@case.edu | |

---

[1] Spring 2024 First Amendment Clinic Certified Legal Interns Alec Bashein, Kaley Elliott, Karina Pantoja, Simon Peter Mizner, Taylor Ronnebaum, Trey Quillan, Tyler O'Neal, and Will Baker played a substantial role in drafting this Reply Brief. Counsel thanks these dedicated students for their efforts, and anticipates filing a motion requesting leave for their participation in this case shortly.

**Certificate of Service**

The undersigned certifies that this Reply in Support of Plaintiff's Motion for Preliminary Injunction was filed electronically on January 22, 2024 and will be served upon all parties of record by the Court's electronic case filing system.

> */s/ Sara Coulter*
> Sara Coulter (OH #0096793)
> *Attorney for Plaintiff*