IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CHRIS MARTIN,  *Plaintiff*,  v.  CLEVELAND CITY COUNCIL PRESIDENT BLAINE GRIFFIN, *et al.*  *Defendant*. | Case No: 1:23-CV-2312  Judge Charles Esque Fleming  **PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS** |

Plaintiff Chris Martin moves this Court to enter judgment for $113,422 in attorneys' fees, $7,127 in costs, for a total of $120,549.[1] Plaintiff obtained a judicially enforceable temporary restraining order (that "remain[s] in effect until the Court rules on Plaintiff's motion for a preliminary injunction") and later accepted Defendant's Fed. R. Civ. P. 68 Offer of Judgment. Accordingly, Mr. Martin is a prevailing party entitled to reasonable fees pursuant to 42 U.S.C. § 1988. Plaintiff respectfully submits this brief in support of Plaintiff's Motion for Attorney's Fees.

While Plaintiff is prepared to present this argument and evidence at a hearing if the Court deems it appropriate, Plaintiff would also welcome the opportunity to mediate the issue of fees and costs with the Defendants in order to reach a more efficient resolution to this matter.

---

[1] Geronimo Decl., Ex. 1-B Billing Entries and Narratives.

Respectfully submitted,

/s/ Will Baker
Will Baker
Certified Legal Intern

/s/ Alec Bashein
Alec Bashein
Certified Legal Intern

/s/ Siobhan Gerber
Siobhan Gerber (#0101563)
siobhan.gerber@case.edu

/s/ Andrew Geronimo
Andrew Geronimo (#0086630)
andrew.geronimo@case.edu

FIRST AMENDMENT CLINIC
KRAMER LAW CLINIC CENTER
CASE WESTERN RESERVE UNIVERSITY
SCHOOL OF LAW
11075 East Blvd.
Cleveland, Ohio 44106
P: (216)-368-6855 F: (216)-368-2086
*Attorneys for Plaintiff Chris Martin*

**Brief in Support**

I. **Introduction**

This case involved a facial and as-applied challenge to the Cleveland City Council's public comment policy. On January 5, 2024, this Court entered a Temporary Restraining Order that prohibited the Defendants from enforcing their challenged policy—and that order remains in effect until "the Court rules on Plaintiff's motion for a preliminary injunction."[2] Additionally, on February 7, 2024, the City of Cleveland offered Plaintiff Chris Martin judgment against the City for his damages claim.[3]

Thus, it is (or should be) uncontested that Martin is entitled to attorneys' fees as a prevailing party in a § 1983 case. The sole issue is whether the fees Martin incurred in this complex and high-profile case are reasonable. The requested fees are reasonable because they directly correspond to the circumstances of this case—including the complicated constitutional issues concerning forum analysis (and the type of First Amendment scrutiny that applies), the City's conflicting positions during the factual development of the case, the City's complex defenses regarding standing, mootness, and immunity, and the extensive media coverage of the incident underlying Martin's Complaint and the litigation itself.

Martin is requesting a total of 403 hours, at rates ranging from $200-$475, for a total of $113,422 in attorneys' fees. A true and accurate copy of Counsel's billing entries, including billing narratives and rates are attached.[4] These hours only include those

---

[2] Stipulated Temporary Restraining Order, Doc. 10, PageID #91-92.
[3] Rule 68 Offer of Judgment for Damages, Doc 16-1, PageID #153.
[4] *See* Geronimo Decl., Ex. 1-B Billing Entries and Narratives.

1

hours that, in lead counsel's judgment, were reasonably necessary to litigate this matter, and do not include any training, teaching, or reflection times as part of the Certified Legal Interns' curricular responsibilities.[5] Martin also requests $7,127 in costs, which at this point in the litigation is limited only to the Civil filing fee and $6,722 in expert fees related to proving the reasonableness of the fees.[6]

## II. Facts and Procedural History

### A. Council President Blaine Griffin interrupts Martin's Public Comment.

In 2021, Cleveland City Council (the "Council") instituted public comment at its meetings. Plaintiff Chris Martin ("Plaintiff") registered to make a public comment on "matters of public concern" at the September 25, 2023, meeting. Plaintiff attempted to comment about upcoming legislation in the Ohio General Assembly pertaining to local government and home rule (Senate Bill 158), but after less than a minute, President Griffin interrupted Plaintiff and cut off his microphone. This event immediately received extensive news coverage questioning the legality of Council's policy and its application to the speakers silenced on September 25, 2023. [7]

### B. Martin retains Counsel to attempt to resolve the controversy.

Immediately after the September 25 incident, Plaintiff contacted the Case Western Reserve University School of Law First Amendment Clinic to inquire about

---

[5] *See* Geronimo Decl., Ex. 1, ¶¶ 12-18.
[6] Chandra Decl., ¶ 66 ($4,500 fee); Bonham Decl., ¶ 22 ($2,222 fee).
[7] *See, e.g.*, Sam Allard, *Public commenters silenced at Cleveland City Council meeting on questionable grounds*, Axios Cleveland, https://www.axios.com/local/cleveland/2023/09/27/public-commenters-silenced-cleveland-city-council-meeting (Sep. 27, 2023); *see also* Abbey Marshall, *Cleveland City Council's public comment policy under fire after cutting resident microphones,' Ideastream Public Media*, https://www.wyso.org/2023-09-29/cleveland-city-councils-public-comment-policy-under-fire-after-cutting-resident-microphones (Sep. 29, 2023).

2

representation. On October 6, 2023, Martin's Counsel prepared and sent a letter to the Chief Legal Director of the City, Mark Griffin on behalf of Martin, alleging that Council unconstitutionally censored Martin, and that the Council's public-comment policies violated the First Amendment generally. This letter emphasized Martin's desire to resolve the matter in an efficient and productive manner and requested a meeting with the City's law department to discuss Martin's potential claims against the City.

On October 16, 2023, Director Griffin agreed to a meeting with the Clinic, during which the City's attorneys acknowledged that the existing public-comment policy had First Amendment issues and seemed to concede that Council President Griffin should not have interrupted Martin on September 25. City attorneys told Martin's counsel that the City welcomed the Clinic's research on the First Amendment analysis as applicable to City Council's public-comment period.

On November 3, 2023, the Clinic sent a letter to Director Griffin and City attorneys Ms. Melnyk, Ms. Aston, and Ms. Scalish detailing the Clinic's research and suggested improvements to the public-comment policies. The letter included an in-depth analysis of case law regarding limitations on First Amendment protections, describing how the City's existing Policy violated the First Amendment and the Ohio Constitution and suggesting changes to the policy to eliminate potential constitutional issues. On November 6, 2023, Director Griffin acknowledged receipt of the letter and expressed appreciation for the Clinic's research and efforts. Martin hoped that the City would use this research to fix Council's public-comment policies and prevent future speakers from being censored—and was prepared to forego litigation if the City did so.

3

The City, however, did not pass a new policy, revise its existing policy, or engage with Mr. Martin's attempts to resolve the matter. Instead, on November 13, 2023, Council proposed a new public comment policy that it discussed publicly at a Council Caucus Meeting on that date. Media reports showed the confusion in the community about the current state of the policy.[8] Council President Griffin acknowledged the complexity of the issue, saying, "we're walking a very fine line between what is legal, what is constitutionally protected and what is public opinion."[9] Councilmember Rebecca Maurer labeled the Council's proposed November 13, 2023 policy as "completely outrageous," and that Council was "running scared."[10] Other councilmembers, including Griffin, vehemently disagreed with Maurer's position.[11]

On November 28, Martin's Counsel informed the City's Law Department that Martin was prepared to file a lawsuit for damages and injunctive relief to address his unconstitutional censoring, and asked whether there was any additional information that the City wanted to provide beforehand. Law Director Griffin responded only that the Clinic's letter and meeting with City attorneys had been taken into consideration.

### C. The City fails to take action to abrogate its policy; Martin files this action and obtains a Temporary Restraining Order and judgment in his favor on his money damages claim.

After this exchange, the Council did not rescind its policy—rather, it continued to display it to the public and required prospective commenters to acknowledge it.

---

[8] Nick Castele, *Cleveland City Council eyes new rules for public comment*, Signal (Nov. 13, 2023).
[9] *Id.*
[10] Abbey Marhsall, *Cleveland City Council may limit public comment after contentious few weeks in chambers*, Ideastream Public Media (Nov. 13, 2023).
[11] *Id.*

4

Thus, on December 4, 2023, Martin filed a complaint against Cleveland City Council and City Council President Blaine Griffin under 42 U.S.C. § 1983, seeking damages and declaratory and injunctive relief.[12] On December 20, 2023, Martin moved for a temporary restraining order ("TRO") and preliminary injunction ("PI"). Following the Court's order to meet and confer regarding a stipulated order pending the outcome of the PI hearing, the City agreed to a stipulated TRO ordering it to not enforce the challenged provisions of the policy. By its terms, the TRO would persist until the Court ruled on Plaintiff's request for a PI. The Court entered the TRO on January 5, 2024.

On January 16, 2024, the City filed its motion in opposition to the PI. For the first time, the City raised a number of new arguments concerning the justiciability of Martin's claims[13] that necessitated Counsel researching and drafting responses for Martin's Reply, which was due on or before January 23, 2024. On January 22, 2024, just hours after Martin filed his Reply regarding the prior policies' constitutionality, Council adopted new public-comment policies.[14]

The next day, Defendants offered Martin "judgment against the City in the amount of $500.00" "exclusive of any reasonable attorneys' fees, expenses, and costs" on his claim for damages, and provided that this Court would determine reasonable

---

[12] *See* Complaint, Doc. 1, PageID #13.
[13] *See generally* Defs. Opp. to Plaintiff's Mot. for Prelim. Inj, Doc 12, PageID # 98 (arguing, *inter alia*, that City Council is *non sui juris*, that Council President Griffin has absolute immunity to Martin's claims, and that Martin lacks standing to pursue his claims).
[14] *See* Defs' Notice of Suppl. Evid. of Mootness, Doc. 14, PageID #142.

5

fees to which Martin is entitled.[15] Plaintiff timely accepted the offer of judgment, thus agreeing to resolve the issue before the Court ruled on the Plaintiff's motion for a PI.

### D. Post-judgment, the City continues to litigate the case while negotiating Martin's fees.

Following Plaintiff's acceptance of the Offer of Judgment, Plaintiff's counsel has spent significant time spent negotiating the attorneys' fees and preparing the fee motion. The City has raised numerous and varied arguments in support of its position, including that (1) that student time was not compensable; (2) that Plaintiff's attempts to avoid litigation in this matter were non-compensable "lobbying," and (3) that a reasonable hourly rate should be calculated using a cost-based method based on the salary of Martin's Counsel. The City also propounded discovery requests.[16] As required by Counsel's duty to their client, Counsel researched and responded to these arguments, and reviewed and objected to the discovery, all while attempting to negotiate a settlement with the City.

### III. Law and Argument

Martin obtained an order temporarily enjoining the policies he challenged, making him a "prevailing party" in this § 1983 action and entitling him to reasonable attorneys' fees. 42 U.S.C. § 1988(b); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This order, entered by this Court on January 5, 2024, was a "judicially enforceable TRO" that carried the "judicial imprimatur" of this court and was a "material alteration of the

---

[15] Rule 68 Offer of Judgment for Damages, Doc 16-1, PageID #153.
[16] *See* Ex. 4. Martin's Counsel does not believe these discovery requests were authorized by any rule or Court order (and objected on that basis).

6

legal relationship of the parties," which is sufficient to make Martin a "prevailing party" in this matter for the purposes of § 1988. *See Doe v. Univ. of Michigan*, 78 F.4th 929, 946–48 (6th Cir. 2023). Additionally, Martin received and accepted an Offer of Judgment for damages. *Fulps v. City of Springfield, Tenn.*, 715 F.2d 1088, 1090 (6th Cir. 1983) (a plaintiff who accepts Fed. R. Civ. P. 68 Offer of Judgment is the "prevailing party" within the meaning of § 1988).

Awarding fees to a successful civil rights plaintiff under § 1988 embodies Congress's intent "to encourage meritorious civil rights claims because of the benefits of such litigation for the named plaintiff and for society at large, irrespective of whether the action seeks monetary damages." *Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989). "Unlike most private tort litigants, a civil rights plaintiff seeks to vindicate important civil and constitutional rights that cannot be valued solely in monetary terms." *City of Riverside v. Rivera,* 477 U.S. 561, 574 (1986). Indeed, absent special circumstances not present here, courts "must award fees" to prevailing plaintiff. *Berger v. City of Mayfield Heights,* 265 F.3d 399, 406 (6th Cir. 2001) (citations omitted).

The amount of a reasonable fee is known as a "lodestar," and is determined by multiplying a reasonable hourly rate by the number of hours reasonably expended on the litigation. *Hensley*, 461 U.S. at 433. There is a "strong presumption" that a prevailing party is entitled to the lodestar amount. *Adcock–Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (citation omitted). Courts generally seek to avoid a "second major litigation" in considering fee awards, *Hensley*, 461 U.S. at 437, the "essential goal" being "rough justice" rather than "auditing perfection," *Fox v. Vice,* 563 U.S. 826, 838 (2011).

7

"When claims are based on a common core of facts or are based on related legal theories, for the purpose of calculating attorneys fees they should not be treated as distinct claims, and the cost of litigating the related claims should not be reduced." *Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, at 554 (quotation omitted). Nor should district courts "measure a plaintiff's success simply by using a ratio of successful claims to claims raised." *Waldo v. Consumers Energy Co.*, 726 F.3d 802, 822 (6th Cir. 2013) (citation omitted). The Sixth Circuit has "repeatedly rejected mechanical reductions in fees based on the number of issues on which a plaintiff has prevailed." *Deja Vu of Nashville v. Metro. Gov't of Nashville and Davidson County*, 421 F.3d 417, 423 (6th Cir. 2005). Rather, "a reduction in attorney fees [to a prevailing plaintiff] is to be applied only in rare and exceptional cases where specific evidence in the record requires it." *Waldo*, 726 F.3d at 822 (citation omitted). No such evidence exists here.

### A. Plaintiff's attorneys' hourly rates are reasonable—and are, in fact, below market rates for civil rights lawyers in Cleveland, Ohio.

A reasonable hourly rate is the "rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record." *Ne. Ohio Coal. For the Homeless v. Husted*, 831 F.3d 686, 715 (6th Cir. 2016) (citation omitted). The requested hourly rates—$200 for Certified Legal Interns, $250 for Ms. Gerber, with 3 years of experience, $300 for Ms. Coulter, with 7 years, and $475 for Mr.

8

Geronimo, with 14 years—accord with the market rates (or below-market rates) in the Cleveland, Ohio legal market in 2023-2024.[17]

Attorneys in the Northern District of Ohio routinely seek—and have been awarded—comparable (or higher) hourly rates.[18] *See Truex v. Drivers Direct, LLC*, 583 F. Supp. 3d 1033, 1036 (N.D. Ohio 2022) (awarding attorney rate of $500); *Lofton v. Hinton*, No. 1:15-cv-00486 (N.D. Ohio), Doc 34, PageID #261 (awarding attorney rate of $750 for "one of the preeminent civil rights lawyers in this area" and a "nationally known and recognized … expert in the field of civil rights litigation"); *see also Lentz v. City of Cleveland*, No. 1:04-cv-669, 2011 WL 5360141, at *7 (N.D. Ohio Nov. 7, 2011) (awarding attorneys rates of $200 - $475 per hour for work performed from 2004-2010). The City itself requests comparable rates in fee petitions in this Court. *See, e.g.*, *Harper v. City of Cleveland, et al.*, No. 1:16-cv-2972 (N.D. Ohio), Doc 46, PageID #498 (the City seeking $300 per hour as a "reasonable" rate for two Assistant Directors of Law in 2019).

The requested rates are particularly reasonable considering Counsel's work on this matter was whenever possible apportioned to Certified Legal Interns that bill at a lower rate than the Clinical faculty members supervising them.[19] *See Husted*, 831 F.3d at 706 & 718 (upholding a fee award at rates of $250-$450 against claim of duplication of efforts where counsel averred that certain discussions "permitted senior lawyers to provide important strategic guidance to more junior lawyers, without duplicating

---

[17] *See* Geronimo Decl., Ex. 1, ¶ 42; Chandra Decl, Ex. 2, ¶ 5; Bonham Decl., Ex. 3, ¶ 17; *see also* Clio.com, *How much should I charge as a lawyer in Ohio?* (reporting that Ohio civil rights lawyers charge an average hourly rate of $392).
[18] *See* Chandra Decl, Ex. 2, ¶¶ 31 & 35.
[19] Geronimo Decl., Ex. 1, ¶ 14.

9

efforts, thereby increasing efficiency"). In this case, Certified Legal Interns had the primary responsibility for investigating and researching the facts and law relevant to the claim, counseling the client, and drafting work product. Further, the timekeepers did not charge time to the client matter for reflection and other pedagogical purposes that did not directly benefit this litigation.[20]

### B. The number of hours expended by Martin's Counsel is reasonable for this complex and high-profile case.

After determining reasonable rates, the Court should then determine whether the requested hours are reasonable for the litigation. *Waldo*, 726 F.3d at 821. As Martin's counsel has done here, attorneys for prevailing parties are expected to review their billing entries and remove "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434. Martin's counsel logged over 600 hours into its practice management software from September 27, 2023 through March 18, 2024 (for Attorneys Geronimo, Coulter, Gerber, and Certified Legal Interns White, Elliott, Cohen, Scifres, O'Neal, Mizner, Bashein, Pantoja, Baker, and Quillin).[21] Accounting for counsel's duty to review and remove duplicative or unnecessary time, Martin is only requesting 403 of those hours.

### i. Martin obtained a temporary restraining order enjoining the City's challenged policy on his facial challenge and a judgment for money damages on his as-applied constitutional claim.

By retaining Counsel, Martin sought to vindicate his First Amendment right to speak free from viewpoint-based censorship. Although Counsel worked diligently to

---

[20] Geronimo Decl., Ex. 1, ¶ 18.
[21] Geronimo Decl., Ex. 1-B Billing Entries and Narratives.

10

avoid litigation against the City, in fewer than three months of litigation Martin obtained injunctive relief enjoining the City's unconstitutional policy and a judgment against the City for damages—all within weeks of filing the Complaint. These results achieved the relief Martin sought: an injunction against a facially unconstitutional policy (that the City later changed) and damages for his censorship.

Plaintiff's facial challenge to Council's public-comment policies required care in analysis and pleading. *See, e.g., United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully. . ."). The speech issues in this case—including characterizing the forum at a City Council public comment period for First Amendment purposes (and identifying the accompanying level of judicial scrutiny) and differentiating between viewpoint-, content-, and time-place-and-manner-based restrictions[22]—are complex, and ones the Supreme Court has grappled with while deciding crucial free speech cases for decades. *See, e.g., Turner Broadcasting Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994) ("Deciding whether a particular regulation is content based or content neutral is not always a simple task."); *see also Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 831 (1995) ("[T]he distinction [between content-based and viewpoint-based regulations] is not a precise one."); *see also, e.g., McDonough v. Garcia, et al.*, 90 F.4th 1080, 1086-92 (11th Cir. 2024) *reh'g en banc granted, opinion vacated*, -- F.4th --, No. 22-11421, 2024 WL 850415 (11th Cir. Feb. 29, 2024) (noting the courts struggle with "minor conceptual shift[s]" in

---

[22] *See generally* Complaint, Doc. 1; Plaintiff's Mot. for a TRO and Prelim. Inj., Doc. 8.

11

Circuit and Supreme Court doctrine regarding public-forum analysis which are "based on a matter of degree" but have "major implications for the analysis courts use" to evaluate the applicable standards for these disputes). Similarly, the justiciability of municipal liability under *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978) for unconstitutional policies "has produced a highly complex body of interpretive law" such that "the law has become difficult to apply." *Bd. Of Cnty. Comm'rs of Bryan Cnty., Okl. V. Brown*, 520 U.S. 397, 430-31 (1997) (Breyer, J., dissenting).

Working within this complex legal landscape, Plaintiff's Counsel, over nearly five months, researched and drafted facts and law to prepare the Complaint and the TRO/PI motion; met with and counseled Plaintiff; met with City attorneys; prepared filings; and diligently monitored Council meetings (having been led to believe that the City would be discussing and ultimately adopting a new policy[23]). All this work is compensable under § 1988. *See Perotti v. Seiter*, 935 F.2d 761, 764 (6th Cir. 1991) (developing a theory of the case and drafting the initial pleadings are "obvious examples" of services performed "on the litigation"); *see also Lavin v. Husted*, 764 F.3d 646, 650 (6th Cir. 2014) (quoting *Cox v. Shelby State Cmty. Coll.*, 194 F. App'x 267, 278 (6th Cir. 2006) ("Section 1988 does not limit fee awards to work performed after the complaint is filed, but allows recovery of fees for time spent beforehand investigating the facts and researching the viability of potential legal claims.").

---

[23] *See* Geronimo Decl., Ex. 1-B Billing Entries and Narratives, Nov. 13, 2023 Entry for 3.5 hours (page 2) ("Attend City Council Caucus meeting to hear councilors talk about proposed public comment policies; discuss strategy with client/team").

12

Despite the City's pre-litigation lawyers acknowledging the First Amendment problems with the former policies, and accepting the Clinic's help in revising them, the City abruptly changed its litigation tactics after Plaintiff filed this lawsuit to defending those same policies. Moreover, the City interposed complex justiciability defenses regarding immunity, standing, and mootness—which required substantial time and effort to address. [24] *See* Wright & Miller Federal Practice, 13C Fed. Prac. & Proc. Juris. § 3533.5 (3d ed.) ("Prediction of future conduct as a basis for determining the need for decision, either as a matter of mootness or remedial discretion, often calls for a difficult and case-specific judgment."); *see also Reed v. Presque Isle Cnty.*, No. 1:21-cv-11112, 2023 WL 7545219, at *22 (E.D. Mich. Nov. 13, 2023) (noting that "standing analysis for injunctive and declaratory relief, specifically, can be complicated"); *see also Westfall v. Erwin*, 484 U.S. 292, 300 (1988) (observing that "whether absolute immunity is warranted in a particular context" is a "complex and often highly empirical inquiry").[25] The undersigned respectfully submit that the Court should consider Defendants' Counsel's aggressive positions when determining the reasonableness of the fees incurred in this litigation.

    ii. **This Court can—and should—include time spent by student practitioners in Martin's fee award.**

That Martin is represented by pro bono law clinic staffed by attorneys supervising student interns does not affect his entitlement to a fee award at market

---

[24] *See generally*, Defs' Memo. In Opp. To Plaintiff's Mot. for a Prelim. Inj. Doc. 12.
[25] The City raised these defenses in its memorandum in opposition to Plaintiff's motion for a PI, all while repeatedly requesting extensions to delay resolution. *See, e.g.*, Defs' Mot. for Leave, Doc. 6 (Dec. 14, 2023) (seeking a 30-day extension until February 5, 2024 to plead to the Complaint).

13

rates. *Blum v. Stenson,* 465 U.S. 886, 894 (1984) ("The statute and legislative history establish that 'reasonable fees' under § 1988 are to be calculated according to the prevailing market rates in the relevant community, regardless of whether plaintiff is represented by private or nonprofit counsel."). Recovering student time is consistent with the language and purpose behind § 1988, and student practitioners necessarily require supervision by licensed counsel. *See, e.g., Siggers-El v. Barlow*, 433 F. Supp. 2d 811, 821 (E.D. Mich. 2006) ("Reimbursement for student time is consistent with the purpose of the rule, which would be impaired if law clinics and legal aid organizations were not reimbursed for student time."). Reasonable fees mean not only "work performed by members of the bar," but any "labor [that] contributes to the work product." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 285 (1989). Moreover, this Court's local rules permit student practitioners to "participate as though he or she were a duly-licensed attorney." Loc. R. 83.6. Simply put, there is no bar to recovering fees attached to student time, and any such bar would be contrary to the underlying policy of § 1988.

### iii. Plaintiff's attorneys' fees incurred litigating the fee award are compensable.

Time spent preparing and resolving the dispute over a fee award, including negotiating a potential settlement and preparing a fee motion, is compensable. *See Husted*, 831 F.3d at 723-25. As the prevailing party by virtue of the temporary restraining order, Plaintiff is entitled to these fees. Moreover, though the Offer of Judgment specified that the monetary judgment awarded to Plaintiff was "exclusive of any reasonable attorneys' fees, expenses, and costs to the date of this offer for Plaintiff's

14

claims,"[26] no provision purported to preclude Plaintiff from recovering fees for the fee litigation. The City's approach—including propounding written discovery and asserting novel positions requiring further research by Plaintiff's counsel—underscores the importance of allowing Plaintiff to recover for the costs incurred, so as to incentivize the avoidance of a "second major litigation" on the fee issue. *Hensley*, 461 U.S. at 437; *see also Rivera*, 477 U.S. at 581 FN 11 (citing *Copeland v. Marshall,* 641 F.2d 880, 904 (1980) (en banc)) ("The government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.")

### IV. Conclusion

Since the initiation of this matter several months ago, Plaintiff sought a revision to a policy that had been acknowledged by Councilmembers as inadequate. Martin expressed willingness to work with Defendants to find an expedient solution. While the City escalated the complexity, and the media coverage intensified, Martin's Counsel conducted a reasonable amount of work necessitated by the circumstances. Despite the City's resolve to defend its policies on their merits through the litigation, this case began to conclude when the City awarded Plaintiff judgment against it.

Accordingly, as the prevailing party, Plaintiff respectfully requests this court enter an order for Plaintiff's attorney fees of $113,422 and $7,127 in costs, for a total of $120,549.[27]

---

[26] Offer of Judgment, Doc. 16-1, Page ID #153.
[27] Geronimo Decl., Ex. 1-B Billing Entries and Narratives; Chandra Decl., Ex. 2; ¶ 66; Bonham Decl., Ex. 3, ¶ 22.

15

Respectfully submitted,

*/s/ Will Baker*
Will Baker
*Certified Legal Intern*

*/s/ Alec Bashein*
Alec Bashein
*Certified Legal Intern*

*/s/ Siobhan Gerber*
Siobhan Gerber (#101563)
*First Amendment Fellow*

*/s/ Andrew Geronimo*
Andrew Geronimo (#0086630)
*Director & Supervising Attorney*

FIRST AMENDMENT CLINIC
KRAMER LAW CLINIC CENTER
CASE WESTERN RESERVE UNIVERSITY SCHOOL OF LAW
11075 East Blvd.
Cleveland, Ohio 44106
andrew.geronimo@case.edu
P: (216)-368-6855 F: (216)-368-2086
*Attorney for Plaintiff Chris Martin*

**Certificate of Service**

The undersigned certifies that this Motion for Attorney's fees was filed electronically on March 20, 2024 and will be served upon all parties of record by the Court's electronic case filing system.

/s/ Andrew C. Geronimo
Andrew C. Geronimo (OH #0086630)
*Attorney for Plaintiff*

1