**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRIS MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:23-cv-02312 |
| v. | ) | |
| | ) | |
| CLEVELAND CITY COUNCIL, *et al*., | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

---

**DEFENDANT CITY OF CLEVELAND'S OPPOSITION TO
PLAINTIFF CHRISTOPHER MARTIN'S ATTORNEY'S FEE PETITION**

---

Plaintiff Chris Martin sued the wrong party and received $500. Attorney Geronimo called this an "incremental win." He was right. Yet he seeks more than $120,000 from the public coffers. The U.S. Supreme Court tells us what to do with incremental wins: "usually no fee at all." That is true here. Alternatively, this Court should award no more than $10,264.58 in attorney's fees. This Court should also award no more costs than his filing fee.

Respectfully submitted,

MARK D. GRIFFIN (0064141)
Director of Law

By:  *s/ Matthew R. Aumann*
William M. Menzalora (0061136)
Chief Assistant Director of Law
James R. Russell, Jr. (0075499)
Chief Assistant Director of Law
Matthew R. Aumann (0093612)
Assistant Director of Law
City of Cleveland, Department of Law
601 Lakeside Avenue, Room 106

Cleveland, Ohio 44114-1077
Tel: (216) 664-2800
Fax: (216) 664-2663
WMenzalora@clevelandohio.gov
JRussell2@clevelandohio.gov
MAumann@clevelandohio.gov

*Attorneys for Defendants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... ii

TABLE OF AUTHORITIES ........................................................................................... iv

STATEMENT OF THE ISSUES ....................................................................................... 1

SUMMARY OF THE ARGUMENT ................................................................................. 1

ARGUMENT ...................................................................................................................... 2

    I.   BACKGROUND ......................................................................................................... 2

        A.  Cleveland introduces Old Public Comment Policy and Martin speaks on
           September 25, 2023. ............................................................................................ 2

        B.  Cleveland resolves the issue with Martin and pauses the Old Policy. .......................... 3

        C.  The Clinic pushes for the Martin Policy without success. ............................................. 4

        D.  Martin files suit. ............................................................................................................ 4

        E.  Cleveland continues to suspend Old Policy, which this Court memorializes with
           a stipulated entry. ........................................................................................................... 5

        F.  Cleveland opposes PI Motion, showing that Martin sued the wrong parties and
           lacks standing. ............................................................................................................... 5

        G.  Cleveland adopts New Public Comment Policy, which is much different from
           that proposed by the Clinic. ......................................................................................... 6

        H.  Cleveland provides Rule 68 Offer of Judgment—for damages only. ........................... 7

        I.  Martin receives a self-described "incremental win." ................................................... 7

        J.  Martin's fee petition. ..................................................................................................... 8

    II.  STANDARD ............................................................................................................... 8

    III. ANALYSIS .................................................................................................................. 9

        A.  Martin is the "prevailing party" solely as to damages from the September 25,
           2023 hearing .................................................................................................................. 9

        B.  Martin received only nominal damages so this Court should award no attorney's
           fees to the Clinic. ....................................................................................................... 13

C.  Alternatively, because Martin only prevailed on the September meeting, this Court shoud find that no more than 64 hours is reasonable........................................ 15

D.  Alternatively, this Court should award Martin and his counsel appropriate hourly rates............................................................................................................ 17

E.  Alternatively, this Court should award no more than this reasonable amount in attorney's fees:  $10,264.58. ................................................................................. 19

F.  Because the Rule 68 offer excluded fees and costs for this motion, this Court should uphold the deal. ........................................................................................ 19

CONCLUSION ..................................................................................................................... 20

CERTIFICATE OF SERVICE ................................................................................................ 21

LOCAL RULE 7.1 CERTIFICATE ........................................................................................ 21

# TABLE OF AUTHORITIES

**Cases**

*Betancourt v. Indian Hills Plaza LLC*, 87 F.4th 828, 831 (6th Cir. 2023) ................................... 8

*Bobay v. Wright State Univ.*, No. 22-4007, 2023 WL 3963847, at *2 (6th Cir. June 13, 2023) ................................................................................................................................ 10, 15

*Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001)................................................................................................................... 9

*Calfox, Inc. v. Certain Underwriters at Lloyd's, London Subscribing to Certificate No. T0530bp1eb10018*, No. 20-CV-02443-RM-KMT, 2024 WL 1051948, at *10 (D. Colo. Mar. 11, 2024) ........................................................................................................................ 18

*Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159 (3d Cir. 2002) ........................................... 10

*Doe v. Univ. of Michigan*, 78 F.4th 929 (6th Cir. 2023)...................................................... 9, 10

*Farrar v. Hobby*, 506 U.S. 103, 113 (1992) ....................................................................1, 13, 14

*Harper v. City of Cleveland* 2020 WL 127683................................................................... 17

*Hensley v. Eckerhart*, 461 U.S. 424 (1983). ................................................................... 15

*Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415 (6th Cir. 2004). ............... 15

*Lilly v. City of New York*, 934 F.3d 222 (2d Cir. 2019). .................................................... 19

*Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2015 WL 881585, at *8 (W.D. Mich. Mar. 2, 2015) *aff'd*, 822 F.3d 304 (6th Cir. 2016) ............................................ 19

*Mosley v. City of Wickliffe*, No. 1:14-CV-934, 2017 WL 521102, at *1 (N.D. Ohio Feb. 8, 2017) ................................................................................................................................ 8

*Paeth v. Worth Twp.*, 483 F. App'x 956 (6th Cir. 2012). ..................................................... 18

*Petrovits v. New York City Transit Auth.*, No. 95 CIV. 9872(DFE), 2004 WL 42258, at *4 (S.D.N.Y. Jan. 7, 2004).......................................................................................................... 15

*Ramsey v. FirstEnergy Corp.*, No. 5:23-CV-86, 2023 WL 6794478, at *5 (N.D. Ohio Oct. 13, 2023) ................................................................................................................................ 17

*Roberts v. Neace*, 65 F.4th 280 (6th Cir. 2023) ....................................................... 10, 15

*Ros v. Benavidez*, No. 6:21-CV-00739-HZ, 2024 WL 139866, ................................................... 18

*Spencer, White & Prentis, Inc. v. City of Cleveland*, 8th Dist. Cuyahoga No. 40304, 1980 WL 354486 ................................................................................................................................ 11

*Toms v. Taft*, 338 F.3d 519 (6th Cir. 2003)................................................................................ 10

*White v. City of Cleveland*, CV 17-880097, Cuyahoga CP ......................................................... 18

**Statutes**

42 U.S.C.§ 1983..................................................................................................................... 8, 9

42 U.S.C.§ 1988......................................................................................................................... 9

42 U.S.C. § 1988(b) ................................................................................................................... 8

**Other Authorities**

FRCP Rule 68 ................................................................................................................... *passim*

Cleveland Municipal Code § 125 ................................................................................................ 4

Cleveland Municipal Code § 125.03 ..................................................................................... 3, 10

Ohio State Bar Association's Report ("OSBA Report"), *The Economics of Law Practice in Ohio in 2019* .................................................................................................................... 17

v

## STATEMENT OF THE ISSUES

1. Should this Court follow *Farrar* and award no attorney's fees because Mr. Martin obtained an "incremental win"?

2.  If this Court rejects *Farrar*, should this Court award a reasonable hourly rate greater than $275?

3. If this Court rejects *Farrar*, should this Court award more than 64 hours as reasonable?

4. Should this Court enforce the Rule 68 Offer of Judgment and award neither fees nor costs for Mr. Martin's present fee motion?

## SUMMARY OF THE ARGUMENT

Plaintiff Chris Martin wanted two things: to speak at a public meeting uninterrupted and a change to Cleveland City Council's public comment policy. He had that. But rather than speak, Martin sued. In the end, Martin received only $500 for his trouble. His counsel summed it up best: an "incremental win."

In *Farrar*, U.S. Supreme Court told us what to do with incremental wins: award no attorney's fees. But Martin would have this Court dip into public coffers to the tune of $120,000. This would be an expensive law student exercise—about $40,000 per substantive document filed—and nearly all of it after the policy was paused.

Therefore, this Court should award the filing fee and no attorney's fees. Or, if this Court declines to follow *Farrar*, then it should award no more than $10,264.58. This includes "reasonable" work at the appropriate hourly rate, and excludes the post-Rule 68 Offer fees and costs sought here.

1

**ARGUMENT**

Martin achieved an "incremental win" in a law student training exercise, so in addition to his judgment of $500 he should be awarded his $400 filing fee and no other fees or costs.

**I.  BACKGROUND**

**A. Cleveland introduces Old Public Comment Policy and Martin speaks on September 25, 2023.**

Cleveland City Council allows for public comment during its regular meetings. Cleveland adopted rules ("Old Policy") to do so in September 2021. (Old Policy, ECF No. 1-2). The Old Policy was in place on September 25, 2023. (Compl., ¶ 16, ECF No. 1). It required pre-registration and set a three-minute cap on speaking, among other things.

The Old Policy also asked speakers to "address the Council as a body" and refrain from addressing an "individual council member or other person." (*Id.*, PageID # 34). But the Old Policy does not prohibit speaking about council members. The Old Policy also does not prohibit "impugning" the character of anyone. (*See id.*).

Plaintiff Chris Martin spoke at the September 25, 2023 meeting.[1] (September 25, 2024 Council Meeting). Martin started reading the names of council members who accepted funds from the Council Leadership Fund. (*Id.*, 20:28). Martin explained that he was not "impugning" the character of city council members. (*Id.*, 20:40). Council President Griffin then asked Martin to refrain from mentioning the names of city council members, even though this is allowed by

---

[1]  Cleveland maintains recordings of its meetings on YouTube. The September 25, 2023 meeting may be viewed here: https://www.youtube.com/watch?v=p0i-KEHxLNc (last visited March 6, 2024).

the Old Policy.[2]  Martin became emotional and started yelling into the microphone. (*Id.*, 20:46). His microphone was eventually cut-off. (*Id.*, 21:32).

**B. Cleveland resolves the issue with Martin and pauses the Old Policy.**

A week or so later, the Case Western First Amendment Clinic ("Clinic") contacted Cleveland on behalf of Martin. (Ex. 1, Ltr. dated October 6, 2023). The letter offered to resolve the dispute in an "efficient and productive manner," and proposed a discussion. (*Id.*, p. 2). Law Director Griffin responded and agreed to a quick resolution. (Ex. 2, email dated October 9, 2023). Director Griffin "invited and encouraged" Martin to "continue or complete his remarks" subject only to the thee-minute time limitation. (*Id.*).

Under the Cleveland Municipal Code, Director Griffin has full authority to "adjust, settle, [or] compromise" any "demands" against the City. CLEVELAND MUNI. CODE § 125.03.[3] So Director Griffin had full authority to resolve the issue with Martin—without involvement by City Council—and did so by email on October 9, 2023.

This was followed by a second email. As Director Griffin explained on November 30, 2023, the "City is only enforcing the pre-registration requirement, the limit of ten (10) public comments, and the 3-minute time limitation." (Ex. 3, email dated November 30, 2023). Like the

---

[2]     The Parties agree that the written policy does not prohibit impugning: "'[I]f there was such a written policy—which there's not—about impugning the character . . . .' said Geronimo." Maria Elena Scott, *Cleveland City Council Admits its Public Comment Rules Are Probably Unconstitutional*, CLEVELAND SCENE, November 6, 2023, *available at* https://www.clevescene.com/news/cleveland-city-council-admits-its-public-comment-rules-are-unconstitutional-43055057 (last visited April 2, 2024).

[3]     It provides in full: "The Director of Law shall have the power, and authority to adjust, settle, compromise or submit to arbitration any actions, causes of action, accounts, debts, claims, demands, disputes and matters in favor of or against the City, or in which the City is concerned as debtor or creditor, now existing or which may hereafter arise," and is available here: § 125.03 Director's Responsibilities when City is Debtor or Creditor (amlegal.com) (last accessed March 21, 2024).

previous email, it was sent using Director Griffin's full authority to settle disputes on behalf of the City under § 125 of the municipal code. It was widely understood then that the "letter of the policy wouldn't be followed for the time being."[4]

### C. The Clinic pushes for the Martin Policy without success.

Even though Martin's issue was resolved, and the Old Policy paused, the Clinic pushed on. The Clinic tried to be involved in the adoption of new policy. Yet Cleveland did not incorporate the Clinic's feedback. As Martin's counsel told reporters, "I was disappointed to see that Council's new proposal doesn't seem to incorporate much, if any, of the feedback that we gave them."[5]

### D. Martin files suit.

Martin did not accept Director Griffin's offer to speak. (*See* Mazzolini Decl., ¶ 14, ECF No. 12-1). Instead, Martin filed the Complaint in December 2023. (Compl., ECF No. 1). The Complaint sought damages and declaratory relief as to the September 2023 meeting. (Compl., "prayer for relief," *Id.*). And even though the Old Policy was on pause, the Complaint asked for injunctive relief enjoining the Old Policy. (*See id.*).

The Complaint also named "Cleveland City Council" and "President Blaine Griffin" as defendants. (*Id.*, PageID # 1). Martin eventually moved for a temporary restraining order and a preliminary injunction. (Mot., ECF No. 8).

---

[4]     Maria Elena Scott, *Cleveland City Council Considering Limiting Public Comment to Topics Currently Under Consideration by the Body*, CLEVELAND SCENE, November 13, 2023, available at https://www.clevescene.com/news/cleveland-city-council-considering-limiting-public-comment-to-topics-currently-under-consideration-by-the-body-43112133 (last visited March 6, 2023).

[5]     *Id.*

### E. Cleveland continues to suspend Old Policy, which this Court memorializes with a stipulated entry.

Because the Old Policy was already suspended, Cleveland reached out to resolve the outstanding motion for a TRO. The Parties agreed. (*See* Notice, ECF No. 9). As Cleveland explained to this Court, the Parties "jointly resolved" the motion so no briefing would be required. (*Id.*). All that remained was a briefing schedule for the preliminary injunction motion. (*Id.*).

Soon after a conference with this Court, the Parties filed a stipulated temporary restraining order. (Stipulated Order, ECF No. 10). This agreed-to entry was signed by the Parties. (*See id.*). This Court then signed. (Stipulated Order, ECF No. 11). The final order contains the signatures of the Parties and this Court. (*See id.*, PageID # 96). Martin failed to speak at the meeting after the agreed-on entry was entered. (Mazzolini Dec., ¶ 14, ECF No. 12-1, PageID # 124).

As alluded to in the Notice, the purpose of the order was to allow more time for City Council to adopt a new policy. (*See* Notice, ECF No. 9). If, as planned, City Council could pass a new policy on or before January 22, 2024, then there would be no reason for Martin to file his Reply, due one day later. (*See id.*, PageID # 89). The request for injunctive relief would be moot.

### F. Cleveland opposes PI Motion, showing that Martin sued the wrong parties and lacked standing.

Cleveland then opposed Martin's preliminary injunction motion. (Opp., ECF No. 12). As Cleveland explained, Martin's Complaint had some fatal defects: he sued *non sui juris* Cleveland City Council and absolutely immune President Blaine Griffin. And because Martin had no future intent to speak at a City Council meeting, he lacked standing to seek prospective relief. These defects existed at the time of the agreed-to entry, meaning Martin also lacked standing for a TRO.

Though the Old Policy was no longer in force, controlling or persuasive case law supported the Old Policy, including directing speech to Council Body, prohibiting signs and slogans, limiting election-related speech, and limiting personal attacks. (*See* Opp., ECF No. 12).

### G. Cleveland adopts New Public Comment Policy, which is much different from that proposed by the Clinic.

A few days after Cleveland filed its opposition, Martin made a settlement demand. (Ex. 4, Ltr. dated January 18, 2024). Included with this settlement demand was a proposed policy. (Ex. 5, Chris Martin – Proposed Public Comment Policy). The Martin Proposed Policy had two key provisions: (1) public comment at committee meetings on top of council meetings; and (2) a more expansive pre-registration process so that more people could speak. (*See id.*). It also includes language prohibiting conduct that "disrupts, disturbs, or otherwise impedes" a council meeting. (*Id.*, p. 2).

Cleveland, on January 22, 2024, adopted a New Policy. (New Policy, ECF No. 14-1). It does not contain any of Martin's proposed key initiatives. It does not include, for example, extending public comment to committee meetings. (*See id.*). Nor does it adopt the more expansive pre-registration process called for by Martin. (*See id.*).

This Court's briefing schedule allowed time for Cleveland to adopt the new policy before asking Martin to Reply. (*See* Order, ECF No. 11). But Martin failed to wait. Minutes before the January 22 council meeting—and one day before required to do so—Martin filed his Reply brief. (Reply, ECF No. 13). Because of Martin's premature filing, it was soon made obsolete by Cleveland's adoption of the New Policy.  This Court then received notice of the New Policy. (Notice, ECF No. 14).

6

**H. Cleveland provides Rule 68 Offer of Judgment—for damages only.**

Cleveland, the correct party, then provided Martin a Rule 68 Offer of Judgment. (Offer, ECF No. 16-1). It allowed Martin to take judgment against the City of Cleveland in the amount of $500. (*Id.*, PageID # 153). The Offer was limited to any claim to "damages" arising of allegations underlying the Complaint. (*Id.*). The Offer excluded any other relief: "This Offer of Judgment does not include declaratory or injunctive relief." (*Id.*, PageID # 154). It left open for this Court attorney's fees, costs, and expenses.

Martin accepted the Offer. (Notice, ECF No. 16). Then he went further. He also stipulated to the "voluntary dismissal, with prejudice," of his claims. (*Id.*, PageID # 151). Thus, he effectively withdrew the motion for a preliminary injunction. (*See id.*). This was confirmed by the Parties' joint status report. (Report, ECF No. 17, PageID # 157).

**I. Martin receives a self-described "incremental win."**

In the end, Martin received what he was promised before suing: the ability to "continue or complete" his remarks. (Ex. 2, email dated October 9, 2023). Martin and his counsel proposed various policies. These were not adopted, nor were key ideas from the policies. (*See* New Policy, ECF No. 14-1). An "incremental win" is how Martin's counsel described the result to media.[6] Martin was also disappointed, according to media reports. He thought the adopted policy was "reactionary," and was disappointed that food and drink were prohibited.[7]

---

[6]     Abbey Marshall, *Cleveland City Council amends public comment rules amid lawsuit*, IDEASTREAM PUBLIC MEDIA, January 22, 2024, available at https://www.ideastream.org/government-politics/2024-01-22/cleveland-city-council-amends-public-comment-rules-amid-lawsuit (last visited March 21, 2024).

[7]     *Id.*

**J.  Martin's fee petition.**

Martin's counsel now moves for $120,549 in attorney's fees and costs. (Mot., ECF No. 20). For work associated with the Complaint, agreed-to TRO, and withdrawn preliminary injunction motion, all resulting in $500 for Mr. Martin, Martin's counsel seeks to recover more than 400 hours in time. (Geronimo Aff., ECF No. 20-1, PageID # 198). Entries range from "respond to press inquiries" to a "7.1" hour block for research, review, and drafting and attending to local rules. (*Id.*, PageID # 204). It also includes fees and costs for bringing this motion. It is unclear what party is supposed to pay the requested $120,549. (*See* Mot.).

For the reasons discussed below, Cleveland now opposes.

## II.  STANDARD

In an action proceeding under § 1983, the court "in its discretion" may allow the prevailing party to recover costs, including attorney's fees. 42 U.S.C. § 1988(b). A plaintiff carries the burden to justify that he is entitled to attorney's fees and costs. *Betancourt v. Indian Hills Plaza LLC*, 87 F.4th 828, 831 (6th Cir. 2023). The "threshold" inquiry is whether plaintiff prevailed on any of his claims. *Mosley v. City of Wickliffe*, No. 1:14-CV-934, 2017 WL 521102, at *1 (N.D. Ohio Feb. 8, 2017). If so, then it turns to the reasonable amount of time expended multiplied by a reasonable hourly rate. *See Betancourt*, 87 F.4th at 831.

Because Martin achieved only a nominal award, this Court should award no fees. Alternatively, this Court should award no more than a reasonable amount time multiplied by the prevailing local hourly rate. Fees and costs for Martin's pending motion (Mot., ECF No. 20) are precluded by the acceptance of the Rule 68 offer of judgment.

III.**ANALYSIS**

      Martin received a nominal award so counsel should receive no fees. Alternatively, Martin should award no more than the reasonable work to obtain damages relief at the prevailing local rate.

  **A. Martin is the "prevailing party" solely as to damages from the September 25, 2023 hearing.**

      Because Martin's preliminary motion was withdrawn and the TRO maintained the status quo, this Court should find that he only prevailed in receiving $500 in damages. Section 1988 provides for fee-shifting to the "prevailing party" under § 1983 actions. As the U.S. Supreme Court explained, the term "prevailing party" excludes voluntary changes by a defendant. *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 605 (2001). In so holding, the Court explicitly found that the "catalyst theory" is "not a permissible basis" for a fee award. *Id.*, 610. A party is therefore not a "prevailing party" unless there is court action providing the relief. *See, e.g.*, *Doe v. Univ. of Michigan*, 78 F.4th 929, 954 (6th Cir. 2023) (no fees when order failed to change the parties' legal relationship).

      Because Martin prevailed only his on his damages claim, that is the only claim available for attorney's fees.

    *1. Martin prevailed only on his damages request for the Septmenber 25, 2023 meeting.*

      Martin made 13 pages of allegations. (Compl., ECF No. 1). He alleged that he attended the public comment meeting on September 25, 2023 and was asked to stop speaking in violation of the First Amendment. (*Id.*, ¶ 16). For this incident, Martin sought damages and injunctive relief as to Cleveland City Council's policies. (*Id.*, "Prayer for Relief"). Cleveland's accepted Offer of Judgment provided damages but no other relief. (Offer, ECF No. 16-1). Cleveland

therefore agrees that Martin is a "prevailing party" for the $500 in damages received but nothing more.

### 2. *Martin failed to prevail on the TRO because it memorialized the status quo.*

Because the agreed upon entry memorialized the status quo, and Martin lacked standing anyway, Martin was not a prevailing party for attorney's fees under § 1988 for injunctive relief. Generally, the limited nature and duration of a TRO "weigh heavily against" a fee application. *Bobay v. Wright State Univ.*, No. 22-4007, 2023 WL 3963847, at *2 (6th Cir. June 13, 2023). That is because the relief is "principally designed to preserve the status quo relationship of the parties and has little to do with the merits." *Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023). Even less appropriate for a fee award is injunctive relief agreed to by the parties. *See, e.g.*, *Toms v. Taft*, 338 F.3d 519, 529 (6th Cir. 2003) (district court's involvement in settlement did not turn plaintiff into prevailing party). *Cf. Truesdell v. Philadelphia Hous. Auth.*, 290 F.3d 159, 165 (3d Cir. 2002) (order *without* counsel signature may show sufficient judicial involvement.). Similarly, a plaintiff cannot be a prevailing party without standing. *Doe v. Univ. of Michigan*, 78 F.4th 929, 954 (6th Cir. 2023) (no fees for claim when plaintiff lacked standing).

Here, this Court should follow the general rule and find that Martin was not a prevailing party for attorney's fees as it relates to the TRO enjoining the Old Policy. First, the Old Policy and Martin's conduct are unrelated. The Old Policy prohibited addressing members of city council. (Old Policy, ECF No. 1-2, PageID # 34). But the public comment allowed members to speak *about* these same members. Martin's comments about council members were thus permissible under the Old Policy, and the TRO had no impact on Martin's speech. Martin's counsel agrees.

Second, the TRO maintained the status quo. Under the Cleveland Municipal Code, Director Griffin has full authority to "adjust, settle, [or] compromise" any "demands" against the

City. CLEVELAND MUNI. CODE § 125.03. So Director Griffin had full authority to pause the Old Policy on November 30, 2023: the "City is only enforcing the pre-registration requirement, the limit of ten (10) public comments, and the 3-minute time limitation." (Ex. 3, email dated November 30, 2023).[8] These are the exact terms of the order entered by this Court more than a month later. (Stipulated Entry, ECF No. 11). So the stipulated entry just memorialized the status quo while the City Council considered a new policy.

Third, the stipulated entry is best understood as a settlement agreement. This Court ordered the parties to make a "good faith" effort to "reach an agreement" regarding a stipulated order. (Non-Document Order, December 21, 2023). The Parties did just that. Cleveland provided notice of the agreement, explaining that the motion for a temporary restraining order had been "jointly resolved." (Notice, ECF No. 9). The resulting entry had names of counsel and this Court, again making it like a settlement agreement. (Stipulated Entry, ECF No. 11). Additionally, as explained in Cleveland's opposition, the entry must be like a settlement agreement because Martin lacked standing for injunctive relief and the Old Policy passed constitutional muster. (Opp., ECF No. 12).

Martin argues that obtaining a TRO of any sort is enough to be a prevailing party. (Mot., ECF No. 20, PageID # 176). Not so, and Martin's primary case explains why. *Doe v. Univ. of Michigan*, 78 F.4th 929, 952 (6th Cir. 2023). In *Doe*, a student brought a facial challenge to a discipline policy, among other things. *Id.* at 954. Even though the student obtained a partial summary judgment, the Sixth Circuit found that attorney's fees were not appropriate. *Id.* The court gave two reasons. *Id.* First, the student lacked standing so he could not be a prevailing

---

[8]     The City has previously explained that the Law Director has full authority to bind Cleveland. *See, e.g.*, *Spencer, White & Prentis, Inc. v. City of Cleveland*, 8th Dist. Cuyahoga No. 40304, 1980 WL 354486, *3 (noting settlement authority of Cleveland's law director).

party. *Id.* (citing *Lynch v. Leis*, 382 F.3d 642, 645 (6th Cir. 2004)). Second, the university adopted a new policy before the litigation. *Id.* So there was no change in the parties' relationship because of the court order. Here too, Martin lacks standing for injunctive relief because he failed to provide a specific future intent to speak, among other reasons. (*See* Opp., ECF No. 12) (citing *Ison v. Madison Loc. School Bd.*, 395 F.Supp.3d 923, 932 (S.D. Ohio 2019)). And the Old Policy was paused before the lawsuit was filed. This Court should therefore find that attorney's fees is inappropriate for the Stipulated Entry.

While Martin is correct that the *Doe* court also authorized attorney's fees for a TRO ordering the release of a transcript, *Doe* illustrates that enduring relief is the exception to the general rule. *Doe*, 78 F.4th at 954. The same student discussed above, along with challenging the policy, sought and received the release of his transcript. *Id.* The court found that because the "release of the unmarked transcript could not be undone," it was appropriate to award fees when the court ordered the transcript released. *Id.* But here, there was nothing obtained by Martin through the TRO that could not be undone. Therefore, this Court should follow the general Sixth Circuit rule that a stipulated TRO does not create a prevailing party for purposes of attorney's fees.  *Bobay*, No. 22-4007, 2023 WL 3963847, at *2; *Roberts*, 65 F.4th at 284.

Because the agreed-to TRO maintained the status quo, and provided no benefit to Martin, this Court should find that it did not make Martin a prevailing party.

### 3.  *Martin failed on the PI Motion.*

Martin moved for a preliminary injunction. (Mot., ECF No. 8). He later "stipulate[d] to the voluntary dismissal, with prejudice" his claims. (Notice, ECF No. 16, PageID # 151). Therefore, Martin cannot be a prevailing party for his motion and he does not suggest otherwise. (*See* Mot., ECF No. 20).

**B. Martin received only nominal damages so this Court should award no attorney's fees to the Clinic.**

Because Martin prevailed only in receiving $500 in damages, the Clinic should receive no attorney's fees. A $500 award, as an "inconsequential sum," constitutes nominal damages. *Hill v. Kilbourne*, 157 F. Supp. 3d 545, 551 (M.D. La. 2015). While an award of nominal damages may make a plaintiff a "prevailing party" under § 1988, it affects the amount of fees available. *Farrar v. Hobby*, 506 U.S. 103, 113 (1992). As the U.S. Supreme Court explained, "usually no fee at all" is appropriate when a plaintiff recovers only nominal damages. *Id.* Thus the district court erred by awarding fees "without considering the relationship between the extent of success and the amount of the fee award." *Id.* (citations and quotation marks omitted).

Courts apply *Farrar* when a party aims high and falls short, creating a negligible victory. *Glowacki v. Howell Pub. Sch. Dist.*, 566 F. App'x 451, 453 (6th Cir. 2014). In *Glowacki*, a teacher disciplined a student for expressing his opinion, and the teacher was reprimanded by the school district. *Id.* at 452. Still, the student filed a First Amendment lawsuit. *Id.* The district court entered an award of nominal damages, and then denied a request for more than $100,000 in attorney's fees and costs. *Id.* at 453. The Sixth Circuit affirmed the award of no fees. *Id.* The court, applying *Farrar*, reasoned that the judgment failed to change the conduct of teacher, provided no benefit to the student, and failed to make the desired change to the district's policies. *Id.* at 454. The court rejected arguments that there was no request for compensatory damages and that lawsuit garnered public attention. *Id.* at 456 ("no authority suggesting that public attention alone constitutes a public purpose").

Here, just as in *Farrar* and *Glowacki*, this Court should award Martin his filing fee and no attorney's fees because he aimed high and landed low. First, Martin received only $500 in damages from Cleveland. This is a nominal amount. Second, Cleveland changed the policy

13

before the lawsuit was filed. Director Griffin, using his § 125 powers, limited the Old Policy: "[T]he City is only enforcing the pre-registration requirement, the limit of ten (10) public commenters, and the 3-minute time limitation." (Ex. 3, Griffin email). Third, Martin's preferred policy was rejected. His policy required public comment at committee meetings (rather than only council meetings) and would have allowed more people to speak. (Ex. 5, Chris Martin – Proposed Public Comment Policy). But the New Policy adopted by council rejected these suggestions. (New Policy, ECF No. 14-1). Martin thus achieved none of his litigation goals, and wasted significant time and effort by this Court and the parties.

Martin does not argue that $500 is anything but nominal damages, and must concede that his offered policy was rejected. (Mot., ECF No. 20). Martin instead rests his hat on the agreed-on temporary restraining order. (Stip. Order., ECF No. 11). But the stipulated order allows for pre-registration, 10 speakers, and a 3-minute limit. (*See id.*). This was in place before the lawsuit was filed. (Ex. 3, Griffin email dated November 30, 2023). Martin also failed to speak under the pause—or anytime between September 2023 and January 12, 2024. (Mazzolini Dec., ¶ 14, ECF No. 12-1, PageID # 124). So this lawsuit, and specifically the agreed-on TRO, created no benefit for Martin.

Martin and his counsel confirmed that this was an empty victory when asked by the local press. "I think it's an incremental win," Attorney Geronimo told one reporter.[9] Martin also

---

[9]    Abbey Marshall, *Cleveland City Council amends public comment rules amid lawsuit*, IDEASTREAM PUBLIC MEDIA, January 22, 2024, available at https://www.ideastream.org/government-politics/2024-01-22/cleveland-city-council-amends-public-comment-rules-amid-lawsuit (last visited March 21, 2024).

seemed displeased, according to local reports, because public comment did not apply to

committee meetings and because of the 10-speaker limit maintained by the New Policy.[10]

Because Martin obtained nominal damages, and at-best achieved an "incremental win,"

this Court should follow *Farrar* and *Glowacki* and award no attorney's fees to his counsel.

### C. Altneratively, because Martin only prevailed on the September meeting, this Court shoud find that no more than 64 hours is reasonable.

This Court should award no attorney's fees because the lawsuit was an "incremental

win." Alternatively, this court should award no more than $10,264.58 attorney's fees here.

*Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Temporary injunctive relief will generally not

produce a fee award. *See, e.g.*, *Bobay v. Wright State Univ.*, No. 22-4007, 2023 WL 3963847, at

*2 (6th Cir. June 13, 2023); *Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023). Neither will

lobbying a municipality for a legislative change. *Kentucky Rest. Concepts Inc. v. City of

Louisville*, 117 F. App'x 415, 420 (6th Cir. 2004). A fee petition must also exercise good billing

judgment, which prohibits block billing, vagueness, unspecific entries, duplicative work, and

instruction. (*See* Ex. 6, Landes Decl, ¶¶ 81–83).

Here, Mr. Landes' detailed reviewed shows that no more than 64 hours was reasonable.

(*Id.*, ¶ 96). Mr. Landes is an experienced constitutional litigator and former managing partner of

a leading civil rights defense firm. (Landes Decl., ¶¶ 9–22). He as appeared more than 70 times

in the Northern District of Ohio and in more than 350 civil rights-related cases in federal court.

(*Id.*, ¶ 13). He has previously served as a fee-expert and sought fees. (*Id.*, ¶ 19).  Mr. Landes

closely reviewed the provided entries. (Landes Decl., Exhibit F).

Mr. Landes found that every entry failed to follow the required "good billing" practices.

(*Id.*). One day is illustrative, October 13, 2023. On that day, three things happened according to

---

[10]     *Id.*

15

the narratives: a meeting with Cleveland to discuss the policy (i.e., lobbying); a communication with their client, Martin; and an internal meeting to discuss next steps (i.e., instruction). Because this was part of a lobbying effort, none of this time should have been put before this Court. *Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 420 (6th Cir. 2004). It also includes non-compensable student instruction time. *See, e.g.*, *Petrovits v. New York City Transit Auth.*, No. 95 CIV. 9872(DFE), 2004 WL 42258, at *4 (S.D.N.Y. Jan. 7, 2004).

But even ignoring these problems, a close review shows that the Clinic is seeking time for seven billers doing the same thing on October 13, 2023:

- **Attorney Geronimo**: "Prepare for and attend Clinic team meeting with Law Director Griffin, Attorneys Scalish, Melnyk, Aston; update client and discuss next steps."

- **Attorney Coulter**: "Meeting with legal team and Cleveland City Council attorneys . . . ."; "Call to client . . . ."; and "Team debrief after call with Cleveland legal team. Discussion of next steps."

- **Attorney Gerber**: "Phone call with City of Cleveland Law Director and other City attorneys to discuss our client's position regarding Council's public comment policy."

- **Four students** – "Meeting with counsel for Cleveland City Council"; "meeting with Mark Griffin; post-meeting discussion with Chris (client)"; "Call with Mark Griffin and follow up with Chris"; "Debriefed after teams call with City law department. Placed call with client afterwards to discuss the meeting and steps moving forward."

Billing seven people for the same work—and for different amounts of time—is contrary to good billing practices. (*See* Landes Decl., ¶¶ 85–93, Exhibit F). Still, by focusing on the damages claim and giving the Clinic reasonable inferences in its favor, he found that around 64 hours, mostly student time, was reasonable. (Landes Decl., ¶ 96). This Court should therefore award no more time than identified as reasonable by Mr. Landes. (*Id*.).

**D. Alternatively, this Court should award Martin and his counsel appropriate hourly rates.**

Because of the "incremental win," this Court should award no fees. Alternatively, this should only award fees that are reasonable.

### 1. Attorney rates should be be no more than $275 per hour.

Mr. Landes has more than 40 years of civil rights experience, and has appeared in the Northern District of Ohio more than 70 times. (Landes Decl., ¶ 14). He also regularly represents clients throughout the Greater Cleveland area. (*See id.*). Based on his experience, Mr. Landes concludes that the following hourly rates are reasonable: Andrew Geronimo – $275; Sara Coulter – $250; and Siobhan Gerber — $200. These rates align with Ohio Bar Association's 2019 rate survey. (Landes Decl., Ex. G, OSBA Survey). Chief Judge Lioi uses this same survey, as do other judges in this district. *Ramsey v. FirstEnergy Corp.*, No. 5:23-CV-86, 2023 WL 6794478, at *5 (N.D. Ohio Oct. 13, 2023) (fining the "Ohio State Bar Association's Report ("OSBA Report"), *The Economics of Law Practice in Ohio in 2019*, A Desktop Reference, to be a particularly helpful resource.")

Mr. Martin argues that others in the area, including lawyers with the City, have asked for high rates. In *Harper v. City of Cleveland*, for example, the court approved $300 per hour for Assistant Director of Law Michael Pike. *Harper*, 2020 WL 127683, at *8. To state the obvious: $300 is much less than the requested $475 here. And ADL Pike has much more experience than Attorney Geronimo in civil rights litigation and litigation generally.

Mr. Martin's purported experts, Mr. Chandra and Ms. Bonham, are unpersuasive. The Clinic named *non sui juris* Cleveland City Council and immune Council President Griffin as parties. Mr. Chandra, as the former Cleveland Law Director, must have spotted these mistakes right away. But Mr. Chandra swears that the Clinic submitted a "world-class" complaint.

17

(Chandra Decl., ¶ 61, ECF No. 20-2, PageID # 245). Similarly, Ms. Bonham found zero evidence of "unnecessarily high-billed work." (Bonham Decl., ¶ 19). Yet Mr. Geronimo billed (at $475) for administrative tasks like "enclosing email to Law Director" and "check[ing] in" on a student's progress. (Geronimo Decl., ECF No. 20-1, PageID # 200). Given this record, Mr. Chandra's and Ms. Bonham's conclusions are not credible.

More troubling, Mr. Chandra and Ms. Bonham failed to disclose a direct financial interest in the outcome of this motion—both are seeking fees from Cleveland. Ms. Bonham even claims more than $500,000 in attorney's fees at stake in one pending action. (Ex. 7, ltr. dated April 5, 2024). She therefore has a direct financial interest in the outcome of this motion against Cleveland. Mr. Chandra is also currently seeking fees against Cleveland. *See, e.g.*, *White v. City of Cleveland*, CV 17-880097, Cuyahoga CP. Given these conflicts, this Court should ignore the opinions of Mr. Chandra and Ms. Bonham.[11]

Therefore, this Court should follow Mr. Landes, the OSBA, and Chief Judge Lioi, and ignore those with a financial stake in this motion, and use only reasonable rates.

### 2. *Student time should be no more than $75 per hour.*

The Sixth Circuit has upheld a denial of law student work, finding that an attorney's rates often covers the student's work. *Paeth v. Worth Twp.*, 483 F. App'x 956, 966 (6th Cir. 2012). But recent cases suggests that around $75 is the appropriate rate for legal externs. *See, e.g.*, *Ros v. Benavidez*, No. 6:21-CV-00739-HZ, 2024 WL 139866, at *5 (D. Or. Jan. 11, 2024) ($75 per hour for law students). Ohio State uses $75 per hour for its legal externs. (Landes Decl., ¶ 108). Student time is still subject to "good billing" practices.

---

[11]     "Once the expert obtains a direct financial interest in the outcome of the litigation . . . an expert witness is fatally wounded." *Calfox, Inc. v. Certain Underwriters at Lloyd's, London Subscribing to Certificate No. T0530bp1eb10018*, No. 20-CV-02443-RM-KMT, 2024 WL 1051948, at *10 (D. Colo. Mar. 11, 2024) (citation omitted).

**E. Alternatively, this Court should award no more than this reasonable amount in attorney's fees:  $10,264.58.**

This Court should aware no attorney's fees. But if it does, then the following total would be reasonable:

| Biller | Rate | Hours | Total |
|---|---|---|---|
| Geronimo | $ 275 | 14.6 | $ 4,015 |
| Coulter | $ 250 | 4.13 | $ 1,033.33 |
| Gerber | $ 200 | 14.6 | $ 2,920 |
| Students | $ 75 | 30.31 | $ 2,296.25 |
| Total | | | $ 10,264.58 |

**F. Because the Rule 68 offer excluded fees and costs for this motion, this Court should uphold the deal.**

The Parties' bargained relief excludes fees and costs for this motion, so this Court should deny the requested relief. A Rule 68 offer of judgment is a contract, and it "must be interpreted according to ordinary contract principles." *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019). As a result, when the Rule 68 offer unambiguously states that includes the fees and costs earned "by the date of the offer," then that is the cut-off for fees and costs. *Id.* A district court therefore errs when it awards fees and costs for a fee motion (i.e., "fees-on-fees"), contrary to a Rule 68 offer of judgment using this language. *Id.*; *Montgomery v. Kraft Foods Glob., Inc.*, No. 1:12-CV-00149, 2015 WL 881585, at *8 (W.D. Mich. Mar. 2, 2015), *aff'd*, 822 F.3d 304 (6th Cir. 2016) (denying post-offer fees).

Here, just as in *Lilly*, Cleveland's offer included attorney's fees and costs earned "to the date of this offer." (Offer, ECF No. 16-1, PageID # 153). Thus, the plain language of the Rule 68 offer excluded the "fees-on-fees" that Martin seeks now. (*See* Mot.). This is no accident. Cleveland intentionally used a New York City Rule 68 offer of judgment to avoid fees-on-fees.

Therefore, this Court should uphold the benefit of the Parties' bargain and decline to award Martin fees-on-fees. This includes all time after January 24, 2024, and the costs for Mr. Chandra and Ms. Bonham.

## CONCLUSION

Because Martin received a self-described "incremental win," this Court should award no attorneys for this training exercise. Alternatively, no award for attorney's fees should exceed $10,264.58. Cleveland does not challenge the $500 in nominal damages already agreed to or Martin's filing fee.

Respectfully submitted,

MARK D. GRIFFIN (0064141)
Director of Law

By:   *s/ Matthew R. Aumann*
       William M. Menzalora (0061136)
       Chief Assistant Director of Law
       James R. Russell, Jr. (0075499)
       Chief Assistant Director of Law
       Matthew R. Aumann (0093612)
       Assistant Director of Law
       City of Cleveland, Department of Law
       601 Lakeside Avenue, Room 106
       Cleveland, Ohio 44114-1077
       Tel: (216) 664-2800
       Fax: (216) 664-2663
       WMenzalora@clevelandohio.gov
       JRussell2@clevelandohio.gov
       MAumann@clevelandohio.gov

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I certify the above was filed electronically this 22nd day of April 2024.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

<u>*s/ Matthew R. Aumann*</u>
Matthew R. Aumann (0093612)

*One of the Attorneys Defendants*

**LOCAL RULE 7.1 CERTIFICATE**

I certify that this case has no track assignment, and this memorandum complies with the local rules as to page limits.

<u>*s/ Matthew R. Aumann*</u>
Matthew R. Aumann (0093612)

*One of the Attorneys for Defendants*