# Exhibit 6

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRIS MARTIN, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 1:23-cv-02312 |
| v. | ) | |
| | ) | |
| CLEVELAND CITY COUNCIL, *et al.*, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

---

## DECLARATION OF MARK LANDES, ESQ.

---

I, Mark Landes, under 28 U.S.C. § 1746, make the following declaration:

1.      I am lawyer with more than 40 years of experience. Much of my career I litigated claims brought under 42 U.S.C. § 1983, both for and against hundreds of political subdivisions, their employees, and their elected officials. I have appeared in the Northern District of Ohio more than 70 times, and regularly represent clients in the Greater Cleveland area.

2.      The gravamen of the underlying dispute is a policy on public comment at Council meetings.  As demonstrated by the record, Law Director Mark Griffin made clear *before the lawsuit was filed* that the challenged policy would be paused while a new policy went through the legislative process. A law director, by statute, is an executive head of a municipal government. And as the Ohio Attorney General approved nearly 100 years ago, Cleveland's law director has full authority to bind the City in response to demands. So Director Griffin's email that the policy was paused was not just an email—it was an official act of the Cleveland doing just that.

3.       For filing suit to do what the Law Director had already done, the Case Western

1

Legal Clinic (the "Clinic") has asked for more than $120,000 in legal fees and costs.

4.      The Court can and should pay for any work that makes Plaintiff a prevailing party, but a prevailing party must obtain an enduring change in the parties' position *caused by a court*. It is not enough for a party to advocate, or to be a catalyst, for a result.  Most of the Clinic's early work was lobbying to be a catalyst for a change in policy, which is not recoverable. And much of this was done after Director Griffin's November 30 email.

5.      In contrast to the Clinic's efforts, the City of Cleveland took every step to minimize litigation. This included Director Griffin's pause and a timely Rule 68 Offer of Judgment. Cleveland resolved this case as quickly as possible.

6.      I have been asked to opine on the following questions: (1) Should this lawsuit have been filed?; (2) What work was reasonable?; (3) What rates are reasonable for the attorneys; and (4) How much student time should be compensated?

7.      In answering these questions, my opinion is that no fees should be awarded at all to the Clinic because the fees claimed were not necessary and reasonable on an issue prevailed upon by the Plaintiff. Alternatively, if this Court awards fees, then they should not exceed $10,264.56.

8.      I offer this opinion without having a financial interest in the outcome of this case.

## My Background

9.      I am a founder and partner with the law firm of Isaac, Wiles, & Burkholder, LLC.

10.      I am an attorney licensed to practice since 1982. I am admitted to practice in Ohio, the U.S. District Court for the Northern and Southern Districts of Ohio, the U.S. Court of Appeals for the Sixth and Ninth Circuits, the U.S. Supreme Court, the U.S. Court of Military Appeals (now known as the U.S. Court of Appeals for the Armed Forces), and U.S. Army Court of Military

Review.

11.     I completed undergraduate studies at Johns Hopkins and law school at Ohio State. I soon entered active duty with the Judge Advocate Generals Corps, prosecuting cases in Germany before being assigned to a position at the Department of the Army at the Pentagon in the Litigation Division. I handled, among other things, constitutional claims for the Departments of Defense and Army. While I gained a good familiarity with this type of case as an agency counsel in Washington D.C., including work with the U.S. Solicitor General, I did not have to bill my time.

12.     I joined private practice in 1987 and had much to learn about billing. As a result, I studied everything I could find concerning billing practices, reading every state and federal case that I could on fee litigation. I also had the benefit, although not many would call it that, of having clients who are among the most educated consumers of the legal marketplace: insurance companies and other third-party payers, such as risk-sharing pools. It would be difficult today to find an insurance company for whom our firm has not done work. I have also done work for hundreds of political subdivisions, usually for employment or constitutional claims, and I estimate that I have sent many thousands of bills to sophisticated payers.

13.     To help explain my civil rights litigation experience to this Court, I recently reviewed a Westlaw analysis where I named as an attorney of record. According to Westlaw, I have litigated more than 70 civil rights cases in the Northern District of Ohio and more than 350 civil rights cases in federal court. I feel comfortable with Westlaw's conclusion after reviewing my files and memory.

14.     To further help this Court evaluate my experience, here are citations for some of my recent district court cases involving § 1983, including cases concerning the First Amendment of the U.S. Constitution. *Courthouse News Serv. v. O'Shaughnessy*, 663 F. Supp. 3d 810, 815 (S.D.

3

Ohio 2023), *appeal dismissed* (June 20, 2023); *Hill v. Middleburg Heights Police Dep't*, No. 1:21 CV 476, 2021 WL 2688515, at *3 (N.D. Ohio June 30, 2021); *Seattle House, LLC v. City of Delaware*, Ohio, No. 2:20-CV-03284, 2020 WL 7253309, at *3 (S.D. Ohio Dec. 10, 2020); *Surface v. Conklin*, No. 1:15-CV-40, 2018 WL 5266797, at *1 (S.D. Ohio Oct. 23, 2018); *Carrico v. Knox Cnty. Sheriff's Off.*, No. 2:16-CV-502, 2018 WL 3193217, at *2 (S.D. Ohio June 28, 2018); *Smith v. Sandusky Newspapers, Inc.*, No. 3:17CV1135, 2018 WL 1315155, at *3 (N.D. Ohio Mar. 14, 2018); *Stahl v. Coshocton Cnty., Ohio*, No. 2:15-CV-572, 2017 WL 6508384, at *5 (S.D. Ohio Sept. 22, 2017), *aff'd sub nom. Stahl v. Coshocton Cnty.*, 754 F. App'x 335 (6th Cir. 2018); *Mason v. Adams Cnty. Recorder*, No. 1:2016-CV-755 (WOB), 2017 WL 1957964, at *3 (S.D. Ohio May 10, 2017), *aff'd*, 901 F.3d 753 (6th Cir. 2018).

15.    I have been named "Lawyer of the Year, First Amendment" multiple times by *Best Lawyers in America*.

16.    Central to understanding this lawsuit is also a "public powers" question: the power of a law director. In my practice I regularly receive pre-litigation questions from my public sector clients about what can (and can't) be done. That is because most political subdivisions, including school districts, townships, counties, villages, etc., are so-called "creatures of statute." This means they can only take action as provided by the General Assembly through legislation. Some political entities are "chartered," where the charter acts as the constitution of the entity. But there are still powers question for chartered entities because analyzing the charter often requires looking the relevant portion of the Revised Code and the Ohio Constitution. I do my best to answer these public power questions. However, I have litigated these types of questions too. *See, e.g.*, *Viola Park, Ltd. v. Pickerington*, 2007-Ohio-2900, ¶ 27 (analyzing home rule question); *Parker v. City of Upper Arlington*, 2006-Ohio-1649, ¶ 18 (analyzing home rule questions).

17.     Directly to the issue here, I recently won a case for the City of Gahanna on the ability of the Law Director to resolve a case against it. *The Academy Ridge Community Assoc. v. City of Gahanna,* Case No. 23CV-2273, Franklin County C.P., June 21, 2023.

18.     I have appeared before the Ohio Supreme Court in over 100 cases, mostly concerning issues related to public law.

19.     Finally, I have also litigated many fee applications in state and federal court, as a defendant but also as plaintiff. We have been awarded fees by state and federal courts. I empathize with Plaintiff's counsel in having to carry the burden of documenting and proving a reasonable fee, having had to undertake this task many times myself.

20.     I have also presented to attorneys on fee applications and testified as an expert on attorney's fees.

21.     Because of my substantive experience with civil rights law and public law, as well as my experience in law firm management, I am an expert regarding the prevalent and appropriate practices for billing legal time in cases like this one.

22.     My current resume is attached as Exhibit A.

### This Litigation

23.     I have reviewed the record before this Court and the materials attached to or referenced in this declaration. This is my understanding of the facts:

24.     Chris Martin spoke and was interrupted at a Cleveland City Council meeting on or around September 25, 2023. Mr. Martin was unhappy, and retained counsel.

25.     Based on my experience working law directors and other public servants, I presume that Law Director Griffin tried to make Mr. Martin a happy resident. So on or about October 9, 2023, Director Griffin encouraged Mr. Martin to return to make his comments. (*See* Exhibit B).

26.     Mr. Martin was not satisfied.

27.     To make Mr. Martin happy (and avoid litigation), Director Griffin, using his powers as the Law Director, made sure that the public comment policy was paused. (*See* Exhibit C). This was confirmed by local news reports: "Lawyers working for Martin brought their concerns about First Amendment violations to city lawyers, who agreed that the letter of the policy wouldn't be followed for the time being." *See* Maria Elena Scott, *Cleveland City Council Considering Limiting Public Comment to Topics Currently Under Consideration by the Body*, CLEVELAND SCENE, November 13, 2023, available at  https://www.clevescene.com/news/cleveland-city-council-considering-limiting-public-comment-to-topics-currently-under-consideration-by-the-body-43112133.

28.     Even though the public comment policy was paused and Mr. Martin was encouraged to speak, he filed a lawsuit. (Compl., ECF No. 1).

29.     The Complaint named Cleveland City Council and President Blaine Griffin as defendants. (*See id.*). Cleveland City Council was not a proper party. President Griffin is almost certainly immune for the legislative act of passing a policy. So neither Cleveland City Council nor President Griffin should have been named.

30.     The Complaint was about 13 pages long. It sought damages and injunctive relief.

31.     Martin also moved for a temporary restraining order and a preliminary injunction. (Mot., ECF No. 8). This document had about 15 pages of substance. It also included a declaration from Mr. Martin. (Martin Decl., ECF No. 8-1). Nearly the entire declaration was devoted to the September 25 incident. (*See id.*). Meaning, it looked primarily back to his damages claim. Mr. Martin provided no evidence showing a specific future intent to speak at meetings as required for injunctive and prospective relief.

32.     With the motion pending, the Parties reached a resolution on the TRO. (Notice, ECF No. 9). This contemplated the understanding the policy was paused, and that a new policy

6

was on the way.

33.     Adopting a new policy is a predictable outcome from a lawsuit because it often moots a facial challenge. I likely would have advised that Cleveland take this path.

34.     Cleveland City Council then adopted a new policy. (Notice, ECF No. 14). This likely also doomed Mr. Martin's pending motion for a preliminary injunction.

35.     Cleveland also made a Rule 68 Offer of Judgment. (Offer, ECF No. 16-1). Mr. Martin accepted the offer, including $500 for his damages. (Notice, ECF No. 16). All other claims were dismissed with prejudice. (*See id.*).

36.     In sum, the lawsuit involved one plaintiff, two defendants, three substantive documents filed by the Clinic (complaint, motion, and reply), and no discovery. It yielded Mr. Martin $500.  For this result, the lawyers now ask this Court for six figures.

37.     This was not a complex or complicated case. The September 25 meeting lasted less than three minutes and was videotaped. The challenged policy was two pages long. There was one plaintiff and there should have been one defendant, the City of Cleveland.

38.     I have handled complicated and complex cases. A complicated or complex case may involve dozens of parties, millions of pages documents, and novel legal questions. I even had the joy of supervising a privilege log with more than 100,000 entries. So with these cases in mind, it is my opinion that this case, with a short video, two-page policy, and few parties, was neither complicated nor complex.

39.     The Northern District's Local Rules confirm as much. Local Rule 16.2 place cases on the "expedited track" if there are few legal issues, limited discovery, and fewer than five fact witnesses. That would describe this case. Complex cases, in contrast, require extensive discovery, complicated legal issues, 10 or more fact witnesses, and a damages expert. Not true here.

## Should This Lawsuit Have Been Filed?

40.     I am a litigator. I have a first responsibility to every client: don't get hired.

41.     Litigation is a burdensome and slow way to resolve disputes. No matter the time and money invested, or the skill of the attorneys, the outcome is uncertain.

42.     So I ask clients what they really want and how else we can get there. After all, filing a lawsuit risks wasting the resources of everyone, including our hardworking friends in the Third Branch.

43.     Looking at this case, Mr. Martin wanted to speak at a council meeting uninterrupted. He was provided that opportunity on October 9.

44.     Mr. Martin presumably also wanted to stop the enforcement of the Old Policy. He got that too. On November 30, Director Griffin made clear that the Old Policy was paused.

45.     Mr. Martin seemed to have everything he wanted before the complaint was filed on December 4, 2023.

46.     Mr. Martin therefore had no need to file a lawsuit.

47.     I have two theories, based on my experience as a litigator who tries to make clients happy, about why this complaint was filed.

48.     **First, Mr. Martin likely did not appreciate the importance of Director Griffin's email.**

49.     Most are familiar with the roles of a city council and mayor. But under the Revised Code, the "executive powers of cities" are also vested in the "director of law." *See* R.C. 733.01. Law directors have held this role for more than 120 years—well before Ohio's General Code was transferred to today's Revised Code. (*See* Exhibit D). So the foundation of a law director's powers is that of an executive of a municipal government. He or she is not just a publicly employed lawyer.

8

50.    Cleveland's municipal code provides extensive powers to Director Griffin. Cleveland City Council—more than 100 years ago—delegated to the law director the power to settle all "demands" against the "City of Cleveland." (Exhibit E, Ord. passed February 27, 1922). Then in 1928, the Ohio Attorney General confirmed that Cleveland's law director may exercise this authority. *See* Ohio Attorney General Opinion 2240-1915, dated August 15, 1928 (Syllabus: "The Council of the City of Cleveland may legally delegate to the Director of Law authority to compromise and settle claims for damages against the city, and make a lump sum appropriate from which such claims may be paid.").

51.    Based on my experience representing political subdivisions, it is not unusual for a law director to have authority to resolve disputes, though some entities place amounts that, above a certain threshold, must go to city council. *See, e.g.*, LAKEWOOD CODIFIED ORDINANCE § 127.02 (claims exceeding $25,000 must go to council). Again, this is because law directors carry extensive executive powers under Ohio law, and have for some time. I recently won a case for the City of Gahanna on the ability of the Law Director to resolve a case against it.  *The Academy Ridge Community Assoc. v. City of Gahanna,*  Case No. 23CV-2273, Franklin County C.P., June 21, 2023.

52.    Therefore, when Director Griffin told Mr. Martin that policy was paused on November 30, he did so as an executive of the City of Cleveland, fully authorized by the Cleveland Municipal Code and more than hundred years of Ohio law, to resolve demands against the City.

53.    So Director Griffin resolved Mr. Martin's issues, and Mr. Martin, perhaps lacking experience with political subdivisions and Cleveland's municipal code, likely wanted something more, such as legislation. But legislative action was not required because of Director Griffin's executive powers. Therefore, this was likely an issue of misunderstanding.

9

54.    **Second, Mr. Martin found an organization that exists to give litigation experience**.

55.    Mr. Martin's misunderstanding of public law, unfortunately, ran into the Clinic.

56.    The Clinic advertises that it teaches "real-world litigation skills" including "researching legal issues, gathering facts, resolving ethical issues, drafting pleadings," and more!

57.    But while litigation is good for lawyers, it is often bad for clients.

58.    Here, Mr. Martin's worst-case option collided with the sole purpose of the Clinic.

59.    While the Clinic's students likely learned things, such as avoiding *non sui juris* parties in the future, this learning failed to benefit Mr. Martin.

60.    **Indeed, my opinion is that Mr. Martin is no better off having filed this lawsuit, an opinion Mr. Martin and his counsel share, according to media reports.**

61.    Because the Old Policy was paused before the lawsuit was filed and injunctive relief dismissed with prejudice, Mr. Martin's sole gain from this case is $500.

62.    Recent case law tells us that $500 is nominal amount. *See, e.g.*, *Noble Supply & Logistics, LLC v. Curry*, No. 5:23-CV-00065, 2023 WL 8481021, at *9 (W.D. Va. Dec. 7, 2023) ($500 is nominal bond).

63.    Moreover, media reports confirmed that this was a disappointing result.

64.    According to one report, Attorney Geronimo called the final result an "incremental win." *See* Abbey Marshall, Cleveland City Council amends public comment rules amid lawsuit, January 22, 2024, IdeaStream, available at https://www.ideastream.org/government-politics/2024-01-22/cleveland-city-council-amends-public-comment-rules-amid-lawsuit.

65.    According to the same article, Mr. Martin was unhappy. The resulting policy was different than the one he wanted, and even continues to prohibit food and drink within the

10

chambers.

66.     The U.S. Supreme Court tells us what to do when a party aims high and lands low: "the only reasonable fee is usually no fee at all." *Farrar v. Hobby*, 506 U.S. 103, 115, 113 S. Ct. 566, 575, 121 L. Ed. 2d 494 (1992).

67.     Therefore, this Court is within its discretion to award no attorney's fees for the work performed in this litigation.

## What Work Was Reasonable?

68.     It is my opinion that this Court should award no attorney's fees. But because I was also asked to determine what fees would be reasonable should this Court determine that some amount of attorney's fees is appropriate, I undertook that analysis too.

69.     The U.S. Supreme Court instructs us to look for instances where "counsel's work on one claim will be unrelated to his work on another claim." *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). This happens even when "the claims are brought against the same defendants" such as an "institution and its officers."

70.     If the claims are unrelated, then the claims should be treated as if "raised in a separate lawsuit" and "no fee may be awarded for services on the unsuccessful claim." *Id.*

71.     It is my opinion that Mr. Martin's $500 damages award is unrelated to the work on his unsuccessful injunctive relief. *See, e.g.*, *Fessler v. Porcelana Corona De Mexico*, S.A. DE C.V., 23 F.4th 408, 418 (5th Cir. 2022) (remanding to district court to determine whether claims were related or unrelated under *Hensley*).

72.     First, Mr. Martin's comments about individual council members did not invoke the Old Policy. Mr. Martin was told that he should not speak about any individual members of city council. But that is not what the Old Policy requires. Instead, the Old Policy instructs speakers to

11

"address the Council as a body." (Old Policy, ECF No. 1-2, PageID # 34).

73.    There is a significant constitutional difference between addressing a council member and speaking about a council member. *See, e.g.*, *Moms for Liberty - Brevard Cnty., FL v. Brevard Pub. Sch.*, 582 F. Supp. 3d 1214, 1217 (M.D. Fla. 2022) *aff'd*, No. 22-10297, Case: 1:23-cv-02312, 2022 WL 17091924 (11th Cir. Nov. 21, 2022).

74.    Martin's statements about contributions to various council members—the source of his damages claim—were not prohibited by the Old Policy. Therefore, the September 25 incident the injunctive relief directed at the Old Policy are unrelated claims.

75.    Second, Mr. Martin's claims for past relief and future relief are unrelated. The Sixth Circuit emphasizes this distinction by generally not awarding fees for temporary injunctive relief. *See, e.g.*, *Bobay v. Wright State Univ.*, No. 22-4007, 2023 WL 3963847, at \*2 (6th Cir. June 13, 2023); *Roberts v. Neace*, 65 F.4th 280, 284 (6th Cir. 2023). And Mr. Martin's motion for preliminary injunctive relief was not granted.

76.    **Because Mr. Martin's claim for damages is unrelated to his request for temporary injunctive relief, and temporary injunctive relief will generally not support a fee petition anyway, only time expended by Mr. Martin's counsel as it relates to obtaining damages is "reasonable" under *Hensley*.**

77.    Thus the first step in determining the reasonableness of the fee was eliminate those unrelated to obtaining $500 in damages for Mr. Martin. Those entries are marked as "**injunction**" in Exhibit F, and includes all of Mr. Martin's effort to obtain injunctive relief.

78.    I then considered three factors for the entries: (1) whether the substance of the time entries was reasonable and appropriate given the nature of the claims and facts of this case; (2) whether the amount of time expended on such substance was reasonable given the level of

experience; and (3) whether good billing judgment was exercised. *See Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983).

79.     Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended. *Case v. Unified School Dist. No. 233, Johnson Cty., Kan.,* 157 F.3d 1243, 1250 (10th Cir.1998). Hours that an attorney would not properly bill to his or her client cannot reasonably be billed to the adverse party. *Id.* Having billed many public clients in the last 40 years, I have a good sense of what entries would be compensated. And which ones not.

80.     Good billing judgment also mandates an attorney provide a reasonably specific invoice that enables a client to determine, at minimum, the general subject matter of the work performed. *Hensley*, 461 U.S. at 437, n. 12 ("Plaintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended. But at least counsel should identify the general subject matter of his time expenditures.")

81.     Good billing judgment prohibits these types of entries:

    a.     "**Block Billing**": This is where numerous entries are lumped together under one total, one "is left to approximate the amount of time which should be allocated to each task." *See Imwalle v. Reliance Med. Prods.*, 515 F.3d 531, 553 (6th Cir. 2008); *Cleveland Area Bd. Of Realtors v. City of Euclid*, 965 F. Supp. 1017, 1021 (N.D. Ohio 1997), citing *In re Olson*, 280 U.S. App. D.C. 205, 884 F.2d 1415, 1426 (D.C. Cir. 1989).

    b.      "**Vagueness**": A client and court must be sufficiently detailed to enable a court to review the reasonableness of the hours expended. *Wooldridge v. Marlene Industries Corp.*, 898 F.2d 1169, 1177 (6th Cir.1990) (counsel is required to, at minimum, identify the general subject matter of the entry; rejecting entry "general services

including phone conversation with John White."); see also *Dailey v. Societe Generale*, 915 F. Supp. 1315, 1328 (S.D.N.Y. 1996*), aff'd in part*, *vacated in part on other grounds*, 108 F.3d 451 (2d Cir. 1997) ("The Court agrees that the entries listed simply as 'telephone call,' 'consultation,' and 'review of documents' are not sufficiently specific so as to enable the Court to determine whether the hours billed were duplicative or excessive"); *Pressman v. Estate of Steinvorth*, 886 F. Supp. 365, 367 (S.D.N.Y.1995) (holding that plaintiff is not entitled to reimbursement for work described in invoices only as "telephone conversation," "prepare correspondence," or "review of file")

c. "**Unspecific**": The absence of appropriately specific time records, except in extraordinary circumstances, will call for a substantial reduction in hours or, in egregious cases, disallowance. *Communities for Equity v. Michigan High School Athletic Ass'n*, 2008 WL 906031, *14 (Mar. 31, 2008) citing *Grendel's Den, Inc. v. Larkin*, 749 F.2d 945, 952 (1st Cir.1984). Any ambiguities arising out of poor time records should be resolved against the fee applicant. *Communities for Equity* at *14 citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1142 (2d Cir.1983)

d.  "**Duplicative**": A lawyer fails to experience good billing judgment when he bills for seemingly the same tasks repeatedly, such as multiple preparations for an oral argument. *See, e.g.*, *Lalla v. City of New Orleans*, 161 F. Supp. 2d 686, 702 (E.D. La. 2001). The same is true when multiple attorneys do the same tasks. *Brooksbank v. Koch,* No. 3:16CV-00668-JHM, 2019 WL 7407401, at *5 (W.D. Ky. Apr. 15, 2019) (40% reduction for duplicative work); *see also Bell v. Prefix, Inc.*, 784 F.

14

Supp. 2d 778, 787 (E.D. Mich. 2011).

e.   "**Clerical**": A good bill should not include clerical tasks performed by attorneys. *See, e.g.*, *Smith v. Serv. Master Corp.*, 592 F. App'x 363, 371 (6th Cir. 2014).

f.   "**Instruction**": A legal clinic's work instructing students or others is not compensable. *See, e.g.*, *Petrovits v. New York City Transit Auth.*, No. 95 CIV. 9872(DFE), 2004 WL 42258, at *4 (S.D.N.Y. Jan. 7, 2004).

g.   "**Lobbying**": The Sixth Circuit has upheld that a denial of fees for lobbying a municipal legislative body for a change in policy before the suit was filing because it was "not a necessary prerequisite to filing suit." *Kentucky Rest. Concepts Inc. v. City of Louisville*, 117 F. App'x 415, 420 (6th Cir. 2004).

82.   Another limiation on fee recovery is found in the details of the Rule 68 offer of judgment. The Rule 68 only included fees "to the date of this offer," January 23, 2024. (Offer, ECF No. 16-1). This excludes attorney's fees and costs incurred after January 23, 2024, including the "fees-on-fees" requested here. *See, e.g.*, *Lilly v. City of New York*, 934 F.3d 222, 235 (2d Cir. 2019); *Montgomery v. Kraft Foods Glob., Inc.,* No. 1:12-CV-00149, 2015 WL 881585, at *8 (W.D. Mich. Mar. 2, 2015), *aff'd,* 822 F.3d 304 (6th Cir. 2016). This is marked as either "**Post-Rule 68**" or "**fees-on-fees**."

83.   A final issue is the Reply brief filed in this case. Cleveland indicated that a new policy would likely be passed at the regularly scheduled January 22, 2023 meeting. (*See* Notice, ECF No. 9). A new policy would moot the injunctive relief. Thus, it made sense to make Mr. Martin's reply due after this meeting—and it was. Mr. Martin's Reply was not due until January 23, 2023. But Mr. Martin did not wait. Instead of waiting until after the meeting, Mr. Martin filed the Reply early—knowing this work would soon be worthless. (*See* Reply, ECF No. 13). Because I would find it would be inappropriate to bill the client for work that was almost certain to be

overcome by events, the work on the Reply was unnecessary. This has been marked as "**Reply**."

84.     The improper entries are marked in Exhibit F.

85.     The billing for October 13, 2023 is illustrative of the common problems.

86.     Several events happened on October 13, 2024, according to the billing narrative, including lobbying for a change in policy, a client update, and an internal meeting.

87.     Attorney Geronimo blocked billed 2.7 hours for these events, which includes lobbying the city and instructing his students: "Prepare for and attend Clinic team meeting with Law Director Griffin, Attorneys Scalish, Melnyk, Aston; update client and discuss next steps."

88.     Even though Attorney Geronimo was there, Attorney Coulter billed this same event for one hour across multiple entries: "Meeting with legal team and Cleveland City Council attorneys (Mark Griffin, Patricia Aston, Rachel Scalish, and Stephanie Melnyk) to discuss CWRU First Amendment Clinic's letter"; "Call to client re: meeting with Cleveland legal team"; and "Team debrief after call with Cleveland legal team. Discussion of next steps."

89.     Attorney Gerber also billed this same meeting, though for a different amount of time than Attorneys Geronimo and Coulter: "Phone call with City of Cleveland Law Director and other City attorneys to discuss our client's position regarding Council's public comment policy."

90.     And so did the law students—and for different amounts of time: Brooke White, .58, "Meeting with counsel for Cleveland City Council"; Hannah Scifres, 1, "meeting with Mark Griffin; post-meeting discussion with Chris (client)"; Jacob Cohen, 1.0833, "Call with Mark Griffin and follow up with Chris"; Patrick Elliot, .6666, "Debriefed after teams call with City law department. Placed call with client afterwards to discuss the meeting and steps moving forward."

91.     All the above entries are listed for October 13, 2023 and describe the same events.

92.     Yet there are seven different billers seeking time—and different amounts of time—

for the same tasks.

93.    Thus, even if these entries were not blocked billed, lobbying, or instruction, good billing judgment prohibits billing seven people doing the exact same thing, I would have serious concerns about billing a client seven times for the same task. And a client would have reasonable concerns about why these same events took different amounts of time.

94.    Still, I understand that should this Court decide to award fees, then it must determine what amount of time was reasonable.

95.    Overlooking the narrative deficiencies, I identified the time that would be reasonable for the damages claim in green narrative boxes.

96.    This is the following total reasonable time, by biller:

    a.  Attorney Geronimo:  14.6

    b.  Attorney Coulter: 4.13

    c.  Attorney Gerber: 14.6

    d.  Students:  30.61

**What rates are reasonable for the attorneys?**

97.    Again, this Court should award no fees because the claimed fees did not result in of the Mr. Martin's obtaining a favorable judicial result. But if the Court does award some fees, then the hours awarded should not exceed 63.95.

98.    The next question is the reasonable hourly rate.

99.    I am familiar with the local billing practices and rates. I have appeared in this Court more than 70 times and currently represent many clients in the Greater Cleveland area as it relates to civil rights and public law.

100.    I first reviewed the qualifications of **Andrew Geronimo.** According to his resume, he is a 2010 graduate of Case Western Reserve University Law. This means he has around 14

years of experience. He identified some cases involving § 1983. But I would not consider him to have above-average experience. This was shown in this litigation where, as the supervisor, he approved naming Cleveland City Council as a party. This mistake is likely attributable to his public records experience as some courts have held that a city council may be sued for public records purposes.

101.    I then reviewed the qualifications of **Sarah Coulter** and **Siobhan Gerber**. Attorney Coulter is a 2017 graduate of Ohio State law. Much of her experience relates to discovery issues, though she some has some recent experience as it relates to civil rights. Attorney Gerber is 2021 law school graduate, but has only been practicing law as an attorney since September 2023. That said, her clerkship experience will likely help her going forward. I find that neither attorney has above-average experience as it relates to cases like this one.

102.    Therefore, find the following attorney rates reasonable for cases like this one:

   **a.  Andrew Geronimo (14 years): $275 per hour**

   **b.  Sara Coulter (7 Years):       $225 per hour**

   **c.  Siobhan Gerber (1 Years):  $200 per hour**

103.    These rates align with the Ohio State Bar Association economic study concerning attorney rates, *The Economics of Law Practice in Ohio: A Desktop Reference. See* Exhibit G. In 2019, OSBA found the following rates as average according to a table on page 44:

   a.  11-15 years:    $250 per hour

   b.  6-10 years:     $215 per hour

   c.  1-2 years:      $165 per hour

104.    It is common for judges in this district to use the rates provided by the Ohio State Bar Association.

105.    Chief Judge Lioi, for example, recently found the "Ohio State Bar Association's Report ("OSBA Report"), *The Economics of Law Practice in Ohio in 2019*, A Desktop Reference, to be a particularly helpful resource." *Ramsey v. FirstEnergy Corp.*, No. 5:23-CV-86, 2023 WL 6794478, at *5 (N.D. Ohio Oct. 13, 2023);

106.    Other judges find this survey helpful too. *See, e.g.*, *Perry v. Oregon Healthcare, LLC*, No. 3:22 CV 1512, 2023 WL 423249, at *2 (N.D. Ohio Jan. 26, 2023) *(*Knepp, J.) (relying on OSBA survey); *Blues To You, Inc. v. Auto-Owners Ins. Co*., No. 1:21-CV-00165, 2022 WL 10192897, at *3 (N.D. Ohio Oct. 17, 2022) (Parker, M.J.) ("This court has historically turned to the Ohio State Bar Association's study for guidance on determining reasonable attorney's fees."); *Ra v. Orange Vill.*, No. 1:15-CV-2416, 2017 WL 1734001, at *3 (N.D. Ohio May 4, 2017) (Gwin, J.) (relying on OSBA survey).

107.    I understand that Mr. Geronimo has requested $475 per hour for himself and then lower rates for others. One piece of evidence to support this rate could be what his clients actually pay him for First Amendment work. However, I do not read his declaration to demonstrate that clients pay him that rate.  Instead, he says that he looked to "case law" and the rates of other attorneys in First Amendment cases, rather than his own. (Geronimo Decl., ¶ 42).

108.    For all these reasons, including the reasonable local rates, supported by the Ohio State Bar Association, a reasonable hourly rate should not exceed $275 per hour, and then the rates should be adjusted downwards for those with less experience.

<u>**How much student time should be compensated?**</u>

109.    As a long-time member of this legal community, I have struggled with whether law students should be compensated.

110.    On one hand, the fee-shifting civil rights statutes are designed to create a market where there is none, and non-attorney time, such as a paralegal time, is often compensated. This

lends towards paying some amount for legal interns.

111.    On the other hand, litigation as an educational exercise has significant problems. This includes, for example, manufacturing disputes where there are none. And then filing motions or replies when unnecessary for the sake of education. Additionally, one of the policy ideas behind fee-shifting is compensating for costs incurred in litigation. Here, the law students *paid tuition* for the privilege of litigating. Similarly, federal courts do not pay externs who are receiving credit for the same experience.   If the courts do  not compensate a law student who is receiving credit, should this Court pay these law students who received credit?

112.    I'm also concerned by the incentive of using hordes of law students to potentially seek fees later. Nearly a dozen law students worked on a case that could have been handled comfortably by a junior attorney supervised by an experienced attorney. Many hands may be needed when there are large files of documents to review or significant motion practice. That was not the case here, as there was just a three-minute video and a few substantive documents filed before the case was resolved.

113.    Notwithstanding these misgivings, my review of the case law shows that the tendency is to provide for student time—so long as it is "reasonably" billed. Therefore, all unreasonable time has been marked as such using the same standard for attorney time.

114.    The next question is the rate.

115.    I looked at what other law schools use in cases like this. I did this by reaching out to my Isaac Wiles colleague, Greg Travalio, who ran Ohio State's legal clinic for a long time, and the current clinic leader, Professor Elizabeth Cooke.

116.    The Clinic at the Ohio State University Moritz College of Law uses $75 per student time (and $250 per hour for professor time). This is a reasonable rate for the Case Clinic's

students, too.

117.    Ohio State is also careful about duplicative time. So, for example, if a hearing is attended by a professor/attorney and two law students, then the law student time is written off. This is an example of good billing judgment, and I applied the same standard here.

### My Compensation

118.    To provide this opinion I charged $395 per hour for a total fee of $2,528.00.

119.    I did so without a financial stake in the outcome of the litigation. Neither I nor my firm represents the City of Cleveland (or its employees) in any pending litigation, and we have no history of representing Cleveland (or its employees).

120.    I declare under penalty of perjury that the foregoing is true and correct.

Executed this ___19th___ day of April, 2024.

Mark Landes

# Exhibit A



# Mark Landes
Direct Line: (614) 220-5149
mlandes@isaacwiles.com



**Education:** Johns Hopkins University, Baltimore, Maryland
Bachelor of Arts, 1978

The Ohio State University, Columbus, Ohio
Doctorate of Law, 1982

**Current:** Isaac Wiles & Burkholder  LLC    1987-present
Managing Partner Emeritus
Ohio – Law license since 1982
Admitted to practice in United States District Courts, Northern and
Southern Divisions of Ohio, and Sixth Circuit Court of Appeals

**Honors:** Named to Best Lawyers in America in local government law, first amendment, and
employment law; multiple times named "Lawyer of the Year"
Named a Superlawyer in Ohio
Named to Who's Who in Law in Columbus by Business First
Co-Lead counsel in Multi-District Litigation for class action

**Activities:** *Special Master,* **United States District Court for the Southern District of Ohio.**
Appointed by federal judge in <u>Martin v. Taft</u> to resolve a dispute over $655 million
of funding per year for services for mentally retarded and developmentally disabled
individuals in Ohio.

*Special Monitor,* **United States District Court for the Southern District of
Ohio**.  Appointed by federal judge for <u>Value Behavioral Health v. State of Ohio</u> to
review contracting process for multi-million dollar public contract.

*Member,* **Ohio Jury Instructions Drafting Committee, Ohio Judicial College.**
Selected by the Ohio Supreme Court to serve as special member on a committee
of judges to draft pattern jury instructions for jury trials involving employment
litigation.  Jury instructions and their commentaries are known as authoritative
among Ohio judges and lawyers.

*Author,* **Jury Verdict Reports, United States District Court for the Southern
District of Ohio.**  With the cooperation of the Court and the Federal Bar
Association, Columbus Chapter, chronicle each jury verdict from the federal
courthouse in Columbus.

*Mediator.*  Appointed by federal and state courts to mediate all types of disputes.
Frequently retained by private parties to mediate resolutions of litigated and pre-
suit matters, including employment, business, and personal injury matters.

---

COLUMBUS OFFICE
Two Miranova Place, Ste. 700
Columbus, Ohio 43215 | 614-221-2121
TOLL FREE: 800-337-0626



WORTHINGTON OFFICE
300 West Wilson Bridge Road, Ste 170
Worthington, Ohio 43085 | 614-221-2121

WWW.ISAACWILES.COM

***Seminar Instructor.***  Developed and taught numerous seminars throughout Ohio for businesses, insurers, and county officials on liability and immunity.  Frequently lecture on professionalism, ethics, trial practice, real estate, insurance and liability issues under employment law, Ohio's Sovereign Immunity Statute, the Soldier's and Sailor's Civil Relief Act, Veterans Reemployment Rights Act, and OSHA regulations.

***Judge Advocate,*** **United States Army Reserve.**  As the former Chief of Training, 9th Legal Services Organization, advised the command and its soldiers on all legal issues.  Assumed responsibility for all operations and training within a JAG unit. Retired as Lieutenant Colonel.

***Legal Counsel,*** **County Engineers Association of Ohio, 1993-1994**.  Counsel to the Association to advise on legal liability and give opinions concerning safety, contracting and personnel issues.

***Past President, Federal Bar Association***, **Columbus Chapter (two tours)**
***Past Chair, Labor and Employment Committee***, **Columbus Bar Association**
***Past Chair, Federal Courts Committee***, **Ohio State Bar Association**
***Select Member, Jury Instructions Committee***, **Ohio State Bar Association**
***Select Member, Judicial Screening Committee***, **Columbus Bar Association**
(01-2009 thru 12-31-2011)

***Member, Ohio State Dental Board***, **2003-2006.**  Member of the regulatory body over the dentists of Ohio, considering licensing, discipline and availability of services.

***Adjunct Assistant Professor,*** **The Ohio State University, College of Law, 1991-1992.**  Taught legal writing to first- and second-year students.

***Civil Litigation Attorney,*** **Department of the Army, 1985-1987.**  Nominated and competitively selected as a member of the Army Litigation Division.  Represented the Departments of Defense and Army in all aspects of sensitive civil litigation, including constitutional challenges to personnel policies.  Wrote briefs filed in federal courts throughout the country.  Edited briefs of Defense and Justice Department litigators.

***Trial Counsel,*** **Fulda, Germany, 1983-1985.**  Served as military equivalent of district attorney for a community of 15,000 located on the Iron Curtain.  Tried over 60 cases, including those involving murderers and spies.

***Legal Assistance Attorney,*** **Frankfurt, Germany, 1982-1983.**  Acted as a general practitioner to community of 70,000, providing legal counsel to clients on estate, domestic, landlord-tenant, consumer, and tax law.  Drafted approximately 300 separation agreements, 200 wills, and numerous advocacy letters.

**Outside Activities:**    ***Chair,*** **Board of Zoning Appeals, London, Ohio.**

***Member,*** **Legatus, Columbus Chapter (former Treasurer and Vice President)**

***Cubmaster,*** **Boy Scout Pack 298, 1995-1998.**

***President,*** **City Council of London, Ohio, 1981-1982.**   Elected head of the legislative body of county seat of 7,000.  Drafted $3 million budget; organized passage of a tax renewal.

***Aide,*** **United States Senator Robert Taft, Jr., 1976.**

***Clerk,*** **Supreme Court of Ohio Law Library, 1975.**

***Editor-in-Chief,*** **Johns Hopkins University Magazine, 1978.**

**Personal:**    Married to Moira Landes since 1980
Three children: Sam, Roger and Stephanie

# Exhibit B

## Allan Dreyer

**From:** Rachel Scalish
**Sent:** Monday, October 9, 2023 10:57 AM
**To:** Blaine Griffin; Patricia J. Britt; Allan Dreyer
**Cc:** Jennifer HeinertO'Leary
**Subject:** FW: Letter Regarding Council's Violation of Our Client's First Amendment Rights @ 09/25/23 Meeting

Director Griffin and I have discussed the letter received from the CWRU Clinic.  Below is his response, which I agreed to beforehand

Rachel

**From:** Griffin, Mark <MGriffin@clevelandohio.gov>
**Sent:** Monday, October 9, 2023 10:19 AM
**To:** Brooke White - Kramer Clinic <bwhite-lawclinic@case.edu>
**Cc:** Andrew Geronimo <acg33@case.edu>; Sara Coulter <sec142@case.edu>; Siobhan Gerber <sao27@case.edu>; Hannah Scifres - Kramer Clinic <hscifres-lawclinic@case.edu>; Patrick Elliott - Kramer Clinic <pelliott-lawclinic@case.edu>; Jacob Cohen - Kramer Clinic <jcohen-lawclinic@case.edu>; Nneka Onyekwuluje - Kramer Clinic <nonyekwuluje-lawclinic@case.edu>
**Subject:** RE: Letter Regarding Council's Violation of Our Client's First Amendment Rights @ 09/25/23 Meeting

Ms. White,

Thank you for your email.

Please let Mr. Martin know that he is welcome to provide public comment at the next Cleveland City Council on the issues that he previously addressed.

Mr. Martin would need to sign up in a timely manner but is otherwise invited and encouraged to continue or complete his remarks (subject to the time limitations for all public commenters).

I can be reached at 216-664-2893 if you would like to discuss the matter further.

Best Regards,

Mark Griffin
Law Director, City of Cleveland

**From:** Brooke White - Kramer Clinic <bwhite-lawclinic@case.edu>
**Sent:** Friday, October 6, 2023 12:48 PM
**To:** Griffin, Mark <MGriffin@clevelandohio.gov>
**Cc:** Andrew Geronimo <acg33@case.edu>; Sara Coulter <sec142@case.edu>; Siobhan Gerber <sao27@case.edu>; Hannah Scifres - Kramer Clinic <hscifres-lawclinic@case.edu>; Patrick Elliott - Kramer Clinic <pelliott-lawclinic@case.edu>; Jacob Cohen - Kramer Clinic <jcohen-lawclinic@case.edu>; Nneka Onyekwuluje - Kramer Clinic <nonyekwuluje-lawclinic@case.edu>
**Subject:** Letter Regarding Council's Violation of Our Client's First Amendment Rights @ 09/25/23 Meeting

1

You don't often get email from bwhite-lawclinic@case.edu. Learn why this is important

**CAUTION:** This email originated from outside of the City of Cleveland. Do not click on links or open attachments unless you recognize the sender and know that the content is safe. If you believe that this email is suspicious, please forward to phishing@clevelandohio.gov.

Dear Mr. Griffin,

My name is Brooke White, and I am a Certified Legal Intern--supervised by attorneys Andrew Geronimo, Sara Coulter, and Siobhan Gerber--for the First Amendment Clinic at Case Western Reserve University School of Law. My colleagues Jacob Cohen, Nneka Onyekwuluje, Patrick Elliott, and Hannah Scifres, also Certified Legal Interns, are copied on this e-mail.

The Clinic has been retained by Chris Martin to represent him in connection with the Council's refusal to let him finish his public comment at the September 25, 2023 City Council Meeting.

Attached please find our letter introducing the Clinic and explaining our concerns. We look forward to meeting and reaching a resolution soon.

Thank you,

Brooke White
Andrew Geronimo
--
Brooke White
*Certified Legal Intern*, First Amendment Clinic
Case Western Reserve University School of Law
11075 East Blvd
Cleveland, Ohio 44106
pronouns: she/her/hers

The information contained in this email transmission and any attachments thereto is intended for use by only the addressee(s) and may contain legally privileged and/or confidential information.  If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email and any attachments or other communication of contents is strictly prohibited.  If you have received this email in error, please immediately notify me at (216) 368-2766 and permanently delete the original copy or printout.

# Exhibit C

## Griffin, Mark

| | |
|---|---|
| **From:** | Griffin, Mark |
| **Sent:** | Thursday, November 30, 2023 12:54 PM |
| **To:** | Andrew Geronimo; Scalish, Rachel; Melnyk, Stephanie; Aston, Patricia |
| **Cc:** | Sara Coulter; Siobhan Gerber; Nneka Onyekwuluje - Kramer Clinic; Brooke White - Kramer Clinic; Hannah Scifres - Kramer Clinic; Jacob Cohen - Kramer Clinic; Patrick Elliott - Kramer Clinic |
| **Subject:** | RE: Chris Martin's potential claims against Cleveland City Council |

Mr. Geronimo:

Thank you for your email regarding Cleveland City Council's public comment period.

As Law Director, I represent City Council in legal proceedings.   Please direct future communications to me at this email address.

I would like to extend again an invitation to your client to participate in the public comment period at City Council.

I would also like to reaffirm that the City is only enforcing the pre-registration requirement, the limit of ten (10) public commenters, and the 3-minute time limitation.

Although you may not always see the on-going City operations, your letter and our video conversation have been taken into serious consideration.

As the City continues to improve and re-evaluate its process for promoting public comment, City Council is working to amend and update its Public Comment Rules and Procedures.

Best Regards,

Mark Griffin
Cleveland Law Director

**From:** Andrew Geronimo <acg33@case.edu>
**Sent:** Tuesday, November 28, 2023 1:37 PM
**To:** Scalish, Rachel <rscalish@clevelandcitycouncil.org>; Griffin, Mark <MGriffin@clevelandohio.gov>; Melnyk, Stephanie <smelnyk@clevelandohio.gov>; Aston, Patricia <PAston@clevelandohio.gov>
**Cc:** Sara Coulter <sec142@case.edu>; Siobhan Gerber <sao27@case.edu>; Nneka Onyekwuluje - Kramer Clinic <nonyekwuluje-lawclinic@case.edu>; Brooke White - Kramer Clinic <bwhite-lawclinic@case.edu>; Hannah Scifres - Kramer Clinic <hscifres-lawclinic@case.edu>; Jacob Cohen - Kramer Clinic <jcohen-lawclinic@case.edu>; Patrick Elliott - Kramer Clinic <pelliott-lawclinic@case.edu>
**Subject:** Chris Martin's potential claims against Cleveland City Council

1

Dear Attorney Scalish,

Yesterday afternoon following the City Council Caucus meeting, Councilor Joe Jones asked for my card (which I gave him), and also gave me his contact information. He wanted to discuss the First Amendment and public comment policies, but I told him that since I was representing Mr. Martin and I believed you represented him in his capacity as a Member of Council, that I couldn't speak to him about the substance of how the First Amendment applies at public comment periods--even generally. As we offered in our correspondence, we would be happy to have a substantive discussion about Council's proposals for revising its policies in connection with Mr. Martin's potential claims against City Council/Members of Council, but I think you would have to arrange that meeting or, if you prefer, give us permission under Prof. Cond. R. 4.2 to speak to either the body as a whole, or to any individual Councilmembers who are interested.

It has been several weeks since our November 3 Letter that provided substantive analysis of the existing policy--and nine weeks since Council President Griffin censored Mr. Martin pursuant to Council's clearly unconstitutional policies. Based on Council's lack of communication since that Letter (even when we attended the November 13 and 27 Caucus Meetings), we were under the impression that Cleveland City Councilmembers are not interested in engaging with us further about the constitutionality of any proposed revisions (which is why I was somewhat surprised when Councilor Jones attempted to solicit our input following the November 27 Caucus meeting). If that is not the case, please let us know as soon as possible.

In our November 3 Letter, we wrote that Mr. Martin hoped that our recommendations would help resolve the issue of his claims related to the serious constitutional violation on September 25, and as to the unconstitutionality of the policy generally. At the start of this process, Mr. Martin hoped for an "efficient and productive" resolution wherein my office would work with City Council for an acceptable solution. But he is also prepared to enforce his rights through the Courts if our pre-litigation efforts were not productive (which they seem not to have been). To that end, Mr. Martin is prepared to file a civil rights lawsuit in the United States District Court for the Northern District of Ohio seeking damages resulting from the September 25 violation of his First Amendment rights, an order enjoining City Council from enforcing its unconstitutional policies, and other relief.

If there is any other information City Council or any individual Councilmember would like to provide Mr. Martin to aid in his decisionmaking process, please let me know within 48 hours of this email. Please also let us know if you will agree to accept service for any individually-named Councilmembers in the event Mr. Martin believes he needs to file a lawsuit to enforce his rights.

Thank you,
Andy
--
Andrew Geronimo
*Director, First Amendment Clinic*
*Lecturer in Law*
Case Western Reserve University School of Law
11075 East Blvd
Cleveland, Ohio 44106
216.368.2766 (phone)



**FIRST
AMENDMENT
CLINIC**
at Case Western Reserve
University School of Law

_____

The information contained in this email transmission and any attachments thereto is intended for use by only the addressee(s) and may contain legally privileged and/or confidential information.  If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email and any attachments or other communication of contents is strictly prohibited.  If you have received this email in error, please immediately notify me at (216) 368-6855 and permanently delete the original copy or printout.

# Exhibit D



HEINONLINE

DATE DOWNLOADED: Fri Mar 22 11:27:04 2024
SOURCE: Content Downloaded from *HeinOnline*

Citations:
Please note: citations are provided as a general guideline. Users should consult their preferred
citation format's style manual for proper citation formatting.

Bluebook 21st ed.
William Edward Baldwin, ed. Throckmorton's Ohio Code Annotated; Baldwin's 1936
Certified Revision, Complete to May 1, 1936 (1936).

ALWD 7th ed.
Baldwin, William Edward, ed. Throckmorton's Ohio Code Annotated; Baldwin's 1936
Certified Revision, Complete to May 1, 1936 (1936).

APA 7th ed.
Baldwin, W. (1936). Throckmorton's Ohio Code Annotated; Baldwin's 1936 Certified
Revision, Complete to May 1, 1936. Cleveland, Banks-Baldwin Company.

Chicago 17th ed.
Baldwin William Edward, ed. Throckmorton's Ohio Code Annotated; Baldwin's 1936
Certified Revision, Complete to May 1, 1936. Cleveland, Banks-Baldwin Company.

McGill Guide 9th ed.
William Edward Baldwin, ed., Throckmorton's Ohio Code Annotated; Baldwin's 1936
Certified Revision, Complete to May 1, 1936 (Cleveland: Banks-Baldwin Company., 1936)

AGLC 4th ed.
William Edward Baldwin, ed., Throckmorton's Ohio Code Annotated; Baldwin's 1936
Certified Revision, Complete to May 1, 1936 (Banks-Baldwin Company., 1936

MLA 9th ed.
Baldwin, William Edward, ed. Throckmorton's Ohio Code Annotated; Baldwin's 1936
Certified Revision, Complete to May 1, 1936. Cleveland, Banks-Baldwin Company.
HeinOnline.

OSCOLA 4th ed.
Baldwin, William Edward, ed. Throckmorton's Ohio Code Annotated; Baldwin's 1936
Certified Revision, Complete to May 1, 1936. Cleveland, Banks-Baldwin Company.
Please note: citations are provided as a general guideline. Users should consult
their preferred citation format's style manual for proper citation formatting.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
   Conditions of the license agreement available at
   *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

## SUBDIVISION II.  EXECUTIVE.

CHAPTER 1.  THE EXECUTIVE POWER.
CHAPTER 2.  MAYOR.
CHAPTER 3.  PRESIDENT OF COUNCIL.
CHAPTER 4.  AUDITOR AND CLERK.
CHAPTER 5.  TREASURER.
CHAPTER 6.  SOLICITOR.
CHAPTER 7.  SEALER OF WEIGHTS AND MEASURES.

CHAPTER 8.  PUBLIC SERVICE.
CHAPTER 9.  PUBLIC SAFETY.
CHAPTER 10.  BOARD OF CONTROL.
CHAPTER 11.  BOARD OF HEALTH.
CHAPTER 12.  CIVIL SERVICE.
CHAPTER 13.  TRUSTEES OF THE SINKING FUND.

## CHAPTER 1.

## THE EXECUTIVE POWER.

CITIES.

SECTION
4246.  Executive power; in whom vested.
4247.  Powers of officers as to appointments and removals.

VILLAGES.

4248.  Executive power; where vested.

**EXECUTIVE POWER.**—Authority exercised by that department of government which is charged with the administration or execution of the laws as distinguished from the legislative and judicial functions. Bouvier's Law Dictionary, Baldwin's Revision, p. 379.

## CITIES.

**§ 4246.  Executive power; in whom vested.**—The executive power and authority of cities shall be vested in a mayor, president of council, auditor, treasurer, solicitor, director of public service, director of public safety, and such other officers and departments as are provided by this title. (96 v. 62, § 128.)

*Municipal Corporations, 152 et seq.*

See G.C. § 4211 and note citing State v Wiegand.
Municipality may be bound by its properly constituted authorities whenever they have power to act in the premises. Cincinnati v Morgan, 4 O.F.D. 50, 70 U.S. 275, 18 L. Ed. 146.

An executive officer may be made amenable to compulsory power of the courts. State v Chase, 5 O.S. 528.

Paine law went into effect Aug. 1, 1909, and from and after Jan. 1, 1910. State v Roney, 82 O.S. 376, 92 N.E. 486.

Public officers have only such powers as are expressly delegated to them by statute, and such as are necessarily implied from those so delegated. State v Railway, 3 N.P. (N.S.) 234, 15 D. 728.

**§ 4247.  Powers of officers as to appointments and removals.**—Subject to the limitations prescribed in this subdivision such executive officers shall have exclusive right to appoint all officers, clerks and employes in their respective departments or offices, and likewise, subject to the limitations herein prescribed, shall have sole power to remove or suspend any of such officers, clerks or employes.  (99 v. 562, § 129.)

*Municipal Corporations, 154 et seq.*

Directing by law the manner in which an appointment may be made, is different from making the appointment. State v Kennon, 7 O.S. 546.

A person holding office is ineligible to appointment to incompatible office. State v Taylor, 12 O.S. 130.

Vacancy in appointive office does not exist when there is an incumbent qualified to hold over. State v Howe, 25 O.S. 588.

Meaning of words "office" and "officers." State v Jennings, 57 O.S. 415, 49 N.E. 404; Shaw v Jones, 4 N.P. 372, 6 D. 453.

A health officer is not an employe as that word is used in G.C. § 4426. State v Craig, 69 O.S. 236, 69 N.E. 228; State v Massillon, 2 O.C. (N.S.) 167, 14 C.D. 249.

Cited as to power to appoint and remove deputies. State v Egry, 79 O.S. 405, 87 N.E. 272.

The section of the so-called Paine law (99 v. 562, G.C. § 4247), went into effect as therein provided, respectively "on Aug. 1, 1909," and from and after Jan. 1, 1910." Between July 31, 1909, and Jan. 1, 1910, the exercise of the power of appointment and of removal of the chief of police of a city was at the pleasure of the mayor, excepting that the appointee must be an elector of the city. State v Roney, 82 O.S. 376, 92 N.E. 486.

An officer cannot make an appointment to begin after his term expires; except where statute provides that he shall appoint on a certain day. State v Ermston, 14 O.C. 614, 8 C.D. 83.

Clerk of board of education is an officer within meaning of the new school code, 97 v. 379 and G.O. § 8; State v Coon, 4 C.C. (N.S.) 560, 16 C.D. 241; State v Cove, 4 O.C. (N.S.) 647, 16 C.D. 301.

Secretary of a municipal board of waterworks trustees, continuing to act under service board upon adoption of municipal code of 1902 is not an officer but is a mere employe. Hutchinson v Lima, 6 C.C. (N.S.) 529, 17 C.D. 545.

Assistant matron of work-house is not an officer but is a mere employe, and may, on sufficient proof of misconduct or neglect, be summarily removed. Jameson v Cincinnati, 7 C.C. (N.S.) 100, 18 C.D. 41.

The power to employ superintendents and engineers, as may be necessary, is discretionary and cannot be delegated. Kelley v Cincinnati, 7 N.P. 360, 9 D. 611.

Where power to remove is conferred on executive officer by law, injunction will not lie at suit of party to be removed to restrain the removal. Kerr v Hinkle, 12 D. 365; Littleton v Infirmary Directors, 18 C.C. 391, 9 C.D. 850; Weber v Bishop, 7 D. Repr. 661; 4 B. 775.

A clerk in the police department of a city, is not a public officer, and cannot enjoin the board of public safety from removing him or its appointee from assuming the office. Bender v Cushing, 14 D. 65.

## VILLAGES.

**§ 4248.  Executive power; where vested.**—The executive power and authority of villages shall be vested in a mayor, clerk, treasurer, marshal, street commissioner, and such other officers and departments thereof as are created by law.  (96 v. 83, § 199.)

*Municipal Corporations, 152 et seq.*

See G.C. § 6212-18 and note citing Tumey v State.

# Exhibit E

20      **The City Record**      March 8, 1922

| | |
|---|---:|
| tories | 525.25 |
| Line Material Co. | 27.75 |
| A. J. Lenahan | 19.20 |
| Lincoln Press Co. | 234.50 |
| Linde Air Products Co. | 24.00 |
| Dr. C. H. Lenhart | 15.00 |
| Loose Wiles Biscuit Co. | 19.72 |
| Leopold Furniture Co. | 20.25 |
| Lubric Oil Co. | 23.11 |
| Lucklemeyer Co. | 86.27 |
| Mutual Supply Co. | 48.08 |
| Myers Auto Radiator Co... | 40.00 |
| Metals Welding Co. | 2.00 |
| Mohr Map Co. | 15.00 |
| Frank Morrison Co. | 12.75 |
| Mollen, Thompson & James Co. | 137.09 |
| J. F. Mott Co. | 15.00 |
| Motor Rim Co. | 50.00 |
| Murphy Shock Absorbing Spring Co. | 31.50 |
| Marshall Drug Co. | 54.07 |
| The May Co. | 13.20 |
| The Mall Motor Co. | 120.40 |
| Martin Barriss Co. | 24.70 |
| Dr. G. A. Miller | 10.00 |
| Madison Foundry Co. | 13.45 |
| Mau Sherwood Supply Co.. | 211.02 |
| Nickel Plate Elevtor Co... | 98.00 |
| The M & M Company | 9.20 |
| Northern Ohio Plating Co. | 75.00 |
| National Mag. of the Food Trade | 2.00 |
| Miller Rubber Co. | 188.93 |
| The Ohio Bell Telephone Co. | 619.88 |
| Oliver Chilled Plow Works | 146.90 |
| Ohio State Telephone Co. | 20.00 |
| Oxweld Acetylene Co. | 42.50 |
| Ohio Chemical Co. | 4.00 |
| Ohio Board of Administration | 75.00 |
| The Ohio State Reformatory | 1,389.60 |
| Ohio Coal & Supply Co. | 11.24 |
| Ohio Card Index & Printing Co. | 7.50 |
| Ohio Macaroni Co. | 247.00 |
| Pittsburgh Plate Glass Co. | 5.57 |
| Prestolite Co. | 8.50 |
| Pittsburgh Water Heater Co. | 1.00 |
| Peerless Motor Car Co. | 432.50 |
| M. Phillips | 20.00 |
| W. R. Peck | 2.37 |
| Perfection Spring Co. | 50.00 |
| The Pathe Exchange Co. .. | 21.00 |
| Pattison Supply Co. | 101.53 |
| Pennsylvania Rubber & Supply Co. | 58.25 |
| Hiram Rivitz Co. | 58.48 |
| Remington Typewriter Co. | 1.55 |
| Ransom & Randolph | 45.00 |
| H. P. Rodgers | 77.40 |
| Reo Service Co. | 1.70 |
| C. D. Reese | 7.50 |
| Robinson Fire App. Mfg. Co. | 10.00 |
| J. J. Russell Co. | 10.00 |
| Royal Exterminating Pro. Co. | 10.00 |
| Root McBride Co. | 2.25 |
| F. W. Roberts Co. | 5.92 |
| Stewart Products Service Station | 14.00 |
| Stewart Warner Speedometer Co. | 9.87 |
| Schild Specialty Co. | 8.88 |
| Karl W. Schr | 46.75 |
| K. L. Stevens Co. | 4.25 |
| Stone Forsythe Co. | 7.80 |
| Scientific Material Co. | 1.25 |
| Gustav Schaefer Wagon Works | 55.83 |
| Swift & Co. | 661.35 |
| Standard Oil Co. | 94.50 |
| Standard Drug Co. | 35.79 |
| J. H. Sherwood Co. | 95.75 |
| Shoinbart Milling Co. | 1,295.00 |
| Schuemann Jones Co. | 848.48 |
| Louis Shaffer Co. | 70.00 |
| W. P. Southworth Co. | 11.38 |
| A. G. Spaulding Co. | 50.00 |
| C. J. Tagliabue | 15.00 |
| Time Saver Patch Co. | 5.16 |
| Roy C. Thomas | 16.00 |
| Telling Belle Vernon Co. | 1,796.05 |
| Wm. Taylor Sons Co. | 7.92 |
| Taylor Bros. Co. | 540.00 |
| Theofa Flour Mills Co. | 22.00 |

| | |
|---|---:|
| T. H. Towell Co. | 6.50 |
| Truck Chain & Supply Co. | 20.26 |
| U. S. Welding Co. | 4.00 |
| Union Elevator Co. | 24.23 |
| Union Engineering Co. | 125.00 |
| Union Paper & Twine Co. | 63.30 |
| Vesta Battery Sales Co. | 41.10 |
| Geo. Worthington Co. | 62.45 |
| Wolf Envelope Co. | 92.13 |
| Wilson Co. | 172.13 |
| Williams Bros. | 37.25 |
| The Widlar Co. | 9.14 |
| The White Co. | 77.97 |
| Will Corporation | 12.55 |
| Willard Storage Battery Co. | 106.28 |
| Western Electric Co. | 87.90 |
| Western Union Telegraph Co. | 4.02 |
| F. O. A. Weber Co. | 250.00 |
| Warren Axe & Tool Co... | 39.00 |
| The Wathey Co. | 3.00 |
| The Wallace & Tiernan Co., Inc. | 750.00 |
| The White Sewing Machine Co. | 10.00 |
| The Weideman Co. | 355.22 |
| The Zettelmeyer Coal Co... | 759.25 |
| Division of Water, City of Cleveland | 5,067.22 |
| Division of Heat & Power, City of Cleveland | 125.55 |
| Division of Light and Heat City of Cleveland | 128,258.00 |
| Division of Refreshments, City of Cleveland | 12.00 |
| Division of Sewer & Water Connections, City of Cleveland | 3,197.36 |
| Division of Sidewalks, City of Cleveland | 1,545.56 |
| Municipal Coal Fund, City of Cleveland | 8,073.02 |
| City Storeroom, City of Cleveland | 7,700.96 |
| Paving Permit Department, City of Cleveland. | 11,979.91 |
| James Fisher | 2,115.82 |
| Hays Mfg. Co. | 6.53 |
| The Clark Fisher Co. | 5.67 |
| The Hinkel Motor Truck Corp. | 6.33 |
| The W. M. Pattison Supply Co. | 14.75 |
| The Cleveland Laundry Co. | 8.23 |
| The Dodd Co. | 5.13 |
| Alves Grange | 200.00 |
| The Best Builders Supply Co. | 138.00 |
| Division 111, City of Cleveland | 64.00 |
| The Wm. F. Ryan Co. | 87.30 |
| The Herman McLean Co... | 260.01 |
| Division 101, City of Cleveland | 140.20 |
| The Republic Electric Co.. | 85.27 |
| The Brooks Oil Co. | 66.00 |
| The Cleveland Builders Supply Co. | 255.03 |
| The W. Bingham Co. | 153.88 |
| The Geo. Worthington Co. | 42.98 |
| The Commercial Oil Co. | 42.85 |
| Cleveland Builders Supply & Brick Co. | 7.47 |
| Fairmount Pumping Station (Water Dept.) | 5.00 |
| Yorke H. Smith Co. | 38.00 |
| Lincoln Press Co. | 6.00 |
| Division 111, City of Cleveland | 240.00 |
| Division 50, City of Cleveland | 39.00 |
| Division 101, City of Cleveland | 1,500.00 |
| The Cuvahoga Coal Co. | 12,271.47 |
| The Harris Wood Fibre Mantle Co. | 1,352.00 |
| The Great Lakes Dredge Co. | 2,422.67 |
| The Meyers Coal & Coke Co. | 8,054.34 |
| S. J. Monck | 3,576.96 |
| The N. Y. C. & St. L. R. R. Co. | 5,544.54 |
| E. V. Raus & Son | 803.50 |

Sec. 2. That this ordinance is hereby declared to be an emergency measure and shall take effect and be in force from and after its passage and approval by the mayor.

Passed February 27, 1922.
C. C. TOWNES,
President of the Council.
F. W. THOMAS,
Clerk of Council.
Approved by the acting mayor February 28, 1922.

**Ord. No. 56990.**

An ordinance to authorize the director of law to settle, adjust, compromise and submit to arbitration all actions, causes of action, claims and demands in favor of or against the city of Cleveland.

Whereas, the subject matter herein provided for constitutes an emergency by way of providing for the usual daily operation of the department of law.

Section 1. Be it ordained by the council of the city of Cleveland, state of Ohio: That the director of law be and he is hereby empowered and authorized to adjust, settle, compromise or submit to arbitration any actions, causes of action, accounts, debts, claims and demands, disputes and matters in favor of or against the city of Cleveland, or in which the city of Cleveland is concerned as debtor or creditor, now existing or that may hereafter arise.

Sec. 2. This ordinance is hereby declared to be an emergency measure and shall take effect and be in force from and after its passage and approval by the mayor.

Passed February 27, 1922.
C. C. TOWNES,
President of the Council.
F. W. THOMAS,
Clerk of Council.
Approved by the acting mayor February 28, 1922.

Ord. No. 57047.

An ordinance to transfer appropriations within the general fund as made by temporary appropriation ordinance No. 56659-A, passed January 16th, 1922.

Whereas, an emergency exists in order to provide for the usual daily operation of various municipal department; now, therefore

Section 1. Be it ordained by the council of the city of Cleveland, state of Ohio: That the following transfers of appropriations be and they are hereby made as follows:

From Div. No. 2, clerk of council, $1,500.00 to Div. No. 1, council, $1,500.00.

From Div. No. 24, architect, $3,000.00 to Div. No. 92, city records, $3,000.00.

From Div. 21, public buildings, $4,000.00 to Div. No. 21, telephone exchange, $4,000.00.

From Div. 25, street repair, $30,000.00 to Div. No. 26, street cleaning, $30,000.00.

From Div. No. 32, dance halls, $3,000.00 to Div. No. 31, public baths, $3,000.00.

From Div. No. 25, street repair, $65,000.00 to Div. No. 52, city hospital, $65,000.00.

From Div. No. 51, tuberculosis hospital, $5,000.00 to Div. No. 50, infirmary, $5,000.00.

From Div. No. 10, elections, $16,000.00 to Div. No. 54, boys' home, $16,000.00.

From Div. No. 51, tuberculosis hospital, $8,000.00 to Div. No. 56, workhouse, $8,000.00.

From Div. No. 27, street lighting, $10,000.00 to Div. No. 53, outdoor relief, $10,000.00.

From Div. No. 37, sewage disposal, $15,000.00 to Div. No. 73, fire, $15,000.00.

From Div. No. 37, sewage disposal, $10,000.00 to Div. No. 111, garbage, $10,000.00.

Sec. 2. This ordinance is hereby

# Exhibit F

**ATTORNEYS**

Mark Landes Notes

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|------|-------|----------|-------------|------|----------|-------|-------|---------|----------|----------|------------|---------|-----------|-------|
| 9/25/2023 | | 0.7 | Review of messages (incl. video) from potential client. | Andrew Geronimo | | | | | | | | | | |
| 9/26/2023 | | 1.5 | Meet with Sara, Siobhan re: client inquiry to discuss research and potential claims and assign tasks to students | Andrew Geronimo | | Y | | | | | Y | | | |
| 9/27/2023 | | 0.5 | Prepare for / conduct telephone call with potential client (w/ Sara, Siobhan, Brooke) re: representation and working with Certified Legal Interns. | Andrew Geronimo | | | | | | | | | | |
| 9/28/2023 | | 1 | Research applicable law re: public comment policies. | Andrew Geronimo | | | | | Y | | | | | |
| 9/28/2023 | | 1 | Meeting with all team members to discuss matter and strategy and prepare for client call. | Andrew Geronimo | | | Y | | | | Y | | | |
| 9/28/2023 | | 0.8 | substantive feedback on BW's draft letter to potential Defendants, including addressing PE/BW discussions re: scope of potential claims | Andrew Geronimo | | | | | | | | | | |
| 10/2/2023 | | 0.9 | Review B. White case law research; follow-up on cases | Andrew Geronimo | | | Y | | | | Y | | | |
| 10/3/2023 | 1.1 | | Attention to engagement letter and emailing to Mr. Martin | Andrew Geronimo | | | | | | | | | | |
| 10/3/2023 | | 0.2 | review j. cohen factual research re: council meetings | Andrew Geronimo | | | | | | | | | | |
| 10/4/2023 | | 0.4 | Review H. Scifres email to client; discuss strategy | Andrew Geronimo | | Y | | | | | Y | | | |
| 10/4/2023 | | 0.2 | Email to Fellows & Interns re status updates and next steps | Andrew Geronimo | | | | | | | Y | | | |
| 10/4/2023 | | 0.5 | Review & revise B. White demand letter & P. Elliott comments; assign enclosure email | Andrew Geronimo | | Y | | | | | Y | | | |
| 10/4/2023 | | 0.8 | Review H. Scifres draft Complaint / B. White comments | Andrew Geronimo | | | | | | | | | | |
| 10/4/2023 | | 0.2 | receipt & review client emails with city officials | Andrew Geronimo | | | | | | | | | | |
| 10/6/2023 | | 0.8 | Meet with Interns & Fellows to review and revise B. White introductory email to City; discuss approval w client | Andrew Geronimo | Y | | | | | | Y | | | |
| 10/10/2023 | | 1 | Prepare for & attend meeting with team & client; review client emails following meeting | Andrew Geronimo | Y | | | | | | | | | |

| Date | Hours | Description | Name | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/12/2023 | 2.5 | Discuss status of matter and division of work with S. Coulter / S. Gerber; meet with N. Onyekwuluje, P. Elliott re gathering facts & research and to discuss strategies; update all other interns via email | Andrew Geronimo | | Y | Y | | | | Y | | |
| 10/13/2023 | 2.7 | Prepare for and attend Clinic team meeting with Law Director Griffin, Attorneys Scalish, Melnyk, Aston; update client and discuss next steps | Andrew Geronimo | | Y | | | | | | | |
| 10/16/2023 | 0.8 | Meet with N. Onyekwuluje, S. Coulter, S. Gerber re: confirmation email to Law Director Griffin | Andrew Geronimo | | | | | | | Y | | |
| 10/30/2023 | 3.1 | Review and revise student work product re: substantive memo to City; accompanying research re: legal issues; comments to students & request meeting | Andrew Geronimo | Y | Y | Y | | | | Y | | |
| 10/30/2023 | 0.3 | review & respond to P. Elliott email summarizing 10/30 council meeting | Andrew Geronimo | Y | | | | | | Y | | |
| 11/1/2023 | 0.4 | receipt & review of client email re: edits to settlement memo with Cit | Andrew Geronimo | Y | | | | | | | | |
| 11/1/2023 | 1 | prepare for & attend meeting with client re: working with city on public comment policy | Andrew Geronimo | Y | | | | | | | | |
| 11/2/2023 | 0.4 | Receipt and review of client edits to substantive memo to City; discuss with team | Andrew Geronimo | Y | | | | | | Y | | |
| 11/10/2023 | 0.2 | Receipt and review of Council Caucus meeting emails, plan next steps with team | Andrew Geronimo | Y | | Y | | | | Y | | |
| 11/12/2023 | 0.8 | Receipt and review of new proposed public comment policies; research re: new included language; coordinate with team | Andrew Geronimo | Y | Y | | | | | | | |
| 11/13/2023 | 3.5 | Attend City Council Caucus meeting to hear councilors talk about proposed public comment policies; discuss strategy with client/team | Andrew Geronimo | Y | Y | Y | | | | | | |
| 11/20/2023 | 0 | Follow-up email to interns re: next steps, requests to review/submit work product | Andrew Geronimo | | | | | | | | | |
| 11/23/2023 | 0.2 | Review B. White notes from Council meeting; email re: strategy / next steps | Andrew Geronimo | | | | | | Y | Y | | |
| 11/23/2023 | 0.8 | Meet with S. Coulter, S. Gerber re: settlement/litigation strategy | Andrew Geronimo | | | | | | Y | Y | | |
| 11/24/2023 | 0.8 | Draft email to students / email to fellows proposing division of labor for preparing Complaint, TRO motion | Andrew Geronimo | | | | | Y | Y | Y | | |

| Date | Hours | Description | Timekeeper | 1 | 2 | 3 | 4 | 5 | 6 |
|---|---|---|---|---|---|---|---|---|---|
| 11/25/2023 | 1.5 | Review of B. White research / draft on First Amendment analyses of public comment periods; feedback and direction for further research | Andrew Geronimo | Y |  |  | Y |  | Y |
| 11/26/2023 | 4.8 | Review and revise Complaint and TRO Motion | Andrew Geronimo |  | Y |  | Y |  | Y |
| 11/26/2023 | 0.3 | Email to Client enclosing work product and discussing strategy | Andrew Geronimo |  |  |  |  | Y |  |
| 11/27/2023 | 1 | Discuss / send Email to Attorney Scalish re: Councilor Jones attempts to speak with our team / request for update on policy | Andrew Geronimo | Y | Y |  |  |  |  |
| 11/30/2023 | 1.2 | Receipt and review of Law Director Griffin's response email to Scalish email; fwd to client & discuss | Andrew Geronimo | Y | Y |  |  |  |  |
| 12/2/2023 | 2 | Review and revise Complaint following revisions / strategy discussions / S. Gerber & S. Coulter edits | Andrew Geronimo |  | Y | Y |  |  |  |
| 12/3/2023 | 0.4 | Attention to press release in response to press inquiries & review S. Gerber draft / draft email to client | Andrew Geronimo |  |  | Y |  | Y |  |
| 12/4/2023 | 1.5 | Meet with S. Gerber / S. Coulter re: finalizing and submitting Complaint and Temporary Restraining Order; Attention to filing Complaint | Andrew Geronimo |  | Y |  |  | Y |  |
| 12/4/2023 | 0.2 | Email to Law Director Griffin with service copies of Complaint | Andrew Geronimo |  |  |  |  | Y |  |
| 12/5/2023 | 0.5 | Attention to reviewing service waiver and enclosing email to Law Director Griffin of same | Andrew Geronimo |  |  |  |  | Y |  |
| 12/5/2023 | 0.6 | Respond to press inquiries about matter; | Andrew Geronimo |  |  |  |  | Y |  |
| 12/12/2023 | 0.7 | Review & respond to client email re: press coverage of controversy; review of press coverage and Defendants' statements | Andrew Geronimo |  | Y | Y |  | Y |  |
| 12/18/2023 | 2.8 | Attention to filings; meet with S. Coulter, S. Gerber to discuss edits/division of work | Andrew Geronimo |  |  |  |  | Y | Y |
| 12/19/2023 | 1.3 | Meet with S. Coulter / S. Gerber to discuss client edits to TRO motion | Andrew Geronimo |  |  | Y | Y |  |  |
| 12/19/2023 | 2.5 | review and revise TRO Motion | Andrew Geronimo |  |  | Y | Y |  |  |
| 12/19/2023 | 0.5 | prepare for and attend meeting with S. Gerber re: Martin injunction/filings/research | Andrew Geronimo |  |  | Y |  |  | Y |
| 12/20/2023 | 1.5 | Attention to finalizing TRO Motion | Andrew Geronimo |  |  |  | Y |  |  |
| 12/20/2023 | 1.3 | Service of TRO Motion; Contacting Court chambers per ECF to advice of filing; emails to opposing counsel re: TRO hearing timing | Andrew Geronimo |  | Y | Y | Y |  |  |
| 12/20/2023 | 0.6 | prepare for and attend meeting with S. Coulter re: injunction filings/timing/relief/strategy | Andrew Geronimo |  |  |  |  |  |  |

| Date | | Hours | Description | Timekeeper | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/21/2023 | | 0.8 | Receipt & review of Court's Order re: TRO briefing / stipulations; discuss w S. Coulter / S. Gerber; fwd to client | Andrew Geronimo | | Y | | | Y | Y | | |
| 12/21/2023 | | 0.2 | Email to Attorneys Menzalora, Russell, Aumann re: meet and confer | Andrew Geronimo | | | | | Y | Y | | |
| 12/29/2023 | | 1.6 | Follow-up emails to Attorneys Russell, Aumann, Menzalora re: meet and confer obligations; schedule meeting and circulate Zoom & inform client and Spring 24 students | Andrew Geronimo | | Y | | | Y | Y | | |
| 1/2/2024 | | 0.9 | Meeting with S. Coulter, S. Gerber to prepare for status conference / TRO hearing, discuss dividing assignments between new team of students | Andrew Geronimo | | | | | Y | Y | | |
| 1/3/2024 | | 2.5 | Prepare for and attend meet-and-confer with S. Coulter, S. Gerber, T. O'neal, J.R. Russell, M. Aumann; attention to drafting & circulating stipulated order | Andrew Geronimo | | Y | | | Y | Y | | |
| 1/3/2024 | | 0 | Review City edits to stipulated TRO; discuss with S. Coulter; S. Gerber; email to client to set up meeting | Andrew Geronimo | | Y | | | Y | Y | | |
| 1/3/2024 | | 0.4 | Receipt and review of City's Notice re: TRO; Email to Attorney Russell re: lack of agreement on material issues and pending deadline for City's response; email to client re same | Andrew Geronimo | | Y | | | Y | Y | | |
| 1/3/2024 | | 0.8 | Prepare for and attend Meeting with Spring 24 Intern T. O'Neal re: status of case and assignments going forward | Andrew Geronimo | | | | | | | Y | |
| 1/4/2024 | | 0.7 | Receipt and review of J. Russell email re: filing/stipulations; discuss with S. Coulter, S. Gerber, client | Andrew Geronimo | | Y | Y | | | | Y | |
| 1/4/2024 | | 4 | Prepare for and attend telephonic status conference with Court; revise TRO per Court's instructions; review City's edits and response emails and forward to client | Andrew Geronimo | | Y | Y | | Y | Y | | |
| 1/5/2024 | | 0.5 | Meet with S. Coulter re: filing stipulated TRO: confer with Client and team | Andrew Geronimo | | Y | Y | | | | Y | |
| 1/5/2024 | | 0.4 | Response to media inquiries re: litigation | Andrew Geronimo | Y | | | | | | Y | |
| 1/18/2024 | | 0.2 | Check in on T. O'Neal progress on TRO Reply | Andrew Geronimo | | | | | Y | Y | | |
| 1/18/2024 | | 1.7 | Attention to finalizing/sending settlement demand | Andrew Geronimo | | | Y | | | | Y | |

| Date | Hours | Description | Timekeeper | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 | C10 | C11 | C12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/19/2024 | 0.6 | Review & minor suggestions/edits to S. Gerber draft Reply section | Andrew Geronimo | | | | | | Y | | | | | Y | |
| 1/21/2024 | 1 | Review of purported proposed policies; email to 24 Spring interns re: strategy and specifics of new policy | Andrew Geronimo | Y | Y | | | | Y | | Y | | | | |
| 1/22/2024 | 2.1 | Meet with students / fellows re: fact updates and strategy | Andrew Geronimo | | | | | | | | Y | | | | |
| 1/22/2024 | 1.5 | Watch City Council meeting re: vote on updated rules; correspondence with team re: same | Andrew Geronimo | Y | Y | Y | | | | | Y | | | | |
| 1/23/2024 | 0.4 | Review of Notice of Supplemental Evidence & send to client / team | Andrew Geronimo | | | | | | Y | Y | | | | | |
| 1/23/2024 | 1.2 | Receipt and review of R. 68 Offer of Judgment; discuss with team | Andrew Geronimo | | Y | | | | | | Y | | | | |
| 1/23/2024 | 0.1 | Review T. Oneal email to client | Andrew Geronimo | | | | | | | | Y | | | | |
| 1/25/2024 | 2.5 | Meet with Fellows/Interns to discuss how policy changes / offer of judgment affect litigation | Andrew Geronimo | | | | | | Y | | Y | Y | Y | | |
| 1/27/2024 | 0.6 | Work with clerk re: corrections to civil cover sheet filing | Andrew Geronimo | | | | | | | Y | | Y | | | |
| 2/8/2024 | 0.8 | Attention to settlement demand letter | Andrew Geronimo | | | Y | | | | | Y | Y | | | |
| 2/8/2024 | 1 | Review W. Baker / A. Bashein draft fee petition; provide substantive feedback to structure, facts, law sections | Andrew Geronimo | | | | | | | | Y | Y | Y | | |
| 2/12/2024 | 0.5 | Receipt and review of M. Aumann email attaching purported discovery requests | Andrew Geronimo | | | | | | | | Y | | | | |
| 2/14/2024 | 0.8 | Research re: propriety of post-judgment discovery prior to the filing of a fee petition; | Andrew Geronimo | | | | | | | | | Y | Y | | |
| 2/14/2024 | 0.8 | Begin drafting potential response re: City's post-judgment discovery | Andrew Geronimo | | | | | | | | Y | | | | |
| 2/14/2024 | 1.2 | Prepare for and attend meeting with S. Gerber, A. Bashein, W. Baker re: attorneys' fees, fee petition, areas of subsequent research identified in Defendants' response | Andrew Geronimo | | Y | Y | | | | | Y | Y | Y | | |
| 2/14/2024 | 0.5 | Receipt and review of J.R. Russell email re: settlement of attorneys' fees; research re: Defendants "cost-plus" theory of recoverability | Andrew Geronimo | | | | | | | | | Y | Y | | |
| 2/14/2024 | 0.4 | Draft and send emails to civil rights attorneys requesting declarations in support of fees | Andrew Geronimo | | | | | | | | | Y | Y | | |
| 2/14/2024 | 0.1 | Research re: recovery for time spend briefing fee petitions; | Andrew Geronimo | | | | | | | | | Y | Y | | |
| 2/14/2024 | 0.4 | Receipt and review of Russell letter re: settlement offer of $2,940; | Andrew Geronimo | | | | | | | | Y | | | | |
| 2/15/2024 | 2.2 | Attention to affidavits in support of fee petition | Andrew Geronimo | | | | | | Y | | | Y | Y | | |

| Date | Non-billable | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instruction | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/15/2024 | | 1.5 | Research cases and propositions cited/referenced in Russell 2/14/24 letter re: reasonableness of fees; addl research re: reasonable rates and hours | Andrew Geronimo | | | | | | | | Y | Y | |
| 2/16/2024 | | 0.2 | L/M for potential expert re: fee petition | Andrew Geronimo | | | | | | | Y | Y | Y | |
| 2/20/2024 | | 0.5 | Telephone conference with S. Gerber, potential declarant for fee petition | Andrew Geronimo | | | | | | | | Y | Y | |
| 2/20/2024 | | 0.7 | Attention to Draft of 2nd demand counter correspondence | Andrew Geronimo | | | | | | | | Y | | |
| 2/21/2024 | | 1.2 | Prepare for/attend Telephone conferences S. Gerber, A. Bashein, W. Baker, potential declarant re: fee-shifting and declarations | Andrew Geronimo | | | Y | | | | | Y | Y | |
| 2/21/2024 | | 0.5 | Further attention to 2nd Settlement Demand correspondence | Andrew Geronimo | | | | | | | | Y | | |
| 3/13/2024 | | 1.7 | Attention to finalizing and sending third settlement offer and response objection to Cleveland discovery requests. | Andrew Geronimo | | | Y | | | Y | | Y | | |
| 3/14/2024 | | 0.1 | Left message for J.R. Russel to discuss 3/13 correspondence and associated issues. | Andrew Geronimo | | | | | | | | Y | | |
| 3/15/2024 | | 0.1 | Left second message for J.R. Russel to discuss 3/13 correspondence and associated issues. | Andrew Geronimo | | | | | | | | Y | | |
| 3/18/2024 | | 0.8 | telephone conferences with fee declarant about declaration supporting fee petition | Andrew Geronimo | | | | | | | | Y | Y | |
| 3/19/2024 | | 1.5 | Attention to finalizing fee motion | Andrew Geronimo | | | Y | | | | | Y | Y | |
| TOTALS: | 1.1 | 95.4 | | | | | | | | | | | | |

| Date | Non-billable | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instruction | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/28/2023 | 1.25 | | Internal team meeting over Zoom to discuss strategy and next steps; listening in on call with reporter during meeting. | Sara Coulter | | | | | | | | | | |
| 10/3/2023 | | 0.9667 | Internal team meeting to discuss feedback on drafts and next steps. | Sara Coulter | | | Y | | | Y | Y | | | |
| 10/3/2023 | | 0.4333 | Review of draft correspondence and discussion re: same. | Sara Coulter | | | Y | | | | | | | |

| Date | | Hours | Description | Name | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/6/2023 | | 0.8667 | Review and finalize letter to City Council Legal Counsel. Review and draft emails re: same. | Sara Coulter | Y | Y | | | Y | | | | |
| 10/13/2023 | | 0.3167 | Meeting with legal team and Cleveland City Council attorneys (Mark Griffin, Patricia Aston, Rachel Scalish, and Stephanie Melnyk) to discuss CWRU First Amendment Clinic's letter. | Sara Coulter | Y | | | | | | | | |
| 10/13/2023 | | 0.35 | Team debrief after call with Cleveland legal team. Discussion of next steps. | Sara Coulter | Y | | Y | | | Y | | | |
| 10/13/2023 | | 0.2833 | Call to client re: meeting with Cleveland legal team. | Sara Coulter | Y | | | Y | | | | | |
| 12/3/2023 | | 0.4667 | Reviewed complaint and associated documents and emails re: same. | Sara Coulter | | | Y | | | | | | |
| 12/4/2023 | 0.55 | | Watched livestream of public comment during Cleveland City Council meeting. | Sara Coulter | | | | | | | | | |
| 12/4/2023 | | 2.5 | Reviewed and finalized complaint and related documents; filed same. | Sara Coulter | | Y | Y | Y | | Y | | | |
| 12/5/2023 | | 0.4333 | Reviewed and edited waiver of service cover letter and forms; attention to rules re: same. | Sara Coulter | | | | | | | | | |
| 12/6/2023 | | 1.1667 | Legal research re: service of process and injunctive relief. | Sara Coulter | | | Y | | Y | Y | | | |
| 12/6/2023 | 0.73 | | Watched remainder of Dec. 4 city council meeting. | Sara Coulter | | | | | | | | | |
| 12/7/2023 | | 0.6667 | Editing Motion for Temporary Restraining Order/Preliminary Injunction/Other Equitable Relief. | Sara Coulter | | | | | Y | | | | |
| 12/18/2023 | | 0.8 | Draft email response to court and brief internal zoom re: same. | Sara Coulter | Y | Y | | | | Y | | | |
| 12/18/2023 | | 0.6667 | Draft proposed order for TRO/PI. | Sara Coulter | | | | | Y | | | | |
| 12/18/2023 | | 1.1 | Reviewed and edited TRO/PI. | Sara Coulter | | | Y | | Y | | | | |
| 12/19/2023 | | 1.3333 | Internal zoom re: review of motion for injunctive relief and next steps. | Sara Coulter | | | | Y | | Y | | | |
| 12/19/2023 | | 1.5 | Reviewing and editing accompanying docs for TRO/PI. | Sara Coulter | | | | | Y | Y | | | |
| 12/19/2023 | | 0.8 | Attention to edits to doc accompanying TRO/PI motion and emails to client re: same. | Sara Coulter | | Y | Y | | Y | | | | |
| 12/20/2023 | | 4.1667 | Reviewed, edited and filed TRO/PI and accompanying docs. Internal Zoom meetings and Zoom with client. | Sara Coulter | Y | Y | Y | | Y | Y | | | |
| 1/3/2024 | | 0.8167 | Internal Zoom meeting with Attys Gerber & Geronimo & Intern O'Neal re: background on case & strategy for meet & confer with City Council attys. | Sara Coulter | Y | | | | | Y | | | |

| Date | | Hours | Description | Name | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2024 | | 0.4167 | Zoom meet & confer with Cle City Council Attys Russell & Aumann. Brief call with client for authority. | Sara Coulter | Y | Y | Y | | | | | |
| 1/3/2024 | | 0.8333 | Drafting joint TRO based on meet & confer and circulating to client & opposing counsel for review. | Sara Coulter | Y | | Y | | | | | |
| 1/4/2024 | | 0.2667 | Status conference w/ the Court. | Sara Coulter | | | | | | | | |
| 1/4/2024 | | 0.0333 | Call to City Council attorneys following status conference. Left VM. | Sara Coulter | | | | | | | | |
| 1/4/2024 | | 1.8167 | Internal discussion of next steps following status conference and call with Council attys. Revised and circulated updated TRO. | Sara Coulter | Y | | Y | | Y | Y | | |
| 1/4/2024 | | 0.1333 | Call with Cle City Council attys re: next steps. | Sara Coulter | | Y | | | | | | |
| 1/5/2024 | | 0.7833 | Drafting a proposal for constitutional public comment policies. | Sara Coulter | Y | | | Y | | | | |
| 1/5/2024 | | 1 | Reviewing and internally discussing Council atty's revisions to draft stipulated TRO; drafting response and call with client. | Sara Coulter | Y | | | Y | | | | |
| 1/8/2024 | | 0.4333 | Review of client's draft proposal and comparison to Clinic's draft proposal. | Sara Coulter | | | | | | | | |
| 1/8/2024 | | 0.4 | Internal discussion re: Cleveland City Council Cmte discussion of public comment; policy revisions. | Sara Coulter | Y | | | Y | | Y | | |
| 1/8/2024 | 0.5 | | Watching public comment portion of City Council meeting. | Sara Coulter | | | | | | | | |
| 1/9/2024 | 0.27 | | Watching portion of City Council chairs cmte mtg where public comment is discussed. | Sara Coulter | | | | | | | | |
| 1/9/2024 | | 0.1333 | Attention to client emails | Sara Coulter | | Y | | | Y | | | |
| 1/11/2024 | | 0.4 | Reading 11th Circuit case McDonough v. Garcia et al. re: forum analysis. | Sara Coulter | | | | Y | | | | |
| 1/11/2024 | | 0.8 | Internal discussions re: next steps and division of labor among students. Call with client re: proposals. | Sara Coulter | Y | | | | Y | | | |
| 1/11/2024 | | 0.7667 | Comparing different drafts of proposed public comment policy and creating one draft. | Sara Coulter | Y | | | Y | | | | |
| 1/12/2024 | | 0.2 | Reviewing draft settlement letter | Sara Coulter | Y | | | Y | | | | |
| 1/17/2024 | | 1.45 | Discussion re: Defendants' filing and next steps with Attys Geronimo and Gerber. | Sara Coulter | | | | Y | | | | |
| 1/17/2024 | | 1.75 | Internal meeting with Certified Legal Interns & Attys Geronimo & Gerber re: Defs' Opposition, Reply, case updates, and next steps. | Sara Coulter | Y | | | | Y | | | Y |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instruction | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/18/2024 | | 1 | Internal Zoom with client and legal team re: draft policy proposal and next steps. | Sara Coulter | | | | | Y | | Y | | | |
| 1/18/2024 | | 0.2833 | Internal Zooms with legal team re: client meeting & proposed policy. | Sara Coulter | | | | | Y | | Y | | | |
| 1/18/2024 | | 0.1667 | Updated Motion to Permit Legal Externs to participate. | Sara Coulter | | | | | | | Y | | | |
| 1/18/2024 | | 0.3 | Reviewed client's redlines to proposed public comment policy and emails re: same. | Sara Coulter | Y | | | | Y | | | | | |
| 1/18/2024 | | 0.9333 | Reviewed final edits to proposed public comment policy and settlement letter; internal meetings with Attys Geronimo and Gerber re: finalizing and sending settlement demand. | Sara Coulter | Y | Y | | | Y | | | | | |
| TOTALS: | 3.3 | 33.933 | | | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instruction | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/28/2023 | 1.25 | | Team meeting to discuss next steps to advance the matter; listening to phone call with a reporter | Siobhan Gerber | | | | | | | | | | |
| 10/3/2023 | | 0.95 | Team meeting to review draft correspondence; with Andy, Sara, Patrick, Brooke, and Jake | Siobhan Gerber | | | Y | | | | Y | | | |
| 10/6/2023 | | 0.8333 | Reviewing and finalizing letter and email correspondence to Cleveland Chief Legal Counsel | Siobhan Gerber | Y | | Y | | | | | | | |
| 10/12/2023 | | 0.95 | Meet with Andy, Sara, Nneka, and Patrick regarding strategy | Siobhan Gerber | | | | Y | | | Y | | | |
| 10/13/2023 | | 0.4 | Phone call with City of Cleveland Law Director and other City attorneys to discuss our client's position regarding Council's public comment policy | Siobhan Gerber | Y | | | Y | | | | | | |
| 10/16/2023 | | 1 | Drafted email correspondence to send to Mark Griffin and other City attorneys; communicated with Chris Martin to obtain his approval of the draft email correspondence; met with Andy, Sara, Patrick, and Nneka to finalize and send the email | Siobhan Gerber | Y | Y | Y | Y | | Y | | | | |
| 11/1/2023 | | 1.2 | Meeting with Sara, Andy, Jacob, Brooke, Hannah to discuss feedback from client and revisions to anticipated external communications | Siobhan Gerber | Y | | Y | | | | Y | | | |
| 11/1/2023 | 0.8 | | Attended a phone call with Chris, with Sara, Hannah, Jake, Nneka, Patrick, and Brooke | Siobhan Gerber | | | | | | | | | | |

| Date | Hrs (A) | Hrs (B) | Description | Name | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/25/2023 | | 0.3667 | Telephone call with S. Coulter and A. Geronimo re: legal strategy | Siobhan Gerber | | | Y | Y | | | | | | | | |
| 11/29/2023 | | 1 | Reviewed and cite checked draft TRO motion | Siobhan Gerber | | | | | | Y | Y | | | | | |
| 11/30/2023 | | 0.8833 | Reviewed, proofread the complaint | Siobhan Gerber | | | Y | | | | Y | | | | | |
| 12/4/2023 | | 1.5 | Prepared waiver of service cover letter and form addressed to Blaine Griffin; prepared and filed summons addressed to City Council and Blaine Griffin | Siobhan Gerber | | Y | | Y | | Y | | | | | | |
| 12/5/2023 | 0.5 | | Watching relevant portions of the livestream of the 12/5/2023 City Council meeting, including the public commenters and remarks by Councilmembers Spencer and Slife. | Siobhan Gerber | | | | | | | | | | | | |
| 12/5/2023 | | 0.7 | Prepared a waiver of service packet to send to Blaine Griffin; attention to R. 4(d) Waiver of Service | Siobhan Gerber | | Y | | | | Y | | | | | | |
| 12/6/2023 | | 1.2 | Researched filing for a preliminary injunction and service of process | Siobhan Gerber | | | Y | | Y | | | | | | | |
| 12/7/2023 | | 1.6 | Reviewing and editing the factual background of the brief in support of the TRO/PI motion | Siobhan Gerber | | | | | Y | | | | | | | |
| 12/12/2023 | 2.6 | | Reviewing and expanding semester transition memo; adding links to relevant internal documents and external websites | Siobhan Gerber | | | | | | | | | | | | |
| 12/13/2023 | | 0.3667 | Attention to R. 4; drafting email response to Bill Menzalora re: waiver of service | Siobhan Gerber | | Y | | | | | | | | | | |
| 12/13/2023 | | 0.1 | Reviewing and uploading to Box Defendant Blaine Griffin's executed waiver of service | Siobhan Gerber | | | | | | Y | | | | | | |
| 12/13/2023 | 0.3 | | Watching 12-12-2023 Sound of Ideas program discussing the Martin case | Siobhan Gerber | | | | | | | | | | | | |
| 12/13/2023 | | 7.1 | Researching case law and drafting motion for TRO/PI; attention to ND Ohio local rules | Siobhan Gerber | | Y | Y | | Y | | | | | | | |
| 12/14/2023 | | 0.1 | Read Client's email re: his interview with Spectrum News; watched Spectrum News report | Siobhan Gerber | | | Y | | | | | | | | | |

| Date | Hours | Description | Name | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 12/18/2023 | 0.9 | Reviewing and editing draft TRO/PI motion | Siobhan Gerber | | | | Y | | Y | | | |
| 12/19/2023 | 0.6333 | Zoom meeting with Andy and Sara to discuss most recent edits to TRO/PI motion; reviewing the TRO/PI motion | Siobhan Gerber | | | | Y | Y | | | | |
| 12/19/2023 | 0.2 | Emailed Client draft TRO/PI motion for his review | Siobhan Gerber | | | | | | | Y | | |
| 12/20/2023 | 2 | Zoom meeting with Client re: filing of TRO/PI motion; internal Zoom meeting with Andy and Sara re: the same; proofreading TRO/PI motion | Siobhan Gerber | | | | | | Y | | | |
| 1/2/2024 | 0.1 | Attention to Client email and City Council newsletter mentioning public comment | Siobhan Gerber | Y | | | | | Y | | | |
| 1/3/2024 | 0.4333 | Zoom meet & confer with Cle City Council attys. Brief call with client for authority. | Siobhan Gerber | | Y | | | | Y | | | |
| 1/3/2024 | 0.8 | Zoom call with Andy, Sara, and Intern Tyler O'Neal to explain case background and discuss strategy for upcoming meet & confer and status conference | Siobhan Gerber | | | | | | Y | | Y | Y |
| 1/4/2024 | 0.3 | Status conference | Siobhan Gerber | | | | | | Y | Y | | |
| 1/4/2024 | 0.1333 | Phone call with Cle City Council attys re: next steps following the status conference with the Court | Siobhan Gerber | | | | | | Y | | | |
| 1/4/2024 | 2 | Internal discussion re: strategy and next steps following status conference and discussion with Cle City Council attys; revised and edited draft stipulated TRO | Siobhan Gerber | | Y | Y | Y | | Y | | | |
| 1/4/2024 | 0.9 | Drafting a proposed stipulated TRO based on the meet & confer with Cle City Council attys; circulating draft to Client and opposing counsel | Siobhan Gerber | | Y | | | | Y | | | |
| 1/5/2024 | 1 | Discuss Cle City Council atty's revisions to the draft stipulated TRO; draft response to the revisions; brief call with Client | Siobhan Gerber | | Y | Y | | | Y | | | |
| 1/8/2024 | 1.2 | Attention to Chris's email and proposed public comment policies; reviewing materials relevant to drafting proposed public comment policies | Siobhan Gerber | Y | | | | | Y | | | |
| 1/8/2024 | 0.4 | Internal meeting re: Client's proposed public comment policy | Siobhan Gerber | | | | | Y | | | Y | |
| 1/9/2024 | 0.4 | Watching public comments during 1/8 City Council meeting | Siobhan Gerber | | | | | | | | | |

| Date | Time | Description | Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/9/2024 | 0.3 | Listening to portion of City Council chairs committee meeting discussing the public comment policies and the Martin lawsuit | Siobhan Gerber | | | | | | | | | | |
| 1/11/2024 | 0.5 | Internal meeting re: drafting a proposed public comment policy; telephone call with Client re: the same | Siobhan Gerber | | Y | | | Y | | Y | | | |
| 1/11/2024 | 0.3 | Reading 11th Circuit case McDonough v. Garcia et al. re: forum analysis. | Siobhan Gerber | | | | | Y | Y | | | | |
| 1/11/2024 | 1.2 | Drafting settlement demand letter | Siobhan Gerber | Y | | | | | Y | | | | |
| 1/12/2024 | 0.4 | Updating the case transition memo to provide to incoming certified legal interns | Siobhan Gerber | | | | | | | | | | |
| 1/12/2024 | 0.5 | Meeting with Andy, Alec, Simon Peter, and Tyler to summarize the state of the matter and assign tasks | Siobhan Gerber | | | | | Y | | Y | Y | | |
| 1/16/2024 | 1.33 | Meeting with Andy and Interns to review Martin and Lambert cases | Siobhan Gerber | | | | | | | | | | |
| 1/16/2024 | 0.3333 | Meeting with Andy and Simon Peter to discuss settlement demand materials and next steps | Siobhan Gerber | | | | | Y | | Y | | | |
| 1/16/2024 | 1.6 | Reading Defendants' opposition to PI motion; creating outline of key arguments to include in the reply brief | Siobhan Gerber | | | | | | Y | | | | |
| 1/17/2024 | 1.45 | Meeting with Andy and Sara to discuss next steps re: reply to Defendants' opposition to the PI motion | Siobhan Gerber | | | | | Y | Y | | | | |
| 1/17/2024 | 1.75 | Meeting with Andy, Sara, and CLIs to discuss response to Defendants' opp. to PI motion | Siobhan Gerber | | | | | Y | Y | | | Y | |
| 1/18/2024 | 0.5 | Sending emails to CLIs assigning tasks related to writing the Reply Br. to Defs' Opp. to the PI Mot. | Siobhan Gerber | | | | | | | | Y | Y | |
| 1/18/2024 | 1.3333 | Meeting with Andy, Sara, Simon Peter and the Client to discuss changes to the proposed policy; brief internal meeting to prepare for Client meeting | Siobhan Gerber | | | | Y | Y | Y | | | Y | |
| 1/19/2024 | 1 | Reviewed first drafts of sections of the PI Reply Br. and research memos relating to the Br.; formatted template document for the PI Reply Br. | Siobhan Gerber | Y | | | | Y | Y | | | | |

| Date | Hours | Description | Biller | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/20/2024 | 1.8 | Reviewing and drafting Reply Br. to Defs. Opp. to PI Mot. | Siobhan Gerber | | | | | | Y | | | | Y |
| 1/20/2024 | 0.6667 | Responding to email from Tyler re: drafting of PI Reply Br. | Siobhan Gerber | | | | | | | Y | Y | | |
| 1/21/2024 | 0.3 | Assigning portions of the PI Reply Br. to Interns Trey and Kaley | Siobhan Gerber | | | | | | | Y | | | |
| 1/22/2024 | 2 | Meeting with Andy and Sara to discuss Jan. 2024 proposed public comment policies and determine next steps; call with Client re: the same | Siobhan Gerber | Y | | | Y | Y | | | | | |
| 1/22/2024 | 3 | Reviewing and drafting PI Reply Br.; cite checking PI Reply Br. | Siobhan Gerber | | | | | Y | | | | | |
| 1/23/2024 | 0.4 | | Watching portions of the livestream of the 1/22 City Council meeting | Siobhan Gerber | | | | | | | | | |
| 1/24/2024 | 0.3 | Drafted a joint status report to send to Client and opposing counsel for review | Siobhan Gerber | | | | | | | | | | |
| 1/29/2024 | 2 | Downloaded time logs for all billers from the software to an Excel sheet; reviewed the time entries and made initial recommendations on redactions and division between billable and non-billable time | Siobhan Gerber | | | | | | | | Y | Y | |
| 2/5/2024 | 0.5 | Reviewed fee petition draft prepared by A. Bashein and W. Baker; wrote comments identifying additional legal authorities and arguments to include in the next draft | Siobhan Gerber | | | | | | Y | Y | Y | | |
| 2/7/2024 | 1.4 | Meeting with A. Geronimo to discuss M. Aumann's insertion of Defendants' position regarding seeking a stay and discovery into the joint status report to include Plaintiff's position | Siobhan Gerber | | | | | | | Y | | | |
| 2/7/2024 | 0.3 | Reviewing M. Aumann's email response to the proposed joint status report objecting to language included in Plaintiff's position; revising the joint status report in response and emailing M. Aumann re: the same | Siobhan Gerber | | Y | | | | Y | | Y | | |
| 2/7/2024 | 0.15 | | Filing the Joint Status Report and the Offer of Judgment and the Acceptance | Siobhan Gerber | | | | | | | | | |

| Date | | Hours | Description | Name | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/7/2024 | | 0.2 | Reviewed settlement demand letter and made comments for A. Geronimo about the timeline of the litigation | Siobhan Gerber | | | Y | Y | | | | | Y | | |
| 2/7/2024 | 1 | | Created new Excel sheet reflecting only attorney time on the matter; prepared redacted PDF version to include with the settlement demand to opposing counsel | Siobhan Gerber | | | | | | | | | | | |
| 2/8/2024 | | 0.35 | Reviewed and edited settlement demand letter | Siobhan Gerber | | | | | | | | | Y | | |
| 2/12/2024 | | 0.4 | Reviewed Defendants' discovery requests transmitted by email by M. Aumann; meeting with A. Geronimo re: the same | Siobhan Gerber | | | Y | Y | | | | | Y | | |
| 2/15/2024 | | 0.7 | Reviewed A. Geronimo's declaration re: reasonableness of attorneys' fees, revised and expanded portion describing my credentials | Siobhan Gerber | | | | | | | | | Y | Y | |
| 2/21/2024 | | 0.75 | Reviewed the summary of the litigation prepared by A. Bashein and W. Baker to send to potential fee experts; revised for clarity and expanded to include some additional events | Siobhan Gerber | | | | | | | | | Y | Y | |
| 2/22/2024 | | 2.1 | Researching and drafting portion of the attorneys' fee motion regarding the recoverability of attorneys' fees for litigating attorneys' fee issue | Siobhan Gerber | | | | | | | | | Y | Y | |
| 2/22/2024 | | 1.5 | Researched and reviewed fee petitions, supporting affidavits for fee petitions, and court orders resolving fee petitions in past N.D. Ohio cases | Siobhan Gerber | | | | | | | | | Y | Y | |
| 3/11/2024 | | 3 | Edited the fee motion by cite-checking all internal legal citations and adding footnote citations to the Geronimo declaration and fee expert declarations; revised the fee motion to synthesize key arguments and compress the statement of facts to conform the memo to the length requirements of N.D. Ohio L.R. 7.1(f) | Siobhan Gerber | | Y | | | | | | | Y | Y | |
| 3/12/2024 | | 0.9 | Conducted final review of billing entries; created a summary chart of the total numbers of billable and non-billable hours, rates, and fees for each timekeeper | Siobhan Gerber | | Y | | | | | | | Y | Y | |
| TOTALS: | 9.43 | 63.883 | | | | | | | | | | | | | |

**FALL 2023 CERTIFIED LEGAL INTERNS**

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/27/2023 | | 1.0333 | Initial meeting with Andy, Sara, & Siobhan regarding potential case; phone call with Chris Martin to determine if Martin is interested in litigation | Brooke White | | | | Y | | | Y | | | |
| 9/28/2023 | 1.23 | | Meeting to discuss next steps for Chris Martin case, including drafting of the engagement letter, demand letter, complaint, and TRO. During this meeting, Andy returned a report's phone call to discuss the case. | Brooke White | | Y | | Y | | | Y | | | |
| 9/28/2023 | | 1.0333 | Drafted initial demand letter to Blaine A. Griffin | Brooke White | | | | | | | | | | |
| 9/29/2023 | | 0.9167 | Meeting w/ Chris Martin and other Certified Legal Interns to learn more about what happened on September 25th and discuss possible next steps | Brooke White | | | | Y | | | Y | | | |
| 10/1/2023 | | 2.05 | Research 1A cases, focusing on limited public forums & viewpoint discrimination. Cases may be used to support demand letter | Brooke White | Y | | | | Y | | | | | |
| 10/1/2023 | | 1.0833 | Revised and edited demand letter | Brooke White | Y | | | | | | | | | |
| 10/1/2023 | | 0.5833 | Researched more cases to determine 3-step 1A analysis | Brooke White | | | Y | | | | | | | |
| 10/3/2023 | | 2.1667 | Revise demand letter to create a shorter, initial demand letter entitled "Intro Letter" | Brooke White | Y | | | Y | | | | | | |
| 10/3/2023 | | 1.5 | Rewatch Cleveland City Council meetings from 09/25 & 10/03 to incorporate quotes in Intro Letter | Brooke White | Y | | | Y | | | | | | |
| 10/3/2023 | | 0.9167 | Meeting with Andy, Siobhan, Sara, Patrick & Jake to discuss changes to demand letter | Brooke White | Y | | | Y | | | Y | | | |
| 10/4/2023 | | 0.25 | Drafted e-mail to send to Chris w/ attached Intro Letter | Brooke White | Y | | | | | Y | | | | |

| Date | | Hours | Description | Name | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/4/2023 | | 0.3333 | Revised e-mail draft to Chris & downloaded PDF of draft intro letter & included intro letter as attachment in the e-mail | Brooke White | Y | | | | Y | | | |
| 10/4/2023 | | 1.0333 | Meeting with Chris Martin to discuss sending intro letter to Mark Griffin | Brooke White | Y | | Y | | Y | | | |
| 10/4/2023 | | 0.5 | Reviewing e-mails from Chris Martin in preparation for 10/04 meeting | Brooke White | Y | | | | Y | | | |
| 10/5/2023 | | 1.0167 | Talked about demand letter w/ Andy, Sara, Patrick & Jake | Brooke White | Y | | Y | | | Y | | |
| 10/5/2023 | | 0.1 | Phone call w/ Andy to talk about revisions to demand letter | Brooke White | Y | | Y | | | Y | | |
| 10/5/2023 | | 0.3333 | Revised demand letter | Brooke White | Y | | Y | | | | | |
| 10/5/2023 | | 0.5833 | Reviewed & made comments on the Complaint that Hannah drafted | Brooke White | | | Y | | | | | |
| 10/6/2023 | | 0.9167 | Final review of intro letter + sent it off to recipient | Brooke White | Y | | Y | | Y | | | |
| 10/9/2023 | | 0.75 | Discussed Mark Griffin's response e-mail & scheduled next meeting with Chris to determine next steps | Brooke White | Y | | Y | | | | | |
| 10/9/2023 | 0.17 | | Coordinated w/ colleagues to determine best time to contact Chris Martin via phone call on 10/10 | Brooke White | | | | | | | | |
| 10/10/2023 | | 0.3333 | Call with Chris | Brooke White | | | Y | | | | | |
| 10/11/2023 | | 0.25 | Revised & sent response to Mark Griffin | Brooke White | | | | | | | | |
| 10/12/2023 | | 0.4333 | Met with Siobhan & Sara re: next steps, and potential Friday call | Brooke White | | | Y | | | Y | | |
| 10/13/2023 | | 0.5 | Reviewed Chris's e-mail/attachments from this morning | Brooke White | Y | | | | Y | | | |
| 10/13/2023 | | 0.5833 | Meeting with counsel for Cleveland City Council | Brooke White | Y | | Y | | | | | |
| 10/13/2023 | | 0.3333 | Internal de-brief after meeting w/ Mark Griffin | Brooke White | | | | | Y | Y | | |
| 10/13/2023 | | 0.4167 | Follow up call w/ Chris | Brooke White | | | | | | | | |

| Date | | Hours | Description | Name | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/27/2023 | | 1.5 | Create skeleton document on memo to send to Mark Griffin and add in my own research/analysis | Brooke White | Y | | | | Y | | | | | |
| 10/30/2023 | | 1.25 | Edit memo to send to Mark Griffin | Brooke White | Y | | | | | | | | | |
| 10/30/2023 | | 0.5833 | Worked with colleagues to make revisions to Mark Griffin memo; added in some edits once my colleagues added in their sections | Brooke White | Y | | Y | Y | | Y | | | | |
| 10/31/2023 | | 0.4167 | Made additional revisions to Mark Griffin memo prior to internal meeting | Brooke White | | | Y | | | Y | | | | |
| 10/31/2023 | | 0.1667 | Made final changes to Mark Griffin memo and send draft e-mail to attorneys for review | Brooke White | | | Y | Y | | | | | | |
| 10/31/2023 | | 0.75 | Internal meeting w/ team | Brooke White | | | | | | | | Y | | |
| 10/31/2023 | | 0.0833 | Drafted revised email to Chris & sent it | Brooke White | | | | | | Y | | | | |
| 11/1/2023 | | 0.25 | Read Blaine Griffin article in advance of internal meeting | Brooke White | Y | | | Y | | Y | | | | |
| 11/1/2023 | | 1.25 | Internal meeting in advance of client phone call | Brooke White | | | | | | Y | Y | | | |
| 11/1/2023 | | 0.25 | Drafted potential public statement re: case | Brooke White | Y | | Y | | | | | | | |
| 11/1/2023 | | 0.3333 | Meeting with Chris (I left early due to class) | Brooke White | | | | | | | | | | |
| 11/2/2023 | | 0.5 | Meeting to discuss final revisions to memo | Brooke White | | | Y | | | Y | Y | | | |
| 11/13/2023 | 1.03 | | Travel time to and from City Hall | Brooke White | | | | | | | | | | |
| 11/13/2023 | 2.25 | | Attended Caucus meeting | Brooke White | | | | | | | | | | |
| 11/13/2023 | | 2.5 | Looked up caselaw to determine constitutionality of Council's proposed changes to public comment | Brooke White | Y | | | Y | | | | | | |
| 11/13/2023 | | 0.75 | Additional caselaw research | Brooke White | Y | | Y | Y | | | | | | |
| 11/22/2023 | 1.5 | | Revised meeting notes from Caucus meeting and input them in a Word doc; reviewed Tweets from meeting, including looking at people's videos | Brooke White | | | | | | | | | | |
| 11/22/2023 | 1.08 | | Watched City Council meeting from 11/20 | Brooke White | | | | | | | | | | |
| 11/25/2023 | | 0.6 | Meeting w/ Chris & Andy | Brooke White | | | Y | Y | Y | | | | | |
| 11/25/2023 | | 0.4167 | Meeting w/ Andy regarding next steps ahead of 11/27 caucus meeting | Brooke White | | | Y | | | Y | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/25/2023 | | 0.3333 | Edited Complaint | Brooke White | | | Y | | | | | | | |
| 11/25/2023 | | 4.0833 | Conducted TRO Research and uploaded doc w/ research to Box | Brooke White | | | Y | Y | | | | | | |
| 11/25/2023 | | 2.2167 | Add'tl caselaw research to potentially support Complaint and/or TRO | Brooke White | | | Y | Y | | | | | | |
| 11/26/2023 | | 0.5833 | Reviewed Andy's changes to the Complaint | Brooke White | | | Y | | | Y | | | | |
| 11/26/2023 | | 0.1667 | Looked through media articles to find quotes from council members | Brooke White | | | Y | | | | | | | |
| 11/26/2023 | | 0.4333 | Drafted waiver of service to opposing counsel | Brooke White | | | | | Y | Y | | | | |
| 11/27/2023 | 1.93 | | Attended Cleveland Caucus meeting on 11/27 | Brooke White | | | | | | | | | | |
| 11/27/2023 | 1 | | Travel to/from Willoughby to attend Caucus meeting | Brooke White | | | | | | | | | | |
| 11/27/2023 | | 0.5 | Reviewed new version of Complaint | Brooke White | | | Y | | | Y | | | | |
| 11/27/2023 | | 0.3333 | Phone call with Chris, Hannah, and Andy before Caucus meeting | Brooke White | Y | | | Y | | | | | | |
| 11/27/2023 | | 0.5833 | Additional forum research | Brooke White | | Y | | Y | | | | | | |
| 11/27/2023 | | 0.2 | Review note to opposing counsel | Brooke White | | Y | | | | Y | | | | |
| 11/27/2023 | 1.13 | | Watched public comment from 11/27 | Brooke White | | | | | | | | | | |
| 11/28/2023 | | 2.0833 | Additional public forum research (and sent e-mail to everyone with my conclusions) | Brooke White | | | Y | Y | | | | | | |
| 11/28/2023 | | 0.2 | Read Cleveland Scene article from this morning | Brooke White | | | | | | Y | | | | |
| 12/3/2023 | | 0.3833 | Added comments/suggested changes to latest edition of Complaint | Brooke White | | | Y | | | | | | | |
| **TOTALS:** | **11.3** | **43.65** | | | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/27/2023 | | 0.7 | meeting with Andy, Sara, and Siobhan to discuss initial complaint drafting | Hannah Scifres | | | | Y | | | Y | | | |
| 9/27/2023 | | 0.1 | drafting classmate email to find a time to meet with Chris Martin | Hannah Scifres | | | | | | Y | | | | |

| Date | | Hours | Description | Name | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/27/2023 | | 1.5 | reviewing and taking notes on 9/25 City Council meeting recording, Ison v Madison Loc. Sch. Dist. Bd. of Educ., and Cleveland City Council Public Comment Guidelines | Hannah Scifres | Y | | Y | | | | | | |
| 9/28/2023 | | 0.4 | drafting and sending email to Chris Martin to find a time for a Zoom meeting to discuss potential representation | Hannah Scifres | | | | | | Y | | | |
| 9/28/2023 | | 0.3 | preparing questions for 9/29 meeting with Chris Martin | Hannah Scifres | | | | | | | | | |
| 9/29/2023 | | 0.6 | reviewing demand letter; researching whether prohibitions on addressing individuals during public comment are constitutional | Hannah Scifres | Y | Y | | | Y | | | | |
| 9/29/2023 | | 1 | meeting with Chris Martin to gather initial facts + debrief with Andy, Sara, Siobhan afterwards | Hannah Scifres | Y | | | Y | | | Y | | |
| 10/2/2023 | 1 | | watching 10/2 Cleveland City Council meeting recording and taking notes on discussions of public comment rule changes | Hannah Scifres | | | | | | | | | |
| 10/4/2023 | | 3 | drafting Chris Martin complaint | Hannah Scifres | | | | | | | | | |
| 10/4/2023 | | 1.2 | meeting with Chris Martin to discuss intro letter, next steps, etc. | Hannah Scifres | Y | Y | | Y | Y | | | | |
| 10/9/2023 | | 0.7 | internal meeting to discuss next steps with Law Director Griffin | Hannah Scifres | Y | | Y | | Y | | Y | | |
| 10/9/2023 | 0.9 | | watching 10/9 Cleveland City Council meeting recording | Hannah Scifres | | | | | | | | | |
| 10/10/2023 | | 0.9 | reviewing relevant caselaw and developing recommendations for new public comment policy | Hannah Scifres | Y | | | Y | | | | | |
| 10/10/2023 | | 0.3 | meeting with Chris to discuss next steps after Law Director Griffin's email | Hannah Scifres | Y | | | Y | | | | | |
| 10/12/2023 | | 0.6 | researching case law regarding challenges to public comment laws | Hannah Scifres | | | Y | | Y | | | | |
| 10/12/2023 | | 1.5 | revising TRO and complaint | Hannah Scifres | | Y | | | | | | | |
| 10/13/2023 | | 1 | meeting with Mark Griffin; post-meeting discussion with Chris (client) | Hannah Scifres | Y | | Y | Y | | | | | |
| 10/16/2023 | 1.4 | | watching 10/16 Cleveland City Council meeting recording | Hannah Scifres | | | | | | | | | |

| Date | | Hrs | Description | Timekeeper | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/18/2023 | | 2 | reviewing comments and making edits on complaint | Hannah Scifres | | | | Y | | | | | | | | |
| 10/20/2023 | | 0.5 | reviewing TRO and complaint affidavit and adding comments | Hannah Scifres | Y | | | Y | | | | | | | | |
| 10/20/2023 | | 0.2 | reviewing comments and making edits on complaint | Hannah Scifres | | | | Y | | | | | | | | |
| 10/21/2023 | | 1.1 | researching constitutionality of prohibition of signs/banner/etc. in limited public forums for City Council memo | Hannah Scifres | | | | | | Y | | | | | | |
| 10/23/2023 | 1.3 | | watching 10/23 Cleveland City Council meeting | Hannah Scifres | | | | | | | | | | | | |
| 10/25/2023 | | 0.7 | researching constitutionality of prohibition of signs/banner/etc. in limited public forums for City Council memo | Hannah Scifres | Y | | | | Y | Y | | | | | | |
| 10/25/2023 | | 1.3 | incorporating comments/edits into Chris Martin complaint | Hannah Scifres | | | | Y | | | | | | | | |
| 10/26/2023 | 0.1 | | reviewing Chris Martin's Twitter post | Hannah Scifres | | | | | | | | | | | | |
| 10/29/2023 | | 0.6 | drafting policy-based arguments in support of allowing signs/banners at City Council meetings | Hannah Scifres | | | | | | Y | | | | | | |
| 10/30/2023 | | 0.3 | drafting policy-based arguments in support of allowing signs/banners at City Council meetings | Hannah Scifres | | | | Y | Y | Y | | | | | | |
| 10/30/2023 | 1.3 | | watching 10/30 Cleveland City Council meeting | Hannah Scifres | | | | | | | | | | | | |
| 10/31/2023 | | 0.8 | meeting to discuss memo to city council | Hannah Scifres | Y | | | | | | | | | Y | | |
| 11/1/2023 | | 0.1 | reviewing IdeaStream article about City Council changing public comment rules | Hannah Scifres | Y | | | | Y | | | | | Y | | |
| 11/1/2023 | | 0.3 | reviewing Chris Martin's 11/1 email and comments on draft letter to Council | Hannah Scifres | Y | | | | | | | Y | | | | |
| 11/1/2023 | | 1.2 | internal meeting to prep for 11/1 meeting with Chris | Hannah Scifres | Y | | | | Y | | | Y | | | | |
| 11/1/2023 | | 0.8 | meeting with client to discuss revisions to memo | Hannah Scifres | Y | | | | Y | | | | | | | |

| Date | | | Description | Name | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/1/2023 | | 0.4 | debriefing meeting to discuss next steps after meeting with Chris; dividing up memo edits amongst team | Hannah Scifres | Y | | | | | Y | Y | | | | |
| 11/1/2023 | 0.1 | | reviewing 11/1 Andy tweets about Council potentially making it's rules stricter | Hannah Scifres | | | | | | | | | | | |
| 11/2/2023 | | 0.7 | making edits on Mark Griffin memo | Hannah Scifres | Y | | | Y | | | | | | | |
| 11/2/2023 | | 0.5 | discussing proposed edits to Mark Griffin memo and touching base | Hannah Scifres | Y | | | Y | | | | | | | |
| 11/3/2023 | | 0.5 | drafting and sending email to Mark Griffin with public comment recommendations memo | Hannah Scifres | Y | | | Y | | | | | | | |
| 11/13/2023 | | 0.4 | catching up on Chris' emails and reviewing proposed new public comment rules | Hannah Scifres | Y | Y | | | | Y | | | | | |
| 11/13/2023 | 2 | | Rules Committee City Council Caucus meeting observation and debriefing with Chris afterward | Hannah Scifres | | | | | | | | | | | |
| 11/13/2023 | 0.75 | | traveling to and from the City Council Caucus meeting on 11/13 | Hannah Scifres | | | | | | | | | | | |
| 11/14/2023 | 1 | | watching 11/13 city council meeting recording | Hannah Scifres | | | | | | | | | | | |
| 11/20/2023 | 1.2 | | watching 11/20 Cleveland city council meeting | Hannah Scifres | | | | | | | | | | | |
| 11/22/2023 | | 0.5 | adding notes from 11/13/23 caucus meeting to Box | Hannah Scifres | | | | | | | | | | | |
| 11/27/2023 | | 0.3 | brief call with Chris to touch base and plan next steps | Hannah Scifres | Y | | | Y | | | | | | | |
| 11/27/2023 | 0.8 | | travel time to and from city council caucus meeting | Hannah Scifres | | | | | | | | | | | |
| 11/27/2023 | 2.5 | | 11/27 city council caucus meeting and debrief | Hannah Scifres | | | | | | | | | | | |
| 11/27/2023 | | 0.3 | debrief city caucus meeting and discussing next steps with Andy, Sara, Siobhan | Hannah Scifres | | | | | | | Y | | | | |
| 11/27/2023 | 1.1 | | watching 11/27 city council meeting recording | Hannah Scifres | | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/27/2023 | | 0.3 | reviewing draft email to Rachel Scalish 11/27 | Hannah Scifres | Y | | Y | | Y | Y | | | | |
| 11/27/2023 | | 1.5 | reviewing TRO and making edits | Hannah Scifres | | | Y | | Y | | | | | |
| 11/28/2023 | | 1.3 | reviewing TRO and making edits | Hannah Scifres | | | Y | Y | Y | | | | | |
| 12/3/2023 | | 0.3 | reviewing latest draft of Chris Martin complaint | Hannah Scifres | | | Y | | | | | | | |
| 12/4/2023 | 1.5 | | watching 12/4 Cleveland city council meeting | Hannah Scifres | | | | | | | | | | |
| TOTALS: | 17.5 | 30.2 | | | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/28/2023 | | 1.5833 | Introductory zoom meeting with the team. Post zoom I familiarized myself with what a supporting affidavit looks like and FRCP 65. | Jacob Cohen | Y | Y | Y | Y | | | Y | | | |
| 9/28/2023 | | 0.25 | Brainstormed questions for zoom tomorrow. | Jacob Cohen | | | Y | | | | Y | | | |
| 9/29/2023 | | 1.25 | Zoom with Chris and discussion with team afterwards about it. | Jacob Cohen | | | Y | Y | | | Y | | | |
| 10/2/2023 | | 1.8667 | Went back through notes of interview with Chris. Began writing a very rough draft of a potential supporting affidavit. | Jacob Cohen | | | Y | | | | | | | |
| 10/3/2023 | | 1 | Zoom call regarding demand letter. | Jacob Cohen | Y | | | Y | | | | | | |
| 10/4/2023 | 1.57 | | Watched the City Council meeting from 9/25 and 10/2 | Jacob Cohen | | | | | | | | | | |
| 10/4/2023 | | 2.1667 | Zoom call. Worked on supporting affidavit. Reviewed relevant case law. | Jacob Cohen | | | Y | | | | | | | |
| 10/5/2023 | | 1 | Zoom call about demand letter and tro. | Jacob Cohen | Y | | | | Y | | | | | |
| 10/5/2023 | | 0.85 | Worked on TRO legal standard analysis. | Jacob Cohen | | | Y | | Y | | | | | |
| 10/9/2023 | | 0.6667 | Zoom regarding how to follow up to Mark Griffin's email. | Jacob Cohen | | | | Y | | | | | | |
| 10/10/2023 | 1.33 | | Watched city council meeting from previous night. Researched relevant case law to public comment | Jacob Cohen | | | | | | | | | | |
| 10/10/2023 | | 0.6667 | Zoom call with Chris then follow up convo with Siobhan. | Jacob Cohen | | | | | Y | | Y | | | |
| 10/11/2023 | 0.05 | | Checked notifications on box and reviewed the email to be sent to Mark Griffin. | Jacob Cohen | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/12/2023 | | 0.8 | Researched relevant case law towards public comment. | Jacob Cohen | | | Y | | Y | | | | | |
| 10/12/2023 | | 0.1833 | Addressed comments to TRO on Box. | Jacob Cohen | | | | | Y | | | | | |
| 10/13/2023 | | 1.0833 | Call with Mark Griffin and follow up with Chris. | Jacob Cohen | Y | | Y | | Y | | | | | |
| 10/17/2023 | 0.63 | | Watched last night's Cleveland City Council meeting. | Jacob Cohen | | | | | | | | | | |
| 10/18/2023 | | 0.3833 | Added suggestions to the supporting affidavit that I discussed with Andy, Sara, and Siobhan. | Jacob Cohen | | | Y | | | Y | | | | |
| 10/22/2023 | 0.72 | | Public comment rules memo. | Jacob Cohen | | | | | | | | | | |
| 10/24/2023 | 0.53 | | Watched City Council meeting from 10/23/23 | Jacob Cohen | | | | | | | | | | |
| 10/26/2023 | 0.33 | | Attempted to figure out how to screenshot city council public comment rules to put them in supporting affidavit. Did not work. Will attempt again. | Jacob Cohen | | | | | | | | | | |
| 10/30/2023 | | 0.5 | Updated and added my section for the memo to Mark Griffin. | Jacob Cohen | | | | | | | | | | |
| 10/31/2023 | 1.87 | | Watched city council meeting from previous night and had zoom to discuss memo for mark griffin. | Jacob Cohen | | | | | | | | | | |
| 10/31/2023 | | 0.1667 | Drafted email to send to Siobhan, then sent actual email to Chris. | Jacob Cohen | Y | | | | | | | | | |
| 11/1/2023 | 0.08 | | Read new blaine griffin article. | Jacob Cohen | | | | | | | | | | |
| 11/1/2023 | 0.17 | | Read Chris's manifesto and memo suggestions. | Jacob Cohen | | | | | | | | | | |
| 11/1/2023 | | 1.1667 | Zoom call to discuss new developments with public comment and upcoming zoom with Chris. | Jacob Cohen | | | | Y | | | Y | | | |
| 11/1/2023 | | 1.2167 | Zoom with Chris and the team. | Jacob Cohen | | | Y | Y | | | Y | | | |
| 11/1/2023 | | 0.3167 | Revisions to pre-registration on the memo. | Jacob Cohen | Y | | Y | | | Y | | | | |
| 11/2/2023 | | 0.5 | Zoom call about revisions to the memo. | Jacob Cohen | Y | | Y | | Y | Y | | | | |
| 11/13/2023 | 2.17 | | Attended city council Caucus meeting. | Jacob Cohen | | | | | | | | | | |
| 11/15/2023 | | 0.7333 | Worked on Complaint. | Jacob Cohen | | | Y | | | | | | | |
| 11/21/2023 | 0.62 | | Watched last night's city council meeting. | Jacob Cohen | | | | | | | | | | |
| 11/27/2023 | 2.67 | | Attended caucus meeting at city hall. | Jacob Cohen | | | | | | | | | | |
| 11/27/2023 | | 0.7333 | Reviewed changes to TRO, complaint, and supporting affidavit. | Jacob Cohen | | | Y | Y | | Y | | | | |
| 11/29/2023 | 0.67 | | watched city council meeting from 11/27 | Jacob Cohen | | | | | | | | | | |
| TOTALS: | 13.4 | 19.083 | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |

| Date | Hours | Hours | Description | Name | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 9/26/2023 | | 1.1667 | Meeting with team to get intial information and assignments on Chris Martin matter. Reviewed video from council meeting and getting first assignment. | Patrick Elliott | Y | Y | Y | Y | Y | | | | |
| 9/26/2023 | | 0.3333 | Initial reading and review of Ison case | Patrick Elliott | | | Y | | Y | | | | |
| 9/27/2023 | 0.75 | | Drafting initial version of client engagement letter. | Patrick Elliott | | | | | | | | | |
| 9/28/2023 | 0.25 | | Review of edits and revisions to client engagement letter for Chris Martin | Patrick Elliott | | | | | | | | | |
| 9/29/2023 | | 1.3333 | Initial client zoom meeting with Chris Martin. Discussed notes and other matters with team afterwards. | Patrick Elliott | | | Y | Y | Y | | Y | | |
| 10/2/2023 | 1.08 | | Observed Cleveland City Council meeting via their livestream. | Patrick Elliott | | | | | | | | | |
| 10/3/2023 | | 1 | Meeting with team to discuss demand letter. Assigned to watch through old council comments for facts relating to our issue | Patrick Elliott | | | Y | Y | Y | | | | |
| 10/3/2023 | | 1.25 | Reviewing old city council public comments and taking notes on instances where individuals were allowed to speak despite prima facie violations of council comment rules | Patrick Elliott | | | | | Y | | | | |
| 10/4/2023 | | 1.5833 | Beginning first draft of success on merits section for potential TRO | Patrick Elliott | | | | Y | Y | | | | |
| 10/5/2023 | | 1 | Zoom meeting with team to discuss demand letter | Patrick Elliott | | | | Y | | | Y | | |
| 10/5/2023 | | 1.5 | Continuing first rough draft of success on merits section of TRO | Patrick Elliott | | | | Y | Y | | | | |
| 10/6/2023 | | 0.8333 | Meeting with part of team after class to review intro letter before sending final version to Mark Griffin | Patrick Elliott | Y | | | Y | | | | | |
| 10/9/2023 | | 0.3333 | Meeting with Andy and Siobhan on drafting a response to client after receiving information from City Law Director | Patrick Elliott | Y | | | Y | | | Y | | |
| 10/9/2023 | | 0.3333 | Drafting email to client about future meeting concerning strategy and information received from City Law Director | Patrick Elliott | Y | | | Y | | | | | |

| Date | Hrs | Hrs | Description | Name | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 | C10 | C11 | C12 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/9/2023 | 1 | | Observed Cleveland City Council meeting online | Patrick Elliott | | | | | | | | | | | | |
| 10/10/2023 | | 0.6667 | Meeting with client briefly to talk strategy and next steps. Brief internal discussion after. | Patrick Elliott | | | | | Y | Y | | | | | | |
| 10/13/2023 | | 0.5833 | Meeting with Cleveland City Law Director and Special Counsel for City Council. Discussed public comment rules and their future. | Patrick Elliott | Y | | | | | Y | | | | | | |
| 10/13/2023 | | 0.6667 | Debriefed after teams call with City law department. Placed call with client afterwards to discuss the meeting and steps moving forward. | Patrick Elliott | Y | | Y | | | Y | | | | | | |
| 10/13/2023 | | 1 | Completed research regarding application of public comment restrictions across federal courts. Briefed and added case to our ongoing list of authority. | Patrick Elliott | | | | | Y | | | Y | | | | |
| 10/13/2023 | | 0.25 | Reviewing and responding to email from client about meeting with law director and potential matter related to Cleveland PD | Patrick Elliott | Y | | | | Y | | | | | | | |
| 10/16/2023 | | 0.6 | Meeting to discuss sending reply to Mark Griffin concerning 10/13 teams call. Sent emails keeping client in loop with letter to Griffin. | Patrick Elliott | Y | | | | | Y | | | | Y | | |
| 10/16/2023 | 1.33 | | Observes Cleveland city council meeting | Patrick Elliott | | | | | | | | | | | | |
| 10/18/2023 | | 0.2833 | Reviewing and suggesting edits for new draft of complaint | Patrick Elliott | | | | | Y | | | | | | | |
| 10/23/2023 | | 3.5167 | Legal research on topics registered for speaking in limited public fora | Patrick Elliott | | | | | Y | | | Y | | | | |
| 10/23/2023 | | 1.3167 | Memo on pre registration topics for public comment | Patrick Elliott | | | | | Y | | | Y | | | | |
| 10/23/2023 | 1.15 | | Observe Cleveland City Council meeting | Patrick Elliott | | | | | | | | | | | | |
| 10/30/2023 | | 0.75 | Editing and compiling topic into memo for Mark Griffin | Patrick Elliott | Y | | | | Y | | | | | | | |
| 10/30/2023 | 1.2 | | Observed Cleveland City Council Meeting | Patrick Elliott | | | | | | | | | | | | |
| 10/30/2023 | 0.67 | | Wrote internal memo of summary of 10/30 City Council meeting | Patrick Elliott | | | | | | | | | | | | |
| 10/31/2023 | | 0.6667 | Internal team zoom about Mark Griffin memo | Patrick Elliott | | | | | | | | Y | | | Y | |
| 11/1/2023 | | 1.25 | Meeting with client about memo to send Mark Griffin | Patrick Elliott | Y | | | | Y | Y | | | | | Y | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/2/2023 | | 0.5 | Team meeting to discuss edits to Mark griffin memo | Patrick Elliott | Y | | Y | Y | | | Y | | | |
| 11/2/2023 | | 0.5 | Finalizing edits to mark griffin memo | Patrick Elliott | Y | | Y | | | | | | | |
| 11/2/2023 | | 0.3333 | Discussion with fellows and email to Chris with edited version of memo | Patrick Elliott | | | Y | Y | | | | | | |
| 11/13/2023 | 1.17 | | Observed Cleveland city council meeting | Patrick Elliott | | | | | | | | | | |
| 11/20/2023 | 1 | | Cleveland city council meeting | Patrick Elliott | | | | | | | | | | |
| 11/21/2023 | | 1.8333 | Editing fact section of complaint for 9/25 meeting | Patrick Elliott | | | Y | | | | | | | |
| TOTALS: | 9.6 | 25.383 | | | | | | | | | | | | |

**SPRING 2024 CERTIFIED LEGAL INTERNS**

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/11/2024 | 1.5 | | Reading news articles, tweets, the injunction, and the complaint about the Chris Martin. | Alec Bashein | | | | | | | | | | |
| 1/12/2024 | 0.5 | | Meeting on Martin case | Alec Bashein | | | | | | | | | | |
| 1/15/2024 | 1.5 | | Reviewing cases within the injunction motion. | Alec Bashein | | | | | | | | | | |
| 1/16/2024 | 1.25 | | More about the Chris Martin case, went over the defense's opposition motion. | Alec Bashein | | | | | | | | | | |
| 1/17/2024 | 1.77 | | Meeting to discuss reply to defense's opposition motion. | Alec Bashein | | | | | | | | | | |
| 1/17/2024 | 1 | | Reviewed cases in depth on defense's opposition motion. | Alec Bashein | | | | | | | | | | |
| 1/18/2024 | 4.5 | | Drafting a standing reply | Alec Bashein | | | | | | | | | | |
| 1/20/2024 | 1 | | Researching Cleveland City policies | Alec Bashein | | | | | | | | | | |
| 1/22/2024 | 0.5 | | Meeting about motion to reply and called with client | Alec Bashein | | | | | | | | | | |
| 1/23/2024 | 0.42 | | Reviewing final draft of reply brief | Alec Bashein | | | | | | | | | | |
| 1/24/2024 | | 1.75 | Meeting of over Offer of Judgment | Alec Bashein | | | | Y | | | | | | |

| Date | Hours | Description | Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 |
|---|---|---|---|---|---|---|---|---|---|---|
| 1/30/2024 | 1 | Research for fees motion and writing affidavit | Alec Bashein | | | | | | Y | Y |
| 1/31/2024 | 3.5 | Writing for brief of attorney fee awards draft | Alec Bashein | | | | | | Y | Y |
| 2/7/2024 | 1.5 | Meeting over attorney's fees motion | Alec Bashein | Y | Y | | Y | Y | Y | Y |
| 2/7/2024 | 2 | Legal fees motion edits- legal research | Alec Bashein | Y | | | | | Y | Y |
| 2/8/2024 | 1.5 | Writing legal fees motion | Alec Bashein | Y | Y | | | | Y | Y |
| 2/12/2024 | 2 | Attorney's fees motion research, editing, and writing. | Alec Bashein | Y | Y | | | | Y | Y |
| 2/13/2024 | 1.5 | Editing and drafting the attorney's fees motion | Alec Bashein | Y | Y | | | | Y | Y |
| 2/14/2024 | 1.3333 | Meeting over attorney's fees motion | Alec Bashein | Y | Y | | | Y | Y | Y |
| 2/15/2024 | 2.3333 | Legal research and writing for fees motion | Alec Bashein | Y | | | | | Y | Y |
| 2/15/2024 | 1 | Drafting and researching work done before complaint | Alec Bashein | Y | | | | | Y | Y |
| 2/19/2024 | 0.75 | Drafting and researching section for enhancement | Alec Bashein | Y | | | | | Y | Y |
| 2/21/2024 | 1.4333 | Meeting for fee affidavit | Alec Bashein | | | | | Y | Y | Y |
| 2/21/2024 | 0.6667 | Timeline for attorneys to use for affidavits | Alec Bashein | Y | Y | | | | Y | Y |
| 2/27/2024 | 0.1667 | Meeting with client | Alec Bashein | Y | Y | | | | Y | |
| 2/27/2024 | 0.9833 | Meeting for settlement call, strategy, and client counseling | Alec Bashein | Y | Y | | | | Y | |
| 2/27/2024 | 0.3333 | Settlement discussions | Alec Bashein | Y | | | | | Y | |
| 2/29/2024 | 0.3333 | Reviewing the new motion for attorney fees | Alec Bashein | Y | | | | | Y | Y |
| 2/29/2024 | 1.5 | Researched and drafted issue of policy behind fee award and nominal damages | Alec Bashein | Y | | | | | Y | Y |
| 3/4/2024 | 0.5 | Reviewed affidavit examples | Alec Bashein | Y | | | | | Y | Y |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/7/2024 | | 1.3333 | Drafting affidavit | Alec Bashein | | Y | Y | | | | | Y | Y | |
| 3/8/2024 | 0.42 | | Reviewed the affidavit | Alec Bashein | | | | | | | | | | |
| 3/15/2024 | 0.75 | | Reviewing the fee motion | Alec Bashein | | | | | | | | | | |
| 3/18/2024 | 0.5 | | Reviewing legal fees motion | Alec Bashein | | | | | | | | | | |
| TOTALS: | 15.6 | 27.417 | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
| 1/11/2024 | 0.5 | | Reviewed news articles regarding case to become familiar with facts. | Simon Peter Mizner | | | | | | | | | | |
| 1/12/2024 | 0.5 | | Discussed assignments and case. | Simon Peter Mizner | | | | | | | | | | |
| 1/16/2024 | 2 | | Discussed assignments and strategy for semester. | Simon Peter Mizner | | | | | | | | | | |
| 1/17/2024 | | 1 | Drafted email to client regarding demand letter, reviewed demand letter and proposed public comment policy. | Simon Peter Mizner | | Y | Y | | Y | | | | | |
| 1/17/2024 | 1 | | Watched video of council meeting, reviewed complaint | Simon Peter Mizner | | | | | | | | | | |
| 1/17/2024 | 1.75 | | Discussed case assignments, upcoming client meeting, and Defendant's brief in opposition. | Simon Peter Mizner | | | | | | | | | | |
| 1/17/2024 | | 0.25 | Drafted and sent email to client about proposed comment policy and scheduled meeting with him. | Simon Peter Mizner | | Y | | | | Y | | | | |
| 1/18/2024 | | 1.25 | Reviewed proposed public comment policy with Chris and team via Zoom. | Simon Peter Mizner | | | Y | Y | | Y | | | | |
| 1/18/2024 | 0.42 | | Reviewed documents in docket | Simon Peter Mizner | | | | | | | | | | |
| 1/18/2024 | 0.08 | | Read emails from Chris and opposing counsel. | Simon Peter Mizner | | | | | | | | | | |
| 1/21/2024 | 0.33 | | Reviewed emails and reviewed status of case. | Simon Peter Mizner | | | | | | | | | | |
| 1/21/2024 | 1.5 | | Watched previous city council meeting videos. | Simon Peter Mizner | | | | | | | | | | |
| 1/22/2024 | | 0.6667 | Prepared for and met with Chris to discuss Council's proposed new public comment rules. | Simon Peter Mizner | | Y | | | Y | | | | | |
| 1/22/2024 | 0.08 | | Checked in with Andy, Sarah, and Siobhan to see if there was anything that needed immediately addressed in case. | Simon Peter Mizner | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/22/2024 | 1.12 | | Watched video of previous Council meeting. | Simon Peter Mizner | | | | | | | | | | |
| 1/22/2024 | 0.87 | | Watched Council meeting. | Simon Peter Mizner | | | | | | | | | | |
| 1/23/2024 | 1 | | Reviewed record and previous filings. | Simon Peter Mizner | | | | | | | | | | |
| 1/23/2024 | | 0.25 | Met with Andy, Sara, and Siobhan to talk about email to opposing counsel. | Simon Peter Mizner | | | | Y | | Y | | | | |
| 1/23/2024 | 0.33 | | Reviewed internal memos on legal issues in case. | Simon Peter Mizner | | | | | | | | | | |
| 1/23/2024 | 0.5 | | Reviewed memos on legal issues. | Simon Peter Mizner | | | | | | | | | | |
| 1/24/2024 | | 0.6667 | Prepared for and met with Andy to discuss Defendant's offer of judgment. | Simon Peter Mizner | | | | Y | | Y | | | | |
| 1/24/2024 | 1.08 | | Watched previous City Council meetings. | Simon Peter Mizner | | | | | | | | | | |
| 2/14/2024 | 1.12 | | Watched Council meeting video. | Simon Peter Mizner | | | | | | | | | | |
| 2/15/2024 | 1 | | Watched Council meeting video. | Simon Peter Mizner | | | | | | | | | | |
| 2/27/2024 | | 0.3333 | Called opposing council to discuss settlement. | Simon Peter Mizner | | | | | | | | Y | | |
| 2/27/2024 | | 0.1667 | Called Chris to tell him about call with opposing council. | Simon Peter Mizner | | | | | | | | Y | | |
| 2/27/2024 | 0.95 | | Met with team to discuss Martin. | Simon Peter Mizner | | | | | | | | | | |
| **TOTALS:** | **16.1** | **4.5833** | | | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/2024 | 1.7 | | Met w/ group to discuss Reply Brief to the Defendant's opposition to the PI Motion in the Martin matter. | Trey Quillin | | | | | | | | | | |
| 1/20/2024 | 3.8 | | Conducted background research on the case and past case law. | Trey Quillin | | | | | | | | | | |
| 1/21/2024 | 3.4 | | Researched the issue of indecent or discriminatory for reply brief. | Trey Quillin | | | | | | | | | | |
| 1/21/2024 | 3.1 | | Researched and wrote draft of reply brief concerning indecent and discriminatory comment ban. | Trey Quillin | | | | | | | | | | |
| 1/23/2024 | 1.1 | | Prepared the email for the joint draft status to opposing counsel. | Trey Quillin | | | | | | | | | | |
| 1/25/2024 | 6.2 | | Prepared draft on TRO for specific analysis. | Trey Quillin | | | | | | | | | | |
| 2/2/2024 | 4.2 | | Analyzed the case background subsequent to the Lowery decision. | Trey Quillin | | | | | | | | | | |
| 2/3/2024 | 5.6 | | Researched and wrote a memo describing the constitutional implications of cases concerning City Council policy. | Trey Quillin | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|------|-------|----------|-------------|------|----------|-------|-------|---------|----------|----------|-----------|---------|-----------|-------|
| 2/6/2024 | 0.7 | | Discussed the Status Report concerning Martin and the necessary updates needed. Sat in on phone call with opposing counsel. | Trey Quillin | | | | | | | | | | |
| 2/6/2024 | 0.4 | | Sent the email concerning the Plaintiff's acceptance of Defendant's Offer of Judgment. | Trey Quillin | | | | | | | | | | |
| 2/6/2024 | 3.3 | | Compiled the joint status report with the updates to the case. | Trey Quillin | | | | | | | | | | |
| 2/6/2024 | 0.4 | | Prepared the email to send with the joint status report to opposing counsel. | Trey Quillin | | | | | | | | | | |
| 2/6/2024 | 0.7 | | participated in call where changes to the draft of the joint status report was discussed. | Trey Quillin | | | | | | | | | | |
| 2/16/2024 | 0.3 | | Wrote email to Chris Martin updating him on the latest settlement communication from the City." | Trey Quillin | | | | | | | | | | |
| **TOTALS:** | **34.9** | **0** | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
| 12/20/2023 | 0.25 | | Read email from Professor Geronimo on Martin case and read news articles concerning the case. | Tyler O'Neal | | | | | | | | | | |
| 12/27/2023 | 0.18 | | Reread Cleveland.com article "Man cut off at Cleveland City Council's microphone files First Amendment lawsuit against council, President Blaine Griffin" | Tyler O'Neal | | | | | | | | | | |
| 12/27/2023 | 0.1 | | Reread Ideastream.org article "Cleveland resident whose microphone was cut during public comment sues City Council" | Tyler O'Neal | | | | | | | | | | |
| 12/27/2023 | 0.08 | | Reread Cleveland Scene article "Clevelander Files Federal Lawsuit Against City Council Alleging Public Comment Policies Are Unconstitutional" | Tyler O'Neal | | | | | | | | | | |
| 12/27/2023 | 0.18 | | Read federal court (USNDOH) complaint filing on behalf of Chris Martin | Tyler O'Neal | | | | | | | | | | |
| 12/27/2023 | 0.08 | | Read letter sent by clinic to Cleveland City Council | Tyler O'Neal | | | | | | | | | | |
| 12/27/2023 | 0.18 | | Read motion for injunction filed with federal court. | Tyler O'Neal | | | | | | | | | | |
| 12/27/2023 | 0.08 | | Looked at docket for case | Tyler O'Neal | | | | | | | | | | |
| 1/3/2024 | 1.08 | | Had meeting with Professors Geronimo, Coulter, and Gerber to discuss questions about Martin case | Tyler O'Neal | | | | | | | | | | |

| Date | | Hours | Description | Person | C1 | C2 | C3 | C4 | C5 | C6 | C7 | C8 | C9 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/3/2024 | | 0.5 | Meet and Confer with City of Cleveland (including phone call with client to confer) | Tyler O'Neal | Y | Y | Y | | | | | | |
| 1/3/2024 | | 0.1833 | Conducted follow-up call with client after conclusion of meet and confer. | Tyler O'Neal | | Y | Y | | | | | | |
| 1/3/2024 | | 0.4333 | Observed drafting of order enjoining parties in lieu of TRO (proposed agreed order) which was then sent to Chris Martin. | Tyler O'Neal | | | Y | Y | Y | | | | |
| 1/3/2024 | | 0.2333 | Discussed case with Professors Geronimo, Coulter, and Gerber | Tyler O'Neal | | | Y | | Y | Y | | | |
| 1/4/2024 | | 0.4333 | Read through email traffic in preparation of attending status conference call with Judge Fleming | Tyler O'Neal | | | Y | Y | Y | | | | |
| 1/4/2024 | | 0.2333 | Spoke about issues to address with city and attempted to call the city's counsel. | Tyler O'Neal | | | Y | | Y | Y | | | |
| 1/4/2024 | | 0.1333 | City's counsel called back; discussed briefing schedule and press release to communicate that city will not enforce rules. | Tyler O'Neal | | | Y | Y | Y | | | | |
| 1/4/2024 | | 0.2833 | Listened to call with Chris to communicate what happened in status conference and in call with opposing counsel. | Tyler O'Neal | | | Y | Y | Y | | | | |
| 1/4/2024 | | 0.4833 | Further discussed case with Professors after call with Mr. Martin. | Tyler O'Neal | | | Y | | Y | Y | | | |
| 1/4/2024 | | 0.4 | Observed drafting of new proposed TRO and email to send to opposing counsel. | Tyler O'Neal | | | Y | | Y | | | | |
| 1/12/2024 | | 0.9333 | Spoke with Professor Geronimo and Ms. Gerber about case and assignments. | Tyler O'Neal | | | Y | | | Y | | | |
| 1/16/2024 | | 0.6333 | Read City's Opposition Brief and Mazzolini Affidavit on Court Docket. | Tyler O'Neal | | | Y | Y | | | | | Y |
| 1/16/2024 | | 0.1833 | Began drafting response memorandum to city's opposition brief. | Tyler O'Neal | | | Y | | | | | | Y |
| 1/17/2024 | | 1.8 | Prepared for and attended meeting with Professors Geronimo, Coulter, and Gerber and Alec (also Will, Trey, Karina, and Simon Peter) to discuss response memo. | Tyler O'Neal | | | Y | | | Y | | | |
| 1/18/2024 | | 1.5833 | Worked on drafting succeeding on the merits section of response memo. | Tyler O'Neal | | | Y | | | | | | Y |
| 1/18/2024 | | 2.9333 | Worked on drafting succeeding on the merits section of response memo | Tyler O'Neal | | | Y | | | | | | Y |

| Date | | Hours | Description | Attorney | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/18/2024 | | 3.8333 | Worked on drafting succeeding on the merits section of response memo and sent status email to Professors. | Tyler O'Neal | | | Y | Y | | Y | | | | Y |
| 1/19/2024 | | 0.75 | Continued work on draft response memo (likelihood of success on merits) | Tyler O'Neal | | | Y | Y | | | | | | Y |
| 1/20/2024 | | 4.25 | Continued research and writing of likelihood of success on the merits section of response brief | Tyler O'Neal | | | Y | Y | | | | | | Y |
| 1/21/2024 | | 1.1833 | Continued research and writing of likelihood of success on the merits section of response brief. Revised portions of brief. | Tyler O'Neal | | | Y | Y | | | | | | |
| 1/22/2024 | | 0.75 | Proofread synthesized response brief. Participated in discussion about synthesized brief with Professors Geronimo, Coulter, and Gerber. | Tyler O'Neal | | | Y | Y | | | Y | | | |
| 1/22/2024 | | 0.15 | Looked at new rules for public comment on Cleveland City Council's website and looked at votes in tonight's meeting (unanimous) | Tyler O'Neal | | | | Y | Y | | | | | |
| 1/23/2024 | 0.93 | | Watched 1/22/2024 Cleveland City Council meeting to see passage of new policy on public comment period. | Tyler O'Neal | | | | | | | | | | |
| 1/23/2024 | | 0.3833 | Received emails from Professor Geronimo about Notice of Mootness and Offer of Judgment from City. Read documents and drafted email to send to client containing documents for his records. | Tyler O'Neal | | | Y | Y | | | | | | |
| 1/23/2024 | 0.93 | | Watched 1/22/2024 Cleveland City Council meeting to see passage of new policy on public comment period. | Tyler O'Neal | | | | | | | | | | |
| 1/23/2024 | | 0.3833 | Received emails from Professor Geronimo about Notice of Mootness and Offer of Judgment from City. Read documents and drafted email to send to client containing documents for his records. | Tyler O'Neal | | | Y | | | Y | | Y | | |
| 1/24/2024 | | 1.35 | Held meeting to discuss advice to client concerning offer of judgment in light of new public comment policy. | Tyler O'Neal | | | | Y | | Y | Y | Y | | |

| Date | Time | Time | Description | Name | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/24/2024 | | 0.05 | Helped in drafting joint status extension request and emailed request to city asking for two weeks to consider newly proposed policy and offer of judgment. | Tyler O'Neal | | | | Y | | Y | | Y | |
| 1/24/2024 | | 0.2333 | Participated in further discussion of offer of judgment prior call with Chris Martin. | Tyler O'Neal | | | | Y | | | | Y | |
| 1/24/2024 | | 0.1 | Sat in on brief call with Chris Martin to talk about offer. | Tyler O'Neal | | | | Y | | Y | | Y | |
| 1/24/2024 | 0.05 | | Listened to Councilman Polensek voicemail sent to  clinic from client. | Tyler O'Neal | | | | | | | | | |
| 1/24/2024 | | 0.05 | Received response email from city concerning suggested two-week. Read the email. Received second email from Siobhan asking me to stop by and respond to city after my class. Responded to Siobhan's email. | Tyler O'Neal | | | | Y | | Y | Y | Y | |
| 1/24/2024 | | 0.1833 | Drafted and sent email to City accepting their edits to Joint Status Report. Sent follow-up email to Chris Martin of agreed to JSR. | Tyler O'Neal | | | | Y | | Y | | Y | |
| 1/26/2024 | 0.18 | | Listened to podcast sent by client discussing case. | Tyler O'Neal | | | | | | | | | |
| 1/30/2024 | 1.13 | | Watched video of Cleveland City Council's 1/29/24 meeting. | Tyler O'Neal | | | | | | | | | |
| 1/31/2024 | | 0.0833 | Listened to telephone call to discuss options with client pertaining to offer of judgment. | Tyler O'Neal | | | | Y | | Y | | Y | |
| 2/6/2024 | | 0.5333 | Zoom call to discuss developments in Martin case. | Tyler O'Neal | | | | Y | | Y | | Y | |
| 2/6/2024 | | 0.1 | Drafted and sent email to Chris Martin telling him we plan to send the Notice of Acceptance unless he tells us otherwise. | Tyler O'Neal | | | | | | Y | | Y | |
| 2/7/2024 | | 0.15 | Read various drafts of JSV and emails exchanged. Read final JSV filed with court. | Tyler O'Neal | | | Y | | | Y | | Y | |
| 2/8/2024 | 0.1 | | Watched Cleveland City Council meeting from February 5, 2024 to see President Griffin's comments on decorum. | Tyler O'Neal | | | | | | | | | |
| 2/8/2024 | | 0.0833 | Read settlement demand attorneys fee statement.. | Tyler O'Neal | | | Y | | | Y | | Y | |
| 2/12/2024 | | 0.1333 | Read Discovery Requests and Interrogatories from Opposing Counsel | Tyler O'Neal | | | Y | Y | | Y | | Y | |
| 2/14/2024 | | 0.05 | Read email from city concerning offer for attorney fees. | Tyler O'Neal | | | Y | Y | | Y | | Y | |

| Date | | | Description | Name | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2/27/2024 | | 0.1 | Read Re: Defendants' Post-Judgment Discovery Requests in Martin v. Griffin | Tyler O'Neal | | | Y | Y | | Y | | Y | | |
| 2/29/2024 | | 0.0833 | Read email from Chris Martin about intended comments in upcoming City Council meeting. | Tyler O'Neal | | | | | | Y | | Y | | |
| 2/29/2024 | | 0.1333 | Read new settlement communication sent to city. | Tyler O'Neal | | | | | | Y | | Y | | |
| 3/1/2024 | | 0.5833 | Participated in phone call with Chris Martin to discuss his planned statement at next City Council meeting | Tyler O'Neal | | | | | Y | Y | | Y | | |
| 3/2/2024 | | 0.0833 | Read Plaintiff's Responses to Defendant's Discovery Questions document. | Tyler O'Neal | | | | | Y | | | Y | | |
| 3/4/2024 | | 0.05 | Read Chris Martin's revised draft of City Council comments for tonight's meeting. | Tyler O'Neal | | | | | Y | Y | | Y | | |
| 3/5/2024 | 0.08 | | Watched Youtube video of Chris Martin's comment at Cleveland City Council Meeting on March 4, 2024. | Tyler O'Neal | | | | | | | | | | |
| 3/5/2024 | 0.3 | | Read email from Professor Geronimo to city about motion for certified legal interns to participate and read city's response. | Tyler O'Neal | | | | | | | | | | |
| 3/5/2024 | 0.33 | | Read opposing counsel's questions concerning Certified Legal Interns and looked at local rules in reference to questions. | Tyler O'Neal | | | | | | | | | | |
| 3/5/2024 | 0.18 | | Read Professor Geronimo's responses to opposing counsel's questions concerning Certified Legal Interns. | Tyler O'Neal | | | | | | | | | | |
| 3/6/2024 | 0.05 | | Read opposing counsel's email that they do not object to our motion to let Certified Legal Interns participate. | Tyler O'Neal | | | | | | | | | | |
| 3/6/2024 | 0.0333 | | Read Siobhan's email that the court permitted Legal Interns to participate. | Tyler O'Neal | | | | | | Y | Y | Y | | |
| 3/6/2024 | 0.18 | | Read city's new offer on attorney fees. Attempted to join Zoom meeting sent by Professor Geronimo, but meeting had ended. | Tyler O'Neal | | | | | | | | | | |
| 3/14/2024 | | 0.2 | Discussed upcoming call with opposing counsel and developments in the Martin case. | Tyler O'Neal | | | | | Y | | | Y | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 3/14/2024 | 0.05 | | Attempted to call Mr. Russell to follow-up on letters sent previous evening. Did not answer. | Tyler O'Neal | | | | | | | | | | |
| 3/14/2024 | 0.13 | | Read two letters sent to J.R. Russell last night in response to offer of attorney's fees and discovery requests. | Tyler O'Neal | | | | | | | | | | |
| **TOTALS:** | **6.88** | **27.433** | | | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/18/2024 | 2 | | Conduct research on absolute immunity. Prepare memo analyzing City's claims that council members have immunity. | William Baker | | | | | | | | | | |
| 1/19/2024 | 1.3 | | Research and familiarize with background information on Martin matter including reviewing pleadings. | William Baker | | | | | | | | | | |
| 1/19/2024 | | 1.7 | Meet with team to discuss Martin matter. Discuss status and receive assignments. | William Baker | | Y | Y | | | | Y | | | |
| 1/19/2024 | 2 | | Complete legal research on immunity and draft memo related to immunity. | William Baker | | | | | | | | | | |
| 1/22/2024 | 2 | | Review reply brief, review motion to participate, review City's most recent filings, read through emails from Team. | William Baker | | | | | | | | | | |
| 1/24/2024 | | 2 | Meet with team to discuss City's most recent filing. Weigh options, discuss how to approach with client, discuss with client. | William Baker | | | Y | | | | Y | Y | | |
| 1/31/2024 | | 3 | Conduct research on law around reasonable attorneys fees. Discuss splitting up work with A. Bashein. | William Baker | | Y | | | | Y | | Y | Y | |
| 2/5/2024 | | 2 | Draft and edit motion for reasonable attorney's fees with A. Bashein. | William Baker | | | Y | Y | | | | Y | Y | |
| 2/7/2024 | | 2 | Meet with A. Geronimo, S. Gerber, and A. Bashein to discuss assignment -- motion for attorney's fees. Strategize what to include in motion and how to pre-empt City's arguments. Assist A. Geronimo in sending email to City. | William Baker | | Y | Y | | | | | Y | Y | Y |
| 2/7/2024 | | 2.5 | Begin drafting motion for attorney's fees: split up work with A. Bashein, start drafting fact section. | William Baker | | | Y | Y | | | | Y | Y | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|------|-------|----------|-------------|------|----------|-------|-------|---------|----------|----------|-----------|---------|-----------|-------|
| 2/8/2024 | | 3 | Read through each communication in Martin matter in Clio to include in motion for fees. Draft facts in a compelling narrative. | William Baker | | Y | Y | | | | | Y | Y | |
| 2/8/2024 | | 2.5 | Finish completing edits to facts section for motion for fees and edit parts of law and argument section incorporating facts more explicitly. Use transition memo for assistance. | William Baker | | | Y | | | | | Y | Y | |
| 2/9/2024 | | 0.3333 | Discuss Martin matter with A. Geronimo and A. Bashein. Ask question to A. Geronimo pertaining to suggested edits on motion inputted the night before. Establish plan and timeline for motion. | William Baker | | | | | | | | | | |
| 2/12/2024 | | 2.5 | Complete A. Geronimo's suggested edits to motion for attorney's fees. Reorganize brief, include more cites, develop persuasive narrative more fully. Establish plan with A. Bashein and send document to A. Bashein for more edits. | William Baker | | Y | Y | | | Y | | Y | Y | |
| 2/13/2024 | | 2 | Receive draft from A. Bashein and integrate edits into earlier section. Send next draft to A. Geronimo and S. Gerber. | William Baker | | Y | | | | Y | | Y | Y | |
| 2/14/2024 | | 1.5 | Meet with A. Bashein, A. Geronimo, and S. Gerber to discuss draft of fee petition in light of City's discovery requests and settlement offer. Discuss new arguments to add in response to City's demands. | William Baker | | Y | Y | | | Y | Y | Y | Y | |
| 2/15/2024 | | 3 | Research several new arguments to include in motion for fees such as student time's compensability, complex cases increases fees. Began drafting into motion. | William Baker | | Y | | | | | | Y | Y | |
| 2/16/2024 | | 2 | Receive A. Bashein's edits to motion with new arguments. Work on making motion flow better in light of new arguments, copy-edit, and proofread. | William Baker | | Y | Y | | | | | Y | Y | |
| 3/15/2024 | | 2 | Review most updated draft of motion for attorney's fees in Martin matter. Leave several comments discussing broad impressions. Notify A. Geronimo that motion is ready for review. | William Baker | | | Y | | | | | Y | Y | |
| TOTALS: | 7.3 | 32.033 | | | | | | | | | | | | |
| | | | | | | | | | | | | | | |
| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/16/2024 | 1.2 | | Read news articles, review video of the incident, and read the Complaint. | Kaley Elliott | | | | | | | | | | |
| 1/18/2024 | 0.2 | | Read redlines of policy. | Kaley Elliott | | | | | | | | | | |
| 1/18/2024 | 0.52 | | Reading motion for TRO. | Kaley Elliott | | | | | | | | | | |
| 1/18/2024 | 1.37 | | Finish reading Motion for Temporary Restraining Order; read the proposed order; begin reading Opposition to the Temporary Restraining Order. | Kaley Elliott | | | | | | | | | | |
| 1/18/2024 | 1.4 | | Finish reading Opposition to Motion for Temporary Restraining Order; conduct legal research regarding city council and sui juris. | Kaley Elliott | | | | | | | | | | |
| 1/20/2024 | 3.57 | | Research to prepare for a reply to the opposition to the motion for a preliminary injunction. | Kaley Elliott | | | | | | | | | | |
| 1/21/2024 | 5.88 | | Prepare to reply to opposition to preliminary injunction. | Kaley Elliott | | | | | | | | | | |
| 1/23/2024 | 5.5 | | Research and write in preparation for amended motion. | Kaley Elliott | | | | | | | | | | |
| 1/23/2024 | 0.93 | | Watch Cleveland City Council Meeting stream. | Kaley Elliott | | | | | | | | | | |
| 1/24/2024 | 4.28 | | Research and write in preparation for amended motion. | Kaley Elliott | | | | | | | | | | |
| 1/25/2024 | 0.6 | | Review comments on research and provide writing to address those comments. | Kaley Elliott | | | | | | | | | | |
| 1/29/2024 | 0.5 | | Consult with partner on project. | Kaley Elliott | | | | | | | | | | |
| 1/29/2024 | 0.5 | | Review comments made on research. | Kaley Elliott | | | | | | | | | | |
| 1/29/2024 | 1.6 | | Craft new argument against policy language. | Kaley Elliott | | | | | | | | | | |
| 1/31/2024 | 5.3 | | Write summaries on cases. | Kaley Elliott | | | | | | | | | | |
| 2/1/2024 | 1.7 | | Write case summaries and craft new argument. | Kaley Elliott | | | | | | | | | | |
| 2/4/2024 | 0.6 | | Writing email. | Kaley Elliott | | | | | | | | | | |
| 2/4/2024 | 2 | | Prepare Notice of Acceptance. | Kaley Elliott | | | | | | | | | | |
| 2/6/2024 | 0.75 | | Review edits and redlines. | Kaley Elliott | | | | | | | | | | |
| TOTALS: | 38.4 | 0 | | | | | | | | | | | | |

| Date | Non-b | Billable | Description | User | Lobbying | Block | Vague | Duplic. | Injunct. | Clerical | Instructio | Post 68 | Fees-on-F | Reply |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1/17/2024 | 2.48 | | Research issue of City Council's capacity to be sued. | Karina Pantoja | | | | | | | | | | |
| 1/17/2024 | 1.7 | | Prepare for and attend meeting regarding Defendant's opposition brief. | Karina Pantoja | | | | | | | | | | |
| 1/18/2024 | 2.4 | | Research whether Cleveland City Council is non sui juris. | Karina Pantoja | | | | | | | | | | |
| 1/19/2024 | 2.6 | | Review briefings and memos of matter. | Karina Pantoja | | | | | | | | | | |
| 1/19/2024 | 1.5 | | Prepare for and attend meeting regarding pleadings and background of the matter. | Karina Pantoja | | | | | | | | | | |
| 1/23/2024 | 0.2 | | Review motion to participate. | Karina Pantoja | | | | | | | | | | |

| Date | Hours | | Description | Name | | | | | | | | | | |
|------|-------|---|-------------|------|---|---|---|---|---|---|---|---|---|---|
| 1/24/2024 | 0.4 | | Review research on sui juris. | Karina Pantoja | | | | | | | | | | |
| 1/24/2024 | 0.6 | | Review filings in connection with an offer of judgment. | Karina Pantoja | | | | | | | | | | |
| 2/6/2024 | 0.88 | | Attend meeting regarding fees motion and observe call with City Council regarding potential fees briefing. | Karina Pantoja | | | | | | | | | | |
| 2/8/2024 | 0.5 | | Review filings. | Karina Pantoja | | | | | | | | | | |
| **TOTALS:** | **13.3** | **0** | | | | | | | | | | | | |

# Exhibit G



OHIO STATE BAR
ASSOCIATION
Connect. Advance. Succeed.

# The Economics of
# Law Practice in Ohio in 2019

*A Desktop Reference*





# Thank You!

Periodically, the Ohio State Bar Association (OSBA) surveys its membership to gain a better outlook on the economics of law practice in Ohio. We would like to thank the following sections for their sponsorship and support. The Economics of Law Practice in Ohio 2019 Desktop Reference would not be possible without their generous contributions:

**OSBA Solo, Small Firm and General Practice Section | Robert H. Meyer, IV, Chair**

**OSBA Litigation Section | Joseph Simms, Chair**

**OSBA Corporate Counsel Section | James Cummins, Chair**

For additional questions, please contact Jocelyn Armstrong, Director of Inclusion and Outreach at the OSBA at jarmstrong@ohiobar.org or (614) 487-4404.



# Table of Contents

Not all exhibits are referenced in the table of contents.
Please visit pages 3-5 for a complete list of exhibits.

**Introduction**
Methods and Measures
Interpreting Findings

**Summary Profiles of the Typical Ohio Attorney and Firm**
Private Practitioners (Exhibit 2)
Government Attorney (Exhibit 3)
In-House Counsel (Exhibit 4)
Position or Practice Setting (Exhibits 5-7)

## Profile of Attorney 2018 Net Income

**Private Practitioners**
Practice Class (Exhibits 25, 27, 29)
Primary Field of Law (Exhibits 33, 34)
Years in Practice (Exhibit 36)
Firm Size (Exhibit 37)
Office Location (Exhibits 38, 39)
Gender (Exhibits 42, 43, 44)

**Government Attorneys**
Practice Class (Exhibits 26, 28, 30)
Primary Field of Law (Exhibit 35)
Years in Practice (Exhibit 36)
Firm Size (Exhibit 37)
Office Location (Exhibit 41)
Gender (Exhibits 42, 43, 46)

**In-House Counsel**
Practice Class (Exhibits 26, 28, 30)
Primary Field of Law (Exhibit 35)
Years in Practice (Exhibit 36)
Firm Size (Exhibit 37)
Office Location (Exhibit 40)
Gender (Exhibits 42, 43, 45)

## Profile of Billing Rates and Practices

**Attorney Billing Rates**
Years in Practice (Exhibit 47)
Firm Size (Exhibit 47)
Office Location (Exhibit 47)
Field of Law (Exhibit 48)
Practice Class (Exhibit 48)

**Associate Billing Rates**
Years in Practice (Exhibits 49, 52)
Office Location (Exhibit 50)
Firm Size (Exhibit 52)

**Legal Assistant Billing Rates**
Years in Practice (Exhibits 49, 50)
Office Location (Exhibit 51)
Firm Size (Exhibits 53, 54)

## Profile of Workweek and Time-Keeping Practices

Average Hours in Workweek (Exhibit 55)
Hourly/Flat Fee/Contingency (Exhibit 56)
Non-Billable Work (Exhibit 57)

**Profile of Law Office Management Trends**
Alternative Fee Arrangements (Exhibits 58-61C)
Keeping Time Records (Exhibits 62-63)
Hourly Rate Setting (Exhibits 64-65)
Uncollectable Fees (Exhibits 66-67)
Contingency Fee Practices (Exhibits 68-69)
Use of Online Research Tools (Exhibits 70-72)
Use of Law Office Technology (Exhibits 73-75)
Use of Law Office Marketing Technology (Exhibit 75A)

**Other Aspects of Law Office Economics**
Client Fee Payment Behavior (Exhibit 76)
Law Office Overhead and Gross Receipts (Exhibits 77-78)

**Associate Salaries**
Years of Experience (Exhibit 79)
Firm Size (Exhibit 80)
Office Location (Exhibit 81)

**Legal Assistant Salaries**
Years of Experience (Exhibit 79)
Firm Size (Exhibit 82)
Office Location (Exhibit 83)

**Administrative Assistant/Secretary**
Years of Experience (Exhibit 79)
Firm Size (Exhibit 84)
Office Location (Exhibit 85)

**List of Exhibits**



**Desktop Reference Exhibit Guide**

| Exhibit | Chart Name | Page |
|---|---|---|
| 1 | Response Counts by Target Group | 10 |
| 2 | Selected Summary Demographics - Private Practitioners | 11 |
| 3 | Selected Summary Demographics - Government Attorneys | 12 |
| 4 | Selected Summary Demographics - In-House Counsel | 13 |
| 5 | Ranked Distribution of 2019 Survey Respondents by Practice Class and Gender | 13 |
| 6 | Distribution of Respondents by Practice Class and Gender | 14 |
| 7 | Distribution of Respondents by Practice Class and Gender - All Practice Classes | 14 |
| 8 | Percent of Distribution of Per Attorney Fixed Expenses, Ohio Practices and Firms, 2006-2018 | 15 |
| 9 | Percent of Distribution of Per Attorney Gross Revenues, Ohio Practices and Firms, 2006-2018 | 16 |
| 10 | Percent Change in Attorney Net Incomes, 2000-2018 | 16 |
| 11 | Percent Change in Median Hourly Billing Rates by Gender, 2001-2019 | 17 |
| 12 | Trends in Median Hours Worked per Week with Average Hourly Billing Rate, 2001-2019 | 17 |
| 13 | Summary of Economic Sentiment and Job Satisfaction Levels, Three Categories of Attorneys, 2019 | 18 |
| 14 | Shifts in Sentiment on Economic Conditions, Three Classes of Attorneys, 2019 and 2020 | 19 |
| 15 | Ranking of Agreement on Factors Influencing Switching Practice Area/Job Class, Private Practitioners, 2019 | 20 |
| 16 | Ranking of Agreement on Factors Influencing Switching Practice Area/Job Class, In-House Counsel, 2019 | 21 |
| 17 | Ranking of Agreement on Factors Influencing Switching Practice Area/Job Class, Government Attorneys, 2019 | 21 |
| 18 | Ranked Factors Perceived to Create Job-Related Stress, Private Practitioners, 2019 | 22 |
| 19 | Ranked Factors Perceived to Create Job-Related Stress, Government Attorneys, 2019 | 23 |
| 20 | Ranked Factors Perceived to Create Job-Related Stress, In-House Counsel, 2019 | 23 |
| 21 | Private Practitioners' Involvement in Bar, Community, Corporate and Civic Affairs, 2019 | 24 |
| 22 | Government Attorney's Involvement in Bar, Community, Corporate and Civic Affairs, 2019 | 24 |
| 23 | In-House Counsels' Involvement in Bar, Community, Corporate and Civic Affairs, 2019 | 24 |
| 24 | Summary of Income, Billing Rate and Time Expenditure Changes, 2000 - 2018 | 25 |
| 25 | 2018 Private Practitioner Net Income by Practice Class | 26 |
| 26 | 2018 Government Attorney and In-House Counsel Net Income by Practice Class | 27 |
| 27 | 2018 Net Income by Practice Category (Full-time Only) | 28 |
| 28 | 2018 Net Income of Government Attorneys and In-House Counsel by Practice Category (Full-time Only) | 28 |
| 29 | Percent Distribution of 2018 Private Practice Attorney Net Income by Income Group and Practice Class | 29 |
| 30 | Percent Distribution of Three Classes of Attorneys by Income Group, 2012 and 2018 | 29 |



**Desktop Reference Exhibit Guide**

| Exhibit | Chart Name | Page |
|---------|-----------|------|
| 31 | Distributions of 2019 Total Cumulative Law School Debt and Current Monthly Payments by Generation | 31 |
| 32 | Distributions of 2019 Remaining Years of Payment by Generation | 32 |
| 33 | 2018 Net Income by Primary Field of Law, Private Practitioners | 33 |
| 34 | 2018 Net Income by Field of Law, Full-time Private Practitioners | 34 |
| 35 | 2018 Net Income by Primary Field of Law, Government Attorney and In-House Counsel by Field of Law and Practice Emphases | 35 |
| 36 | 2018 Net Income by Years of Practice, All Attorney Classes | 36 |
| 37 | 2018 Net Income by Firm Size, All Classes of Attorneys | 37 |
| 38 | 2018 Net Income, All Private Practitioners by Office Location | 38 |
| 39 | 2018 Net Income, All Full-time Private Practitioners by Office Location | 39 |
| 40 | 2018 Net Income, All In-House Counsel by Office Location | 40 |
| 41 | 2018 Net Income, All Government Attorneys by Office Location | 40 |
| 42 | 2018 Attorney Median Net Income by Gender and Practice Class | 41 |
| 43 | 2018 Full-time Attorney Median Net Income by Practice Class and Gender | 41 |
| 44 | Full-time Private Practitioner 2018 Median Net Income by Years in Practice and Gender | 42 |
| 45 | Full-time In-House Counsel 2018 Median Net Income by Years in Practice and Gender | 42 |
| 46 | Full-time Government Lawyer 2018 Median Net Income by Years in Practice and Gender | 43 |
| 47 | 2019 Hourly Billing Rates by Firm Size, Years in Practice and Office Location | 44 |
| 48 | 2019 Hourly Billing Rates by Field of Law and Practice Class | 45 |
| 49 | Distributions of 2019 Hourly Billing Rates for Associates and Legal Assistants by Four Levels of Experience | 46 |
| 50 | 2019 Hourly Billing Rates for Associates by Office Location and Experience | 47 |
| 51 | 2019 Hourly Billing Rates, Legal Assistants by Office Location and Experience | 48 |
| 52 | 2019 Hourly Billing Rates for Associates by Firm Size and Experience | 49 |
| 53 | Distributions of 2019 Hourly Billing Rates for Legal Assistants by Firm Size and Experience | 50 |
| 54 | Legal Assistant Client Billing Methods by Size of Firm, 2019 vs. 2013 | 51 |
| 55 | Distributions of Hours in Average Workweek, 2019 | 52 |
| 56 | Distributions of Hours in Average Workweek, by Billing Method, 2019 | 53 |
| 57 | Distributions of Work Week Components - Networking, Administration and Non-Legal Employment, 2019 | 53 |
| 58 | Frequency of AFA Users by Private Practitioners | 54 |
| 59 | Obstacles that Seem to Hinder Wider Adoption of AFAs Fees Over Time | 54 |
| 60 | Perceived Drivers Toward AFAs | 55 |



## Desktop Reference Exhibit Guide

| Exhibit | Chart Name | Page |
|---------|-----------|------|
| 61A | Level of Increase in Use of AFAs over Past Few Years | 55 |
| 61B | Perceived AFA Use in the Future | 56 |
| 61C | Assignment of Work to Outside Counsel | 56 |
| 62 | Frequency of Keeping Records | 57 |
| 63 | Frequency of Keeping Records - Tracking Unit in Minutes | 57 |
| 64 | Hourly Rate Setting Practices - Months Since Change | 57 |
| 65 | Hourly Rate Setting Practices - Amount of Increase | 57 |
| 66 | Uncollectables - Amount of Increase | 58 |
| 67 | Uncollectables - Use of Service Charge on Delinquent Accounts | 58 |
| 68 | Use of Contingency Fees | 58 |
| 69 | Contingency Fees- Rate Schedule | 58 |
| 70 | Use of Online Research Tools, Private Practitioners, 2019 | 59 |
| 71 | Use of Online Research Tools, Government Attorneys, 2019 | 59 |
| 72 | Use of Online Research Tools, In-House Counsel, 2019 | 59 |
| 73 | Use of Hardware and Software Products and Tools, Private Practitioners, 2019 | 60 |
| 74 | Use of Hardware and Software Products and Tools, Government Lawyers, 2019 | 60 |
| 75 | Use of Hardware and Software Products and Tools, In-House Counsel, 2019 | 61 |
| 75A | Ranked Current and Historic Use of Law Office Marketing Tools and Channels | 61 |
| 76 | Client Bill Payment Behaviors, Private Practitioners, 2019 | 62 |
| 77 | Distributions of 2018 Fixed Expenses and Gross Receipts Per Attorney, and Overhead Rates by Size of Firm | 63 |
| 78 | Distributions of 2018 Fixed Expenses and Gross Receipts Per Attorney, and Overhead Rates by Office Location | 64 |
| 79 | Distributions of 2019 Administrative Assistant/Secretary, Legal Assistant and Associate Salaries by Years of Experience | 65 |
| 80 | Distributions of 2019 Salary Levels of Associates by Location and Years of Experience | 66 |
| 81 | Distributions of 2019 Salary Levels of Associates by Location and Years of experience | 67 |
| 82 | Distributions of 2019 Salary Levels of Legal Assistants by Level of Experience and Firm Size | 68 |
| 83 | Distributions of 2019 Salary Levels of Legal Assistants by Level of Experience and Office Location | 69 |
| 84 | Percent Distributions of 2019 Administrative Assistant/Secretary Salary Levels by Firm Size | 70 |
| 85 | Percent Distributions of 2019 Administrative Assistant/Secretary Salary Levels by Experience and Office Location | 71 |



# The Economics of Law Practice in Ohio in 2019 – A Desktop Benchmarking Reference

**Introduction**

During the spring of 2019, the Ohio State Bar Association (OSBA) surveyed its membership on the economics of law practice to gain a better outlook on the legal profession. The survey was jointly sponsored by the OSBA's Solo, Small Firm and General Practice Section, the Litigation Section and the Corporate Counsel Section.

Previous surveys were completed in 2013, 2010, 2007, 2004, 2001, 1998, 1994 and 1990. These efforts have created the longest continuous time series legal economics project in the United States.

Some common objectives spanning the 2019 fielding were to derive, analyze and report benchmarks denoting:

- Changing patterns of member attorney demographics;

- 2018 attorney income derived from legal work by practice category/class, gender, field of law, office location, work status (full- vs. part-time work), years in practice and firm/organization size;

- 2019 associate, legal assistant and administrative assistant/secretary salaries by years of experience and office location;

- Prevailing 2019 attorney hourly billing rates by a variety of indicators and for paralegals/legal assistants by years of experience, firm size and office location;

- Attorney time allocated to billable and non-billable professional activities in 2019;

- 2018 revenues, expenses and overhead rates for private practitioners by office location and firm size;

- Law practice technology embracement, marketing management, civic duties of attorneys and law firm administrators and billing practices focused on sentinel management trends over time; and

- Issues regarding economic sentiment, stress and job satisfaction.

To help guide attorneys as they plan and manage their professional lives, the above information has been consolidated into this reference document accessible on the OSBA website. Based on 86 tables, charts and graphs, attorneys and firms can compare themselves and their firms against norms established by the aggregation of survey data. Several exhibits concentrate on government attorneys and in-house counsel responses in addition to hired counsel responses.



Assistance interpreting and applying information can be obtained at no charge to OSBA members by contacting Dr. Lawrence Stiffman of the Applied Statistics Laboratory (ASL) at (734) 417-5151 or aslinfo@aol.com. ASL fielded the surveys, analyzed derived data and prepared this *Desktop Reference* under the guidance of the OSBA staff, volunteers and sponsors.

## Methods and Measures

Survey results are based on online surveys fielded during April and May of 2019, which targeted private practitioners, in-house counsel and government attorneys.  Each target group was surveyed three times reaching in-state/ non-retiree respondents with current email addresses. There were about 1,040 usable returns.

To help practitioners interpret range information provided in the exhibits in the reference, here is a brief discussion of **measures of central tendency** (median and mean) and **dispersion** (spread).

## Measures of Central Tendency

The **mean** (also called the average or arithmetic average) is calculated by adding the values of all responses and then dividing by the number of responses.

> *Example*: Three responses — 1, 2 and 3 — are reported. The average is calculated by adding their values (1 + 2 + 3 = 6), then dividing by the number of responses or 6 ÷ 3 = 2.

The **median** is the middle value of a series of values, which is initially rank ordered (from low to high or vice versa). By definition, half the numbers are greater, and half are less than the median. Both mean and median values are used throughout this survey report to measure central tendency.

Use of the median as a statistic for central tendency **reduces the effect of "outliers"** (extremely high or low values, such as 30), while the average does not.

> *Example*: Three responses — 1, 2 and 30 — are reported. The median is the middle number of the distribution (1, 2, 30) or 2. The average of this same distribution is 33 divided by 3 = 11.

## Measures of Dispersion (Spread)

The dispersion of data around the median (the 50th percentile) is based here on three values:

> The 25th percentile (lower quartile). 25% of the values are less and 75% are more than this value;

> The 75th percentile (upper quartile). 75% of the values are less and 25% are more than this value; and

> The 95th percentile. 95% of the values are less and five percent are more than this value.



## Geographic Areas Defined

Sixteen geographic areas were included to indicate office location. Some exhibits in this reference included all 16 areas, but most display fewer, collapsed regions to maintain a reasonable number of observations for reporting findings. Regions are defined as follows:

| REGION NAME | GEOGRAPHIC AREAS INCLUDED: |
|---|---|
| Greater Cleveland | Downtown only / suburban areas |
| Greater Cincinnati | Downtown only / suburban areas |
| Greater Columbus | Downtown only / suburban areas |
| Dayton | Dayton |
| Northeast Region | Canton, Akron, Youngstown and other northeastern Ohio areas |
| Northwest Region | Toledo and other northwestern cities and areas |
| Southern Region | Includes southeastern, southwestern and central regions excluding cities named above |

## Interpreting Findings

Because the survey was conducted in the spring of 2019, net income, gross revenue and overhead expenses represent 2018 values. All other data represent 2019 values. Net income represents all personal/taxable income from legal work (after expenses) or salaries from the practice of law, before taxes, for 2018. Bonus information was not addressed as a separate question and may or may not have been included by respondents.

To denote gaps such as the "gender gap" of reported incomes, the term "gap" is used on selected exhibits as a proportion calculated as the *median value of one group divided by another*. Hypothetically, a reported median income of $75,000 for a group of female attorneys divided by $100,000 for a like group of male attorneys yields the proportion of .75. This could be interpreted in plain English as "*This group of females earns 75 cents on the dollar compared with their male counterparts.*"

Despite the use of the median to reduce the effect of extremely high or low values (outliers), readers should use caution in interpreting data when only a small number of responses are available. In such cases, readers are advised to "group up" to a larger geographic area or practice category to not distort reality. Generally, no value is represented if fewer than four responses were reported. In some instances, an exhibit may list fewer than four responses if the data were deemed important enough, with the understanding that the reader should use care when drawing inferences from such a small sample.

This reference is meant to assist with the development of sound and equitable hiring and compensation policies.



## Confidence Intervals/Margins of Error and Representativeness of Sample

Confidence intervals (upper and lower bounds around the mean at the 95% confidence level) are shown for three selected variables:

+/- 10% for Private Practitioners' **2018 net income** ($116,787; $128,958; $141,128)

+/- 3.5% for Private Practitioners' **total hours of chargeable work/week in 2019** (28.8, 29.9, 30.9)

+/- 3.5% for Private Practitioners' **2019 average hourly billing rate** ($252, $261, $270)

For example, the average 2019 hourly billing rate is plus or minus 3.5% of $261 with a 95% likelihood that the rate would fall between $252/hour and $270/hour.

**Exhibit 1** compares the sample with retained OSBA membership data (the universe).

| EXHIBIT 1: RESPONSE COUNTS BY TARGET GROUP | |
|---|---|
| Category | Survey Responses |
| Private Practitioners | 790 |
| Government Attorneys | 165 |
| In-House Counsel | 102 |
| Column Totals | **1,057** |

# Summary Profiles of the Typical Ohio Attorney and Firm

This section summarizes key statistics derived from the current and recent surveys. Emphasis here is on the concerns of the average attorney and the average firm with respect to shifting demographics, and core relationships of income, hourly billing rates, time expenditure and resultant practice and firm revenues and expenses.

## Membership Demographics

**Exhibits 2 to 4** summarize the average years in practice and 2018 attorney net income for three attorney practice classes: private practitioners (**Exhibit 2**), government attorney (including the judiciary) (**Exhibit 3**) and in-house counsel (**Exhibit 4**). Each group is stratified by work status, gender and office location. The data is benchmarked against the last survey findings collected in 2013.

The "years in practice" private practitioner survey respondents reported "aged" 12% overall between 2013 and 2019. The average changed from 26 years in practice in 2013 to 29 years in practice in 2019. (See last row in Exhibit 2.) This was consistent across the state except for Columbus and the Northwest Ohio region where the average years of practice for private practitioners actually decreased. In Columbus, the reported number of practicing years changed by -7%. The Northwest region changed by -4%.



During this period, respondent nominal (not adjusted for inflation) incomes were stagnant with, for example, females working both full- and part-time. That group reported a 14% cumulative increase over a six-year period, whereas males' reported income decreased by 6%. Cleveland –based incomes dropped 2% overall, whereas Columbus attorneys saw a median increase of 14% overall. Considering all private practitioners reported net income, the median value of $100,000 in 2018 was unchanged from 2012. See last column in **Exhibit 2**.

| **EXHIBIT 2:** SELECTED SUMMARY DEMOGRAPHICS – PRIVATE PRACTITIONERS | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | **Years in Practice** | | | | | **2018 Net Income** | | | | |
| **Private Practitioners by Work Status and Gender** | N | Mean | 2019 Median | 2013 Median | % Change 2013-2019 | N | Mean | 2018 Median | 2012 Median | % Change 2012-2018 |
| Full-time females | 209 | 20 | 19 | 15 | 27% | 99 | $119,201 | $86,000 | $80,000 | 8% |
| Part-time females | 38 | 26 | 24 | 17 | 41% | 19 | $48,302 | $45,931 | $39,300 | 17% |
| **All females** | **247** | **21** | **21** | **15** | **40%** | **118** | **$107,785** | **$80,000** | **$70,000** | **14%** |
| | | | | | | | | | | |
| Full-time males | 437 | 29 | 31 | 29 | 7% | 221 | $151,234 | $115,000 | $120,000 | -4% |
| Part-time males | 101 | 39 | 41 | 37 | 11% | 41 | $69,278 | $60,000 | $145,000 | -59% |
| **All males** | **538** | **30** | **33** | **30** | **10%** | **262** | **$138,493** | **$103,000** | **$110,000** | **-6%** |
| | | | | | | | | | | |
| All full-time | 646 | 26 | 27 | 26 | 4% | 320 | $141,393 | $107,400 | $105,000 | 2% |
| All part-time | 139 | 35 | 40 | 29 | 38% | 60 | $62,635 | $48,500 | $44,000 | 10% |
| **All respondents** | **785** | **27** | **29** | **26** | **12%** | **380** | **$128,958** | **$100,000** | **$100,000** | **0%** |
| | | | | | | | | | | |
| **By Office Location** | | | | | | | | | | |
| Greater Cleveland | 167 | 28 | 28 | 25 | 12% | 79 | $129,000 | $99,000 | $101,000 | -2% |
| Greater Cincinnati | 72 | 29 | 32 | 28 | 14% | 29 | $134,293 | $105,000 | $102,000 | 3% |
| Greater Columbus | 192 | 26 | 25 | 27 | -7% | 92 | $159,093 | $120,000 | $105,000 | 14% |
| Greater Dayton | 48 | 27 | 29 | 23 | 26% | 26 | $115,127 | $78,000 | $110,000 | -29% |
| Northeast Region | 150 | 28 | 30 | 24 | 25% | 79 | $100,407 | $90,000 | $83,000 | 8% |
| Northwest Region | 75 | 27 | 27 | 28 | -4% | 44 | $122,532 | $110,500 | $85,000 | 30% |
| Southern Region | 74 | 29 | 32 | 27 | 19% | 30 | $126,163 | $92,500 | $93,500 | -1% |
| **All respondents** | **778** | **27** | **29** | **26** | **12%** | **379** | **$128,823** | **$100,000** | **$100,000** | **0%** |



With respect to government attorneys, including the judiciary, only part-time lawyers aged while full-time lawyers saw a decrease in average years in practice.  Income levels were mostly stagnant over the six-year period.  Overall, all respondents' net income increased only 2% over six years (See last column of Exhibit 3.)

**EXHIBIT 3:** SELECTED SUMMARY DEMOGRAPHICS – GOVERNMENT ATTORNEYS

| Private Practitioners by Work Status and Gender | Years in Practice | | | | | 2018 Net Income | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | N | Mean | 2019 Median | 2013 Median | % Change 2013-2019 | N | Mean | 2018 Median | 2012 Median | % Change 2012-2018 |
| Full-time females | 91 | 16 | 14 | 17 | -18% | 41 | $76,049 | $84,464 | $68,000 | 24% |
| Part-time females | 6 | 22 | 16 | 21 | -24% | - | - | - | - | - |
| All females | 98 | 16 | 14 | 17 | -18% | 42 | $76,000 | $71,000 | $65,000 | 9% |
| | | | | | | | | | | |
| Full-time males | 58 | 21 | 20 | 26 | -23% | 27 | $84,464 | $75,000 | $80,000 | -6% |
| Part-time males | 5 | 38 | 44 | 29 | 52% | - | - | - | - | - |
| All males | 63 | 23 | 22 | 27 | -19% | 28 | $86,805 | $77,000 | $8,000 | -4% |
| | | | | | | | | | | |
| All full-time | 150 | 18 | 16 | 20 | -20% | 68 | $79,390 | $72,500 | $7,300 | -1% |
| All part-time | 11 | 29 | 39 | 27 | 44% | - | - | - | - | - |
| All respondents | 163 | 19 | 18 | 21 | -14% | 70 | $80,293 | $73,500 | $72,000 | 2% |
| | | | | | | | | | | |
| By Office Location | | | | | | | | | | |
| Greater Cleveland | 10 | 25 | 24 | 23 | 4% | 5 | $93,910 | $92,000 | $86,000 | 21% |
| Greater Cincinnati | 7 | 21 | 17 | 25 | -32% | 23 | $84,109 | $85,000 | $46,000 | 2% |
| Greater Columbus | 66 | 18 | 15 | 22 | -32% | 21 | $59,950 | $59,950 | $83,000 | 20% |
| Greater Dayton | 5 | 29 | 33 | 22 | 83% | - | - | - | - | - |
| Northeast Region | 10 | 16 | 15 | 22 | -32% | 60 | $71,112 | $86,500 | $71,000 | 22% |
| Northwest Region | 23 | 17 | 18 | 24 | -25% | 43 | $73,158 | $65,000 | $68,000 | -4% |
| Southern Region | 29 | 18 | 15 | 20 | -25% | 53 | $70,964 | $74,500 | $65,000 | 15% |
| All respondents | 150 | 19 | 18 | 21 | -14% | 296 | $79,431 | $73,500 | $72,000 | 2% |

With respect to in-house counsel, respondents saw an overall 11% drop in years in practice, while income was steady at 2-3% (over six years). Cleveland-based in-house counsel saw a decrease in years in practice and a drop of 33% in income over six years.



**OHIO STATE BAR ASSOCIATION**
Connect. Advance. Succeed.

**EXHIBIT 4:** SELECTED SUMMARY DEMOGRAPHICS – IN-HOUSE COUNSEL

| In-House Counsel by Work Status and Gender | Years in Practice | | | | | 2018 Net Income | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | N | Mean | 2019 Median | 2013 Median | % Change 2013-2019 | N | Mean | 2018 Median | 2012 Median | % Change 2012-2018 |
| Full-time females | 38 | 18 | 17 | 12 | 41.7% | 14 | $112,000 | $109,000 | $110,000 | -0.9% |
| All females | 31 | 19 | 19 | 13 | 46.2% | 14 | $112,000 | $109,000 | $110,000 | -0.9% |
| | | | | | | | | | | |
| Full-time males | 59 | 17 | 12 | 24 | -50.0% | 33 | $156,341 | $125,000 | $130,000 | -3.8% |
| All males | 59 | 17 | 12 | 24 | -50.0% | 33 | $156,341 | $125,000 | $130,000 | -3.8% |
| | | | | | | | | | | |
| All full-time | 97 | 18 | 15 | 17 | -11.8% | 47 | $143,113 | $123,000 | $121,000 | 1.7% |
| All respondents | 100 | 18 | 16 | 18 | -11.1% | 47 | $143,113 | $123,000 | $120,000 | 2.5% |
| | | | | | | | | | | |
| By Office Location | | | | | | | | | | |
| Greater Cleveland | 21 | 16 | 15 | 26 | -42.3% | 7 | $145,286 | $85,000 | $127,500 | -33.3% |
| Greater Cincinnati | 13 | 19 | 15 | 13 | 15.4% | 6 | $105,133 | $110,000 | $117,500 | -6.4% |
| Greater Columbus | 31 | 18 | 13 | 21 | -38.1% | 18 | $127,833 | $121,500 | $135,000 | -10.0% |
| Northeast Region | 12 | 20 | 18 | 19 | -5.3% | 4 | $138,864 | $152,000 | $95,000 | 60.0% |
| Northwest Region | 10 | 15 | 12 | 12 | 0.0% | 4 | $204,250 | $186,000 | $122,000 | 52.5% |
| Southern Region | 8 | 22 | 24 | 20 | 20.0% | 4 | $204,250 | $186,000 | $117,500 | 58.3% |
| All respondents | 96 | 18 | 16 | 18 | -11.1% | 44 | $140,256 | $122,399 | $120,000 | 2.0% |

**EXHIBIT 5:** RANKED DISTRIBUTION OF 2019 SURVEY RESPONDENTS BY PRACTICE CLASS AND GENDER

**Exhibit 5** ranks respondents' practice class by gender. About 62% to 65% of government attorneys are female, while 27% of large firm partners are female.





**EXHIBIT 6:** DISTRIBUTION OF RESPONDENTS BY PRACTICE CLASS AND GENDER

**Exhibit 6** distributes counts of respondents by gender across practice class showing the proportion of each major practice category to the overall bar population. Male private practitioners dominate the respondent database.



**EXHIBIT 7:** DISTRIBUTION OF SURVEY RESPONDENTS BY PRACTICE CLASS AND GENDER –ALL PRACTICE CLASSES



**Exhibit 7** distributes survey respondents by gender, work status and practice class. Considering **all attorneys**, 10% of males work part-time and 4% of female private practitioners work part-time. Full-time females comprise one third of the responses, whereas males working full-time represent over half of the responses (53%). Most attorneys who report that they practice part-time are sole practitioners/space sharers. Female respondents comprise 58% of government attorneys, including the judiciary, and they comprise 27% of private practitioners.



**OHIO STATE BAR ASSOCIATION**
Connect. Advance. Succeed.

**2018 Attorney Income Compared with 2012**
Median 2018 net income reported for **all respondents** is $90,461 (down from $95,872 reported for 2012). This value is a weighted average (by count) combining three classes of attorneys-private practitioners, government attorneys (including judges and judiciary staff) and in-house counsel. For private practitioners specifically, median net income ($100,000) was unchanged from 2012 to 2018.

Median 2018 net income reported for private practitioner respondents working full-time is $106,000 (up from $105,000 in 2012). Mean (average) net income for private practitioner respondents working full-time is $141,392 (down from $151,660 in 2012.)

**2019 Hourly Billing Rates and Work Volume Compared with 2013**
The 2019 reported median hourly billing rate is $250 (up from $225 in 2013). The mean value is $261 (up from $234 in 2013). The median hourly rate reported by male attorneys working full-time is $250 (up from $225 in 2013), while it is $225 for female attorneys working full-time (up from $200 in 2013).

Median values for Private Practitioner compensable work time is 30 hours/week (down from 33 hours in 2013) and 45 hours/week for total professional hours worked (up from 48 hours in 2013). Detailed and longer-term trend analyses for incomes, billing rates and time allocations are summarized in **Exhibit 24** found at the end of this section.

**2018 vs. 2012 Office Expenditures and Revenues**
Both office expenditures and gross revenues, on a per-attorney basis, vary across a wide distribution of Private Practitioners, as shown in **Exhibits 8** and **9**.

**Exhibit 8** tracks trends over four years (noted by the colored bars). The left vertical axis shows the percentage of firms by year.  For attorneys reporting fixed expenses between $60,000 and $89,999 in calendar year ("CY") 2006, 16% of all practices and firms reported expenses/attorney in CY 2009, 14%; in CY2012, 10%; and in CY 2018, 9%.

There is a drift to lower overall reported expenses per attorney since 2006. Distributions on the left of the chart, the four stacks beginning with <5K through $25-35K, show expenses increasing over time. The remaining expense groups ($35,000-$45,000 to over $180,000) generally show a decreasing proportion of fixed expenses/attorney over time.



**EXHIBIT 8:** PERCENT DISTRIBUTION PER ATTORNEY FIXED EXPENSES, OHIO PRACTICES AND FIRMS, 2006 - 2018



Revenues /attorney for CY 2018 drift somewhat higher above the $210,000-$245,000 category.



OHIO STATE BAR ASSOCIATION
Connect. Advance. Succeed.

**EXHIBIT 9:** PERCENT DISTRIBUTION OF PER ATTORNEY GROSS REVENUES, OHIO PRACTICES AND FIRMS, 2006-2018



## Trends in Income, Hourly Billing Rates and Time Expended, 2000-2018/2019

**Exhibit 10** breaks down the respondents into four categories of attorneys.  Compared to the 2000-2003 reporting period, growth in net income has diminished drastically, especially for the 2012-2018 period.  The drop also preceded the financial crisis starting in 2008.  The red bar represents all private practitioners, while the blue bar represents only full-time private practitioners.

**EXHIBIT 10:** PERCENT CHANGE IN ATTORNEY NET INCOMES





**Exhibit 11** highlights shifts in pricing power over the past decade isolating the effects of work-status and gender. Female attorneys working full-time display a higher percent of hourly rate increases than male attorneys in all reporting periods. During the 2001-2004 period, hourly billing rates rose 16.7% for full-time males and rose 28% among female respondents.  Since that period, the increase for males has dropped to between 5% and 11% per reporting period and about 10% for females.



**EXHIBIT 11:**  PERCENT CHANGE IN  MEDIAN HOURLY BILLING RATES BY GENDER, 2001-2019



For full time private practitioners, over the last decade, compensable time held more or less constant at 35 hours for all private practitioners, and total hours worked held at 50 hours. Pricing power remained, throughout all reporting periods as reflected by the increasing average hourly billing rate (the top red line). *Total hours worked/week* is represented by the blue line and *billable hours worked/week* is represented by the yellow line. See **Exhibit 12.**

**EXHIBIT 12:**  TRENDS IN MEDIAN HOURS WORKED PER WEEK WITH AVERAGE HOURLY BILLING RATE, 2001-2019



| | 2001 | 2004 | 2007 | 2010 | 2013 | 2019 |
|---|---|---|---|---|---|---|
| Total Hours Worked | 46 | 50 | 50 | 46 | 48 | 45 |
| Billable Hours | 35 | 35 | 35 | 34 | 33 | 30 |
| Billing Rate | $150 | $170 | $180 | $200 | $210 | $250 |

YEAR



## Economic Sentiment and Job Satisfaction

**Exhibit 13** indicates current and future perceptions on economic conditions with current and future levels of job satisfaction for three categories of attorneys. Private practitioners and government attorneys are somewhat more optimistic with current and future economic conditions when compared to 2013 data.

With respect to job satisfaction, government attorneys are less satisfied about their jobs currently, as well as in the future, compared with the 2013 data. In-house counsel are relatively more satisfied about both current and future job satisfaction.

**EXHIBIT 13:** SUMMARY OF ECONOMIC SENTIMENT AND JOB SATISFACTION LEVELS, THREE CATEGORIES OF ATTORNEYS, 2019

| | 2013 | | | 2019 | | |
|---|---|---|---|---|---|---|
| **Current Conditions** | Private Practice | In-house Counsel | Government | Private Practice | In-house Counsel | Government |
| | % | % | % | % | % | % |
| Better | 28.4 | 36.6 | 17.8 | 35.9 | 36.6 | 33.5 |
| Worse | 23 | 6.3 | 20 | 11.8 | 1 | 12.2 |
| About the same | 45.9 | 54.9 | 59.4 | 50.4 | 59.4 | 51.8 |
| Don't know | 0.4 | 0.7 | 2.9 | 1 | 2 | 2.4 |
| NA/new attorney | 2.4 | 1.4 | - | 0.9 | 1 | - |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% |
| **Future Conditions** | Private Practice | In-house Counsel | Government | Private Practice | In-house Counsel | Government |
| | % | % | % | % | % | % |
| Better | 38.4 | 37.1 | 15.8 | 39.2 | 45.5 | 34.4 |
| Worse | 13.4 | 9.8 | 16.1 | 9.9 | 4 | 12.3 |
| About the same | 39.5 | 46.9 | 59.2 | 42 | 44.6 | 47.2 |
| Don't know/no opinion | 8.7 | 6.3 | 9 | 9 | 5.9 | 6.1 |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% |
| **Current Satisfaction** | Private Practice | In-house Counsel | Government | Private Practice | In-house Counsel | Government |
| | % | % | % | % | % | % |
| A great deal | 48.5 | 49.3 | 67.3 | 53.9 | 62 | 57.3 |
| Some | 43.1 | 45.1 | 29.2 | 40.2 | 34 | 35.4 |
| Very little | 8.4 | 5.6 | 3.5 | 5.9 | 4 | 7.3 |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% |
| **Future Satisfaction** | Private Practice | In-House Counsel | Govern-ment | Private Practice | In-House Counsel | Govern-ment |
| | % | % | % | % | % | % |
| Becoming more satisfying | 15.5 | 23.2 | 16.9 | 16.6 | 25.3 | 18.5 |
| Remaining the same | 59.7 | 62.7 | 70.8 | 62.6 | 68.7 | 66.7 |
| Becoming less satisfying | 17.6 | 10.6 | 8.4 | 14.1 | 6.1 | 9.3 |
| Ready to change practice area | 3.1 | 0.7 | 1.6 | 1.8 | - | 3.1 |
| Unsatisfying enough to quit | 4.1 | 2.8 | 2.3 | 2.9 | - | 2.5 |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% |



Combining current and future perceptions, 28.5% of private practitioners think current economic conditions are better than in the past and will also be better in the future, while 26.9% feel both current and future conditions will remain about the same. These percentages are similar for in-house counsel and government attorneys, but 7.4% of government attorneys feel conditions have worsened and will worsen in the future. See **Exhibit 14**.

**EXHIBIT 14:** SHIFTS IN SENTIMENT ON ECONOMIC CONDITIONS, THREE CLASSES OF ATTORNEYS, 2019 AND 2020

**Private Practitioners**

| Current Conditions | Future Conditions | | | | |
|---|---|---|---|---|---|
| | Better | Worse | About the Same | Don't Know/No Opinion | Total |
| Better | 28.5% | 0.6% | 8.9% | 1.4% | 39.3% |
| Worse | 2.2% | 3.4% | 3.6% | 1.1% | 10.3% |
| About the same | 12.0% | 5.6% | 26.9% | 4.0% | 48.5% |
| Don't know | 0.3% | 0.0% | 0.2% | 0.5% | 0.9% |
| NA/new attorney | 0.6% | 0.0% | 0.2% | 0.2% | 0.9% |
| **Total** | **43.5%** | **9.6%** | **39.7%** | **7.2%** | **100.0%** |

**In-House Counsel**

| Current Conditions | Future Conditions | | | | |
|---|---|---|---|---|---|
| | Better | Worse | About the Same | Don't Know/No Opinion | Total |
| Better | 27.7% | 1.0% | 7.9% | 0.0% | 36.6% |
| Worse | 0.0% | 0.0% | 0.0% | 1.0% | 1.0% |
| About the same | 15.8% | 3.0% | 36.6% | 4.0% | 59.4% |
| Don't know | 1.0% | 0.0% | 0.0% | 1.0% | 2.0% |
| NA/new attorney | 1.0% | 0.0% | 0.0% | 0.0% | 1.0% |
| **Total** | **45.5%** | **4.0%** | **44.6%** | **5.9%** | **100.0%** |

**Government Attorneys**

| Current Conditions | Future Conditions | | | | |
|---|---|---|---|---|---|
| | Better | Worse | About the Same | Don't Know/No Opinion | Total |
| Better | 20.2% | 1.2% | 11.0% | 1.2% | 33.7% |
| Worse | 1.8% | 7.4% | 1.2% | 1.8% | 12.3% |
| About the same | 10.4% | 3.7% | 35.0% | 2.5% | 51.5% |
| Don't know | 1.8% | 0.0% | 0.0% | 0.6% | 2.5% |
| **Total** | **34.4%** | **12.3%** | **47.2%** | **6.1%** | **100.0%** |



## Potential Factors Influencing Decisions to Switch to New Practice Areas or Job Classification

Private practitioners express relatively more interest in quality of life issues than technical requirements or market supply-demand conditions when considering switching practice area or jobs. In-house counsel and government attorneys show similar sentiments (**Exhibits 15-17**).



**EXHIBIT 15:** RANKING OF AGREEMENT ON FACTORS INFLUENCING SWITCHING PRACTICE AREA/JOB CLASS, PRIVATE PRACTITIONERS, 2019

| Factor | Very much agree | Agree | Don't agree | NA/DK |
|---|---|---|---|---|
| Having insurance benefits with a government or in-house counsel job is appealing | 19% | 35% | 36% | 10% |
| Getting too old to switch | 14% | 32% | 48% | 6% |
| New content area too complex to quickly learn and master | 10% | 23% | 56% | 11% |
| Switching to salaried legal work is appealing | 10% | 31% | 44% | 15% |
| Court rules and /or administrative regs too tedious | 7% | 24% | 58% | 11% |
| Essential new marketing costs are too high | 6% | 25% | 53% | 15% |
| Incumbents have flooded the market where I currently practice | 5% | 19% | 62% | 14% |
| Incumbents have, or will likely, flood other markets | 4% | 21% | 53% | 23% |
| My computer skills are insufficient to leverage software apps | 3% | 12% | 80% | 5% |

■ Very much agree ■ Agree ■ Don't agree ■ NA/DK



OHIO STATE BAR ASSOCIATION
Connect. Advance. Succeed.

**EXHIBIT 16:** RANKING OF AGREEMENT ON FACTORS INFLUENCING SWITCHING PRACTICE AREA/JOB CLASS, IN-HOUSE COUNSEL, 2019

**EXHIBIT 17:** RANKING OF AGREEMENT ON FACTORS INFLUENCING SWITCHING PRACTICE AREA/JOB CLASS, GOVERNMENT ATTORNEY, 2019





## Relative Importance of Factors Perceived to Create Job-Related Stress

Private practitioners are relatively more concerned about income, fringe benefit costs, and dealing with difficult clients; whereas government attorneys focus on dealing with agencies, courts and clients. In-house counsel are relatively more concerned about workload management, work-life balance and office/agency politics (See **Exhibits 18-20**).





**EXHIBIT 18:** RANKED FACTORS PERCEIVED TO CREATE JOB-RELATED STRESS, PRIVATE PRACTITIONERS, 2019

| Factor | Very Much | Somewhat | Very Little | Not Applicable |
|---|---|---|---|---|
| Cost of health ins. & out-of-pocket exp. | 30% | 30% | 28% | 12% |
| Insufficient current income | 23% | 35% | 34% | 8% |
| Insufficient level of health insurance benefits | 22% | 21% | 39% | 18% |
| Dealing with difficult clients | 21% | 44% | 31% | 4% |
| Lack of professionalism | 15% | 40% | 39% | 5% |
| General political environment | 12% | 25% | 49% | 14% |
| Dealing with government agencies | 11% | 32% | 46% | 10% |
| General judicial environment | 11% | 25% | 51% | 14% |
| Cost of tech products & services | 10% | 33% | 48% | 9% |
| Competition in your legal market | 10% | 36% | 48% | 6% |
| Time & effort managing employees | 10% | 27% | 37% | 27% |
| Technological requirements & education | 9% | 30% | 56% | 6% |
| Office/agency politics | 7% | 20% | 45% | 28% |
| Unauthorized practice of law | 6% | 16% | 56% | 22% |



OHIO STATE BAR ASSOCIATION
Connect. Advance. Succeed.

**EXHIBIT 19:** RANKED FACTORS PERCEIVED TO CREATE JOB-RELATED STRESS, GOVERNMENT ATTORNEYS, 2019

**EXHIBIT 20:** RANKED FACTORS PERCEIVED TO CREATE JOB-RELATED STRESS, IN-HOUSE COUNSEL, 2019





## Civic Engagement Profile

Attorneys broadly represent themselves as community leaders. **Exhibits 21** to **23** rank OSBA member's current and historic involvement in bar-related, civic and business leadership roles.



**EXHIBIT 21:** PRIVATE PRACTITIONERS' INVOLVEMENT IN BAR, COMMUNITY, CORPORATE AND CIVIC AFFAIRS, 2019

| | Yes, Currently | Yes, Previously | Never |
|---|---|---|---|
| Active in local or state general bar association | 55% | 23% | |
| Board member of any non-profit corporation | 42% | 27% | 31% |
| Active in local or state specialty bar association | 39% | 16% | 45% |
| Membership in your local chamber of commerce | 21% | 16% | 64% |
| Serving as an appointed public official | 9% | 16% | 74% |
| Board member of any for-profit corporation | 6% | 10% | 84% |
| Serving as an elected public official | 4% | 10% | 86% |



**EXHIBIT 22:** GOVERNMENT ATTORNEY INVOLVEMENT IN BAR, COMMUNITY, CORPORATE AND CIVIC AFFAIRS 2019

| | Yes, Currently | Yes, Previously | Never |
|---|---|---|---|
| Active in local or state general bar association | 67% | 16% | 16% |
| Active in local or state specialty bar association | 37% | 19% | 43% |
| Board member of any non-profit corporation | 29% | 25% | 46% |
| Serving as an appointed public official | 19% | 14% | 67% |
| Serving as an elected public offical | 7% | 9% | 84% |
| Membership in chamber of commerce | 4% | 10% | 87% |
| Board member of any for-profit corporation | 3% | 6% | 90% |



**EXHIBIT 23:** IN-HOUSE COUNSELS' INVOLVEMENT IN BAR, COMMUNITY, CORPORATE AND CIVIC AFFAIRS, 2019

| | Yes, Currently | Yes, Previously | Never |
|---|---|---|---|
| Active in local or state general bar association | 45% | 20% | 35% |
| Active in local or state specialty bar | 29% | 19% | 52% |
| Board member non-profit corporation | 25% | 27% | 48% |
| Membership in local chamber of commerce | 5% | 13% | 82% |
| Board member for-profit corporation | 3% | 5% | 92% |
| Serving as an appointed public official | 2% | 5% | 93% |
| Serving as an elected public official | 2% | | 97% |



## Summary

**Exhibit 24** is a summary of income, billing rates and weekly professional time expenditures between six reporting periods. Median values are displayed. A weighted average is calculated for 2012 and 2018 attorney income, which weighs the three categories of responses by the number of responses.

Median net income remains unchanged at $100,000 between 2012 and 2018. The number of total hours worked/week has remained relatively constant (down 1% over six years) and the number of billable hours in the workweek has decreased over time (1.5% over the past six years). Only the average hourly billing rate increased over the time periods reported.

**EXHIBIT 24:** SUMMARY OF NET INCOME,  HOURLY BILLING RATE & TIME EXPENDITURE CHANGES, 2000 - 2019

| Net Income | Median 2018* | Median 2012* | Median 2009 | Median 2006 | Median 2003 | Median 2000 | Annual % Change 2000-2003 | Annual % Change 2003-2006 | Annual % Change 2006-2009 | Annual % Change 2009-2012 | Annual % Change 2012-2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | *weighted avg. | | | | | | | | | | |
| All attorneys | $90,461 | $95,872 | $84,000 | $85,000 | $80,000 | $75,000 | 2.2% | 0.0% | 0.0% | 0.0% | -0.9% |
| (Full-time only) | $103,551 | $96,173 | $90,000 | $88,500 | $85,000 | $80,000 | 2.1% | 1.4% | 0.6% | 2.3% | 1.3% |
| Private Practitioners | $100,000 | $100,000 | $89,000 | $95,000 | $90,000 | $70,000 | 9.5% | 1.9% | -2.1% | 4.1% | 0.0% |
| (Full-time only) | $106,000 | $105,000 | $94,750 | $98,000 | $100,000 | $82,000 | 7.3% | -0.7% | -1% | 3.6% | 0.2% |
| Full-time males | $115,000 | $114,520 | $100,000 | $100,000 | $94,500 | $85,000 | 3.7% | 1.9% | 0.0% | 4.8% | 0.1% |
| Full-time females | $86,000 | $78,841 | $74,000 | $70,000 | $70,000 | $55,000 | 9.1% | 0.0% | 1.9% | 2.2% | 1.5% |
| Part-time males | $60,000 | $45,891 | $38,000 | $80,000 | $50,000 | $31,000 | 20.4% | 20.0% | -17.5% | 6.9% | 5.1% |
| Part-time females | $46,000 | $46,856 | $45,000 | $45,000 | $30,000 | $30,000 | 0.0% | 16.7% | 0.0% | 1.4% | -0.3% |

| Avg. Hourly Billing Rate | Median 2019 | Median 2013 | Median 2010 | Median 2007 | Median 2004 | Median 2001 | Annual % Change 2001-2004 | Annual % Change 2004-2007 | Annual % Change 2007-2010 | Annual % Change 2010-2013 | Annual % Change 2013-2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| All Private Practitioners | $225 | $207 | $200 | $185 | $175 | $150 | 5.6% | 1.9% | 2.7% | 1.2% | 1.4% |
| (Full-time only) | $250 | $220 | $200 | $185 | $175 | $150 | 5.6% | 1.9% | 2.7% | 3.3% | 2.3% |
| Full-time males | $250 | $225 | $200 | $190 | $175 | $150 | 5.6% | 2.9% | 1.8% | 4.2% | 1.9% |
| Full-time females | $225 | $200 | $195 | $175 | $160 | $125 | 9.3% | 3.1% | 3.8% | 0.9% | 2.1% |
| Part-time males | $200 | $195 | $183 | $190 | $160 | $130 | 7.7% | 6.3% | -1.2% | 2.2% | 0.4% |
| Part-time females | $200 | $175 | $150 | $150 | $125 | $125 | 0.0% | 6.7% | 0.0% | 5.6% | 2.4% |

| Total Hours in Workweek | Median 2019 | Median 2013 | Median 2010 | Median 2007 | Median 2004 | Median 2001 | Annual % Change 2001-2004 | Annual % Change 2004-2007 | Annual % Change 2007-2010 | Annual % Change 2010-2013 | Annual % Change 2013-2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| All Private Practitioners | 45 | 48 | 47 | 50 | 50 | 47 | 2.1% | 0.0% | -2.0% | 0.7% | -1.0% |
| (Full-time only) | 48 | 50 | 50 | 50 | 50 | 48 | 1.4% | 0.0% | 0.0% | 0.0% | -0.7% |
| Full-time males | 48 | 50 | 50 | 50 | 50 | 48 | 1.4% | 0.0% | 0.0% | 0.0% | -0.7% |
| Full-time females | 50 | 48 | 45 | 50 | 45 | 45 | 0.0% | 3.7% | -3.3% | 2.2% | 0.7% |
| Part-time males | 25 | 30 | 30 | 40 | 36 | 34 | 2.0% | 3.7% | 8.3% | 0.0% | -2.8% |
| Part-time females | 25 | 25 | 28 | 30 | 30 | 39 | -7.7% | 0.0% | -2.2% | -3.6% | 0 |

| Billable Hours in Workweek | Median 2019 | Median 2013 | Median 2010 | Median 2007 | Median 2004 | Median 2001 | Annual % Change 2001-2004 | Annual % Change 2004-2007 | Annual % Change 2007-2010 | Annual % Change 2010-2013 | Annual % Change 2013-2019 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| All Private Practitioners | 30 | 33 | 34 | 35 | 35 | 35 | 0.0% | 0.0% | -1.0% | -1.0% | -1.5% |
| (Full-time only) | 34 | 35 | 35 | 35 | 40 | 35 | 4.8% | -4.2% | 0.0% | 0.0% | -0.5% |
| Full-time males | 33 | 35 | 35 | 35 | 36 | 35 | 1.0% | -0.9% | 0.0% | 0.0% | -1.0% |
| Full-time females | 35 | 34 | 33 | 35 | 35 | 35 | 0.0% | 0.0% | -1.9% | 1.0% | 0.5% |
| Part-time males | 16 | 15 | 18 | 25 | 14 | 15 | -2.2% | 26.2% | -9.3% | -5.6% | 1.1% |
| Part-time females | 12 | 18 | 20 | 20 | 14 | 20 | -10.0% | 14.3% | 0.0% | -3.3% | -5.6% |



# Profiling Ohio Attorney 2018 Net Income

## Introduction

Many interacting factors impact attorney income. Clues to explain income variation, both at a given point in time and across time, can be derived from seven factors addressed in the survey:

- Practice category or classification/class
- Primary field of law or area of specialization
- Years in practice
- Gender
- Firm size (number of attorneys in firm or organization)
- Office location (county where law office is located)
- Work status: full-time (working 30 hours/week) vs. part-time (working <30 hours/week)

## 2018 Attorney Net Income by Practice Class and Field of Law

**Exhibit 25** summarizes 2018 attorney net income by eleven practice categories reported by 374 private practitioner respondents (denoted by **N**). **Exhibit 26** covers government attorneys and in-house counsel.

By convention, this, and subsequent exhibits providing percentile information, offer four data points – the 25th, 50th (Median), 75th and 95th percentiles – on the variable (item) of interest.

For example, 25 percent of all space sharers earn less than $48,500, half earn less than $85,000, while half earn more than $77,000 and 25 percent earn more than $150,000. The range of net income is large within groups; for example, it ranges from $135,000 for partners in firms with eight+ partners at the 25th percentile to $750,000 at the 95th percentile level.

**EXHIBIT 25:** 2018 PRIVATE PRACTITIONER NET INCOME BY PRACTICE CLASS

| Private Practitioner Class | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Solo, office outside home | 90 | $128,678 | $60,000 | $97,000 | $150,000 | $300,000 |
| Solo, home office | 41 | $64,993 | $8,000 | $48,000 | $86,000 | $200,000 |
| Solo with 1+ associate | 16 | $167,063 | $100,000 | $140,000 | $215,000 | $403,000 |
| Space sharer | 14 | $96,557 | $48,000 | $85,000 | $150,000 | $265,000 |
| Partner in firm with 2-7 partners | 91 | $151,291 | $84,000 | $125,000 | $200,000 | $340,000 |
| Partner in firm with 8+ partners | 33 | $254,909 | $135,000 | $200,000 | $300,000 | $750,000 |
| Of Counsel | 7 | $106,429 | $60,000 | $100,000 | $180,000 | $180,000 |
| Associate with sole practitioner | 14 | $83,085 | $58,000 | $72,500 | $92,000 | $220,000 |
| Associate in firm with 2-7 partners | 39 | $80,132 | $55,000 | $75,000 | $90,000 | $180,000 |
| Associate in firm with 8+ partners | 26 | $101,865 | $78,000 | $102,000 | $127,000 | $150,000 |
| **All Private Practitioners** | **374** | **$129,804** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |



**EXHIBIT 26:** 2018 GOVERNMENT LAWYER AND IN-HOUSE COUNSEL NET INCOME BY PRACTICE CLASS

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| **Government Attorneys** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Judge/Magistrate (full-time) | 12 | $99,538 | $70,000 | $96,000 | $135,000 | $140,550 |
| County government | 20 | $64,300 | $48,500 | $64,000 | $76,500 | $101,500 |
| State government- AG office | 7 | $84,000 | $58,000 | $70,000 | $95,000 | $165,000 |
| State government - other | 8 | $76,063 | $55,500 | $82,000 | $103,000 | $123,000 |
| Public Interest/non-profit attorney | 10 | $83,189 | $64,900 | $85,500 | $92,000 | $125,000 |
| **Total** | **66** | **$80,251** | **$58,000** | **$73,500** | **$95,000** | **$140,550** |

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| **In-House Counsel** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| CLO or General Counsel (GC) | 9 | $176,667 | $140,000 | $160,000 | $190,000 | $385,000 |
| Senior Counsel | 5 | $215,200 | $181,000 | $195,000 | $228,000 | $350,000 |
| Associate/Assistant GC | 7 | $185,000 | $80,000 | $125,000 | $300,000 | $500,000 |
| Counsel | 7 | $89,143 | $67,500 | $88,000 | $120,000 | $141,000 |
| Corporate Counsel | 9 | $141,644 | $120,000 | $123,000 | $125,000 | $280,000 |
| Staff Attorney | 5 | $101,000 | $75,000 | $100,000 | $129,000 | $141,000 |
| **Total** | **42** | **$151,543** | **$85,000** | **$125,000** | **$181,000** | **$350,000** |



## Full-Time Private Practitioner Net Income by Practice Class

**Exhibit 27** includes only 314 private practitioners who report working on a full-time basis. **Exhibit 28** includes government attorneys and in-house counsel.

**EXHIBIT 27:** 2018 NET INCOME BY PRACTICE CATEGORY (FULL-TIME ONLY)

| Private Practitioners | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Solo, office outside home | 71 | $148,282 | $70,000 | $100,000 | $160,000 | $357,000 |
| Solo, home office | 19 | $99,505 | $37,000 | $80,000 | $165,000 | $300,000 |
| Solo with 1+ associate | 16 | $167,063 | $100,000 | $140,000 | $215,000 | $403,000 |
| Space sharer | 10 | $114,680 | $55,000 | $99,400 | $150,000 | $265,000 |
| Partner in firm with 2-7 partners | 86 | $151,110 | $84,000 | $122,500 | $200,000 | $340,000 |
| Partner in firm with 8+ partners | 32 | $256,469 | $132,500 | $195,000 | $303,500 | $750,000 |
| Of Counsel | 4 | $132,500 | $85,000 | $145,000 | $180,000 | $180,000 |
| Associate with sole practitioner | 12 | $84,516 | $59,000 | $72,500 | $91,000 | $220,000 |
| Associate in firm with 2-7 partners | 38 | $75,662 | $55,000 | $73,500 | $90,000 | $155,000 |
| Associate in firm with 8+ partners | 26 | $101,865 | $78,000 | $102,000 | $127,000 | $150,000 |
| **All Private Practitioners** | **314** | **$141,393** | **$75,000** | **$107,400** | **$165,000** | **$325,000** |

**EXHIBIT 28:** 2018 NET INCOME OF GOVERNMENT ATTORNEYS AND IN-HOUSE COUNSEL BY PRACTICE CATEGORY (FULL-TIME ONLY)

| Government Attorney | Valid N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Judge/Magistrate (full-time) | 12 | $99,538 | $70,000 | $96,000 | $135,000 | $140,550 |
| County government | 20 | $64,300 | $48,500 | $64,000 | $76,500 | $101,500 |
| State government- AG office | 7 | $84,000 | $58,000 | $70,000 | $95,000 | $165,000 |
| State government - other | 7 | $76,643 | $55,000 | $92,000 | $106,000 | $123,000 |
| Public interest/non-profit attorney | 10 | $83,189 | $64,900 | $85,500 | $92,000 | $125,000 |
| **Total** | **64** | **$79,290** | **$57,925** | **$72,500** | **$93,500** | **$140,000** |

| In-House Counsel | Valid N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| CLO or General Counsel (GC) | 9 | $176,667 | $140,000 | $160,000 | $190,000 | $385,000 |
| Senior Counsel | 5 | $215,200 | $181,000 | $195,000 | $228,000 | $350,000 |
| Associate/Assistant GC | 7 | $185,000 | $80,000 | $125,000 | $300,000 | $500,000 |
| Counsel | 7 | $89,143 | $67,500 | $88,000 | $120,000 | $141,000 |
| Corporate Counsel | 9 | $141,644 | $120,000 | $123,000 | $125,000 | $280,000 |
| Staff Attorney | 5 | $101,000 | $75,000 | $100,000 | $129,000 | $141,000 |
| **Total** | **42** | **$151,543** | **$85,000** | **$125,000** | **$181,000** | **$350,000** |



**Exhibits 29 and 30** reveal income clustering among all practice categories. Not surprisingly, there is a large spread of income within most categories, which reflect different forms and styles of practice. **Exhibit 30** covers changes since 2013 for all three practice classes.

**EXHIBIT 29:** PERCENT DISTRIBUTION OF 2018 PRIVATE PRACTICE ATTORNEY NET INCOME BY INCOME GROUP AND PRACTICE CLASS

| 2018 Income Group | Solo Office Outside of Home | Solo with Home Office | Solo with 1+ Associate | Partner in Firm with 2-7 Partners | Partner in Firm with 8+ Partners | Associate in Firm with 2-7 Partners | Associate in Firm with 8+ Partners | All Private Practitoners |
|---|---|---|---|---|---|---|---|---|
| <$30K | 11% | 42% | - | - | - | - | - | 9% |
| $30-45.9K | 9% | 7% | - | - | - | - | - | 5% |
| $46-55.9K | 4% | 5% | - | - | - | - | - | 5% |
| $56-65.9K | 8% | - | - | 6% | - | 13% | - | 7% |
| $66-75.9K | 7% | - | - | 9% | - | 13% | 15% | 7% |
| $76-85.9K | 7% | 10% | - | 8% | - | 21% | 15% | 9% |
| $86-95.9K | 4% | - | - | - | - | 13% | 12% | 6% |
| $96-115.9K | 14% | - | 19% | 17% | 9% | - | - | 13% |
| $116-135.9K | 8% | 7% | - | 17% | 15% | - | 27% | 10% |
| $136-175.9K | 10% | - | - | 8% | 15% | - | 12% | 8% |
| $176-249.9K | 8% | 7% | 25% | 20% | 24% | - | - | 12% |
| $250-479K | 7% | - | 19% | 8% | 24% | - | - | 7% |
| $480K+ | 3% | - | - | 3% | 9% | - | - | 2% |
| **Count** | **90** | **41** | **16** | **91** | **33** | **39** | **26** | **374** |
| **All Private Practitioners** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

**EXHIBIT 30:** PERCENT DISTRIBUTION OF THREE CLASSES OF ATTORNEYS BY INCOME GROUP, 2012 AND 2018

| | Column Percents | | | | | |
|---|---|---|---|---|---|---|
| Income Group | 2012 Private Practitioner | 2018 Private Practitioner | 2012 Government | 2018 Government | 2012 In-House Counsel | 2018 In-House Counsel |
| <$30K | 11.2% | 8.4% | 2.1% | 1.4% | 0 | 0 |
| $30-45.9K | 6.3% | 5.3% | 6.7% | 8.6% | 0 | 2.1% |
| $46-55.9K | 7.4% | 5.3% | 12.0% | 10.0% | 0 | 4.3% |
| $56-65.9K | 8.2% | 7.1% | 19.4% | 17.1% | 0 | 17.0% |
| $66-75.9K | 5.5% | 7.4% | 15.8% | 14.3% | 13.3% | 6.4% |
| $76-85.9K | 4.5% | 8.7% | 9.5% | 14.3% | 6.7% | 4.3% |
| $86-95.9K | 4.9% | 5.5% | 11.3% | 11.4% | 8.6% | 2.1% |
| $96-115.9K | 10.7% | 12.4% | 11.6% | 5.7% | 15.2% | 25.0% |
| $116-135.9K | 9.0% | 10.3% | 8.5% | 8.6% | 18.1% | 12.8% |
| $136-175.9K | 9.0% | 7.9% | 1.4% | 8.6% | 16.2% | 12.8% |
| $176-249.9K | 10.8% | 12.4% | 1.4% | 0.0% | 10.5% | 8.5% |
| $250-479K | 9.2% | 7.1% | 0.4% | 0.0% | 11.4% | 2.1% |
| $480K+ | 3.1% | 2.4% | 0 | 0.0% | 0.0% | 1.0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



## Issues Related to Law School Debt

Law school student debt issues not only affect students, but are of vital concern to the legal services industry and the general economy itself.  The OSBA's current economic survey separately targeted these questions to private practitioners, in-house counsel and government attorneys:

- If you borrowed money to attend school, please approximate your total, cumulative law school-related debt.

- What is your current monthly payment on your educational debt?

- About how many remaining years of payment do you have?

The first part of **Exhibit 31** stratifies total reported cumulative law school-related debt by generation (Millennials, Generation Xers and Baby Boomers). Private Practitioners report a median debt of $60,000, government attorneys report $45,000, and In-house Counsel report $70,000. Debt is long-lived.

The second part of **Exhibit 31** stratifies current monthly payments to reduce law school debt by generation. Private Practitioners report a median payment of $470/month, government attorneys report a median payment of $153/month, and in-house counsel report a median payment of $375/month.



**EXHIBIT 31:** DISTRIBUTIONS OF 2019 TOTAL CUMULATIVE LAW SCHOOL DEBT AND CURRENT MONTHLY PAYMENTS BY GENERATION

### Private Practitioners

| Generation | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| | | | Total Cumulative Law School Debt | | | |
| Millennials (1980-1994) | 63 | 45,000 | 80,000 | 98,810 | 140,000 | 210,000 |
| Generation Xers (1965-1979) | 74 | 30,000 | 60,000 | 71,088 | 90,000 | 160,000 |
| Baby boomers (1944-1964) | 43 | 10,000 | 15,000 | 32,228 | 40,000 | 132,000 |
| **Total** | **181** | **$25,000** | **$60,000** | **$71,499** | **$100,000** | **$200,000** |

### Government Attorneys

| | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Millennials (1980-1994) | 30 | 75,000 | 110,000 | 113,380 | 150,000 | 275,000 |
| Generation Xers (1965-1979) | 20 | - | 47,500 | 67,450 | 130,000 | 207,500 |
| Baby boomers (1944-1964) | 21 | - | - | 6,738 | 6,000 | 25,000 |
| **Total** | **71** | **-** | **$45,000** | **$68,900** | **$125,000** | **$200,000** |

### In-House Counsel

| | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Millennials (1980-1994) | 17 | 50,000 | 90,000 | 87,706 | 116,000 | 240,000 |
| Generation Xers (1965-1979) | 15 | 15,000 | 70,000 | 72,000 | 130,000 | 190,000 |
| Baby boomers (1944-1964) | 7 | - | 10,000 | 41,000 | 100,000 | 152,000 |
| **Total** | **39** | **$15,000** | **$70,000** | **$73,282** | **$120,000** | **$190,000** |

### CURRENT MONTHLY PAYMENT FOR:

### Private Practitioners

| Generation | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Millennials (1980-1994) | 80 | 302 | 470 | 577 | 775 | 1450 |
| Generation Xers (1965-1979) | 59 | 300 | 418 | 535 | 725 | 1200 |
| Baby Boomers (1944-1964) | 8 | 244 | 425 | 553 | 675 | 1600 |
| **Total** | **148** | **$300** | **$470** | **$559** | **$738** | **$1,200** |

### Government Attorneys

| | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Millennials (1980-1994) | 39 | 145 | 315 | 414 | 500 | 1,400 |
| Generation Xers (1965-1979) | 35 | - | 200 | 292 | 450 | 1,200 |
| Baby Boomers (1944-1964) | 29 | - | - | 34 | - | 385 |
| **Total** | **104** | **$0** | **$153** | **$250** | **$412** | **$1,200** |

### In-House Counsel

| | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Millennials (1980-1994) | 26 | 250 | 500 | 639 | 1,087 | 1800 |
| Generation Xers (1965-1979) | 24 | - | 397 | 583 | 1,100 | 1500 |
| Baby Boomers (1944-1964) | 11 | - | - | 211 | 325 | 1000 |
| **Total** | **61** | **$0** | **$375** | **$540** | **$1,000** | **1500** |



Respondents report the number of remaining years of payments with a median of 15 years for Private Practitioners, five years for government attorneys and nine years for In-house Counsel. **Exhibit 32** distributes remaining years of payment by generation.

The survey queried as to the degree of deferrals experienced by practice class. About 9.3% of private practitioners are in deferral on paying off educational debt, while 5.2% of government attorneys and 4.8% of in-house counsel report deferral status.

**EXHIBIT 32:** DISTRIBUTIONS OF 2019 REMAINING YEARS OF PAYMENT BY GENERATION

**Private Practitioners**

| Generation | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Millennials (after 1980) | 93 | 9 | 19 | 20 | 22 | 35 |
| Generation Xers (1961-1980) | 64 | 7 | 13 | 13 | 18 | 25 |
| Baby Boomers (1944-1960) | 16 | 5 | 9 | 11 | 18 | 30 |
| **Total** | **174** | **7** | **15** | **17** | **20** | **30** |

**Government Attorneys**

| Generation | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Millennials (after 1980) | 42 | 6 | 10 | 12 | 18 | 30 |
| Generation Xers (1961-1980) | 37 | - | 3 | 6 | 9 | 20 |
| Baby Boomers (1944-1960) | 29 | - | - | 1 | 0 | 8 |
| **Total** | **109** | **0** | **5** | **7** | **10** | **22** |

**In-House Counsel**

| Generation | N | 25th Percentile | Median | Mean | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Millennials (after 1980) | 29 | 7 | 12 | 12 | 19 | 21 |
| Generation Xers (1961-1980) | 25 | - | 9 | 9 | 14 | 20 |
| Baby Boomers (1944-1960) | 10 | - | - | 2 | 3 | 10 |
| **Total** | **64** | **-** | **9** | **9** | **15** | **20** |



## Income by Field of Law

Attorneys were asked to select from a list of various fields of law those that provided their highest sources of income, which is defined here as primary field of law. **Exhibit 33** distributes 2018 net incomes of all private practice respondents by their reported primary source of income. **Exhibit 34** considers full-time private practitioners only. **Exhibit 35**, in addition to field of law, includes practice emphasis for government attorneys and in-house counsel.

**EXHIBIT 33:** 2018 NET INCOME BY PRIMARY FIELD OF LAW, PRIVATE PRACTITIONERS

| Primary Field of Law | N | | Value by Percentile | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Administrative Law | 7 | $97,714 | $14,000 | $77,000 | $205,000 | $236,000 |
| Bankruptcy/Debtor Law | 10 | $134,467 | $82,000 | $135,000 | $200,000 | $264,400 |
| Consumer Law | 5 | $88,000 | $60,000 | $80,000 | $90,000 | $150,000 |
| Corporate/Business Law | 25 | $174,664 | $78,000 | $120,000 | $190,000 | $500,000 |
| Criminal (Public Defendant) | 7 | $68,571 | $30,000 | $60,000 | $120,000 | $130,000 |
| Criminal (Private Defendant) | 11 | $193,818 | $80,000 | $100,000 | $145,000 | $1,000,000 |
| Domestic Relations/Family Law/ Juvenile Law | 45 | $92,403 | $45,000 | $75,000 | $110,000 | $210,000 |
| Education Law | 7 | $106,095 | $66,667 | $84,000 | $135,000 | $200,000 |
| Elder Law/Public Benefits/ERISA | 20 | $139,900 | $97,500 | $129,500 | $182,500 | $250,000 |
| General Practice | 14 | $65,357 | $35,000 | $60,000 | $90,000 | $188,000 |
| Insurance Law | 8 | $132,125 | $85,000 | $103,000 | $154,500 | $300,000 |
| Intellectual Property | 10 | $142,193 | $59,000 | $142,500 | $200,000 | $325,000 |
| Labor Law (Labor) | 7 | $140,143 | $84,000 | $92,000 | $180,000 | $277,000 |
| Employment Law (Labor) | 7 | $198,143 | $77,000 | $140,000 | $200,000 | $675,000 |
| Medical Malpractice | 4 | $450,000 | $250,000 | $450,000 | $650,000 | $700,000 |
| Municipal/Public Entity Law | 5 | $130,000 | $125,000 | $140,000 | $150,000 | $150,000 |
| Personal Injury (Defendant) | 4 | $167,250 | $112,000 | $175,000 | $222,500 | $245,000 |
| Personal Injury (Plaintiff) | 14 | $116,450 | $70,000 | $93,148 | $165,000 | $250,000 |
| Real Property Law | 25 | $120,680 | $60,000 | $110,000 | $130,000 | $300,000 |
| Trial Practice, not PI (General Civil) | 13 | $196,346 | $75,000 | $96,000 | $180,000 | $750,000 |
| Trial Practice, not PI (Commercial) | 8 | $218,125 | $90,000 | $142,500 | $275,000 | $650,000 |
| Estate Planning/Wealth Management | 26 | $131,112 | $79,000 | $110,000 | $150,000 | $300,000 |
| Probate/Decedent's Estates | 47 | $91,320 | $50,000 | $80,000 | $128,000 | $185,000 |
| Workers' Compensation (Plaintiff) | 7 | $157,000 | $65,000 | $130,000 | $220,000 | $357,000 |
| Workers' Compensation (Defendant) | 5 | $147,000 | $115,000 | $120,000 | $200,000 | $240,000 |
| **Total** | **371** | **$130,001** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |



**EXHIBIT 34:** 2018 NET INCOME BY FIELD OF LAW, FULL-TIME PRIVATE PRACTITIONERS

| Primary Field of Law | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| | | | | **Value by Percentile** | | |
| Administrative Law | 6 | $114,000 | $52,000 | $88,500 | $205,000 | $236,000 |
| Bankruptcy/Debtor Law | 9 | $148,552 | $103,000 | $160,000 | $200,000 | $264,400 |
| Consumer Law | 5 | $88,000 | $60,000 | $80,000 | $90,000 | $150,000 |
| Corporate/Business Law | 23 | $179,983 | $78,000 | $120,000 | $190,000 | $500,000 |
| Criminal (Public Defendant) | 6 | $74,167 | $30,000 | $67,500 | $120,000 | $130,000 |
| Criminal (Private Defendant) | 11 | $193,818 | $80,000 | $100,000 | $145,000 | $1,000,000 |
| Domestic Relations/Family Law/Juvenile Law | 39 | $101,875 | $55,000 | $80,000 | $120,000 | $280,000 |
| Education Law | 6 | $109,778 | $66,667 | $100,000 | $135,000 | $200,000 |
| Elder Law/Public Benefits/ERISA | 17 | $138,118 | $100,000 | $129,000 | $150,000 | $250,000 |
| General Practice | 7 | $88,286 | $50,000 | $90,000 | $100,000 | $188,000 |
| Insurance Law | 7 | $137,429 | $75,000 | $104,000 | $159,000 | $300,000 |
| Intellectual Property | 9 | $152,889 | $72,000 | $155,000 | $200,000 | $325,000 |
| Labor Law (Labor) | 6 | $149,500 | $90,000 | $136,000 | $180,000 | $277,000 |
| Employment Law (Labor) | 7 | $198,143 | $77,000 | $140,000 | $200,000 | $675,000 |
| Medical Malpractice | 4 | $450,000 | $250,000 | $450,000 | $650,000 | $700,000 |
| Municipal/Public Entity Law | 5 | $130,000 | $125,000 | $140,000 | $150,000 | $150,000 |
| Personal Injury (Plaintiff) | 13 | $106,177 | $70,000 | $86,296 | $125,000 | $210,000 |
| Real Property Law | 19 | $144,947 | $65,000 | $120,000 | $240,000 | $307,000 |
| Trial Practice, not PI (General Civil) | 12 | $211,875 | $79,500 | $98,000 | $250,000 | $750,000 |
| Trial Practice, not PI (Commercial) | 7 | $234,286 | $90,000 | $180,000 | $360,000 | $650,000 |
| Estate Planning/Wealth Management | 23 | $135,978 | $79,000 | $110,000 | $170,000 | $300,000 |
| Probate, Decedent's Estates | 38 | $104,498 | $59,000 | $97,500 | $131,000 | $250,000 |
| Workers' Compensation (Plaintiff) | 5 | $187,000 | $130,000 | $220,000 | $220,000 | $357,000 |
| Workers' Compensation (Defendant) | 4 | $153,750 | $87,500 | $157,500 | $220,000 | $240,000 |
| **All Full-time Private Practitoners** | **315** | **$141,715** | **$75,000** | **$108,800** | **$165,000** | **$325,000** |



**EXHIBIT 35:** 2018 NET INCOME BY PRIMARY FIELD OF LAW, GOVERNMENT ATTORNEYS AND IN-HOUSE COUNSEL BY FIELD OF LAW AND PRACTICE EMPHASES

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| **Primary Field of Law** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Judge/Magistrate (full-time) | 12 | $99,538 | $70,000 | $96,000 | $135,000 | $140,550 |
| City government | 3 | $68,233 | $49,700 | $70,000 | $85,000 | $85,000 |
| County government | 20 | $64,300 | $48,500 | $64,000 | $76,500 | $101,500 |
| State government- AG office | 7 | $84,000 | $58,000 | $70,000 | $95,000 | $165,000 |
| State government - other | 8 | $76,062 | $55,500 | $82,000 | $103,000 | $123,000 |
| Public interest/non-profit attorney | 10 | $83,189 | $64,900 | $85,500 | $92,000 | $125,000 |
| **All Government Attorneys** | **66** | **$80,251** | **$58,000** | **$73,500** | **$95,000** | **$140,550** |

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| **Practice Emphasis** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Criminal prosecution | 13 | $64,769 | $56,000 | $66,000 | $78,000 | $87,000 |
| Criminal defense | 6 | $69,067 | $40,000 | $59,950 | $100,000 | $150,000 |
| Litigation | 16 | $81,000 | $57,000 | $72,500 | $104,500 | $140,000 |
| Government affairs/ external relations | 8 | $78,999 | $64,995 | $71,000 | $92,000 | $116,000 |
| Preside over hearings/ cases | 11 | $103,586 | $85,000 | $97,000 | $140,000 | $140,550 |
| **All Government Attorneys** | **58** | **$80,785** | **$58,000** | **$71,000** | **$95,000** | **$140,550** |

| | | | Value by Percentile | | |
|---|---|---|---|---|---|
| **Organization Type** | **N** | **Mean** | **25th Percentile** | **Median** | **75th Percentile** | **95th Percentile** |
| Public company (for-profit) | 19 | $157,726 | $100,000 | $125,000 | $190,000 | $500,000 |
| Private company (for-profit) | 18 | $143,136 | $72,000 | $121,500 | $175,000 | $385,000 |
| Wholly owned subsidiary | 3 | $119,000 | $75,000 | $122,000 | $160,000 | $160,000 |
| Not-for-profit organization | 6 | $122,833 | $80,000 | $110,000 | $140,000 | $228,000 |
| **All In-House Counsel** | **46** | **$144,940** | **$80,000** | **$124,000** | **$175,000** | **$350,000** |



## Income by Years in Practice

Attorney income increases with tenure, as displayed in **Exhibit 36**.

**EXHIBIT 36:** 2018 NET INCOME BY YEARS OF PRACTICE, ALL ATTORNEY CLASSES

| All Private Practitioners | Value by Percentile | | | | |
|---|---|---|---|---|---|
| Years in Practice | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| 1 to 2 | 12 | $61,758 | $43,000 | $50,000 | $75,500 | $145,000 |
| 3 to 5 | 30 | $77,667 | $57,000 | $73,000 | $82,000 | $180,000 |
| 6 to 10 | 51 | $95,416 | $60,000 | $86,000 | $127,000 | $202,000 |
| 11 to 15 | 30 | $128,383 | $72,000 | $100,000 | $130,000 | $675,000 |
| 16 to 25 | 73 | $149,658 | $84,000 | $110,000 | $200,000 | $340,000 |
| 26 to 35 | 78 | $160,014 | $75,000 | $127,000 | $200,000 | $403,000 |
| 36+ | 105 | $130,952 | $65,000 | $100,000 | $180,000 | $277,000 |
| **All Attorneys** | **379** | **$129,142** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |

| Full-time Private Practitioners Only | Value by Percentile | | | | |
|---|---|---|---|---|---|
| Years in Practice | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| 1 to 2 | 9 | $70,667 | $50,000 | $50,000 | $79,000 | $145,000 |
| 3 to 5 | 27 | $83,333 | $59,000 | $75,000 | $90,000 | $180,000 |
| 6 to 10 | 45 | $103,827 | $70,000 | $95,000 | $130,000 | $202,000 |
| 11 to 15 | 27 | $139,141 | $77,000 | $100,000 | $130,000 | $675,000 |
| 16 to 25 | 63 | $160,240 | $90,000 | $112,000 | $200,000 | $340,000 |
| 26 to 35 | 70 | $173,344 | $84,000 | $135,500 | $225,000 | $403,000 |
| 36+ | 78 | $149,264 | $75,000 | $120,000 | $200,000 | $300,000 |
| **All Full-time Private Practitioners** | **319** | **$141,651** | **$75,000** | **$108,800** | **$165,000** | **$325,000** |

| Government Attorney | Value by Percentile | | | | |
|---|---|---|---|---|---|
| Years in Practice | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| 1 to 2 | 6 | $38,917 | $39,000 | $42,500 | $45,000 | $60,000 |
| 3 to 5 | 8 | $51,463 | $46,350 | $50,500 | $54,000 | $78,000 |
| 6 to 10 | 14 | $73,964 | $58,000 | $70,000 | $86,500 | $125,000 |
| 11 to 15 | 7 | $98,141 | $70,000 | $84,000 | $130,000 | $165,000 |
| 16 to 25 | 16 | $85,241 | $65,500 | $82,500 | $94,500 | $140,000 |
| 26 to 35 | 10 | $88,090 | $70,000 | $82,000 | $92,000 | $140,000 |
| 36+ | 9 | $112,011 | $95,000 | $107,000 | $140,550 | $150,000 |
| **All Government Attorneys** | **70** | **$80,293** | **$58,000** | **$73,500** | **$95,000** | **$140,550** |

| In-House Counsel | Value by Percentile | | | | |
|---|---|---|---|---|---|
| Years in Practice | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| 3 to 5 | 4 | $79,614 | $51,729 | $75,729 | $107,500 | $125,000 |
| 6 to 10 | 16 | $112,563 | $80,000 | $121,500 | $134,500 | $175,000 |
| 11 to 15 | 10 | $128,280 | $88,000 | $122,399 | $140,000 | $220,000 |
| 16 to 25 | 7 | $143,286 | $72,000 | $135,000 | $200,000 | $280,000 |
| 26 to 35 | 4 | $267,000 | $209,000 | $264,000 | $325,000 | $350,000 |
| 36+ | 4 | $280,000 | $117,500 | $272,500 | $442,500 | $500,000 |
| **All In-House Counsel** | **47** | **$143,133** | **$75,000** | **$123,000** | **$175,000** | **$350,000** |



## Attorney Income by Firm Size

**Exhibit 37** displays 2018 attorney net income by firm size.  Within larger firms, lower percentile values generally represent associates, while higher percentile values represent partners. Median levels, in this exhibit, represent a mix of both categories.

**EXHIBIT 37:** 2018 NET INCOME BY FIRM SIZE, ALL CLASSES OF ATTORNEYS

| Size of Firm (Number of Attorneys) | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| 1 | 144 | $107,679 | $40,000 | $80,000 | $129,000 | $265,000 |
| 2 | 40 | $138,179 | $75,000 | $100,000 | $169,000 | $351,500 |
| 3 to 6 | 96 | $123,125 | $75,000 | $98,000 | $150,000 | $250,000 |
| 7 to 10 | 27 | $136,758 | $66,667 | $108,800 | $150,000 | $350,000 |
| 11 to 20 | 14 | $145,571 | $96,000 | $145,000 | $180,000 | $250,000 |
| 21 to 50 | 27 | $156,148 | $72,000 | $110,000 | $190,000 | $400,000 |
| >50 | 24 | $223,813 | $106,500 | $147,500 | $240,000 | $750,000 |
| **All Private Practitioners** | **372** | **$129,492** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |

| Size of Firm (Number of Attorneys) | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| 1 | 99 | $135,946 | $63,750 | $100,000 | $160,000 | $300,000 |
| 2 | 38 | $140,925 | $75,000 | $101,000 | $180,000 | $403,000 |
| 3 to 6 | 90 | $122,789 | $75,000 | $95,500 | $150,000 | $250,000 |
| 7 to 10 | 27 | $136,758 | $66,667 | $108,800 | $150,000 | $350,000 |
| 11 to 20 | 12 | $131,917 | $91,000 | $127,500 | $170,000 | $200,000 |
| 21 to 50 | 25 | $162,240 | $72,000 | $115,000 | $190,000 | $400,000 |
| >50 | 24 | $223,813 | $106,500 | $147,500 | $240,000 | $750,000 |
| **All Full-time Private Practitioners** | **315** | **$141,485** | **$75,000** | **$106,000** | **$165,000** | **$325,000** |

| Size of Firm (Number of Attorneys) | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| 1 | 4 | $79,750 | $70,000 | $78,500 | $89,500 | $92,000 |
| 3 to 6 | 20 | 69,192 | $50,500 | $60,000 | $85,000 | $128,000 |
| 7 to 10 | 8 | $88,063 | $75,500 | $83,250 | $99,000 | $123,000 |
| 11 to 20 | 14 | $88,793 | $56,000 | $80,500 | $125,000 | $140,550 |
| 21 to 50 | 6 | $76,983 | $55,000 | $71,450 | $87,000 | $122,000 |
| >50 | 11 | $74,018 | $50,000 | $70,000 | $85,000 | $165,000 |
| **All Government Attorneys** | **65** | **$78,054** | **$57,850** | **$70,000** | **$92,000** | **$140,000** |

| Size of Firm (Number of Attorneys) | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| 1 | 12 | $142,205 | $79,500 | $132,500 | $185,500 | $280,000 |
| 2 | 9 | 105,778 | $85,000 | $123,000 | $125,000 | $141,000 |
| 3 to 6 | 17 | 127,353 | $70,000 | $118,000 | $141,000 | $350,000 |
| 7 to 10 | 5 | 132,359 | $72,000 | $122,797 | $125,000 | $300,000 |
| **All In-House Counsel** | **46** | **$137,875** | **$75,000** | **$122,899** | **$160,000** | **$300,000** |

37



## Attorney Income by Office Location

**Exhibit 38** displays 2018 annual net income of Ohio attorneys within major metropolitan areas and regions, along with all major jurisdictions. **Exhibits 39-41** only include full-time private practitioners and in-house counsel.

| EXHIBIT 38: 2018 NET INCOME, ALL PRIVATE PRACTITIONERS BY OFFICE LOCATION | | | | | | |
|---|---|---|---|---|---|---|
| | | | Value by Percentile | | | |
| Office Location Combined Areas | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Greater Cleveland | 79 | $129,000 | $65,000 | $99,000 | $180,000 | $325,000 |
| Greater Cincinnati | 29 | $134,293 | $72,000 | $105,000 | $132,500 | $210,000 |
| Greater Columbus | 92 | $159,093 | $75,000 | $120,000 | $200,000 | $403,000 |
| Greater Dayton | 26 | $115,127 | $45,000 | $78,000 | $128,000 | $300,000 |
| Northeast Region | 79 | $100,407 | $60,000 | $90,000 | $115,192 | $277,000 |
| Northwest Region | 44 | $122,532 | $84,500 | $110,500 | $147,500 | $243,000 |
| Southern Region | 30 | $126,163 | $40,000 | $92,500 | $150,000 | $240,000 |
| **All Private Practitioners** | **379** | **$128,823** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |

| | | | Value by Percentile | | | |
|---|---|---|---|---|---|---|
| Office Location Detailed | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Downtown Cleveland | 25 | $176,384 | $80,000 | $130,000 | $200,000 | $500,000 |
| Suburban Cleveland | 54 | $107,064 | $60,000 | $82,000 | $150,000 | $265,000 |
| Downtown Cincinnati | 17 | $148,647 | $72,000 | $100,000 | $127,000 | $950,000 |
| Suburban Cincinnati | 12 | $113,958 | $71,500 | $124,500 | $138,750 | $210,000 |
| Downtown Columbus | 43 | $168,081 | $77,000 | $125,000 | $220,000 | $340,000 |
| Suburban Columbus | 49 | $151,206 | $72,000 | $115,000 | $180,000 | $403,000 |
| Akron | 29 | $95,851 | $55,000 | $75,000 | $108,800 | $277,000 |
| Canton | 8 | $135,196 | $75,500 | $102,500 | $178,784 | $360,000 |
| Dayton | 26 | $115,127 | $45,000 | $78,000 | $128,000 | $300,000 |
| Toledo | 23 | $120,261 | $80,000 | $100,000 | $150,000 | $236,000 |
| Youngstown | 8 | $110,875 | $87,500 | $96,500 | $137,500 | $160,000 |
| Northeast Ohio | 34 | $93,644 | $55,000 | $77,500 | $110,000 | $250,000 |
| Northwest Ohio | 21 | $125,019 | $90,000 | $112,000 | $145,000 | $243,000 |
| Southeast Ohio | 10 | $212,200 | $100,000 | $135,000 | $200,000 | $1,000,000 |
| Southwest Ohio | 7 | $59,200 | $39,400 | $55,000 | $100,000 | $125,000 |
| Central Ohio | 13 | $96,038 | $40,000 | $79,500 | $135,000 | $240,000 |
| **All Private Practitioners** | **380** | **$128,958** | **$65,000** | **$100,000** | **$150,000** | **$300,000** |



**EXHIBIT 39:** 2018 NET INCOME, ALL FULL-TIME PRIVATE PRACTITIONERS BY OFFICE LOCATION

| Office Location Combined Areas | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Greater Cleveland | 68 | $142,781 | $72,000 | $112,500 | $187,500 | $325,000 |
| Greater Cincinnati | 21 | $151,690 | $80,000 | $120,000 | $132,500 | $210,000 |
| Greater Columbus | 78 | $176,045 | $78,000 | $126,000 | $205,000 | $600,000 |
| Greater Dayton | 21 | $133,252 | $57,000 | $80,000 | $140,000 | $300,000 |
| Northeast Region | 65 | $107,607 | $70,000 | $90,000 | $120,000 | $277,000 |
| Northwest Region | 42 | $121,224 | $84,000 | $110,500 | $145,000 | $243,000 |
| Southern Region | 24 | $148,146 | $57,000 | $110,000 | $167,500 | $240,000 |
| **All Full-time Private Practitioners** | **319** | **$141,272** | **$75,000** | **$106,000** | **$165,000** | **$325,000** |

| Office Location Detailed | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Downtown Cleveland | 24 | $181,233 | $92,000 | $137,500 | $212,500 | $500,000 |
| Suburban Cleveland | 44 | $121,807 | $65,000 | $85,500 | $172,500 | $265,000 |
| Downtown Cincinnati | 13 | $161,231 | $79,000 | $100,000 | $127,000 | $950,000 |
| Suburban Cincinnati | 8 | $136,188 | $115,000 | $129,500 | $166,250 | $210,000 |
| Downtown Columbus | 39 | $172,936 | $77,000 | $125,000 | $230,000 | $600,000 |
| Suburban Columbus | 39 | $179,154 | $90,000 | $130,000 | $200,000 | $675,000 |
| Akron | 24 | $101,333 | $52,500 | $77,500 | $115,096 | $277,000 |
| Canton | 8 | $135,196 | $75,500 | $102,500 | $178,784 | $360,000 |
| Dayton | 21 | $133,252 | $57,000 | $80,000 | $140,000 | $300,000 |
| Toledo | 21 | $117,429 | $80,000 | $100,000 | $130,000 | $236,000 |
| Youngstown | 7 | $112,857 | $85,000 | $96,000 | $140,000 | $160,000 |
| Northeast Ohio | 26 | $103,496 | $63,750 | $90,000 | $120,000 | $180,000 |
| Northwest Ohio | 21 | $125,019 | $90,000 | $112,000 | $145,000 | $243,000 |
| Southeast Ohio | 8 | $255,250 | $120,000 | $150,000 | $201,000 | $1,000,000 |
| Southwest Ohio | 6 | $62,500 | $40,000 | $55,000 | $100,000 | $125,000 |
| Central Ohio | 10 | $113,850 | $59,000 | $92,500 | $185,000 | $240,000 |
| **All Full-time Private Practitioners** | **320** | **$141,393** | **$75,000** | **$107,400** | **$165,000** | **$322,500** |



**EXHIBIT 40:** 2018 NET INCOME, ALL IN-HOUSE COUNSEL BY OFFICE LOCATION

| Office Location | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Greater Cleveland | 7 | $145,286 | $80,000 | $85,000 | $228,000 | $350,000 |
| Greater Cincinnati | 6 | $105,133 | $88,000 | $110,000 | $122,797 | $125,000 |
| Greater Columbus | 18 | $127,833 | $69,000 | $121,500 | $140,000 | $500,000 |
| Northeast Region | 4 | $142,500 | $122,500 | $124,000 | $162,500 | $200,000 |
| Northwest Region | 4 | $138,864 | $95,229 | $152,000 | $182,500 | $190,000 |
| Southern Region | 4 | $204,250 | $66,000 | $186,000 | $342,500 | $385,000 |
| **All Locations** | **44** | **$140,256** | **$75,000** | **$122,399** | **$150,500** | **$350,000** |

| Detail Office Location | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Downtown Cleveland | 3 | $185,000 | $85,000 | $120,000 | $350,000 | $350,000 |
| Suburban Cleveland | 4 | $115,500 | $75,000 | $82,000 | $156,000 | $228,000 |
| Suburban Cincinnati | 4 | $105,699 | $87,500 | $111,399 | $123,899 | $125,000 |
| Downtown Columbus | 6 | $91,500 | $69,000 | $82,500 | $125,000 | $140,000 |
| Suburban Columbus | 12 | $146,000 | $71,250 | $130,000 | $150,500 | $500,000 |
| Northwest Ohio (exc. Toledo) | 4 | $138,864 | $95,229 | $152,000 | $182,500 | $190,000 |
| **Detailed Locations** | **44** | **$140,256** | **$75,000** | **$122,399** | **$150,500** | **$350,000** |

**EXHIBIT 41:** 2018 NET INCOME, ALL GOVERNMENT ATTORNEYS BY OFFICE LOCATION

| Office Location | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Greater Cleveland | 2 | $54,850 | $49,700 | $54,850 | $60,000 | $60,000 |
| Greater Cincinnati | 5 | $93,910 | $60,000 | $92,000 | $125,000 | $140,550 |
| Greater Columbus | 23 | $84,109 | $58,000 | $85,000 | $100,000 | $140,000 |
| Greater Dayton | 2 | $59,950 | $55,000 | $59,950 | $64,900 | $64,900 |
| Northeast Region | 5 | $92,900 | $78,000 | $86,500 | $107,000 | $130,000 |
| Northwest Region | 15 | $67,657 | $56,000 | $65,000 | $83,000 | $122,000 |
| Southern Region | 14 | $82,999 | $66,000 | $74,500 | $97,000 | $150,000 |
| **Total** | **66** | **$79,924** | **$58,000** | **$73,500** | **$92,000** | **$140,000** |

| Detailed Office Location | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Downtown Columbus | 23 | $84,109 | $58,000 | $85,000 | $100,000 | $140,000 |
| Toledo | 6 | $88,333 | $78,000 | $84,000 | $87,000 | $122,000 |
| Northeast Ohio (exc. Akron, Canton, Cleveland, Youngstown) | 4 | $83,625 | $70,500 | $82,250 | $96,750 | $107,000 |
| Northwest Ohio (exc. Toledo) | 9 | $53,872 | $45,000 | $57,850 | $60,000 | $70,000 |
| Southeast Ohio | 4 | $81,750 | $72,500 | $82,000 | $91,000 | $97,000 |
| Central Ohio (exc. Metro Columbus) | 7 | $81,284 | $45,000 | $69,990 | $140,000 | $150,000 |
| **Total** | **68** | **$81,037** | **$59,000** | **$76,500** | **$95,000** | **$140,550** |



## Gender Variations in Attorney Income

The 2018 median net income for full-time female attorneys in private practice ($86,000) is 75% of the 2018 median net income for male attorneys in private practice ($115,000). The "gap" for part-time attorneys is 77% ($60,000 for males versus $46,000 for females).

When considering the major practice classification groups of the survey respondents, median income for males exceeds attorney income of females for all classes except space-sharers and city/county government attorney (**Exhibit 42**). The gender gap is smaller for in-house counsel and government attorneys than it is for private practitioners (**Exhibit 43**).



EXHIBIT 42: 2018 ATTORNEY MEDIAN NET INCOME BY GENDER AND PRACTICE CLASS



EXHIBIT 43: 2018 FULL-TIME ATTORNEY MEDIAN NET INCOME BY PRACTICE CLASS AND GENDER

41



With respect to private practitioners, female income exceeds male income in the 1-10 and the 16-25 years-in-practice categories. Male income exceeds female income significantly in the 11-15 and 26-35 years-in-practice categories. The gender gap is smallest among younger cohorts of respondents (**Exhibit 44**).

**EXHIBIT 44:** FULL-TIME PRIVATE PRACTITIONER 2018 MEDIAN NET INCOME BY YEARS IN PRACTICE AND GENDER



For in-house counsel, male incomes exceed female incomes in all years-in-practice categories (**Exhibit 45**).

**EXHIBIT 45:** FULL-TIME IN-HOUSE COUNSEL 2018 MEDIAN NET INCOME BY YEARS IN PRACTICE AND GENDER





Government attorneys express near parity in gender-associated income gaps due to female income exceeding male income at the 11-25 years-in-practice category (**Exhibit 46**).

**EXHIBIT 46:** FULL-TIME GOVERNMENT ATTORNEY 2018 MEDIAN NET INCOME BY YEARS IN PRACTICE AND GENDER





# 2019 Attorney Hourly Billing Rates and Practices

**Attorney Hourly Billing Rates**

The 2019 median hourly billing rate is $250 ($207 in 2013). While many factors affect the setting of hourly billing rates, **Exhibit 47** includes three: respondents' firm size, years in practice and office location. **Exhibit 48** identifies primary field of law and practice classification.

**EXHIBIT 47:** 2019 HOURLY BILLING RATES BY FIRM SIZE, YEARS IN PRACTICE AND OFFICE LOCATION

| Size of Firm | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| 1 | 289 | $232 | $180 | $225 | $250 | $395 |
| 2 | 71 | $248 | $200 | $250 | $285 | $400 |
| 3 to 6 | 158 | $266 | $200 | $250 | $300 | $450 |
| 7 to 10 | 37 | $301 | $200 | $240 | $300 | $425 |
| 11 to 20 | 31 | $278 | $200 | $270 | $325 | $435 |
| 21 to 50 | 49 | $272 | $200 | $250 | $310 | $430 |
| >50 | 51 | $369 | $255 | $350 | $475 | $610 |
| **Total** | **686** | **$260** | **$200** | **$250** | **$300** | **$450** |

| Years in Practice | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| 1 to 2 | 20 | $164 | $128 | $165 | $208 | $295 |
| 3 to 5 | 39 | $210 | $175 | $200 | $245 | $285 |
| 6 to 10 | 70 | $225 | $195 | $215 | $250 | $325 |
| 11 to 15 | 49 | $273 | $225 | $250 | $300 | $425 |
| 16 to 25 | 127 | $252 | $200 | $250 | $300 | $435 |
| 26 to 35 | 161 | $260 | $200 | $250 | $300 | $495 |
| 36+ | 234 | $293 | $200 | $250 | $350 | $525 |
| **Total** | **700** | **$261** | **$200** | **$250** | **$300** | **$460** |

| Office Location | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Downtown Cleveland | 46 | $320 | $240 | $313 | $395 | $595 |
| Suburban Cleveland | 102 | $268 | $200 | $250 | $300 | $425 |
| Downtown Cincinnati | 37 | $311 | $245 | $300 | $350 | $600 |
| Suburban Cincinnati | 28 | $290 | $240 | $250 | $300 | $525 |
| Downtown Columbus | 77 | $324 | $250 | $300 | $375 | $555 |
| Suburban Columbus | 94 | $248 | $200 | $250 | $300 | $420 |
| Akron | 45 | $231 | $175 | $205 | $300 | $350 |
| Canton | 14 | $242 | $225 | $250 | $285 | $350 |
| Dayton | 45 | $225 | $175 | $220 | $270 | $325 |
| Toledo | 33 | $264 | $200 | $225 | $275 | $470 |
| Youngstown | 16 | $210 | $175 | $200 | $215 | $375 |
| Northeast Ohio | 56 | $217 | $190 | $203 | $250 | $300 |
| Northwest Ohio | 34 | $260 | $185 | $200 | $225 | $425 |
| Southeast Ohio | 22 | $249 | $200 | $243 | $300 | $350 |
| Southwest Ohio | 17 | $203 | $190 | $200 | $225 | $250 |
| Central Ohio | 29 | $198 | $160 | $200 | $250 | $275 |
| **Total** | **702** | **$261** | **$200** | **$250** | **$300** | **$460** |



**EXHIBIT 48:** 2019 HOURLY BILLING RATES BY FIELD OF LAW AND PRACTICE CLASS

| Specialty | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Administrative Law | 9 | $256 | $240 | $290 | $325 | $350 |
| Appellate Law | 6 | $202 | $185 | $200 | $225 | $250 |
| Bankruptcy/Debtor Law | 11 | $273 | $250 | $265 | $300 | $350 |
| Collections | 9 | $281 | $250 | $250 | $350 | $430 |
| Consumer Law | 11 | $424 | $275 | $435 | $515 | $650 |
| Corporate/Business Law | 52 | $292 | $210 | $250 | $325 | $600 |
| Criminal (Public Defendant) | 14 | $176 | $125 | $188 | $225 | $300 |
| Criminal (Private Defendant) | 13 | $259 | $200 | $250 | $300 | $370 |
| Domestic Relations/Family Law/Juvenile Law | 90 | $233 | $200 | $225 | $275 | $375 |
| Education Law | 8 | $254 | $213 | $243 | $263 | $400 |
| Elder Law/Public Benefits/ERISA | 24 | $278 | $238 | $275 | $300 | $405 |
| Environmental/Natural Resources Law | 7 | $325 | $250 | $300 | $390 | $480 |
| General Practice | 26 | $219 | $200 | $200 | $250 | $325 |
| Immigration Law | 4 | $193 | $150 | $210 | $235 | $250 |
| Insurance law | 19 | $207 | $150 | $170 | $275 | $400 |
| Intellectual Property | 14 | $328 | $245 | $305 | $420 | $595 |
| Labor Law (Labor) | 11 | $227 | $170 | $250 | $280 | $285 |
| Employment Law (Management) | 11 | $279 | $200 | $260 | $345 | $495 |
| Employment Law (Labor) | 19 | $353 | $250 | $375 | $425 | $525 |
| Medical Malpractice | 8 | $313 | $223 | $300 | $400 | $450 |
| Municipal/Public Entity Law | 10 | $195 | $175 | $200 | $200 | $300 |
| Personal Injury (Defendant) | 6 | $164 | $140 | $155 | $200 | $205 |
| Personal Injury (Plaintiff) | 27 | $231 | $195 | $225 | $250 | $325 |
| Professional Liability | 4 | $356 | $238 | $338 | $475 | $600 |
| Real Property Law | 45 | $292 | $180 | $250 | $310 | $465 |
| Social Security | 4 | $336 | $288 | $363 | $385 | $395 |
| Taxation | 7 | $359 | $180 | $300 | $625 | $660 |
| Trial Practice, not PI (General Civil) | 29 | $290 | $200 | $250 | $300 | $610 |
| Trial Practice, not PI (Commercial) | 17 | $308 | $225 | $285 | $350 | $525 |
| Estate Planning/Wealth Management | 46 | $251 | $200 | $250 | $285 | $375 |
| Probate/Decedent's Estates | 83 | $223 | $190 | $225 | $250 | $300 |
| Workers' Compensation (Plaintiff) | 9 | $200 | $200 | $200 | $250 | $300 |
| Workers' Compensation (Defendant) | 10 | $240 | $190 | $215 | $235 | $455 |
| **Total** | **680** | **$261** | **$200** | **$250** | **$300** | **$460** |

| Practice Classification | N | Value by Percentile | | | | |
|---|---|---|---|---|---|---|
| | | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
| Sole Practitioner with office outside of home | 201 | $239 | $200 | $225 | $250 | $395 |
| Sole Practitioner with home office only | 72 | $224 | $150 | $200 | $265 | $450 |
| Sole Practitioner with 1+ associates | 32 | $290 | $250 | $268 | $325 | $480 |
| Space sharer | 17 | $234 | $200 | $225 | $250 | $395 |
| Partner in firm with 2-7 partners | 154 | $277 | $210 | $250 | $300 | $425 |
| Partner in firm with 8+ partners | 77 | $350 | $265 | $340 | $425 | $600 |
| Of Counsel | 23 | $330 | $250 | $300 | $425 | $500 |
| Associate with Sole Practitioner | 18 | $218 | $175 | $200 | $275 | $375 |
| Associate in firm with 2-7 partners | 52 | $224 | $200 | $208 | $250 | $350 |
| Associate in firm with 8+ partners | 40 | $229 | $183 | $235 | $265 | $313 |
| **Total** | **690** | **$261** | **$200** | **$250** | **$300** | **$460** |



## Hourly Billing Rates for Associates and Legal Assistants

The distribution of hourly billing rates for associates and legal assistants are summarized by years of experience (**Exhibit 49**), by office location (**Exhibits 50 and 51**) and by firm size (**Exhibits 52 and 53**).

**EXHIBIT 49:** DISTRIBUTIONS OF 2019 HOURLY BILLING RATES FOR ASSOCIATES AND LEGAL ASSISTANTS BY FOUR LEVELS OF EXPERIENCE

| | Column Percents | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | None | | 3 Years Experience | | 5 Years Experience | | 10 Years Experience | |
| Associate Billing Rate Category | N | % | N | % | N | % | N | % |
| <$146 | 89 | 37.2 | 37 | 15.5 | 28 | 12.7 | 27 | 11.7 |
| $146-155 | 42 | 17.6 | 41 | 17.2 | 15 | 6.8 | 9 | 3.9 |
| $156-165 | 13 | 5.4 | 12 | 5.0 | 17 | 7.7 | 7 | 3.0 |
| $166-175 | 21 | 8.8 | 29 | 12.2 | 20 | 9.0 | 13 | 5.6 |
| $176-199 | 30 | 12.6 | 29 | 12.2 | 16 | 7.2 | 21 | 9.1 |
| $200-224 | 28 | 11.7 | 49 | 20.6 | 43 | 19.5 | 30 | 13.0 |
| $225-249 | 11 | 4.6 | 17 | 7.1 | 30 | 13.6 | 23 | 10.0 |
| $250-274 | 3 | 1.3 | 16 | 6.7 | 21 | 9.5 | 36 | 15.6 |
| $275-299 | - | - | 4 | 1.7 | 18 | 8.1 | 21 | 9.1 |
| $300-324 | - | - | 3 | 1.3 | 8 | 3.6 | 19 | 8.2 |
| $325-349 | - | - | - | - | 3 | 1.4 | 8 | 3.5 |
| $350-379 | - | - | - | - | - | - | 7 | 3.0 |
| $380-425 | - | - | - | - | - | - | 5 | 2.2 |
| >$425 | - | - | - | - | - | - | 5 | 2.2 |
| **Total** | **270** | **100%** | **238** | **100%** | **219** | **100%** | **231** | **100%** |

| | Column Percents | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | None | | 3 Years Experience | | 5 Years Experience | | 10 Years Experience | |
| Legal Assistant Billing Rate Category | N | % | N | % | N | % | N | % |
| <$71 | 57 | 33.5 | 31 | 17.9 | 30 | 16.6 | 27 | 11.9 |
| $71-80 | 24 | 14.1 | 26 | 15.0 | 19 | 10.5 | 18 | 7.9 |
| $81-90 | 15 | 8.8 | 18 | 10.4 | 17 | 9.4 | 18 | 7.9 |
| $91-100 | 33 | 19.4 | 35 | 20.2 | 27 | 14.9 | 35 | 15.4 |
| $101-110 | 10 | 5.9 | 17 | 9.8 | 19 | 10.5 | 18 | 7.9 |
| $111-120 | 5 | 2.9 | 8 | 4.6 | 17 | 9.4 | 19 | 8.4 |
| $121-130 | 11 | 6.5 | 16 | 9.2 | 19 | 10.5 | 33 | 14.5 |
| $131-140 | - | - | 3 | 1.7 | 6 | 3.3 | 7 | 3.1 |
| $141-150 | 3 | 1.8 | 7 | 4.0 | 12 | 6.6 | 21 | 9.3 |
| 151-160 | 4 | 2.4 | - | - | - | - | 4 | 1.8 |
| 161-170 | - | - | 4 | 2.3 | 3 | 1.7 | 4 | 1.8 |
| >$170 | 5 | 2.9 | 7 | 4.0 | 11 | 6.1 | 23 | 10.1 |
| **Total** | **170** | **100%** | **173** | **100%** | **181** | **100%** | **227** | **100%** |



**OHIO STATE BAR ASSOCIATION**
Connect. Advance. Succeed.

**EXHIBIT 50:** 2019 HOURLY BILLING RATES FOR ASSOCIATES BY OFFICE LOCATION AND EXPERIENCE

| Associate Billing Rate Group | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| | | | | Column Percents | | | | |
| **No Experience** | | | | | | | | |
| <$146 | 27.8% | - | 34.4% | 58.3% | 37.2% | 57.6% | 54.5% | 36.9% |
| $146-155 | 16.7% | 17.2% | 13.1% | - | 18.6% | 27.3% | 27.3% | 17.8% |
| $156-165 | - | - | - | - | - | - | - | 5.5% |
| $166-175 | 13.9% | - | - | - | 18.6% | - | - | 8.9% |
| $176-199 | - | 24.1% | 18.0% | - | 11.6% | - | - | 12.3% |
| $200-224 | 16.7% | 17.2% | 16.4% | - | - | - | - | 11.9% |
| $225-249 | - | - | - | - | - | - | - | 4.7% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| **3 Years Experience** | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$116 | 1.7% | - | 1.7% | 11.1% | - | 6.7% | 7.1% | 3.0% |
| $116-125 | 5.2% | 12.8% | 5.2% | 16.7% | 5.7% | 13.3% | 10.7% | 8.6% |
| $126-135 | 3.4% | 7.7% | 8.6% | - | 11.4% | 3.3% | 10.7% | 6.8% |
| $136-145 | 5.7% | 6.9% | 14.8% | 26.7% | 15.9% | 21.2% | 33.3% | 15.7% |
| $146-155 | 20.0% | 3.4% | 14.8% | 13.3% | 15.9% | 33.3% | 16.7% | 17.0% |
| $156-165 | 5.7% | 10.3% | 4.9% | 0.0% | 0.0% | 3.0% | 11.1% | 4.7% |
| $166-175 | 8.6% | 13.8% | 9.8% | 13.3% | 18.2% | 12.1% | 11.1% | 12.3% |
| $176-199 | 20.0% | 10.3% | 8.2% | 13.3% | 18.2% | 6.1% | 5.6% | 11.9% |
| $200-224 | 17.1% | 20.7% | 26.2% | 13.3% | 25.0% | 15.2% | 16.7% | 20.9% |
| $225-249 | 14.3% | 13.8% | 8.2% | 20.0% | - | - | - | 7.2% |
| $250-274 | 2.9% | 17.2% | 9.8% | - | 4.5% | 3.0% | 5.6% | 6.8% |
| $300-324 | - | 3.4% | 1.6% | - | - | 3.0% | - | 1.3% |
| **Total** | - | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| **5 Years Experience** | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$146 | 2.9% | 4.3% | 12.7% | 16.7% | 11.6% | 20.0% | 30.0% | 12.8% |
| $146-155 | 5.7% | - | 7.3% | 25.0% | 11.6% | 3.3% | - | 6.9% |
| $156-165 | 8.6% | - | 7.3% | - | 4.7% | 20.0% | 5.0% | 7.3% |
| $166-175 | 8.6% | 8.7% | 5.5% | 8.3% | 4.7% | 13.3% | 20.0% | 8.7% |
| $176-199 | 11.4% | 4.3% | 7.3% | - | 16.3% | - | - | 7.3% |
| $200-224 | 20.0% | 13.0% | 9.1% | 16.7% | 20.9% | 26.7% | 40.0% | 19.3% |
| $225-249 | 17.1% | 21.7% | 10.9% | 16.7% | 23.3% | 3.3% | 5.0% | 13.8% |
| $250-274 | 14.3% | 13.0% | 14.5% | - | 2.3% | 10.0% | - | 9.6% |
| $275-299 | 5.7% | 26.1% | 12.7% | 8.3% | 2.3% | 3.3% | 0.0% | 8.3% |
| $300-324 | 3% | 4% | 7% | 8% | 2% | - | - | 3.7% |
| $325-349 | 3% | - | 4% | - | - | - | - | 1.4% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| **10 Years Experience** | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$146 | 5.7% | 7.7% | 12.7% | 16.7% | 6.8% | 13.3% | 33.3% | 11.8% |
| $146-155 | - | - | 4.8% | 8.3% | 6.8% | 6.7% | - | 3.9% |
| $156-165 | 2.9% | - | 1.6% | 16.7% | 4.5% | 3.3% | - | 3.1% |
| $166-175 | 5.7% | 3.8% | 4.8% | 0.0% | 4.5% | 13.3% | 5.6% | 5.7% |
| $176-199 | 14.3% | 3.8% | 4.8% | 8.3% | 11.4% | 6.7% | 16.7% | 8.8% |
| $200-224 | 5.7% | 11.5% | 3.2% | 0.0% | 20.5% | 30.0% | 16.7% | 12.3% |
| $225-249 | 14.3% | 7.7% | 12.7% | 0.0% | 11.4% | 3.3% | 11.1% | 10.1% |
| $250-274 | 17.1% | 23.1% | 9.5% | 25.0% | 22.7% | 10.0% | 11.1% | 15.8% |
| $275-299 | 14.3% | 19.2% | 9.5% | 8.3% | 4.5% | 6.7% | - | 9.2% |
| $300-324 | 14.3% | 11.5% | 11.1% | 0.0% | 4.5% | 3.3% | 5.6% | 8.3% |
| $325-349 | - | 3.8% | 6.3% | 8.3% | 2.3% | 3% | - | 3.5% |
| $350-379 | - | - | 9.5% | 8.3% | - | - | - | 3.1% |
| $380-425 | 2.9 | 7.7 | 3.2 | - | - | - | - | 2.2% |
| >$425 | 2.9 | 0.0 | 6.3 | - | - | - | - | 2.2% |
| **Total** | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |



**OHIO STATE BAR ASSOCIATION**
Connect. Advance. Succeed.

**EXHIBIT 51:** 2019 HOURLY BILLING RATES, LEGAL ASSISTANTS BY OFFICE LOCATION AND EXPERIENCE

| Legal Assistant Billing Rate Group | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| **No Experience** | | | | | | | | |
| <$71 | 28.1% | 22.2% | 27.0% | 36.4% | 44.1% | 42.9% | 46.2% | 34.3% |
| $71-80 | 15.6% | 11.1% | 10.8% | 18.2% | 14.7% | 14.3% | 7.7% | 13.3% |
| $81-90 | 6.3% | - | 13.5% | 18.2% | 2.9% | 19.0% | 7.7% | 9.0% |
| $91-100 | 12.5% | 38.9% | 18.9% | 18.2% | 23.5% | 14.3% | 7.7% | 19.3% |
| $101-$110 | 6.3% | - | 10.8% | - | 8.8% | - | 7.7% | 6.0% |
| $111-120 | 12.5% | - | - | - | - | - | 7.7% | 3.0% |
| $121-130 | 6.3% | 11.1% | 10.8% | - | 2.9% | 9.5% | - | 6.6% |
| $131-140 | - | 5.6% | - | - | - | - | - | 0.6% |
| $141-150 | - | - | 2.7% | - | - | - | 15.4% | 1.8% |
| $151-160 | - | 11.1% | - | 9.1% | - | - | - | 1.8% |
| $161-170 | 3.1% | - | - | - | 2.9% | - | - | 1.2% |
| >$170 | 9.4% | - | 5.4% | - | - | - | - | 3.0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **3 Years Experience** | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$71 | 12.1% | 10.0% | 13.2% | 25.0% | 20.6% | 26.3% | 35.7% | 18.2% |
| $71-80 | 15.2% | 10.0% | 10.5% | - | 23.5% | 26.3% | 14.3% | 15.3% |
| $81-90 | 3.0% | 5.0% | 13.2% | 33.3% | 11.8% | 10.5% | - | 10.0% |
| $91-100 | 27.3% | 15.0% | 21.1% | 16.7% | 14.7% | 21.1% | 21.4% | 20.0% |
| $101-$110 | 9.1% | 20.0% | 7.9% | - | 17.6% | 5.3% | - | 10.0% |
| $111-120 | - | 5.0% | 5.3% | 8.3% | 5.9% | - | 7.1% | 4.1% |
| $121-130 | 15.2% | 5.0% | 15.8% | 8.3% | - | 10.5% | 7.1% | 9.4% |
| $131-140 | - | 10.0% | - | - | 2.9% | - | - | 1.8% |
| $141-150 | 3.0% | 5.0% | 7.9% | - | - | - | 14.3% | 4.1% |
| $151-160 | 3.0% | - | - | - | - | - | - | 0.6% |
| $161-170 | - | 10.0% | - | 8.3% | 2.9% | - | - | 2.4% |
| >$170 | 12.1% | 5.0% | 5.3% | - | - | - | - | 4.1% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **5 Years Experience** | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$71 | 11.8% | 11.1% | 11.9% | 15.4% | 24.3% | 15.8% | 33.3% | 16.9% |
| $71-80 | 11.8% | 5.6% | 7.1% | 7.7% | 13.5% | 15.8% | 13.3% | 10.7% |
| $81-90 | 2.9% | 5.6% | 11.9% | 23.1% | 13.5% | 10.5% | - | 9.6% |
| $91-100 | 14.7% | 11.1% | 11.9% | 15.4% | 13.5% | 31.6% | 13.3% | 15.2% |
| $101-$110 | 17.6% | 5.6% | 11.9% | 15.4% | 8.1% | 5.3% | 6.7% | 10.7% |
| $111-120 | 2.9% | 22.2% | 7.1% | - | 10.8% | 10.5% | - | 7.9% |
| $121-130 | 14.7% | 11.1% | 11.9% | - | 8.1% | 10.5% | 13.3% | 10.7% |
| $131-140 | 5.9% | - | 7.1% | - | 2.7% | - | - | 3.4% |
| $141-150 | - | 11.1% | 9.5% | 15.4% | 2.7% | - | 20.0% | 6.7% |
| $151-160 | - | - | 2.4% | - | - | - | - | 0.6% |
| $161-170 | - | 5.6% | 2.4% | - | 2.7% | - | - | 1.7% |
| >$170 | 17.6% | 11.1% | 4.8% | 7.7% | - | - | - | 6.2% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| **10 Years Experience** | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$71 | 10.3% | 3.7% | 9.8% | 15.0% | 12.8% | 9.1% | 33.3% | 12.1% |
| $71-80 | 12.8% | 3.7% | 3.9% | 5.0% | 8.5% | 13.6% | 11.1% | 8.0% |
| $81-90 | 5.1% | 7.4% | 7.8% | 15.0% | 12.8% | 4.5% | - | 8.0% |
| $91-100 | 2.6% | 7.4% | 15.7% | 15.0% | 23.4% | 31.8% | 16.7% | 15.6% |
| $101-$110 | 12.8% | 14.8% | 5.9% | 10.0% | 2.1% | 13.6% | - | 8.0% |
| $111-120 | 10.3% | 3.7% | 11.8% | 5.0% | 6.4% | 9.1% | 11.1% | 8.5% |
| $121-130 | 17.9% | 18.5% | 13.7% | 5.0% | 17.0% | 13.6% | 5.6% | 14.3% |
| $131-140 | - | 3.7% | 5.9% | 5.0% | 4.3% | - | - | 3.1% |
| $141-150 | 5.1% | 22.2% | 5.9% | 5.1% | 6.4% | 4.5% | 22.2% | 8.9% |
| $151-160 | - | - | 2.0% | - | 4.3% | - | - | 1.3% |
| $161-170 | 2.6% | 3.7% | 2.0% | - | 2.1% | - | - | 2% |
| >$170 | 20.5% | 11.1% | 15.7% | 20.0% | - | - | - | 10% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

48



**OHIO STATE BAR ASSOCIATION**
Connect. Advance. Succeed.

**EXHIBIT 52:** 2019 HOURLY BILLING RATES FOR ASSOCIATES BY FIRM SIZE AND EXPERIENCE

| Associate Billing Rate Group | Firm Size (Number of Attorneys) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
| **No Experience** | | | | | | | | |
| <$146 | 72.2% | 52.9% | 40.5% | 42.3% | 37.5% | 25.0% | 11.8% | 37.2% |
| $146-155 | 11.1% | 5.9% | 22.8% | 19.2% | 12.5% | 19.4% | 14.7% | 17.5% |
| $156-165 | 5.6% | 5.9% | 5.1% | - | 8.3% | 11.1% | 2.9% | 5.6% |
| $166-175 | 5.6% | 17.6% | 6.3% | 15.4% | 8.3% | 11.1% | 5.9% | 9.0% |
| $176-199 | - | 5.9% | 5.1% | 7.7% | 20.8% | 19.4% | 26.5% | 12.0% |
| $200-224 | 5.6% | 5.9% | 12.7% | 7.7% | 8.3% | 8.3% | 26.5% | 12.0% |
| $225-249 | - | - | 5.1% | 3.8% | - | 5.6% | 11.8% | 4.7% |
| $250-274 | - | 5.9% | 1.3% | - | 4.2% | - | - | 1.3% |
| $275-299 | - | - | 1.3% | - | - | - | - | 0.4% |
| $300-324 | - | - | - | 3.8% | - | - | - | 0.4% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 3 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$146 | 46.7% | 17.4% | 17.4% | 15.8% | 12.5% | 11.8% | - | 15.5% |
| $146-155 | 13.3% | 17.4% | 20.9% | 21.1% | 12.5% | 14.7% | 12.5% | 17.2% |
| $156-165 | 6.7% | - | 8.1% | - | 12.5% | 2.9% | - | 5.2% |
| $166-175 | 20.0% | 13.0% | 11.6% | 10.5% | 12.5% | 14.7% | 6.3% | 12.0% |
| $176-199 | 6.7% | 8.7% | 12.8% | 5.3% | 12.5% | 26.5% | 6.3% | 12.4% |
| $200-224 | 6.7% | 21.7% | 16.3% | 26.3% | 20.8% | 17.6% | 37.5% | 20.6% |
| $225-249 | - | 8.7% | 2.3% | 15.8% | 8.3% | 8.8% | 12.5% | 6.9% |
| $250-274 | - | 8.7% | 8.1% | 5.3% | - | 2.9% | 15.6% | 6.9% |
| $275-299 | - | 4.3% | 1.2% | - | 4.2% | - | 3.1% | 1.7% |
| $300-324 | - | - | 1.2% | - | 4.2% | - | 3.1% | 1.3% |
| >$425 | - | - | - | - | - | - | 3.1% | 0.4% |
| **Total** | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% | 100.0% |

| 5 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$146 | 50.0% | 21.1% | 10.1% | 12.5% | 8.7% | 11.4% | - | 12.5% |
| $146-155 | - | 5.3% | 10.1% | 18.8% | 4.3% | 5.7% | - | 6.9% |
| $156-165 | 14.3% | - | 8.9% | - | 13.0% | 2.9% | 10.0% | 7.4% |
| $166-175 | - | 10.5% | 15.2% | 6.3% | 13.0% | 5.7% | - | 9.3% |
| $176-199 | - | 15.8% | 7.6% | 6.3% | 13.0% | 8.6% | - | 7.4% |
| $200-224 | 21.4% | 15.8% | 21.5% | - | 21.7% | 34.3% | 6.7% | 19.4% |
| $225-249 | - | 10.5% | 7.6% | 18.8% | 13.0% | 20.0% | 26.7% | 13.4% |
| $250-274 | 14.3% | - | 7.6% | 31.3% | 4.3% | 5.7% | 16.7% | 9.7% |
| $275-299 | - | 10.5% | 6.3% | 6.3% | 4.3% | 2.9% | 23.3% | 7.9% |
| $300-324 | - | 10.5% | 2.5% | - | 4.3% | 2.9% | 6.7% | 3.7% |
| $325-349 | - | - | 1.3% | - | - | - | 6.7% | 1.4% |
| $350-379 | - | - | 1.3% | - | - | - | - | 0.5% |
| >$425 | - | - | - | - | - | - | 3.3% | 0.5% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 10 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$146 | 46.2% | 14.8% | 9.9% | 15.0% | 10.0% | 9.1% | - | 11.6% |
| $146-155 | 7.7% | 3.7% | 6.2% | - | 5.0% | 3.0% | - | 4.0% |
| $156-165 | - | - | 4.9% | 10.0% | - | 3.0% | - | 3.1% |
| $166-175 | 15.4% | - | 7.4% | 5.0% | 10.0% | 3.0% | 3.2% | 5.8% |
| $176-199 | - | 14.8% | 11.1% | 15.0% | 15.0% | - | 3.2% | 8.9% |
| $200-224 | - | 14.8% | 19.8% | 10.0% | 15.0% | 12.1% | - | 13.3% |
| $225-249 | - | 7.4% | 6.2% | 5.0% | 20.0% | 33.3% | - | 10.2% |
| $250-274 | 15.4% | 11.1% | 16.0% | 15.0% | 5.0% | 24.2% | 16.1% | 15.6% |
| $275-299 | 7.7% | 11.1% | 7.4% | 5.0% | - | 9.1% | 19.4% | 8.9% |
| $300-324 | 7.7% | 3.7% | 4.6% | 10.0% | 10.0% | - | 19.4% | 8.4% |
| $325-349 | - | - | - | 5.0% | 10.0% | - | 12.9% | 3.1% |
| $350-379 | - | 7.4% | - | - | - | 3.0% | 9.7% | 2.7% |
| $380-425 | - | 7.4% | - | 5.0% | - | - | 6.4% | 2.2% |
| >$425 | - | 3.7% | 2.5% | - | - | - | 6.5% | 2.2% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |



**OHIO STATE BAR ASSOCIATION** Connect. Advance. Succeed.

**EXHIBIT 53:** DISTRIBUTIONS OF 2019 HOURLY BILLING RATES FOR LEGAL ASSISTANTS BY FIRM SIZE AND EXPERIENCE

| | Firm Size (Number of Attorneys) | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Legal Assistant Billing Rate Group | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
| **No Experience** | | | | | | | | |
| <$71 | 55.0% | 58.3% | 40.7% | 23.5% | 33.3% | 25.8% | 5.0% | 34.3% |
| $71-80 | 10.0% | - | 18.5% | 17.6% | 16.7% | 6.5% | 10.0% | 12.7% |
| $81-90 | 5.0% | 16.7% | 3.7% | 17.6% | 8.3% | 6.5% | 15.0% | 8.4% |
| $91-100 | 25.0% | 16.7% | 11.1% | 23.5% | 25.0% | 29.0% | 20.0% | 19.9% |
| $101-$110 | - | - | 5.6% | - | 16.7% | 9.7% | 10.0% | 6.0% |
| $111-120 | - | - | 3.7% | - | - | 6.5% | 5.0% | 3.0% |
| $121-130 | 5.0% | 8.3% | 7.4% | 5.9% | - | 6.5% | 10.0% | 6.6% |
| $131-140 | - | - | - | - | - | 3.2% | - | 0.6% |
| $141-150 | - | - | 3.7% | - | - | - | 5.0% | 1.8% |
| $151-160 | - | - | 3.7% | 5.9% | - | 3.2% | - | 2.4% |
| $161-170 | - | - | - | - | - | 3.2% | 5.0% | 1.2% |
| >$170 | - | - | 1.9% | 5.9% | - | - | 15.0% | 3.0% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| **3 Years Experience** | | | | | | | | |
| <$71 | 27.3% | 36.4% | 21.4% | 20.0% | 23.1% | 9.1% | - | 18.2% |
| $71-80 | 18.2% | 27.3% | 21.4% | 6.7% | 15.4% | 9.1% | 5.0% | 15.3% |
| $81-90 | 9.1% | - | 5.4% | 26.7% | 15.4% | 12.1% | 10.0% | 10.0% |
| $91-100 | 36.4% | 18.2% | 17.9% | 33.3% | - | 18.2% | 15.0% | 20.0% |
| $101-$110 | - | - | 7.1% | - | 23.1% | 15.2% | 20.0% | 9.4% |
| $111-120 | - | - | 1.8% | - | 23.1% | 9.1% | 5.0% | 4.7% |
| $121-130 | 4.5% | - | 12.5% | 6.7% | - | 15.2% | 10.0% | 9.4% |
| $131-140 | - | 9.1% | - | - | - | 6.1% | - | 1.8% |
| $141-150 | 4.5% | - | 7.1% | - | - | - | 10.0% | 4.1% |
| $151-160 | - | - | - | - | - | - | 5.0% | 0.6% |
| $161-170 | - | - | 3.6% | - | - | 3.0% | 5.0% | 2.4% |
| >$170 | - | 9.1% | 1.8% | 6.7% | - | 3.0% | 15.0% | 4.1% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| **5 Years Experience** | | | | | | | | |
| <$71 | 28.0% | 25.0% | 20.7% | 18.8% | 15.4% | 8.8% | - | 16.9% |
| $71-80 | 12.0% | 16.7% | 15.5% | 12.5% | 15.4% | 2.9% | - | 10.7% |
| $81-90 | 8.0% | - | 6.9% | 12.5% | 15.4% | 11.8% | 10.0% | 9.0% |
| $91-100 | 28.0% | 25.0% | 13.8% | 31.3% | - | 11.8% | - | 15.2% |
| $101-$110 | 8.0% | - | 12.1% | 6.3% | 15.4% | 8.8% | 15.0% | 10.7% |
| $111-120 | - | 8.3% | 1.7% | - | 15.4% | 20.6% | 25.0% | 9.0% |
| $121-130 | 8.0% | 8.3% | 12.1% | 6.3% | 23.1% | 11.8% | 5.0% | 10.7% |
| $131-140 | 4.0% | - | 1.7% | - | - | 5.9% | 10.0% | 3.4% |
| $141-150 | 4.0% | 16.7% | 5.2% | 6.3% | - | 8.8% | 10.0% | 6.7% |
| $151-160 | - | - | 1.7% | - | - | - | - | 0.6% |
| $161-170 | - | - | - | - | - | 2.9% | 10.0% | 1.7% |
| >$170 | - | - | 8.6% | 6.3% | - | 5.9% | 15.0% | 6.2% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| **10 Years Experience** | | | | | | | | |
| <$71 | 16.2% | 11.1% | 15.4% | 15.0% | 12.5% | 6.1% | - | 12.1% |
| $71-80 | 2.7% | 16.7% | 11.5% | 10.0% | 12.5% | 3.0% | - | 8.0% |
| $81-90 | 16.2% | 11.1% | 3.8% | 10.0% | 12.5% | 3.0% | 4.5% | 7.6% |
| $91-100 | 16.2% | 27.8% | 16.7% | 30.0% | - | 12.1% | 4.5% | 15.6% |
| $101-$110 | 5.4% | - | 11.5% | 5.0% | 18.8% | 9.1% | - | 8.0% |
| $111-120 | 5.4% | - | 5.1% | 10.0% | 18.8% | 15.2% | 9.1% | 8.0% |
| $121-130 | 13.5% | 5.6% | 16.7% | 10.0% | 6.3% | 18.2% | 22.7% | 14.7% |
| $131-140 | 5.4% | - | 1.3% | - | 12.5% | 6.1% | - | 3.1% |
| $141-150 | 10.8% | 22.2% | 7.7% | 5.0% | 6.3% | 6.1% | 13.6% | 9.4% |
| $151-160 | 2.7% | 5.6% | - | - | - | 3.0% | - | 1.3% |
| $161-170 | - | - | 1.3% | - | - | 6.1% | 4.5% | 1.8% |
| >$170 | 5.4% | - | 9.0% | 5.0% | - | 12.1% | 40.9% | 10.3% |
| **Total** | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |



**Exhibit 54** displays the impact of firm size on methods for client billing over time for legal assistants. The larger the firm, the more likely they bill on a time basis.

| EXHIBIT 54: LEGAL ASSISTANT CLIENT BILLING METHODS BY SIZE OF FIRM, 2019 VS. 2013 | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Billing Method for Legal Assistants** | **Year** | **Firm Size (Number of Attorneys)** | | | | | | |
| | | **1** | **2** | **3 to 6** | **7 to 10** | **11 to 20** | **21 to 50** | **>50** | **Ohio** |
| Included with attorney fee | 2013 | 43.0% | 31.7% | 35.5% | 10.4% | 24.6% | 10.0% | 2.4% | 24.7% |
| | 2019 | 43.8% | 42.5% | 31.6% | 23.1% | 25.9% | - | - | 27.5% |
| Time | 2013 | 50.0% | 56.1% | 56.2% | 79.2% | 73.7% | 85.0% | 90.4% | 68.0% |
| | 2019 | 49.3% | 55.0% | 56.1% | 73.1% | 66.7% | 100.0% | 89.2% | 65.0% |
| Fee schedule | 2013 | 7.0% | 12.2% | 8.3% | 10.4% | 1.8% | 5.0% | 7.2% | 7.3% |
| | 2019 | 6.8% | 2.5% | 12.3% | 3.8% | 7.4% | - | 10.8% | 7.6% |
| Total (2013) | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| Total (2019) | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |



## Average Workweek and Time-Keeping Practices

Attorneys report a varied workweek regarding billable hours and other activities comprising their professional time. **Exhibit 55** shows the range of time spent on various activities.

For private practitioners, median values for compensable work time are 30 hours/week (compared with 33 in 2013). For in-house counsel, median compensable hours remain at 40 hours/week. For government attorneys, median compensable hours are 31 (30 in 2013).

For total professional hours, private practitioners report 45 hours/week (48 hours in 2013). In-house counsel report 45 hours/week (unchanged from 2013). Government attorneys report 44 hours/week (unchanged from 2013).

**EXHIBIT 55:** DISTRIBUTIONS OF HOURS IN AVERAGE WORKWEEK, 2019

| Private Practitioners | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Total billable hours | 721 | 30 | 25 | 30 | 40 | 50 |
| Total hours | 753 | 42 | 55 | 45 | 52 | 65 |
| Administration | 776 | 4 | 2 | 4 | 5 | 8 |
| Networking/marketing | 776 | 3 | 1 | 3 | 4 | 8 |
| Nonlegal work | 712 | 7 | 8 | 8 | 8 | 8 |
| Pro Bono hours/year | 730 | 36 | 0 | 15 | 45 | 125 |
| CLE/learning hours/year | 752 | 27 | 15 | 20 | 30 | 60 |

| In-House Counsel | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Total billable hours | 99 | 54 | 30 | 40 | 45 | 60 |
| Total hours | 100 | 45 | 40 | 45 | 50 | 68 |

| Government Attorneys | N | Mean | 25th Percentile | Median | 75th Percentile | 95th Percentile |
|---|---|---|---|---|---|---|
| Total billable hours | 159 | 37 | 31 | 40 | 40 | 50 |
| Total hours | 157 | 42 | 40 | 44 | 50 | 60 |
| Administration | 164 | 5 | 3 | 5 | 8 | 8 |
| Networking/marketing | 164 | 5 | 2 | 4 | 8 | 8 |



Hourly rate billing dominates flat rate and contingency fee billing (**Exhibit 56**). Approximately one day per week is devoted to office administration and networking (median hours spent per week are approximately five for administration and three for marketing) (**Exhibit 57**).

**EXHIBIT 56:** DISTRIBUTIONS OF HOURS IN AVERAGE WORK WEEK, BY BILLING METHOD, 2019

| Billable Time | Hourly Billing | | Flat Rate Hours | | Contingency Fee Hours | |
|---|---|---|---|---|---|---|
| Hours/Week | N | % | N | % | N | % |
| <6 | 107 | 14.3 | 196 | 29.1 | 155 | 23.4 |
| 6 to 12 | 93 | 12.4 | 115 | 17.1 | 62 | 9.4 |
| 13-19 | 91 | 12.2 | 57 | 8.5 | 34 | 5.1 |
| 20-26 | 103 | 13.8 | 64 | 9.5 | 23 | 3.5 |
| 27-33 | 87 | 11.6 | 31 | 4.6 | 16 | 2.4 |
| 34-40 | 94 | 12.6 | 28 | 4.2 | 32 | 4.8 |
| 41-47 | 61 | 8.2 | 4 | 0.6 | 19 | 2.9 |
| 48+ | 59 | 7.9 | 13 | 1.9 | 30 | 4.5 |
| NA | 53 | 7.1 | 165 | 24.5 | 292 | 44 |
| Total | 748 | 100% | 673 | 100% | 663 | 100% |

**EXHIBIT 57:** DISTRIBUTIONS OF WORK WEEK COMPONENTS – NETWORKING, ADMINISTRATION AND NON-LEGAL EMPLOYMENT, 2019

| Non-Billable Time | Networking | | Administration | | Non-legal Employment | |
|---|---|---|---|---|---|---|
| Hours/Week | N | % | N | % | N | % |
| 1 | 208 | 27.2 | 73 | 9.4 | 47 | 6.6 |
| 2 | 173 | 22.6 | 124 | 16 | 25 | 3.5 |
| 3 | 119 | 15.5 | 133 | 17.1 | 15 | 2.1 |
| 4 to 6 | 146 | 19.1 | 248 | 32 | 25 | 3.5 |
| 7 to 11 | 34 | 4.4 | 101 | 13 | 13 | 1.8 |
| 16 to 12 | 8 | 1 | 36 | 4.6 | 6 | 0.8 |
| 17+ | 8 | 1 | 22 | 2.8 | 26 | 3.7 |
| NA | 70 | 9.1 | 39 | 5 | 555 | 77.9 |
| Total | 766 | 100% | 776 | 100% | 712 | 100% |



## Use of Alternative Fee Arrangements

The 2019 OSBA Survey included questions regarding the use and disposition of alternative fee arrangements (AFAs) compared with the traditional hourly billing rate. The questions cover the following topics targeting private practices, firms and in-house counsel:

- Frequency of flat fees usage compared with other AFAs
- Obstacles hindering wider adoption of AFA fees
- Perceived "drivers" leading the charge toward AFAs
- Degree of progress in AFA adoption
- Perceived AFA usage in the future
- Proportion of AFA work assigned to outside counsel
- Sources of AFA initiation

**EXHIBIT 58:** FREQUENCY OF AFA USERS BY PRIVATE PRACTITIONERS



**Exhibit 58** reveals that private practitioners have a high use of flat fees, 27% "always or often", as an alternative fee arrangement tool compared with other alternatives. Only 5% of respondents "always" use flat fees. 54% of private practitioners "often or sometimes" use flat fees.

**EXHIBIT 59:** OBSTACLES THAT SEEM TO HINDER WIDER ADOPTION OF AFA FEES OVER TIME



Why are there obstacles in setting AFAs? **Exhibit 59** rank orders four issues centered on uncertainties regarding price setting, reluctance on the part of partners and general comfort with the status quo. Movement is being made toward problem reduction, both behaviorally and technically.



Combined responses from both private practitioners and in-house counsel place the primary drivers for AFAs with in-house counsel - between 21 and 26% of responses revealing private practitioners are the initiators (**Exhibit 60**).



**EXHIBIT 60:** PERCIEVED DRIVERS TOWARD AFAS

Combined responses are from both private practitioners and in-house counsel. Over the past few years, about 47% of in-house counsel respondents saw an increase in AFA usage (4% "a lot" and 43% "somewhat"), while only 30% see hardly any increased use. Similarly, 45% of private practitioners see an increase in AFA usage (8% "a lot" and 37% "somewhat"), whereas only 27% see "hardly any" increased use over the past few years (**Exhibit 61A**).



**EXHIBIT 61A:** LEVEL OF INCREASE IN USE OF AFAS OVER PAST FEW YEARS



**EXHIBIT 61B:** PERCEIVED AFA USE IN THE FUTURE



Considering perceived future use of AFAs, 25% of in-house counsel see increased use compared with 19% of private practitioners. An even greater percent of respondents perceives a decrease in AFA use in the future (24% of private practitioners and 31% of in-house counsel). While 20 to 25% of respondents will use AFAs in the future, 44-57% perceive that their use will remain the same (**Exhibit 61B**).

**EXHIBIT 61C:** ASSIGNMENT OF WORK TO OUTSIDE COUNSEL



72% of respondents report that they assign AFA work to outside counsel 25% of the time, while only 10% assign work to outside counsel more than 50% of the time (**Exhibit 61C**).



# Office Management Practices

Over time, private practitioners varied only slightly as to keeping time records, while their choice of tracking unit for their time has drifted towards six minutes, as shown in **Exhibits 62** and **63**.

**EXHIBIT 62:** FREQUENCY OF KEEPING RECORDS

| Frequency of Keeping Records | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| Always | 61% | 63% | 62% | 68% | 69% | 56% |
| Usually | 20% | 21 | 21 | 19 | 20 | 25 |
| Sometimes | 15% | 13 | 13 | 11 | 9 | 15 |
| Never | 3 | 3 | 4 | 2 | 2 | 4 |

**EXHIBIT 63:** FREQUENCY OF KEEPING RECORDS – TRACKING UNIT IN MINUTES

| Tracking Unit (In Minutes) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| 6 | 78% | 73% | 69% | 65% | 65% | 62% |
| 10 | 7 | 9 | 9 | 10 | 10 | 9 |
| 15 | 13 | 15 | 19 | 21 | 21 | 22 |
| 30 | 1 | 2 | 2 | 2 | 2 | 2 |
| None | 1 | 1 | 1 | 2 | 2 | 5 |

## Hourly Rate Setting Practices

The time since respondents last changed their hourly rate is shown in **Exhibit 64**. Rate increases are occurring less frequently than in the past. Currently, in 2019, 35% of respondents have not changed their rates in more than 2 years (>24 months), while 31% of respondents have not changed their rates in 12-24 months. This behavior is similar to previous responses.

**EXHIBIT 64:** HOURLY RATE SETTING PRACTICES – MONTHS SINCE CHANGE

| Months Since Change | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| 0 to 6 | | 28% | 23% | 32% | 29% | 24% |
| 7 to 11 | | 8 | 10 | 14 | 16 | 15 |
| 12 to 24 | | 30 | 35 | 33 | 32 | 33 |
| >24 | | 34 | 32 | 21 | 24 | 28 |

The percent increase in the level of hourly rates since the last change varies over time, as shown in **Exhibit 65**. The percentage increase of 10% or less was reported by 68% of respondents in 2019 compared with 76% of respondents in 2013.

**EXHIBIT 65:** HOURLY RATE SETTING PRACTICES – AMOUNT OF INCREASE

| Amount of Increase | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
|---|---|---|---|---|---|---|
| 5% or less | 27% | 36% | 33% | 26% | 23% | 22% |
| 6-10% | 33 | 40 | 34 | 45 | 41 | 38 |
| 11-19% | 15 | 13 | 18 | 19 | 23 | 20 |
| 20+% | 13 | 12 | 15 | 10 | 14 | 20 |



## Uncollectables

Uncollectables are an important issue in many practices and firms. Over time, there has been some improvement in the proportion of bad debts, as shown in **Exhibit 66**.

| EXHIBIT 66: UNCOLLECTABLES – AMOUNT OF INCREASE | | | | | | |
|---|---|---|---|---|---|---|
| Percent Uncollectable | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
| 2% or less | 40% | 42% | 35% | 36% | 30% | 37% |
| 3-8% | 25 | 28 | 30 | 28 | 33 | 30 |
| 9-12% | 10 | 18 | 18 | 19 | 21 | 18 |
| 13+% | 11 | 12 | 17 | 17 | 6 | 15 |

Over time, less than 30% of respondents add a service charge on a delinquent account, as shown in **Exhibit 67**.

| EXHIBIT 67: UNCOLLECTABLES – USE OF SERVICE CHARGE ON DELINQUENT ACCOUNTS | | | | | | |
|---|---|---|---|---|---|---|
| Use of Service Charge on Delinquent Accounts | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
| Always | 5% | 5% | 7% | 3% | 3% | 22% |
| Often | 6 | 6 | 7 | 7 | 7 | 38 |
| Rarely | 17 | 17 | 16 | 18 | 18 | 20 |
| Never | 72 | 73 | 71 | 72 | 72 | 20 |

## Practices Regarding Contingency Fees

About 16% of attorneys report using contingent fees for billing a majority of their work, while 23% report using them for less than half of their work, as shown in **Exhibit 68**. Rate schedules vary little, but combinations of rate schedules have grown in usage over time, as shown in **Exhibit 69**.

| EXHIBIT 68: USE OF CONTINGENCY FEES | | | | | | |
|---|---|---|---|---|---|---|
| Use of Contingency Fees | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
| For a majority of work | 16% | 13% | 11% | 10% | 13% | 10% |
| For less than half of work | 23 | 31 | 30 | 33 | 27 | 34 |
| No/Not Applicable | 56 | 55 | 59 | 52 | 53 | 56 |
| Other | 6 | NA | NA | 6 | 16 | NA |

| EXHIBIT 69: USE OF CONTINGENCY FEES – RATE SCHEDULE | | | | | | |
|---|---|---|---|---|---|---|
| Rate Schedule | % of Respondents (2019) | % of Respondents (2013) | % of Respondents (2010) | % of Respondents (2007) | % of Respondents (2004) | % of Respondents (2001) |
| 33.3% usually; 40% (complex cases) | 38% | 45% | 38% | 36% | 35% | 36% |
| 33.3% for all cases | 32 | 38 | 36 | 42 | 41 | 45 |
| 20-25% for all cases; 33.3%+ (complex cases) | 10 | 5 | 11 | 7 | 14 | 9 |
| Varied/ combinations of above | 20 | 11 | 9 | 9 | 10 | 8 |



# Comparative Use of Online Research Tools

Except for low penetration of Casemaker in government settings, respondents report relatively consistent use of online research tools, as shown in **Exhibits 70** to **72**.



**EXHIBIT 70:** USE OF ONLINE RESEARCH TOOLS, PRIVATE PRACTITIONERS, 2019



**EXHIBIT 71:** USE OF ONLINE RESEARCH TOOLS, GOVERNMENT ATTORNEYS, 2019



**EXHIBIT 72:** USE OF ONLINE RESEARCH TOOLS, IN-HOUSE COUNSEL, 2019



OHIO STATE BAR ASSOCIATION
Connect. Advance. Succeed.

## Comparative Use of Law Office Hardware and Software Technologies

Respondents vary by practice category as to the office management tools and applications they embrace. WordPerfect usage persists for in-house counsel settings, whereas on-premises IT is barely in use.

**EXHIBIT 73:** USE OF HARDWARE AND SOFTWARE PRODUCTS AND TOOLS, PRIVATE PRACTITIONERS, 2019

**EXHIBIT 74:** USE OF HARDWARE AND SOFTWARE PRODUCTS AND TOOLS, GOVERNMENT ATTORNEYS, 2019





EXHIBIT 75: USE OF HARDWARE/SOFTWARE PRODUCTS AND TOOLS, IN-HOUSE COUNSEL, 2019

## Comparative Use of Law Office Marketing Technologies, 2019

Attorneys have many alternatives to choose from regarding how to market their practices. Each alternative comes with high and low costs of entry and maintenance (**Exhibit 75A**).

Respondents rank their relative preferences on both their current and historic embracing of various vehicles and channels, while having a website and networking lead the pack (over 70% of respondents indicate current usage). While there is about a 10% abandonment of general and trade association networking, other drops identified include lawyer referral services and Martindale Hubbell (about 19%), listings in printed directories (17%), newspaper and magazine ads (14%) and client entertainment (12%).



EXHIBIT 75A: RANKED CURRENT AND HISTORIC USE OF LAW OFFICE MARKETING TOOLS AND CHANNELS



# Other Aspects of Law Office Economics

This section summarizes the following economic aspects of the private practice of law in Ohio:

- Changes in client payment behaviors (2019 vs 2013)
- Law office overhead expenses and gross receipts
- Staffing patterns for administrative assistants/secretaries and legal assistants
- Salary levels for associates, legal assistants and administrative assistants/secretaries

Since 2013, private practitioners report moderate changes in their clients' behaviors with respect to billing and payments, however, there is an increased use of credit cards. Client payment practices shift with changing technologies. This is demonstrated in the two charts below (**Exhibit 76**).

**EXHIBIT 76:** CLIENT BILL PAYMENT BEHAVIORS, 2013 VS 2019

| Policy | Much more often 2019 | Much more often 2013 | More often 2019 | More often 2013 | Slightly less often 2019 | Slightly less often 2013 | Not at all 2019 | Not at all 2013 |
|---|---|---|---|---|---|---|---|---|
| Paying Bills Later | 14% | 18% | 36% | 44% | 10% | 6% | 41% | 31% |
| Seeking to pay bills Over Time | 17% | 20% | 31% | 39% | 6% | 4% | 44% | 37% |
| Seeking Discounts | 17% | 22% | 30% | 32% | 7% | 4% | 47% | 42% |
| Seeking to Use Credit Cards | 31% | 17% | 34% | 34% | 3% | 3% | 32% | 46% |



## 2018 Fixed Expenses and Gross Receipts per Attorney

Sole practitioners and firms provided financial information on 2018 fixed/operating expenses and gross revenues per attorney, which included self-reported overhead rates by firm size (**Exhibit 77**) and by office location (**Exhibit 78**). Both expenses and revenues are influenced by firm size with lower values clustered among small firms and larger values clustered by large firms.

The **median fixed expense per attorney** falls within the $25,000-35,000 category by adjusting the Ohio column percentage total to reach 50%. The **median revenue per attorney** falls within $175,000-210,000, determined by adjusting the Ohio column percentage to 50%. The median self-reported overhead rate lies between 27-32% (**Exhibit 77**).

**EXHIBIT 77:** DISTRIBUTIONS OF 2018 FIXED EXPENSES AND GROSS RECEIPTS PER ATTORNEY, AND OVERHEAD RATES BY SIZE OF FIRM

| Fixed Expenses/ Attorney | Size of Firm | | | | | | |
|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 |
| <$5K | 29.8% | 9.1% | 16.5% | 11.1% | 11.8% | 9.7% | 11.5% |
| $5-14.9K | 21.4% | 9.1% | 17.4% | 11.1% | 29.4% | 9.7% | 7.7% |
| $15-24.9K | 11.8% | 12.7% | 11.6% | 22.2% | 5.9% | 12.9% | - |
| $25-34.9K | 10.1% | 9.1% | 13.2% | 7.4% | - | 6.5% | 11.5% |
| $35-44.9K | 5.0% | 14.5% | 3.3% | - | 5.9% | 9.7% | - |
| $45-55.9K | 4.6% | 12.7% | 8.3% | 7.4% | 11.8% | 6.5% | 3.8% |
| $60-89.9K | 8.0% | 10.9% | 9.9% | 11.1% | 17.6% | 6.5% | 7.7% |
| $90-119.9K | 3.4% | 10.9% | 9.1% | 18.5% | 5.9% | 19.4% | 3.8% |
| $120-149.9K | 3.4% | 5.5% | 5.8% | 3.7% | 11.8% | 9.7% | 15.4% |
| $150-179.9K | 1.3% | - | 1.7% | 3.7% | - | 6.5% | 7.7% |
| $180K or > | 1.3% | 5.5% | 3.3% | 3.7% | - | 3.2% | 30.8% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| Gross Revenues/ Attorney | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 |
|---|---|---|---|---|---|---|---|
| <$35K | 14.8% | 1.6% | 1.5% | 3.6% | - | 3.1% | - |
| $35-69.9K | 14.00% | 6.3% | 2.3% | - | 5.0% | - | - |
| $70-104.9K | 18.90% | 9.5% | 7.5% | 10.7% | 10.0% | - | - |
| $105-139.9K | 13.3% | 12.7% | 12.0% | - | 5.0% | 3.1% | - |
| $140-174.9K | 9.8% | 7.9% | 13.5% | 3.6% | 15.0% | 3.1% | - |
| $175-209.9K | 6.1% | 14.3% | 25.6% | 10.7% | 5.0% | 6.3% | 7.1% |
| $210-244.9K | 4.2% | 15.9% | 12.0% | 28.6% | 20.0% | 28.1% | - |
| $245-299.9K | 8.3% | 11.1% | 12.0% | 25.0% | 10.0% | 21.9% | 14.3% |
| $300-499.9K | 6.8% | 15.9% | 9.0% | 10.7% | 25.0% | 31.3% | 57.1% |
| $500K+ | 3.8% | 4.8% | 4.5% | 7.1% | 5.0% | 3.1% | 21.4% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| Overhead Rate | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 |
|---|---|---|---|---|---|---|---|
| <9% | 20.6% | - | 5.7% | 7.4% | 10.5% | 3.3% | 4.8% |
| 9-14% | 14.9% | 13.3% | 6.5% | 3.7% | 10.5% | 6.7% | 9.5% |
| 15-20% | 12.6% | 15.0% | 10.6% | 14.8% | 5.3% | 23.3% | 19.0% |
| 21-26% | 7.3% | 3.3% | 11.4% | 7.4% | 5.3% | 16.7% | - |
| 27-32% | 7.3% | 16.7% | 11.4% | 14.8% | 26.3% | 3.3% | 28.6% |
| 33-38% | 7.6% | 5.0% | 15.4% | 11.1% | 10.5% | 10.0% | 14.3% |
| 39-44% | 6.9% | 11.7% | 4.9% | 18.5% | 21.1% | 10.0% | 9.5% |
| 45-50% | 11.5% | 16.7% | 16.3% | 11.1% | 5.3% | 20.0% | - |
| 51-56% | 3.1% | 8.3% | 4.9% | 3.7% | - | 6.7% | - |
| 57-62% | 2.3% | 6.7% | 6.5% | 3.7% | 5.3% | - | 4.8% |
| >62% | 6.1% | 3.3% | 6.5% | 3.7% | - | - | 9.5% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% |



**OHIO STATE BAR ASSOCIATION**
Connect. Advance. Succeed.

**EXHIBIT 78:** DISTRIBUTIONS OF 2018 FIXED EXPENSES AND GROSS RECEIPTS PER ATTORNEY, AND OVERHEAD RATES BY OFFICE LOCATION

| Fixed Expenses/ Attorney | Office Location | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
| <$5K | 26.4% | 18.0% | 21.9% | 17.1% | 21.6% | 11.8% | 22.0% | 21.2% |
| $5-14.9K | 22.6% | 16.0% | 13.2% | 8.6% | 12.7% | 23.5% | 25.4% | 17.3% |
| $15-24.9K | 10.4% | 6.0% | 11.4% | 20.0% | 12.7% | 7.8% | 15.3% | 11.5% |
| $25-34.9K | 8.5% | 16.0% | 10.5% | 5.7% | 13.7% | 7.8% | 5.1% | 10.0% |
| $35-44.9K | 5.7% | 10.0% | 4.4% | 8.6% | 2.9% | - | 8.5% | 5.4% |
| $45-55.9K | 5.7% | 2.0% | 10.5% | 11.4% | 6.9% | 5.9% | 3.4% | 6.7% |
| $60-89.9K | 8.5% | 2.0% | 7.9% | 5.7% | 8.8% | 17.6% | 13.6% | 9.0% |
| $90-119.9K | 4.7% | - | 7.0% | 5.7% | 7.8% | 21.6% | 6.8% | 7.3% |
| $120-149.9K | 2.8% | 14.0% | 5.3% | 8.6% | 8.8% | 2.0% | - | 5.6% |
| $150-179.9K | 2.8% | 6.0% | 2.6% | - | 2.0% | - | - | 2.1% |
| $180K or > | 1.9% | 10.0% | 5.3% | 8.6% | 2.0% | 2.0% | - | 3.8% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| Gross Revenues/ Attorney | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$35K | 10.8% | 3.8% | 8.1% | 7.9% | 8.8% | 3.5% | 7.9% | 10.3% |
| $35-69.9K | 11.7% | 3.8% | 4.9% | 13.2% | 9.6% | - | 12.7% | 9.2% |
| $70-104.9K | 18.3% | 11.3% | 8.9% | 7.9% | 12.3% | 8.8% | 15.9% | 10.6% |
| $105-139.9K | 13.3% | 5.7% | 7.3% | 5.3% | 12.3% | 15.8% | 14.3% | 7.9% |
| $140-174.9K | 7.5% | 9.4% | 6.5% | 13.2% | 16.7% | 7.0% | 6.3% | 11.4% |
| $175-209.9K | 9.2% | 9.4% | 12.2% | 10.5% | 7.9% | 17.5% | 19.0% | 11.5% |
| $210-244.9K | 6.7% | 15.1% | 7.3% | 13.2% | 7.9% | 24.6% | 7.9% | 8.6% |
| $245-299.9K | 7.5% | 7.5% | 18.7% | 18.4% | 12.3% | 3.5% | 7.9% | 11.5% |
| $300-499.9K | 9.2% | 28.3% | 20.3% | 7.9% | 8.8% | 14.0% | 3.2% | 15.4% |
| $500K+ | 5.8% | 5.7% | 5.7% | 2.6% | 3.5% | 5.3% | 4.8% | 3.7% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| Overhead Rate | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <9% | 13.8% | 9.8% | 15.7% | 2.7% | 14.6% | 5.4% | 14.1% | 10.0% |
| 9-14% | 13.8% | 9.8% | 8.7% | 13.5% | 11.7% | 16.1% | 7.8% | 8.1% |
| 15-20% | 13.8% | 5.9% | 14.8% | 8.1% | 11.7% | 12.5% | 18.8% | 10.7% |
| 21-26% | 8.6% | 15.7% | 4.3% | 8.1% | 8.7% | 7.1% | 7.8% | 10.0% |
| 27-32% | 8.6% | 7.8% | 15.7% | 5.4% | 12.6% | 10.7% | 10.9% | 10.5% |
| 33-38% | 13.8% | 11.8% | 11.3% | 16.2% | 3.9% | 8.9% | 3.1% | 14.1% |
| 39-44% | 8.6% | 9.8% | 7.0% | 13.5% | 7.8% | 7.1% | 7.8% | 11.4% |
| 45-50% | 6.9% | 15.7% | 13.0% | 21.6% | 14.6% | 16.1% | 10.9% | 12.4% |
| 51-56% | 2.6% | 3.9% | 3.5% | 5.4% | 3.9% | 3.6% | 7.8% | 3.7% |
| 57-62% | 4.3% | 3.9% | 3.5% | 2.7% | 1.0% | 8.9% | 4.7% | 3.5% |
| >62% | 5.2% | 5.9% | 2.6% | 2.7% | 9.7% | 3.6% | 6.3% | 5.7% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**Starting and Current Salary Levels for Associates, Legal Assistants and Administrative Assistants/Secretaries by Years of Experience**

**EXHIBIT 79:** DISTRIBUTIONS OF 2019 ADMINISTRATIVE ASSISTANT/SECRETARY, LEGAL ASSISTANT AND ASSOCIATE SALARIES BY YEARS OF EXPERIENCE

| Administrative Assistant/Secretaries | No Experience | | 3 Years Experience | | 5 Years Experience | | 10 Years Experience | |
|---|---|---|---|---|---|---|---|---|
| | N | % | N | % | N | % | N | % |
| <$25K | 111 | 42.9 | 40 | 15.6 | 21 | 8.2 | 18 | 5.3 |
| $25-27K | 44 | 17 | 58 | 22.6 | 33 | 12.8 | 19 | 5.6 |
| $28-30K | 39 | 15.1 | 42 | 16.3 | 38 | 14.8 | 27 | 8 |
| $31-33K | 19 | 7.3 | 31 | 12.1 | 33 | 12.8 | 36 | 10.7 |
| $34-36K | 18 | 6.9 | 19 | 7.4 | 30 | 11.7 | 51 | 15.1 |
| $37-39K | 9 | 3.5 | 24 | 9.3 | 26 | 10.1 | 30 | 8.9 |
| $40-42K | 6 | 2.3 | 16 | 6.2 | 22 | 8.6 | 28 | 8.3 |
| $43-45K | 5 | 1.9 | 11 | 4.3 | 14 | 5.4 | 26 | 7.7 |
| $46-48K | 2 | 0.8 | 5 | 1.9 | 13 | 5.1 | 17 | 5 |
| $49-51K | 1 | 0.4 | 4 | 1.6 | 12 | 4.7 | 28 | 8.3 |
| $52-54K | 2 | 0.8 | 1 | 0.4 | 7 | 2.7 | 13 | 3.9 |
| $55-57K | 1 | 0.4 | 4 | 1.6 | 2 | 0.8 | 11 | 3.3 |
| $58-60K | 1 | 0.4 | 1 | 0.4 | 3 | 1.2 | 10 | 3 |
| $61-63K | 1 | 0.4 | 1 | 0.4 | 2 | 0.8 | 8 | 2.4 |
| **Total** | **259** | **100** | **257** | **100** | **257** | **100** | **322** | **100** |

| Legal Assistants | No Experience | | 3 Years Experience | | 5 Years Experience | | 10 Years Experience | |
|---|---|---|---|---|---|---|---|---|
| | N | % | N | % | N | % | N | % |
| <$46K | 119 | 77.3 | 77 | 49 | 61 | 37.2 | 62 | 28% |
| $46-48K | 11 | 7.1 | 29 | 18.5 | 20 | 12.2 | 26 | 12% |
| $49-51K | 7 | 4.5 | 16 | 10.2 | 23 | 14 | 17 | 8% |
| $52-54K | - | - | 7 | 4.5 | 11 | 6.7 | 27 | 12% |
| $55-57K | 5 | 3.2 | 8 | 5.1 | 9 | 5.5 | 12 | 5% |
| $58-60K | - | - | 7 | 4.5 | 12 | 7.3 | 17 | 8% |
| $61-63K | - | - | - | 1.3 | 6 | 3.7 | 13 | 6% |
| $64-66K | 4 | 2.6 | 4 | 2.5 | 4 | 2.4 | 10 | 5% |
| $67-69K | - | - | - | 1.3 | 10 | 6.1 | 9 | 4% |
| $70-75K | - | - | - | 1.3 | - | 1.2 | 14 | 6% |
| $76-78K | - | - | - | 1.3 | - | 0.6 | 3 | 1% |
| $79-88K | - | - | - | - | - | 0.6 | 6 | 3% |
| >$88K | - | - | - | - | - | 0.6 | 5 | 2% |
| **Total** | **154** | **100%** | **157** | **100%** | **164** | **100%** | **221** | **100%** |

| Associates | No Experience | | 3 Years Experience | | 5 Years Experience | | 10 Years Experience | |
|---|---|---|---|---|---|---|---|---|
| | N | % | N | % | N | % | N | % |
| <$73K | 191 | 69.7 | 115 | 44.1 | 59 | 24.5 | 37 | 16.4 |
| $73-85K | 28 | 10.2 | 71 | 27.2 | 51 | 21.2 | 24 | 10.7 |
| $86-98K | 18 | 6.6 | 22 | 8.4 | 58 | 24.1 | 22 | 9.8 |
| $99-111K | 17 | 6.2 | 15 | 5.7 | 20 | 8.3 | 54 | 24 |
| $112-124K | 14 | 5.1 | 12 | 4.6 | 10 | 4.1 | 25 | 11.1 |
| $125-137K | 4 | 1.5 | 17 | 6.5 | 14 | 5.8 | 12 | 5.3 |
| $138-151K | - | - | 5 | 1.9 | 20 | 8.3 | 19 | 8.4 |
| $152-164K | - | - | - | - | 6 | 2.5 | 8 | 3.6 |
| $165-177K | - | - | - | - | - | - | 10 | 4.4 |
| $178-190K | - | - | - | - | - | - | 3 | 1.3 |
| $191-203K | - | - | - | - | - | - | 3 | 1.3 |
| $204-216K | - | - | - | - | - | - | 3 | 1.3 |
| **Total** | **259** | **100%** | **257** | **100%** | **241** | **100%** | **225** | **100%** |



## Associate and Legal Assistant Salaries by Firm Size and Office Location

**Exhibits 80 to 85** distribute associate, legal assistant and administrative assistant/secretary salary levels in 2019 based on their level of experience by firm size and office location. Income is directly correlated with both firm size and years of experience.

**EXHIBIT 80:** DISTRIBUTIONS OF 2019 SALARY LEVELS OF ASSOCIATES BY LEVEL OF EXPERIENCE AND SIZE OF FIRM

| No Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 95% | 87% | 90% | 80% | 67% | 59% | 6% | 72% |
| $73-85K | 5% | 9% | 6% | 12% | 22% | 18% | 9% | 11% |
| $86-98K | - | 4% | 1% | 4% | 7% | 18% | 18% | 7% |
| $99-111K | - | - | 2% | - | - | 3% | 29% | 5% |
| $112-124K | - | - | 1% | - | 4% | - | 32% | 5% |
| $125-137K | - | - | - | 4% | - | 3% | 3% | 1% |
| $152-164K | - | - | - | - | - | - | 3% | 0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 3 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 75% | 69% | 55% | 68% | 30% | 30% | - | 45% |
| $73-85K | 19% | 15% | 39% | 16% | 37% | 32% | 6% | 28% |
| $86-98K | - | 4% | 2% | 5% | 22% | 16% | 18% | 9% |
| $99-111K | - | 12% | 3% | 5% | 4% | 14% | 6% | 6% |
| $112-124K | - | - | 1% | - | - | 3% | 21% | 4% |
| $125-137K | - | - | - | - | - | 5% | 38% | 6% |
| $138-151K | - | - | - | 5% | 4% | - | 9% | 2% |
| $152-164K | - | - | - | - | 4% | - | 3% | 1% |
| $165-177K | 6% | - | - | - | - | - | - | - |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 5 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 47% | 44% | 38% | 18% | 12% | 13% | - | 25% |
| $73-85K | 33% | 11% | 27% | 47% | 15% | 21% | - | 22% |
| $86-98K | 7% | 22% | 26% | - | 58% | 32% | 9% | 25% |
| $99-111K | - | 6% | 7% | 18% | 4% | 11% | 15% | 9% |
| $112-124K | 7% | 11% | - | - | 4% | 13% | 3% | 4% |
| $125-137K | - | - | 1% | - | 4% | 5% | 21% | 5% |
| $138-151K | 7% | - | 1% | 12% | - | 5% | 36% | 8% |
| $152-164K | - | 6% | - | 6% | 4% | - | 9% | 3% |
| $165-177K | - | - | - | - | - | - | 3% | 0% |
| >$255K | - | - | - | - | - | - | 3% | 0% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 10 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 40.0% | 24.0% | 26.7% | 15.8% | - | 5.9% | - | 16.8% |
| $73-85K | 13.3% | 8.0% | 16.0% | 15.8% | 9.1% | 8.8% | - | 10.9% |
| $86-98K | 6.7% | 8.0% | 16.0% | 10.5% | 9.1% | 5.9% | - | 9.5% |
| $99-111K | 6.7% | 20.0% | 21.3% | 31.6% | 45.5% | 38.2% | 10.0% | 24.5% |
| $112-124K | 13.3% | 8.0% | 9.3% | 5.3% | 9.1% | 17.6% | 16.7% | 11.4% |
| $125-137K | 13.3% | 8.0% | 5.3% | - | 4.5% | 5.9% | 3.3% | 5.5% |
| $138-151K | 6.7% | 4.0% | 1.3% | - | 9.1% | 8.8% | 30.0% | 7.7% |
| $152-164K | - | - | 1.3% | 10.5% | - | 8.8% | 6.7% | 3.6% |
| $165-177K | - | 4.0% | 1.3% | 5.3% | - | - | 20.0% | 4.1% |
| $178-190K | - | - | - | - | 9.1% | - | - | 0.9% |
| $191-203K | - | 8.0% | - | - | - | - | 3.3% | 1.4% |
| $204-216K | - | 4.0% | - | - | 4.5% | - | 3.3% | 1.4% |
| $217-229K | - | - | 1.3% | - | - | - | 3.3% | 0.9% |
| $243-255K | - | - | - | 5.3% | - | - | - | 0.5% |
| >$255K | - | 4.0% | - | - | - | - | 3.3% | 0.9% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**EXHIBIT 81:** DISTRIBUTIONS OF 2019 SALARY LEVELS OF ASSOCIATES BY LOCATION AND YEARS OF EXPERIENCE

| No Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 64.4% | 42.4% | 65.8% | 61.5% | 84.3% | 83.3% | 92.0% | 70.4% |
| $73-85K | 4.4% | 30.3% | 6.8% | 7.7% | 7.8% | 10.0% | 8.0% | 10.0% |
| $86-98K | 15.6% | 3.0% | 6.8% | 7.7% | 3.9% | 6.7% | - | 6.7% |
| $99-111K | 4.4% | 12.1% | 8.2% | 15.4% | 3.9% | - | - | 5.9% |
| $112-124K | 8.9% | 9.1% | 9.6% | - | - | - | - | 5.2% |
| $125-137K | 2.2% | 3.0% | 1.4% | 7.7% | - | - | - | 1.5% |
| $152-164K | - | - | 1.4% | - | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 3 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 45.5% | 25.0% | 37.3% | 41.2% | 45.7% | 53.3% | 85.7% | 44.7% |
| $73-85K | 22.7% | 28.1% | 28.4% | 17.6% | 37.0% | 30.0% | 14.3% | 27.2% |
| $86-98K | 11.4% | 15.6% | 1.5% | 5.9% | 15.2% | 6.7% | - | 8.2% |
| $99-111K | 6.8% | - | 9.0% | 11.8% | 2.2% | 10.0% | - | 5.8% |
| $112-124K | 4.5% | 6.3% | 10.4% | - | - | - | - | 4.3% |
| $125-137K | 6.8% | 15.6% | 9.0% | 17.6% | - | - | - | 6.6% |
| $138-151K | 2.3% | 6.3% | 3.0% | - | - | - | - | 1.9% |
| $152-164K | - | - | 1.5% | 5.9% | - | - | - | 0.8% |
| $165-177K | - | 3.1% | - | - | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 5 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 27.9% | 12.0% | 11.1% | 15.4% | 25.5% | 34.6% | 70.0% | 24.9% |
| $73-85K | 20.9% | 12.0% | 27.0% | 38.5% | 17.0% | 23.1% | 15.0% | 21.5% |
| $86-98K | 18.6% | 28.0% | 22.2% | 15.4% | 36.2% | 26.9% | 10.0% | 24.1% |
| $99-111K | 11.6% | 12.0% | 3.2% | - | 14.9% | 7.7% | 5.0% | 8.4% |
| $112-124K | 7.0% | 4.0% | 4.8% | 7.7% | 4.3% | - | - | 4.2% |
| $125-137K | 7.0% | 8.0% | 9.5% | - | - | 3.8% | - | 5.1% |
| $138-151K | 4.7% | 12.0% | 15.9% | 23.1% | 2.1% | 3.8% | - | 8.4% |
| $152-164K | - | 12.0% | 4.8% | - | - | - | - | 2.5% |
| $165-177K | 2.3% | - | - | - | - | - | - | 0.4% |
| >$255K | - | - | 1.6% | - | - | - | - | 0.4% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 10 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$73K | 21.6% | 4.2% | 6.9% | 8.3% | 15.6% | 32.0% | 36.4% | 16.6% |
| $73-85K | 13.5% | 4.2% | 8.6% | 16.7% | 15.6% | 8.0% | 9.1% | 10.8% |
| $86-98K | - | 12.5% | 13.8% | - | 6.7% | 16.0% | 18.2% | 9.9% |
| $99-111K | 21.6% | 29.2% | 20.7% | 25.0% | 33.3% | 24.0% | 13.6% | 24.2% |
| $112-124K | 16.2% | 12.5% | 3.4% | - | 20.0% | 12.0% | 9.1% | 11.2% |
| $125-137K | 5.4% | 12.5% | 5.2% | 8.3% | 4.4% | - | 4.5% | 5.4% |
| $138-151K | 13.5% | 12.5% | 12.1% | 16.7% | - | 4.0% | - | 8.1% |
| $152-164K | 5.4% | - | 5.2% | 8.3% | - | 4.0% | - | 3.1% |
| $165-177K | - | 8.3% | 10.3% | 16.7% | - | - | - | 4.5% |
| $178-190K | - | - | 3.4% | - | - | - | 4.5% | 1.3% |
| $191-203K | 2.7% | - | 1.7% | - | - | - | 4.5% | 1.3% |
| $204-216K | - | - | 3.4% | - | 2.2% | - | - | 1.3% |
| $217-229K | - | 4.2% | 1.7% | - | - | - | - | 0.9% |
| $243-255K | - | - | 1.7% | - | - | - | - | 0.4% |
| >$255K | - | - | 1.7% | - | 2.2% | - | - | 0.9% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**EXHIBIT 82:** DISTRIBUTIONS OF 2019 SALARY LEVELS OF LEGAL ASSISTANTS BY LEVEL OF EXPERIENCE AND FIRM SIZE

| No Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$46K | 88% | 100% | 90% | 69% | 67% | 64% | 38% | 78% |
| $46-48K | 4% | - | 4% | 31% | - | 4% | 19% | 7% |
| $49-51K | 4% | - | 2% | - | 11% | 8% | 13% | 5% |
| $52-54K | - | - | 2% | - | - | - | 6% | 2% |
| $55-57K | - | - | 2% | - | 11% | - | 6% | 3% |
| $58-60K | 4% | - | - | - | - | 4% | 6% | 2% |
| $64-66K | - | - | - | - | - | 8% | 6% | 2% |
| $67-69K | - | - | - | - | - | 4% | - | 1% |
| >$88 | - | - | - | - | - | - | 6% | 1% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 3 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$46K | 73.1% | 69.2% | 54.9% | 64.3% | 22.2% | 25.9% | 18.8% | 49.4% |
| $46-48K | 15.4% | 7.7% | 23.5% | 21.4% | 11.1% | 25.9% | 6.3% | 18.6% |
| $49-51K | 3.8% | 23.1% | 5.9% | 7.1% | 11.1% | 14.8% | 18.8% | 10.3% |
| $52-54K | - | - | 3.9% | - | 44.4% | - | 6.3% | 4.5% |
| $55-57K | - | - | 5.9% | - | - | 7.4% | 18.8% | 5.1% |
| $58-60K | 3.8% | - | 3.9% | - | 11.1% | 3.7% | 12.5% | 4.5% |
| $61-63K | - | - | 2.0% | - | - | 3.7% | - | 1.3% |
| $64-66K | - | - | - | 7.1% | - | 7.4% | 6.3% | 2.6% |
| $67-69K | - | - | - | - | - | 3.7% | - | 0.6% |
| $73-75K | - | - | - | - | - | 7.4% | - | 1.3% |
| $79-82K | 3.8% | - | - | - | - | - | 6.3% | 1.3% |
| >$88 | - | - | - | - | - | - | 6.3% | 0.6% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 5 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$46K | 55.6% | 64.3% | 39.2% | 58.8% | 9.1% | 15.4% | 11.8% | 37.4% |
| $46-48K | 11.1% | 7.1% | 15.7% | 11.8% | 27.3% | 7.7% | 5.9% | 12.3% |
| $49-51K | 11.1% | 21.4% | 23.5% | 5.9% | - | 11.5% | 5.9% | 14.1% |
| $52-54K | 7.4% | - | 2.0% | 11.8% | 9.1% | 15.4% | 5.9% | 6.7% |
| $55-57K | - | 7.1% | 5.9% | - | 9.1% | 7.7% | 11.8% | 5.5% |
| $58-60K | 3.7% | - | 7.8% | - | 27.3% | 11.5% | 5.9% | 7.4% |
| $61-63K | 3.7% | - | 3.9% | - | 9.1% | - | 11.8% | 3.7% |
| $64-66K | - | - | 2.0% | - | 9.1% | 3.8% | 5.9% | 2.5% |
| $67-69K | - | - | - | 11.8% | - | 19.2% | 17.6% | 6.1% |
| $70-72K | - | - | - | - | - | - | 5.9% | 0.6% |
| $76-78K | - | - | - | - | - | 3.8% | - | 0.6% |
| $79-82K | - | - | - | - | - | 3.8% | - | 0.6% |
| $83-85K | 3.7% | - | - | - | - | - | - | 0.6% |
| $86-88K | 3.7% | - | - | - | - | - | 5.9% | 1.2% |
| >$88K | - | - | - | - | - | - | 5.9% | 0.6% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 10 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$46K | 42.2% | 50.0% | 27.5% | 40.0% | - | 7.4% | 5.3% | 28.1% |
| $46-48K | 15.6% | 19.2% | 13.0% | 5.0% | 6.7% | 7.4% | 5.3% | 11.8% |
| $49-51K | 6.7% | 3.8% | 14.5% | 5.0% | 6.7% | 3.7% | - | 7.7% |
| $52-54K | 8.9% | 3.8% | 14.5% | 15.0% | 20.0% | 14.8% | 10.5% | 12.2% |
| $55-57K | 6.7% | 3.8% | 7.2% | 10.0% | 6.7% | - | - | 5.4% |
| $58-60K | 11.1% | 3.8% | 5.8% | - | 6.7% | 14.8% | 10.5% | 7.7% |
| $61-63K | 4.4% | 3.8% | 4.3% | - | 20.0% | 11.1% | 5.3% | 5.9% |
| $64-66K | 2.2% | - | 4.3% | - | 20.0% | 3.7% | 10.5% | 4.5% |
| $67-69K | - | 3.8% | 1.4% | 15.0% | - | 11.1% | 5.3% | 4.1% |
| $70-72K | - | - | 1.4% | 5.0% | - | 14.8% | 5.3% | 3.2% |
| $73-75K | - | - | - | - | 13.3% | - | 21.1% | 2.7% |
| $76-78K | - | 3.8% | 2.9% | - | - | - | - | 1.4% |
| $79-82K | - | - | 2.9% | - | - | 3.7% | 10.5% | 2.3% |
| $83-85K | - | - | - | - | - | 3.7% | - | 0.5% |
| $86-88K | - | - | - | 5.0% | - | - | - | 0.5% |
| >$88 | 2.2% | 3.8% | - | - | - | 3.7% | 10.5% | 2.3% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |



**OHIO STATE BAR ASSOCIATION**
Connect. Advance. Succeed.

**EXHIBIT 83:** DISTRIBUTIONS OF 2019 SALARY LEVELS OF LEGAL ASSISTANTS BY LEVEL OF EXPERIENCE AND OFFICE LOCATION

| No Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$46K | 76.7% | 73.7% | 53.8% | 50.0% | 88.2% | 94.4% | 100.0% | 77.8% |
| $46-48K | 10.0% | - | 15.4% | 30.0% | 2.9% | - | - | 7.2% |
| $49-51K | 3.3% | 5.3% | 7.7% | - | 2.9% | 5.6% | - | 3.9% |
| $52-54K | - | - | 7.7% | 10.0% | - | - | - | 2.0% |
| $55-57K | 3.3% | 15.8% | 3.8% | - | - | - | - | 3.3% |
| $58-60K | - | - | 3.8% | 10.0% | 2.9% | - | - | 2.0% |
| $64-66K | 3.3% | 5.3% | 3.8% | - | 2.9% | - | - | 2.6% |
| $67-69K | 3.3% | - | - | - | - | - | - | 0.7% |
| >$88 | - | - | 3.8% | - | - | - | - | 0.7% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 3 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$46K | 38.7% | 45.0% | 25.9% | 30.0% | 62.9% | 72.2% | 73.3% | 49.4% |
| $46-48K | 25.8% | 10.0% | 11.1% | 40.0% | 17.1% | 16.7% | 20.0% | 18.6% |
| $49-51K | 6.5% | 10.0% | 25.9% | - | 8.6% | 5.6% | 6.7% | 10.3% |
| $52-54K | 9.7% | 5.0% | 7.4% | - | 2.9% | - | - | 4.5% |
| $55-57K | - | 10.0% | 7.4% | 20.0% | 2.9% | - | - | 4.5% |
| $58-60K | 6.5% | 10.0% | 7.4% | - | - | 5.6% | - | 4.5% |
| $61-63K | 6.5% | - | - | - | - | - | - | 1.3% |
| $64-66K | 3.2% | 5.0% | 3.7% | - | 2.9% | - | - | 2.6% |
| $67-69K | - | 5.0% | 3.7% | - | - | - | - | 1.3% |
| $73-75K | 3.2% | - | - | 10.0% | - | - | - | 1.3% |
| $79-82K | - | - | 3.7% | - | 2.9% | - | - | 1.3% |
| >$88 | - | - | 3.7% | - | - | - | - | 0.6% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 5 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$46K | 27.3% | 12.5% | 16.7% | 18.2% | 55.3% | 68.4% | 56.3% | 37.4% |
| $46-48K | 9.1% | 25.0% | 6.7% | 27.3% | 7.9% | 10.5% | 18.8% | 12.3% |
| $49-51K | 21.2% | 6.3% | 13.3% | 18.2% | 7.9% | 10.5% | 25.0% | 14.1% |
| $52-54K | 6.1% | 6.3% | 16.7% | - | 7.9% | - | - | 6.7% |
| $55-57K | 3.0% | 6.3% | 10.0% | 9.1% | 5.3% | 5.3% | - | 5.5% |
| $58-60K | 12.1% | 18.8% | 6.7% | 9.1% | 5.3% | - | - | 7.4% |
| $61-63K | 6.1% | 12.5% | 3.3% | - | - | 5.3% | - | 3.7% |
| $64-66K | 3.0% | - | 6.7% | - | - | - | - | 1.8% |
| $67-69K | 9.1% | 12.5% | 10.0% | 9.1% | 2.6% | - | - | 6.1% |
| $70-72K | - | - | 3.3% | - | 2.6% | - | - | 1.2% |
| $76-78K | - | - | - | 9.1% | - | - | - | 0.6% |
| $79-82K | 3.0% | - | - | - | - | - | - | 0.6% |
| $83-85K | - | - | 3.3% | - | - | - | - | 0.6% |
| $86-88K | - | - | - | - | - | 5.3% | - | 1.2% |
| >$88K | - | - | 3.3% | - | - | - | - | 0.6% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |

| 10 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$46K | 20.0% | 10.7% | 17.4% | 19.0% | 28.8% | 62.5% | 55.0% | 28.1% |
| $46-48K | 6.7% | 17.9% | 2.2% | 14.3% | 17.3% | 16.7% | 10.0% | 11.8% |
| $49-51K | 10.0% | 7.1% | 10.9% | 9.5% | 5.8% | - | 10.0% | 7.7% |
| $52-54K | 20.0% | 10.7% | 4.3% | 14.3% | 13.5% | 12.5% | 15.0% | 12.2% |
| $55-57K | - | 7.1% | 6.5% | 4.8% | 9.6% | - | 5.0% | 5.4% |
| $58-60K | 10.0% | - | 13.0% | 9.5% | 11.5% | - | - | 7.7% |
| $61-63K | 3.3% | 10.7% | 10.9% | 4.8% | 3.8% | 4.2% | - | 5.9% |
| $64-66K | 10.0% | 14.3% | 2.2% | - | 1.9% | 4.2% | - | 4.5% |
| $67-69K | - | 7.1% | 8.7% | 9.5% | 1.9% | - | - | 4.1% |
| $70-72K | 10.0% | 3.6% | 2.2% | - | - | - | 5.0% | 2.7% |
| $73-75K | - | 3.6% | 8.7% | 4.8% | 1.9% | - | - | 3.2% |
| $76-78K | - | - | 4.3% | 4.8% | - | - | - | 1.4% |
| $79-82K | 6.7% | 7.1% | - | - | 1.9% | - | - | 2.3% |
| $83-85K | - | - | - | 4.8% | - | - | - | 0.5% |
| $86-88K | - | - | 2.2% | - | - | - | - | 0.5% |
| >$88 | 3.3% | - | 6.5% | - | 1.9% | - | - | 2.3% |
| **Total** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** | **100%** |



**EXHIBIT 84:** PERCENT DISTRIBUTIONS OF 2019 ADMINISTRATIVE ASSISTANT/SECRETARY SALARY LEVELS BY FIRM SIZE

| No Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$25K | 70.7% | 42.9% | 46.1% | 35.0% | 26.3% | 11.5% | 6.3% | 43.0% |
| $25-27K | 10.3% | 17.9% | 19.1% | 40.0% | 10.5% | 19.2% | 6.3% | 17.2% |
| $28-30K | 3.4% | 21.4% | 12.4% | 10.0% | 36.8% | 38.5% | 6.3% | 15.2% |
| $31-33K | 5.2% | 10.7% | 9.0% | 10.0% | - | 3.8% | 12.5% | 7.4% |
| $34-36K | 3.4% | 3.6% | 7.9% | 5.0% | 10.5% | 7.7% | 18.8% | 7.0% |
| $37-39K | 3.4% | - | 2.2% | - | - | 11.5% | 12.5% | 3.5% |
| $40-42K | - | 3.6% | 1.1% | - | 5.3% | - | 12.5% | 2.0% |
| $43-45K | - | - | 1.1% | - | 5.3% | 3.8% | 6.3% | 1.6% |
| $46-48K | - | - | 1.1% | - | - | - | 6.3% | 0.8% |
| $49-51K | - | - | - | - | - | 3.8% | - | 0.4% |
| $52-54K | - | - | - | - | 5.3% | - | 6.3% | 0.8% |
| $58-60K | 1.7% | - | - | - | - | - | - | 0.4% |
| $61-63K | 1.7% | - | - | - | - | - | - | 0.4% |
| >$63K | - | - | - | - | - | - | 6.3% | 0.4% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 3 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$25K | 37.7% | 17.9% | 10.3% | 13.6% | 4.5% | 3.6% | 6.3% | 15.6% |
| $25-27K | 28.3% | 25.0% | 28.7% | 22.7% | 18.2% | 7.1% | - | 22.7% |
| $28-30K | 3.8% | 21.4% | 20.7% | 27.3% | 9.1% | 25.0% | 6.3% | 16.4% |
| $31-33K | 9.4% | 10.7% | 16.1% | 13.6% | 13.6% | 10.7% | - | 12.1% |
| $34-36K | 5.7% | 7.1% | 4.6% | 4.5% | 13.6% | 17.9% | 6.3% | 7.4% |
| $37-39K | 3.8% | 7.1% | 6.9% | - | 22.7% | 14.3% | 31.3% | 9.4% |
| $40-42K | 3.8% | 7.1% | 4.6% | 9.1% | 4.5% | 10.7% | 12.5% | 6.3% |
| $43-45K | 3.8% | - | 4.6% | 9.1% | 9.1% | - | 6.3% | 4.3% |
| $46-48K | - | - | 2.3% | - | - | - | 12.5% | 1.6% |
| $49-51K | - | 3.6% | 1.1% | - | - | 3.6% | 6.3% | 1.6% |
| $52-54K | - | - | - | - | - | - | 6.3% | 0.4% |
| $55-57K | 3.8% | - | - | - | 4.5% | 3.6% | - | 1.6% |
| $58-60K | - | - | - | - | - | 3.6% | - | 0.4% |
| >$63K | - | - | - | - | - | - | 6.3% | 0.4% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 5 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$25K | 26.9% | 7.1% | 4.6% | - | - | 3.3% | - | 8.2% |
| $25-27K | 26.9% | 17.9% | 9.2% | 19.0% | 4.8% | - | 5.9% | 12.9% |
| $28-30K | 13.5% | 14.3% | 19.5% | 19.0% | 14.3% | 10.0% | - | 14.8% |
| $31-33K | 5.8% | 14.3% | 18.4% | 14.3% | 14.3% | 10.0% | 5.9% | 12.9% |
| $34-36K | 5.8% | 10.7% | 12.6% | 19.0% | 9.5% | 23.3% | - | 11.7% |
| $37-39K | 5.8% | 3.6% | 13.8% | 4.8% | 14.3% | 20.0% | - | 10.2% |
| $40-42K | 7.7% | 17.9% | 6.9% | 9.5% | 14.3% | 6.7% | - | 8.6% |
| $43-45K | 3.8% | 3.6% | 5.7% | - | - | 10.0% | 17.6% | 5.5% |
| $46-48K | - | - | 4.6% | 4.8% | 14.3% | 6.7% | 17.6% | 5.1% |
| $49-51K | - | 10.7% | 2.3% | 4.8% | 4.8% | - | 23.5% | 4.3% |
| $52-54K | - | - | 2.3% | - | 4.8% | 3.3% | 17.6% | 2.7% |
| $55-57K | - | - | - | 4.8% | - | - | 5.9% | 0.8% |
| $58-60K | 3.8% | - | - | - | 4.8% | - | - | 1.2% |
| $61-63K | - | - | - | - | - | 3.3% | - | 0.4% |
| >$63K | - | - | - | - | - | 3.3% | 5.9% | 0.8% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 10 Years Experience | 1 | 2 | 3 to 6 | 7 to 10 | 11 to 20 | 21 to 50 | >50 | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$25K | 17.4% | 2.2% | 1.0% | - | - | 3.1% | - | 5.4% |
| $25-27K | 9.3% | 6.7% | 5.8% | 4.0% | 4.2% | - | - | 5.7% |
| $28-30K | 10.5% | 13.3% | 9.6% | - | - | 3.1% | 5.3% | 8.1% |
| $31-33K | 15.1% | 13.3% | 8.7% | 16.0% | 8.3% | 6.3% | - | 10.7% |
| $34-36K | 12.8% | 15.6% | 21.2% | 16.0% | 12.5% | 9.4% | 5.3% | 15.2% |
| $37-39K | 8.1% | 6.7% | 11.5% | 16.0% | 12.5% | 3.1% | - | 9.0% |
| $40-42K | 8.1% | 13.3% | 4.8% | 8.0% | 4.2% | 21.9% | - | 8.4% |
| $43-45K | 3.5% | 2.2% | 12.5% | 12.0% | 8.3% | 9.4% | 5.3% | 7.8% |
| $46-48K | 2.3% | 2.2% | 7.7% | 4.0% | 12.5% | 6.3% | - | 5.1% |
| $49-51K | 5.8% | 4.4% | 8.7% | 8.0% | 8.3% | 15.6% | 15.8% | 8.4% |
| $52-54K | - | 6.7% | 1.0% | 4.0% | 8.3% | 3.1% | 21.1% | 3.6% |
| $55-57K | - | 2.2% | 1.9% | 8.0% | - | 9.4% | 15.8% | 3.3% |
| $58-60K | 2.3% | - | 1.9% | - | 8.3% | 3.1% | 15.8% | 3.0% |
| $61-63K | 1.2% | 2.2% | 1.9% | - | 8.3% | - | 5.3% | 2.1% |
| >$63K | 3.5% | 8.9% | 1.9% | 4.0% | 4.2% | 6.3% | 10.5% | 4.5% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |


**OHIO STATE BAR ASSOCIATION**
Connect. Advance. Succeed.

**EXHIBIT 85:** PERCENT DISTRIBUTIONS OF 2019 ADMINISTRATIVE ASSISTANT/SECRETARY SALARY LEVELS BY EXPERIENCE AND OFFICE LOCATION

| No Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$25K | 34.1% | 18.2% | 27.8% | 53.8% | 51.8% | 60.0% | 58.3% | 43.2% |
| $25-27K | 12.2% | 4.5% | 16.7% | 7.7% | 23.2% | 22.9% | 19.4% | 17.1% |
| $28-30K | 24.4% | 27.3% | 11.1% | 23.1% | 12.5% | 11.4% | 5.6% | 14.8% |
| $31-33K | 9.8% | 9.1% | 7.4% | 7.7% | 5.4% | 2.9% | 11.1% | 7.4% |
| $34-36K | 12.2% | 27.3% | 9.3% | - | 1.8% | - | 2.8% | 7.0% |
| $37-39K | 4.9% | 4.5% | 11.1% | - | - | - | - | 3.5% |
| $40-42K | - | 4.5% | 1.9% | - | 1.8% | 2.9% | 2.8% | 1.9% |
| $43-45K | - | 4.5% | 3.7% | 7.7% | 1.8% | - | - | 1.9% |
| $46-48K | - | - | 1.9% | - | 1.8% | - | - | 0.8% |
| $49-51K | 2.4% | - | - | - | - | - | - | 0.4% |
| $52-54K | - | - | 3.7% | - | - | - | - | 0.8% |
| $58-60K | - | - | 1.9% | - | - | - | - | 0.4% |
| $61-63K | - | - | 1.9% | - | - | - | - | 0.4% |
| >$63K | - | - | 1.9% | - | - | - | - | 0.4% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 3 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$25K | 7.5% | 9.1% | 8.0% | 6.7% | 30.5% | 10.8% | 25.0% | 15.7% |
| $25-27K | 20.0% | - | 14.0% | 40.0% | 20.3% | 35.1% | 37.5% | 22.7% |
| $28-30K | 15.0% | 9.1% | 16.0% | 6.7% | 22.0% | 24.3% | 9.4% | 16.5% |
| $31-33K | 12.5% | 13.6% | 8.0% | 20.0% | 8.5% | 18.9% | 12.5% | 12.2% |
| $34-36K | 15.0% | 9.1% | 8.0% | - | 8.5% | 2.7% | 3.1% | 7.5% |
| $37-39K | 10.0% | 27.3% | 8.0% | 13.3% | 5.1% | 2.7% | 9.4% | 9.0% |
| $40-42K | 7.5% | 18.2% | 14.0% | - | - | 2.7% | 3.1% | 6.3% |
| $43-45K | 2.5% | 13.6% | 8.0% | - | 1.7% | 2.7% | - | 3.9% |
| $46-48K | 2.5% | - | 6.0% | - | 1.7% | - | - | 2.0% |
| $49-51K | 5.0% | - | 2.0% | - | 1.7% | - | - | 1.6% |
| $52-54K | - | - | 2.0% | - | - | - | - | 0.4% |
| $55-57K | 2.5% | - | 4.0% | 6.7% | - | - | - | 1.6% |
| $58-60K | - | - | - | 6.7% | - | - | - | 0.4% |
| >$63K | - | - | 2.0% | - | - | - | - | 0.4% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 5 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$25K | 8.7% | - | 3.7% | - | 18.9% | - | 17.9% | 8.2% |
| $25-27K | 6.5% | 8.7% | 5.6% | 11.8% | 17.0% | 23.5% | 21.4% | 12.9% |
| $28-30K | 17.4% | - | 7.4% | 17.6% | 17.0% | 23.5% | 21.4% | 14.9% |
| $31-33K | 8.7% | - | 18.5% | 17.6% | 15.1% | 14.7% | 10.7% | 12.9% |
| $34-36K | 15.2% | 13.0% | 5.6% | 17.6% | 9.4% | 20.6% | 7.1% | 11.8% |
| $37-39K | 13.0% | 17.4% | 7.4% | 11.8% | 5.7% | 8.8% | 14.3% | 10.2% |
| $40-42K | 10.9% | 17.4% | 7.4% | 5.9% | 11.3% | - | 7.1% | 8.6% |
| $43-45K | 6.5% | 13.0% | 11.1% | - | - | 5.9% | - | 5.5% |
| $46-48K | 2.2% | 8.7% | 9.3% | 11.8% | - | 2.9% | - | 4.3% |
| $49-51K | 2.2% | 13.0% | 13.0% | - | 1.9% | - | - | 4.7% |
| $52-54K | 6.5% | 4.3% | 1.9% | - | 3.8% | - | - | 2.7% |
| $55-57K | - | 4.3% | 1.9% | - | - | - | - | 0.8% |
| $58-60K | - | - | 5.6% | - | - | - | - | 1.2% |
| $61-63K | 2.2% | - | - | - | - | - | - | 0.4% |
| >$63K | - | - | 1.9% | 5.9% | - | - | - | 0.8% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |

| 10 Years Experience | Greater Cleveland | Greater Cincinnati | Greater Columbus | Greater Dayton | Northeast Region | Northwest Region | Southern Region | Ohio |
|---|---|---|---|---|---|---|---|---|
| <$25K | 3.8% | - | 2.9% | 4.2% | 14.9% | - | 5.7% | 5.4% |
| $25-27K | 3.8% | 2.9% | 1.4% | 4.2% | 8.1% | 8.5% | 11.4% | 5.7% |
| $28-30K | 5.8% | - | 2.9% | - | 13.5% | 10.6% | 20.0% | 8.1% |
| $31-33K | 11.5% | - | 5.8% | 8.3% | 20.3% | 6.4% | 17.1% | 10.7% |
| $34-36K | 15.4% | 8.8% | 10.1% | 16.7% | 12.2% | 27.7% | 20.0% | 15.2% |
| $37-39K | 9.6% | 5.9% | 5.8% | 25.0% | 5.4% | 14.9% | 5.7% | 9.0% |
| $40-42K | 15.4% | 14.7% | 1.4% | 4.2% | 6.8% | 10.6% | 8.6% | 8.4% |
| $43-45K | 7.7% | 11.8% | 11.6% | 8.3% | 4.1% | 4.3% | 8.6% | 7.8% |
| $46-48K | 5.8% | 8.8% | 4.3% | 4.2% | 1.4% | 10.6% | 2.9% | 5.1% |
| $49-51K | 5.8% | 5.9% | 18.8% | 12.5% | 4.1% | 8.4% | - | 8.1% |
| $52-54K | 5.8% | 5.9% | 4.3% | - | 1.8% | - | - | 3.9% |
| $55-57K | 1.9% | 5.9% | 5.8% | 8.3% | 1.4% | - | - | 3.0% |
| $58-60K | 5.8% | 5.9% | 7.2% | - | - | - | - | 3.0% |
| $61-63K | - | 14.7% | 2.9% | - | 1.4% | - | - | 2.4% |
| >$63K | 1.9% | 8.8% | 14.5% | 4.2% | - | - | - | 4.5% |
| Total | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |